## UNITED STATES COURT OF INTERNATIONAL TRADE

Before: The Honorable Mark A. Barnett, Chief Judge

| | |
|---|---|
| SHELTER FOREST INTERNATIONAL ACQUISITION, INC., | ) ) ) |
| Plaintiff, | ) ) |
| and | ) ) |
| GREATRIVER WOOD CO., LTD., ET AL., | ) ) |
| Consolidated Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD | ) ) ) |
| Defendant-Intervenor. | ) ) |

Consol. Court No. 23-00144

## MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of the Court of International Trade, Plaintiff

Shelter Forest International Acquisition, Inc ("Shelter Forest"), respectfully moves for

judgment upon the agency record in this consolidated action.

Plaintiff seeks judicial review of the U.S. Department of Commerce's

("Commerce" or "the Department") final scope determination and affirmative final

determination of circumvention of the antidumping and countervailing duty orders on

certain hardwood plywood products from China covering exports from Vietnam. *Certain Hardwood Plywood Products From the People's Republic of China: Final Scope Determination and Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders*, 88 Fed. Reg. 46,740 (July 20, 2023) ("*Final Determination*") and accompanying Issues and Decision Memorandum (July 14, 2023). For reasons set forth in the accompanying brief of Shelter Forest in support of its motion for judgment on the agency record, which is hereby incorporated into this motion by reference, Commerce's final determination is not supported by substantial evidence on the record and is otherwise not in accordance with law.

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order (1) holding unlawful the aspects of Commerce's final circumvention determination challenged in the underlying complaint and (2) remanding the final determination with instructions for Commerce to render a new determination consistent with the court's decision.

Respectfully Submitted,

/s/ Daniel L. Porter

Daniel L. Porter
James C. Beaty
Katherine R. Afzal

**Curtis, Mallet-Prevost, Colt & Mosle LLP**
1717 Pennsylvania Avenue, NW
Washington, DC, 20006

*Counsel for Shelter Forest International Acquisition Inc.*

March 4, 2024

## UNITED STATES COURT OF INTERNATIONAL TRADE

Before: The Honorable Mark A. Barnett, Chief Judge

| | |
|---|---|
| SHELTER FOREST INTERNATIONAL ACQUISITION, INC., <br><br> Plaintiff, <br><br> and <br><br> GREATRIVER WOOD CO., LTD., ET AL., <br><br> Consolidated Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD <br><br> Defendant-Intervenor. | Consol. Court No. 23-00144 |

## PLAINTIFF SHELTER FOREST'S RULE 56.2 MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE AGENCY RECORD

Daniel L. Porter
James C. Beaty
Katherine R. Afzal

**Curtis, Mallet-Prevost, Colt & Mosle LLP**
1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
202-452-7373

*Counsel for Shelter Forest International Acquisition Inc.*

**March 4, 2024**

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................... 1

PLAINTIFFS' STATEMENT PURSUANT TO RULE 56.2 ............................................ 3

    A.    Administrative Determination Under Appeal ................................................. 3

    B.    Issues of Law Presented .................................................................................. 3

    C.    Statement of Reasons for Vacating Commerce's Determination ................. 4

STATEMENT OF FACTS ................................................................................................ 4

ARGUMENT ..................................................................................................................... 6

I.    COMMERCE'S REFUSAL TO ACCEPT SHELTER FOREST'S CORE COUNTRY OF ORIGIN DOCUMENTATION SUBMITTED 329 DAYS BEFORE THE FINAL DETERMINATION IS NOT IN ACCORDANCE WITH LAW  6

    A.    Commerce Has A Clear Obligation Not To Abuse Its Discretion When Deciding Whether To Accept Shelter Forest's Documentation ................... 7

    B.    Commerce Abused Its Discretion When It Refused To Consider Shelter Forest's Core Country-of-Origin Documentation Submitted 329 Days Before The Final Determination ................................................................. 13

    C.    Commerce's Purported Justification for  Abused Its Discretion When It Refused To Consider Shelter Forest's Core Country-of-Origin Documentation Submitted 329 Days Before The Final Determination ...... 16

II.    COMMERCE'S REFUSAL TO ACCEPT LECHENWOOD'S NEW FACTUAL INFORMATION IS NOT IN ACCORDANCE WITH LAW ............................... 20

CONCLUSION ............................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Bosun Tools Co. v. United States,*
    405 F. Supp. 3d 1359 (Ct. Int'l Trade 2019) .................................................................. 12

*Celik Halat ve Tel Sanayi A.S. v. United States,*
    556 F. Supp. 3d 1348 (Ct. Int'l Trade 2022) ............................................................... 12

*Columbia Forest Products, et al., v. United States,*
    399 F. Supp. 3d 1283 (Ct. Int'l Trade 2019) ............................................................... 5

*Essar Steel Ltd. v. United States,*
    678 F.3d 1268 (Fed. Cir. 2012) ...................................................................................... 18

*Fine Furniture (Shanghai) Ltd. v. United States,*
    865 F. Supp. 2d 1254 (Ct. Int'l Trade 2012) ............................................................... 12

*Fischer S.A. v. United States,*
    700 F. Supp. 2d 1364 (Ct. Int'l Trade  2010) .............................................................. 12

*Grobest & I-Mei Indus. (Vietnam) Co. v. United States,*
    815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012) ................................................. 8, 12, 13, 17

*NTN Bearing Corp. v. United States,*
    74 F.3d 1204 (Fed. Cir. 1995) ............................................................................ 8, 15, 21

*Pro-Team Coil Nail Enter. v. United States,*
    419 F. Supp. 3d 1319 (Ct. Int'l Trade 2019) ............................................................... 12

*Shelter Forest Int'l Acquisition, Inc. v. United States,*
    497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021), *aff'd*, 2022 U.S. App. LEXIS 16491 (Fed.
    Cir. 2022) ........................................................................................................... passim

*Timken United States Corp. v. United States,*
    434 F.3d 1345 (Fed. Cir. 2006) ................................................................................. 9, 10

**Regulations**

19 C.F.R. § 351.102(b)(iv). ................................................................................................. 15

19 C.F.R. § 351.301(c)(4) .................................................................................................. 15

**Administrative Decisions**

*Certain Hardwood Plywood Products From the People's Republic of China: Final Scope Determination and Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders*, 88 Fed. Reg. 46,740 (July 20, 2023) ................................................................................ 3

*Hardwood Plywood from China*, Inv. Nos. 701-TA-490 and 731-TA-1204 (Final), USITC Pub. 4434 (Nov. 2013) ........................................................................................ 4

## INTRODUCTION AND SUMMARY OF ARGUMENT

Consistent with the Joint Status Report and the attendant briefing schedule, the following brief addresses only Counts 1 and 2 of Shelter Forest's Complaint that both address the Commerce Department's arbitrary decision to reject new factual information proffered by Shelter Forest and Lechenwood. Given the underlying circumstances, there was good cause for Commerce to accept the new factual information proffered by Shelter Forest and Lechenwood and therefore Commerce's refusal to consider the information was arbitrary and unlawful.

Section I addresses Count 1 of the Complaint concerning Commerce's rejection of Shelter Forest's new factual information. **Section IA** demonstrates that Commerce's refusal to accept Shelter Forest's core country-of-origin documentation, which was submitted 329 days before Commerce rendered its Final Determination, is not in accordance with law. Commerce claims that it was not required to accept new factual information that Commerce believed was not timely submitted. This assertion, however, ignores directly applicable precedent by the Court of Appeals for the Federal Circuit ("Federal Circuit") and the Court of International Trade ("Trade Court"). Both the Federal Circuit and the Trade Court have repeatedly ruled that Commerce cannot abuse its discretion in deciding whether to accept relevant new factual information that is submitted beyond some regulatory or internal deadline. Both have made clear that instead of simply affirming Commerce's determination, the court should review case-by-case whether the interests of accuracy and fairness outweigh the burden placed on the Department and the interest in finality.

**Section I.B**. demonstrates that, in this case, such weighing demonstrates that Commerce abused its discretion in refusing to accept Shelter Forest's core country-of-origin documentation. The documentation was not just some additional information, rather it proves unequivocally that Commerce's underlying assumption for rendering an affirmative circumvention determination – that Lechenwood exported inquiry merchandise – is factually wrong. Moreover, Shelter Forest proffered the documentation 329 days before Commerce's final determination.

And **Section I.C.** explains how and why Commerce's stated justification for its decision to reject Shelter Forest's new factual information cannot be sustained.

Finally, **Section II** reiterates that Shelter Forest is also challenging Commerce's refusal to accept new factual information proffered by Lechenwood; but that, in the interest of avoiding duplication, Shelter Forest is simply adopting by reference those arguments made by Lechenwood's counsel.

**PLAINTIFFS' STATEMENT PURSUANT TO RULE 56.2**

**A.    Administrative Determination Under Appeal**

Shelter Forest seeks review of the Department of Commerce's circumvention finding under the antidumping and countervailing duty orders on hardwood plywood from China with respect to merchandise exported from Vietnam. *Certain Hardwood Plywood Products From the People's Republic of China: Final Scope Determination and Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders*, 88 Fed. Reg. 46,740 (July 20, 2023) (P.R. 844).

Commerce's analysis of issues pertaining to its affirmative circumvention determination is contained in (a) Commerce's "Issues and Decision Memorandum for Circumvention and Scope Inquiries of the Antidumping Duty and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China," dated July 14, 2023 ("Final IDM") (P.R. 842).

**B.    Issues of Law Presented**

This brief presents a single issue; namely, whether it was arbitrary for Commerce to reject new factual information separately submitted by Shelter Forest and Lechenwood.

**C.    Statement of Reasons for Vacating Commerce's Determination**

Commerce's final affirmative circumvention determination should be vacated because it is not in accordance with law and is not supported by substantial evidence. The reasons are set forth below.

## STATEMENT OF FACTS

Shelter Forest's Complaint provides a detailed review of  the long but important history of the multiple trade remedy cases against imports of hardwood plywood from China, as well as the key events in the underlying Commerce circumvention proceeding. In the interest of brevity, we will not repeat that full history here.  However, Shelter Forest believes certain facts from that more detailed history are particularly important for the court's understanding of Shelter Forest's arguments.

**Important fact #1**:  The AD-CVD order at issue constituted the *second* AD-CVD case brought by the same Petitioner against imports of hardwood plywood.  The scope of the first case (which ended in 2013 following a negative ITC injury determination) included hardwood plywood with softwood veneers, such as radiata pine.  *Hardwood Plywood from China*, Inv. Nos. 701-TA-490 and 731-TA-1204 (Final), USITC Pub. 4434 (Nov. 2013).  The scope of the second case which led to the AD-CVD orders at issue, however, explicitly excluded hardwood plywood with softwood veneers (such as radiata pine).

**Important fact #2**:  The underlying circumvention proceeding at issue here represents the *third* circumvention investigation requested submitted by Petitioner concerning the same AD-CVD orders for hardwood plywood from China.  The first

circumvention case ended when Commerce concluded that the relevant legal criteria for "minor alterations" had not been satisfied and the Trade Court agreed. *See Columbia Forest Products, et al., v. United States*, 399 F. Supp. 3d 1283 (Ct. Int'l Trade 2019). And the second circumvention ended when Commerce, upon a court-ordered remand, concluded that the relevant legal criteria for "later developed merchandise had not been satisfied. *See* Final Remand Redetermination Pursuant to Court Remand, *Shelter Forest International Acquisition Inc., et al. v. United States*, Consol. Court No. 19-00212, Slip Op. 21-19 (CIT February 18, 2021).

**Important fact #3:**  Shelter Forest has a long history of purchasing imported hardwood plywood and Shelter Forest has developed its own detailed specifications for the production of the imported hardwood plywood.  And Ryan Loe, the President of Shelter Forest, had specific, personal knowledge about Lechenwood's hardwood plywood production, including the type of wood – acacia from Vietnam - that would be used for the cores of the hardwood plywood exported to the United States.

**Important fact #4**:  During the underlying circumvention proceeding, Shelter Forest submitted to Commerce documents about the country of origin of the cores that were part of the hardwood plywood that Lechenwood exported to the United States.  But Commerce refused to accept these documents country of origin of the cores.

**ARGUMENT**

I. **COMMERCE'S REFUSAL TO ACCEPT SHELTER FOREST'S CORE COUNTRY OF ORIGIN DOCUMENTATION SUBMITTED 329 DAYS BEFORE THE FINAL DETERMINATION IS NOT IN ACCORDANCE WITH LAW**

The specific facts of what happened during the underlying proceeding concerning the country of origin of the cores contained in Lechenwood's U.S. exports are critical for the Court's understanding of this argument.[1]

- On June 17, 2020 Commerce published an initiation notice for simultaneous scope and anti-circumvention inquiries to determine whether certain hardwood plywood products completed in Vietnam were circumventing the order on certain hardwood plywood products from China.

- On July 9, 2020, Commerce issued a memorandum to the file clarifying the merchandise covered by the joint scope and circumvention proceeding.  In that memorandum Commerce stated that "{t}he merchandise subject to these anticircumvention and scope inquiries <u>does not include core veneers fully produced in Vietnam</u> or a third-country that are assembled into a veneer core platform in Vietnam and combined with a face and back veneer produced in China."

- On July 29, 2022, Commerce published its preliminary determination in the *Federal Register* finding, *inter alia*, that circumvention had occurred, establishing a certification regime for certain qualifying exporters, and placing Lechenwood on the list of companies that were ineligible to participate in the certification regime due to a facts available with an adverse inference finding flowing from certain questionnaire response deficiencies.

- On August 19, 2022, Shelter Forest filed certain new factual information pertaining to its entries of inquiry merchandise exported by Lechenwood.  That factual information demonstrated unequivocally the none of the plywood produced and exported by Lechenwood to Shelter Forest fell within Commerce's scope determination or any of the production scenarios contemplated in Commerce's circumvention findings

- On October 19, 2022, Commerce issued a letter rejecting Shelter Forest's submission in its entirety.

---

[1]  For ease of reading, we have not included here a record citation for each of these facts.  However, appropriate record citations are explicitly provided for each of these facts in the discussion below.

- On October 24, 2022, Shelter Forest submitted a letter requesting that Commerce reconsider its rejection of the August 19 new factual information submission.

- On December 6, 2022, Commerce issued a letter rejecting Shelter Forest's request for reconsideration of the decision to reject its August 19 new factual information submission.

- On July 14, 2023 the Commerce rendered its final determination that effectively affirmed its preliminary affirmative circumvention determination for Lechenwood.

As noted above, in its Final Determination Commerce again refused to consider to consider Shelter Forest's additional factual information that demonstrated unequivocally that the none of the plywood produced and exported by Lechenwood to Shelter Forest fell within Commerce's scope determination or any of the production scenarios contemplated in Commerce's circumvention findings.  As we detail below, this refusal was an abuse of discretion and not in accordance with law.

## A.    Commerce Has A Clear Obligation Not To Abuse Its Discretion When Deciding Whether To Accept Shelter Forest's Documentation

Commerce's regulations did not require Commerce to refuse to accept Shelter Forest's core country-of-origin documentation.  Regardless of how one reads Commerce's own regulations, Commerce has a clear obligation not to abuse its discretion when deciding whether to accept arguably untimely proffered factual information.  Indeed, as we detail below, Commerce's effective legal conclusion that it was not required to accept Shelter Forest's documentation is contrary to well-established court precedent.

Both the Federal Circuit and the Trade Court have consistently ruled that Commerce does not have *carte blanche* authority to reject proffered factual information

just because the information that was being submitted to Commerce was beyond a regulatory or internal deadline.  Rather, the Trade Court will "review on a case-by-case basis whether the interests of accuracy and fairness outweigh the burden placed on the Department and the interest in finality."  *Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 815 F. Supp. 2d 1342, 1365 (Ct. Int'l Trade 2012) (holding that Commerce abused its discretion in rejecting the foreign exporter's untimely submitted separate rate certification) (*citing NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1206-1207 (Fed. Cir. 1995)).

In *NTN Bearing*, the Federal Circuit explicitly rejected the very legal premise that Commerce articulated in its Final Determination.  *NTN Bearing* addressed Commerce's refusal to take into account new factual information (including the correction of discovered clerical errors in the submitted U.S. sales database) because that information had been submitted after the deadline.  *NTN Bearing*, 74 F.3d at 1206-1207.  The Federal Circuit ruled that Commerce's decision to reject the new factual information simply because it had been made after the deadline constituted an impermissible abuse of discretion, noting:

> Inasmuch as Congress has not specified the procedures ITA must use to obtain information, it is within the discretion of ITA to promulgate appropriate procedural regulations.  By the same token, a regulation which is not required by statute may, in appropriate circumstances, be waived <u>and must be waived</u> where failure to do so would amount to an abuse of discretion.

*Id.* at 1207 (emphasis supplied).  Accordingly, the Federal Circuit has confirmed that Commerce has an obligation not to abuse its discretion when deciding to accept proffered

new factual information – and the deadline "must be waived" when circumstances so require.  And we note that in *NTN Bearing* the respondent submitted the new factual information just 91 days before Commerce's final determination, an amount of time that was much shorter than the 329 days in the instant case.

We recognize that the proffered new factual information at issue in *NTN Bearing* was characterized as information to correct "clerical errors."  Regardless of whether such characterization was truly accurate, the Federal Circuit subsequently clarified that Commerce's legal obligation not to abuse its discretion when deciding to accept proffered new factual information was not limited to correction of clerical errors.  *See Timken United States Corp. v. United States*, 434 F.3d 1345, 1353 (Fed. Cir. 2006).  This basic principle applies to all factual information.

In *Timken*, the Federal Circuit addressed whether this Court was wrong to remand back to Commerce to consider new factual information that the respondent had submitted (after the deadline) to define more accurately the categories of bearings imported from Germany.  The Federal Circuit concluded that this Court had correctly remanded the case (because Commerce had abused its discretion), explaining:

> On the merits, we disagree with the government.  Essentially, it contends that the Court of International Trade erred in remanding the case for further investigation solely because it had concurred with Commerce's determination that Timken's errors were not "clerical" in nature.  In making this argument, the government seems to advocate a bright-line rule regarding what kinds of errors may be corrected in the context of antidumping duty determinations.   The government does not, however, identify any statute or regulation on point. . .
>
> {W}e hold that Commerce is free to correct <u>any type of importer error--</u> <u>clerical, methodology, substantive, or one in judgment </u>-- in the context of

making an antidumping duty determination, provided that the importer
seeks correction before Commerce issues its final results and adequately
proves the need for the requested corrections.

*Id.* at 1351 – 1353 (emphasis added).  We note that in *Timken* the respondent had

submitted the new factual information just 96 days before Commerce's final

determination, a time period that is much shorter than the 329 days in the instant case.

This Court has consistently followed the Federal Circuit decisions that (a)

Commerce has a legal obligation not to abuse its discretion when analyzing whether to

take into account new factual information proffered after the deadline, and (b) courts

have an obligation to analyze, on a case-by-case basis, whether Commerce abused its

discretion and therefore whether the case should be remanded to Commerce to consider

the new information.

And indeed, in a relatively recent case also involving Shelter Forest with similar

facts, this Court held that "Commerce's reliance on {its} regulations to reject Shelter

Forest's submission, {was} unreasonable." *Shelter Forest Int'l Acquisition, Inc. v.

United States*, 497 F. Supp. 3d 1388, 1401 (Ct. Int'l Trade 2021), *aff'd*, 2022 U.S. App.

LEXIS 16491 (Fed. Cir. 2022) (nonprecedential).

In *Shelter Forest*, this Court found that Commerce's argument regarding not

having enough resources to review the submission was unreasonable as the Commerce

"had more than four months to review the approximately 100-page submission prior to its

issuance of the final determination."  *Id.* at 1401-1402.  Furthermore, this Court found

that "{a}ny burden imposed on Commerce in reviewing Shelter Forest's submission is

minimal and its decision to reject it points to an abuse of discretion, likely to lead to an inaccurate and punitive result." *Id.* at 1402.

The table below provides a number of examples of the application of this Court's controlling precedent in similar proceedings.

| Full case citation | Nature of new factual information proffered | # of days before final determination when new information proffered |
|---|---|---|
| *Shelter Forest Int'l Acquisition, Inc. v. United States*, 497 F. Supp. 3d 1388, 1401 (Ct. Int'l Trade 2021) | Composition of glue demonstrating no imports of inquiry merchandise | 149 |
| *Bosun Tools Co. v. United States*, 405 F. Supp. 3d 1359 (Ct. Int'l Trade 2019) | Second Supplemental Questionnaire Response | 210 |
| *Fine Furniture (Shanghai) Ltd. v. United States*, 865 F. Supp. 2d 1254 (Ct. Int'l Trade 2012) | Quantity and value of sales data | 110 |
| *Fischer S.A. v. United States*, 700 F. Supp. 2d 1364 (Ct. Int'l Trade  2010) | Additional pages of sales agreement already on record) | 95 |
| *Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012) | Untimely submitted separate rate certification (95 days late) | 374 |
| *Pro-Team Coil Nail Enter. v. United States*, 419 F. Supp. 3d 1319 (Ct. Int'l Trade 2019) | Q&V Schedule | Approx. 244 |
| *Celik Halat ve Tel Sanayi A.S. v. United States,* 556 F. Supp. 3d 1348 (Ct. Int'l Trade 2022) | Questionnaire Response | 123; 47 days (prior to preliminary determination) |

In sum, both the Federal Circuit and this court have consistently recognized that Commerce has a clear obligation not to abuse its discretion when deciding whether to accept relevant new factual information submitted sufficiently in advance of the final determination.

**B.      Commerce Abused Its Discretion When It Refused To Consider Shelter Forest's Core Country-of-Origin Documentation Submitted 329 Days Before The Final Determination**

As noted above, courts review on a case-by-case basis whether Commerce has abused its discretion when analyzing whether to take into account new factual information proffered after the deadline.  In practice, the Trade Court has looked at the following three questions:  (1) was the proffered additional information important for Commerce to render an accurate and correct determination;  (2) whether Commerce had sufficient time to review and consider the new factual information,  and (3) whether the party was diligent in its efforts to correct or amend missing information in maintaining an accurate dumping margin.  *See, e.g.*, *Grobest & I-Mei Indus.*, 815 F. Supp. 2d at 1367; *Shelter Forest*, 497 F. Supp. 3d at 1401-1402.

Regarding the *first factor*, the additional supporting documentation proffered by Shelter Forest was undeniably important for Commerce to render an accurate and correct determination.  The additional supporting documentation demonstrated unequivocally that a key factual assumption that Commerce had effectively made in its preliminary determination for Lechenwood – that Lechenwood had U.S. exports of hardwood plywood containing Chinese cores – was wrong.

On August 18, 2022 Shelter Forest submitted certain factual information in response to the Department's preliminary determination. *See* Shelter Forest Rejected NFI Submission (C.R. 259, P.R. 475). That submission included certain information relevant to the Department's conclusion to exclude Shelter Forest's supplier Lechenwood from the certification regime. Prelim. IDM at 26 (P.R. 409). Shelter Forest's submission contained a declaration from Ryan Loe of Shelter Forest containing information related to due diligence that Shelter Forest had performed regarding its suppliers in Vietnam, the species of cores that are available from trees sourced in that country (i.e. acacia), evidence demonstrating that Lechenwood supplied plywood with acacia cores, and evidence demonstrating that ALL of Shelter Forest's entries of plywood during the examination period were made using inputs grown in Vietnam. *See* Shelter Forest Rejected NFI Submission (C.R. 259, P.R. 475).

Specifically, Shelter Forest provided import entry packages for every single import entry made from Vietnam by Shelter Forest since 2019. Those packages included the commercial invoice, packing list, Certified Plant and Plant Product Declaration Form, bill of lading, and Customs Form 7501. These documents demonstrated certain key facts. Primarily, that 100 percent of the Shelter Forest import entries from Vietnam consisted of core veneers from wood harvested in Vietnam. These entry summaries included certain entries that were exported by Lechenwood. *Id.* (C.R. 259, P.R. 475). As a result, Commerce received factual information that affirmatively disproved its effective circumvention conclusions about Lechenwood.

- 14 -

Regarding the *second factor*, the courts typically look to whether Commerce has sufficient time to review and consider the new factual information. *Shelter Forest*, 497 F. Supp. 3d at 1401. Commerce had ample time after Shelter Forest's mid-August 2022 submission to consider the highly relevant additional factual information before the Final Determination. To be exact, Commerce had 329 days. The courts have made clear that when Commerce has ample time to consider new factual information, it is required to do so and this case is no different. *NTN Bearing*, 74 F.3d at 1207-1208. The discussion above detailing past court decisions cites six instances in which much less time – 95, 110, 123, 149, 210 and 244 days – was deemed sufficient time for Commerce to accept and use the information. In this case, 329 days to consider very narrow and specific piece of factual information – documentation that the imported merchandise did not contain cores produced in China -– was more than enough time.[2]

With respect to the *third factor*, Shelter Forest was diligent in providing additional information as soon as Shelter Forest understood that Commerce did not believe it had sufficient support demonstrating that Lechenwood, in fact, had not exported hardwood plywood from Vietnam containing Chinese cores.

In short, Shelter Forest's submission of additional supporting documentation demonstrating the country of origin of the cores contained in Lechenwood's hardwood

---

[2] Moreover, Commerce's rejection of Shelter Forest's proffered new factual information also was contrary to Commerce's own regulations governing the submission of new factual information. 19 C.F.R. § 351.301(c)(4) clearly provides that when Commerce places information on the record an interested party is permitted one opportunity to submit factual information in response. And there can be no question that Commerce's preliminary determination consisted of "evidence, including statements of fact, documents and data placed on the record by the Department." *See* 19 C.F.R. § 351.102(b)(iv).

plywood exports to the United States should not have been rejected by Commerce.  To do so was an abuse of discretion by Commerce.

**C.    Commerce's Purported Justification for  Abused Its Discretion When It Refused To Consider Shelter Forest's Core Country-of-Origin Documentation Submitted 329 Days Before The Final Determination**

Commerce's stated reasons for the rejection were that Shelter Forest had ample opportunity to participate as an interested party and that Commerce had notified Lechenwood, the party at issue, of the relevant deficiencies in tis questionnaire. Rejection Memo (P.R. 615).  Commerce also rejected Shelter Forest's request for reconsideration stating that Commerce "complied with its statutory obligations to provide notice of deficiencies, issuing deficiency questionnaires to many companies, including Shelter Forest's Vietnamese supplier's questionnaire responses."  Rejection of Reconsideration (P.R. 672).

Shelter Forest contested those conclusions in its administrative case brief but Commerce continued to find that good cause did not exist to consider Shelter Forest's factual information.  Commerce cited its institutional interest in finality and the broader proposition that Shelter Forest's efforts were likely to be fruitless.  Final IDM at 58 (P.R. 842).  Specifically, Commerce stated that it "has no reason to believe that {Lechenwood} would be able to accurately certify its merchandise—regardless of what one of the respondent's U.S. importers claims regarding its own purchases."  *Id.* at 57 (P.R. 842). Going further, Commerce found that the proffered information "from one importer of a respondent would not be illuminating for this final determination." *Id.* (P.R. 842).

Commerce's purported justification for rejecting Shelter Forest's proffered factual information can easily be dismissed.

As noted above, this Court has found that Commerce abuses its discretion when the "circumstances {} suggest that 'the interests in fairness and accuracy outweigh {any} burden {placed} upon Commerce.'" *Shelter Forest*, 497 F. Supp. 3d at 1402 (*quoting Grobest*, 815 F. Supp. 2d at 1365-67). But here, Commerce's analysis of this balancing test demonstrates that it has entirely weighed the burden and pre-judged that Shelter Forest could not contribute to the accuracy of the determination. Commerce's decision memorandum reveals that Commerce had effectively already concluded that an importer in Shelter Forest's situation could not possibly add to the decision. Final IDM at 57 (P.R. 842). That approach is inconsistent with the jurisprudence of the Trade Court. *Grobest* instructs that Commerce's analysis of these types of issues must be made on a "case-by-case basis." *Grobest*, 815 F. Supp. 2d at 1365. That charge obligates Commerce to actually analyze whether good cause exists to accept the information in the specific case before it.

In this case, Commerce's implicit conclusion was wrong and a review of the material submitted by Shelter Forest would have revealed the import of the information. In *Shelter Forest*, the Trade Court found, *inter alia*, that the import of the evidence submitted out of time weighted in favor of a finding of good cause. *Shelter Forest*, 497 F. Supp. 3d at 1402 ("Shelter Forest is purportedly providing evidence that the glue used in certain products sold prior to December 2016 is more than 98% urea formaldehyde {} which if true would result in inquiry merchandise not being later-developed."). In the

instant case Shelter Forest provided evidence that addressed directly one of the key findings in the proceedings—whether Lechenwood exported inquiry merchandise to the United States.

More specifically, a central basis for Commerce's application of facts available with an adverse inference to Lechenwood and its subsequent exclusion from the certification regime was missing information regarding the origin of the inputs used in Lechenwood's production process.  AFA Memorandum at 16-17 (P.R. 410).  Shelter Forest's factual information submission contained information directly relevant to that query.  If Commerce had analyzed the data provided by Shelter Forest it would have learned that the documentation demonstrating the origin of Lechenwood's core material was the exact same type of documentation that was present in the entry summaries of many Shelter Forest suppliers that were granted the ability to participate in the circumvention certification regime.  Also, the evidence would have demonstrated that Shelter Forest had actual knowledge of Lechenwood's production activities that were not limited only to Shelter Forest's import entries but encompassed Lechenwood's entire production process for all exports to the United States.  This is precisely the kind of factual information that Commerce concluded that Shelter Forest could never provide.

Commerce cites the Federal Circuit's holding in *Essar Steel* for the proposition that it can "refuse the submission of untimely factual information as a post-hoc effort to reverse the consequences of withholding information."  Final IDM at 58 (*citing Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1276 (Fed. Cir. 2012) (P.R. 482).  Shelter Forest is not contesting that Commerce has that authority but that authority is not

unlimited.  Commerce must actually analyze whether accepting information is warranted under the good cause standard.  And, importantly, as detailed extensively above, both the Federal Circuit and this Court have ruled that Commerce cannot abuse its discretion when undertaking this examination.

It is clear from Commerce's approach to Shelter Forest's information that there was no real analysis of whether the increase in accuracy might outweigh the burden.  The blanket refusal to perform that type of weighing analysis is exactly the type of conduct that the Court has rejected in the past.  That analysis is a central part of determining whether good cause exists to accept submissions out-of-time.  Because Commerce did not do that analysis its decision to exclude Shelter Forest's submission was an abuse of discretion.

## II.    COMMERCE'S REFUSAL TO ACCEPT LECHENWOOD'S NEW FACTUAL INFORMATION IS NOT IN ACCORDANCE WITH LAW

In the above sections we demonstrate how Commerce's refusal to accept Shelter Forest's core country of origin documentation, submitted 329 days before the final determination, is not in accordance with law.  Such argument addresses Count 1 of Shelter Forest's Complaint.

Count 2 of the Complaint claims that, likewise, Commerce's refusal to accept Lechenwood's submission of new factual information is also not in accordance with law. However, in the interest of avoiding duplication of argument, Shelter Forest incorporate and adopts by reference the arguments on this issue made by Lechenwood.

**CONCLUSION**

Fundamentally, Commerce is under an obligation to strive for accuracy.  *NTN Bearing*, 74 F.3d at 1208 ("preliminary determinations are 'preliminary' precisely because they are subject to change).  This proceeding was unusual and resulted in many experienced parties that invest significant resources in complying with U.S. trade laws being subjected to the specter of extremely high Customs bills.  Commerce has the discretion in such situations to accept factual information to improve the accuracy of its results.  Here, it abused that discretion and rendered a flawed determination.

For the foregoing reasons, Shelter Forest requests that the Court remand the final determination with instructions to reopen the record, accept and consider Shelter Forest's factual information submission, and render a remand redetermination consistent with the expanded record.

Respectfully submitted,

/s/ Daniel L. Porter

Daniel L. Porter
James C. Beaty
Katherine R. Afzal


*Counsel for Shelter Forest International Acquisition Inc.*

Dated: March 4, 2024

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2010 using a proportionally spaced typeface 13 point Times New Roman font.

In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth in the Chambers Procedures.  Specifically, excluding those exempted portions of the brief as set forth in 2B(1) of the Chambers Procedures, I hereby certify that this brief contains 4,528.  In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

<u>/s/ Daniel L. Porter</u>

Daniel L. Porter

Curtis, Mallet-Prevost, Colt & Mosle LLP
1717 Pennsylvania Avenue, NW
Washington, D.C., 20006

*Counsel for Shelter Forest International Acquisition Inc.*

Dated: March 4, 2024