# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| SHELTER FOREST INTERNATIONAL ACQUISITION, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| GREATRIVER WOOD CO., LTD (a.k.a. CONG TY TNHH GREATRIVER WOOD and GREATRIVER WOOD COMPANY LIMITED, ET. AL. | ) ) ) ) |
|  | ) |
| Consolidated Plaintiffs, | ) |
| v. | ) ) |
| UNITED STATES, | ) |
|  | ) |
| Defendant, | ) |
|  | ) |
| COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD, | ) ) ) |
|  | ) |
| Defendant-Intervenor. | ) ) ) |

Before: Hon. Mark A. Barnett, Chief Judge

Court No. 23-00144

## GREATRIVER WOOD CO., LTD's RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, Greatriver Wood Co., Ltd., a.k.a. Cong Ty TNHH Greatriver Wood or Greatriver Wood Company Limited ("Greatriver"), respectfully moves this Court for an order granting judgment on the agency record against Defendant, the United States. Greatriver is entitled to judgment in its favor, as explained in the accompanying memorandum of law.

WHEREFORE, Greatriver respectfully moves this Court to enter an order granting its motion for judgment on the agency record, setting aside as unlawful the final determination of

the U.S. Department of Commerce challenged herein, and remanding the final determination for

reconsideration in accordance with the Court's decision.

Respectfully submitted,

/s/ Jeffrey S. Neeley
Jeffrey S. Neeley, Esq.
Stephen Brophy, Esq.
Jamie Shookman, Esq.
HUSCH BLACKWELL, LLP
1801 Pennsylvania Avenue
NW Suite 1000
Washington, DC 20006
(202) 378-2334
jeffrey.neeley@huschblackwell.com

*Counsel for Greatriver Wood Co., Ltd.*

Dated: March 4, 2024

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| SHELTER FOREST INTERNATIONAL ACQUISITION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| GREATRIVER WOOD CO., LTD (a.k.a. CONG TY TNHH GREATRIVER WOOD and GREATRIVER WOOD COMPANY LIMITED, ET. AL. | ) | Before: Hon. Mark A. Barnett, Chief Judge |
| | ) | |
| Consolidated Plaintiffs, | ) | Court No. 23-00144 |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

## GREATRIVER WOOD CO., LTD's MEMORANDUM IN SUPPORT OF RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Jeffrey S. Neeley, Esq.
Stephen Brophy, Esq.
Jamie Shookman, Esq.

HUSCH BLACKWELL, LLP
1801 Pennsylvania Avenue
NW Suite 1000
NW Washington, DC 20006
Tel. (202) 378-2357

*Counsel for Greatriver Wood Co., Ltd.*

Dated: March 4, 2024

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ iii

I.     INTRODUCTION .................................................................................... 1

II.    RULE 56.2 STATEMENT ...................................................................... 1

     A.    Administrative Decision Under Review ................................................1

     B.    Issues Presented ....................................................................................1

III.    SUMMARY OF THE ARGUMENT .............................................................. 2

IV.    STATEMENT OF FACTS ............................................................................ 3

     A.    Commerce Initiates a Joint Scope and Circumvention Investigation .....................3

     B.    Greatriver Timely Responds to All of Commerce's Quantity and Value Questionnaires, Which Were the Only Questionnaires Issued by Commerce ...........................................................................................5

     C.    Commerce Preliminarily Reaches an Affirmative Determination of Circumvention Based on a Sparse Record and Applies Adverse Facts Available to Greatriver ..........................................................................7

     D.    Commerce Ignored or Rejected Greatriver's and Other Parties' Attempts to Submit Additional Factual Information to Respond to the Alleged Facts Relied Upon in the Preliminary Determination or the Application of AFA...........9

     E.    Commerce Maintains its Adverse Facts Available Finding Against Greatriver, Despite Providing No Opportunity to Rebut That Finding ................11

V.    STANDARD OF REVIEW ............................................................................ 13

VI.    ARGUMENT .................................................................................................. 15

     A.    Greatriver Joins In, and Incorporates by Reference, the Tranche 1 Arguments of Other Plaintiffs and Consolidated Plaintiffs. ...................................17

     B.    Commerce's Circumvention Determination was Not Supported by Substantial Evidence and Was Otherwise Not in Accordance with Law Because Its Investigation was Procedurally Flawed ...............................................17

C.     Commerce Unreasonably Rejected Requests to Reopen the Record and Unreasonably Rejected Information Submitted by Respondents. .........................21

VII.    CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Tech Specialty Steel Corp. v. United States,*
    28 C.I.T. 1468 (2004) ............................................................................ 14

*Beijing Tianhai Indus. Co. v. United States,*
    52 F. Supp. 3d. 1351 (Ct. Int'l Trade 2015) ........................................ 14

*Burlington Truck Lines, Inc. v. United States,*
    371 U.S. 156 (1962) .............................................................................. 13

*Camp v. Pitts,*
    411 U.S. 138 (1973) .............................................................................. 14

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
    467 U.S. 837 (1984) ........................................................................ 14, 15

*Chinsung Indus. Co. v. United States,*
    13 C.I.T. 103, 705 F. Supp. 598 (1989) ............................................... 20

*Consol. Edison Co. v. NLRB,*
    305 U.S. 197 (1938) .............................................................................. 13

*Far E. Am., Inc. v. United States,*
    654 F. Supp. 3d 1308 (Ct. Int'l Trade 2023) ....................................... 19

*Grobest & I-Mei Indus. (Vietnam) Co., Ltd. v. United States,*
    815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012) .................................. 22, 23

*Helmerich & Payne v. United States,*
    24 F. Supp. 2d 304 (Ct. Int'l Trade 1998) ........................................... 22

*Huaiyin Foreign Trade Corp. v. United States,*
    322 F.3d 1369 (Fed. Cir. 2003) ........................................................... 13

*In re Murchison,*
    349 U.S. 133 (1955) .............................................................................. 14

*Linyi Chengen Imp. & Exp. Co. v. United States,*
    433 F. Supp. 3d 1278 (Ct. Int'l Trade 2020) ....................................... 23

*Melamine Chemicals, Inc. v. United States,*
    561 F. Supp. 458 (Ct. Int'l Trade 1983) ......................................... 13, 22

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ................................................................................ 14

*NMB Singapore Ltd. v. United States*,
  557 F.3d 1316 (Fed. Cir. 2009) ........................................................... 14

*NSK Ltd. v. United States*,
  910 F. Supp. 663 (Ct. Int'l Trade 1995) ............................................. 19

*NTN Bearing Corp. of Am. v. United States*,
  826 F. Supp. 1435 (Ct. Int'l Trade 1993) ........................................... 20

*Peer Bearing Co.-Changshan v. United States*,
  986 F. Supp. 2d 1389 ............................................................................. 16

*Queen's Flowers de Colombia v. United States*,
  21 C.I.T. 968, 981 F. Supp. 617 (Ct. Int'l Trade 1997) ..................... 20

*Rhone Poulenc, Inc. v. United States*,
  899 F.2d 1185 (Fed. Cir. 1990) ........................................................... 14

*Sahaviriya Steel Indus. Pub. Co.* v. *United States*,
  649 F.3d 1371 (Fed. Cir. 2011) ........................................................... 15

*Shelter Forest Int'l Acquisition, Inc. v. United States*,
  497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021), *aff'd*, 2022 U.S. App. LEXIS 16491 (Fed. Cir.
  2022) ........................................................................................................... 23

*Ta Chen Stainless Steel Pipe v. United States*,
  23 C.I.T. 804 (1999) ....................................................................... 19, 20

*Timken Co.* v. *United States*,
  354 F.3d 1334 (Fed. Cir. 2004) ........................................................... 14

*Timken U.S. Corp. v. United States*,
  421 F.3d 1350 (Fed.Cir.2005) ............................................................. 14

*Torrington Co. v. United States*,
  25 C.I.T. 395 (2001) ............................................................................. 25

*USX Corp. v. United States*,
  655 F. Supp. 487 (Ct. Int'l Trade 1987) ............................................. 13

*Vietnam Finewood Co. v. United States*,
  633 F. Supp. 3d 1243 (Ct. Int'l Trade 2023) ..................................... 18

*Wash. Int'l Ins. Co. v. United States*,
  33 C.I.T. 1023 (2009) ........................................................................... 20

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i).................................................................. 13

19 U.S.C. § 1677 ........................................................................................................ 25

19 U.S.C. § 1677f(i)(3)(A) ........................................................................................ 14

19 U.S.C. § 1677j(a)(D) ............................................................................................ 18

19 U.S.C. § 1677j(b)(1)(A)-(E) ................................................................................ 15

19 U.S.C. § 1677j(b)(1)(B) ....................................................................................... 18

19 U.S.C. § 1677j(b)(2) ...................................................................................... 16, 18

19 U.S.C. § 1677j(b)(3) ............................................................................................ 16

19 U.S.C. § 1677j(f) .................................................................................................. 17

19 U.S.C. § 1677m(d) ...................................................................................... 10, 21, 22

## Regulations

19 C.F.R. § 351.301(c)(1) ......................................................................................... 25

19 C.F.R. § 351.301(c)(1)(v) .................................................................................... 24

*Certain Corrosion-Resistant Steel Products From the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders,*
83 Fed. Reg. 23,895 (May 23, 2018) .................................................................. 20, 21

*Certain Hardwood Plywood Products from the People's Republic of China, Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order,*
83 Fed. Reg. 504 (Jan. 4, 2018) ............................................................................... 4

*Certain Hardwood Plywood Products from the People's Republic of China,* Countervailing Duty Order,
83 Fed. Reg. 513 (Jan. 4, 2018) ............................................................................... 4

*Certain Hardwood Plywood Products from the People's Republic of China: Initiation of Anti-Circumvention Inquiries and Scope Inquiries on the Antidumping Duty and Countervailing Duty Orders; Vietnam Assembly,*
85 Fed. Reg. 36,530. n.12 (June 17, 2020) ..................................................... 4, 5, 20

*Certain Hardwood Plywood Products from the People's Republic of China: Preliminary Scope Determination and Affirmative Preliminary Determination of Circumvention of the Antidumping and Countervailing Duty Orders,*
87 Fed. Reg. 45,753 (July 29, 2022) ........................................................... 7, 8, 9, 11

*Certain Hardwood Plywood Products From the People's Republic of China: Final Scope Determination and Affirmative Final Determination of Circumvention of the Antidumping and*

*Countervailing Du*ty Orders,
88 Fed. Reg. 46,740 (July 20, 2023)............................................................. 1, 12, 13, 17, 24, 25

## I.    INTRODUCTION

On behalf of Greatriver Wood Co., Ltd., a.k.a. Cong Ty TNHH Greatriver Wood or Greatriver Wood ("Greatriver"), we respectfully submit the following brief in support of Greatriver's Rule 56.2 Motion for Judgment on the Agency Record.  Greatriver hereby joins in and incorporates by reference the arguments made by DH Consolidated Plaintiffs in their Motion for Judgement on Agency Record and Memorandum in Support filed on February 1, 2024.  ECF No. 31.  Greatriver offers the arguments below to supplement that submission.

## II.    RULE 56.2 STATEMENT

### A.    Administrative Decision Under Review

The administrative determination sought to be reviewed in this case is the U.S. Department of Commerce's ("Commerce") final scope and circumvention determination concerning the antidumping and countervailing duty orders on hardwood plywood from the People's Republic of China.  *See Certain Hardwood Plywood Products From the People's Republic of China*: *Final Scope Determination and Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders*, 88 Fed. Reg. 46,740 (July 20, 2023) ("Final Determination"), **PR 844**.  The Final Determination incorporated Commerce's Final Issues & Decision Memorandum ("Final IDM"), **PR 842**.[1]

### B.    Issues Presented

1. Issue One: Whether Commerce's circumvention inquiry was procedurally flawed and therefore arbitrary and capricious.

---

[1] "PR" refers to public records on Commerce's public index to the administrative record.  *See* ECF No. 21-1.  "CR" refers to confidential records on Commerce's confidential index to the administrative record.  *See* ECF No. 21-2.

2. Issue Two: Whether Commerce's determination that production of hardwood plywood is merely an assembly or completion process that is minor or insignificant is supported by substantial evidence.

3. Issue Three: Whether Commerce unreasonably and contrary to law refused to reopen the record and rejected respondents' documentation showing that plywood production in Vietnam was not circumventing the orders.

## III.   SUMMARY OF THE ARGUMENT

The decision challenged in this case followed an unusually prolonged, cursory, and procedurally flawed investigation by Commerce.  Over the course of two years, Commerce purported to investigate the statutory factors of circumvention, but in this time, issued a mere six pages of questions, selected no mandatory respondents, or even attempted to collect the information required by statute to support an affirmative determination of circumvention. Moreover, at no time during these two years did Commerce give Greatriver or any other respondents notice that it had allegedly identified discrepancies in any of their submissions.

After two years of investigation, without any warning, Commerce issued a shocking determination preliminarily finding adverse facts available against Gratriver and the other respondents based on alleged discrepancies, inconsistencies or misleading information in their questionnaire, or supplemental questionnaire responses.  Commerce relied on this finding to preliminary determine that respondents were engaged in all five of the production scenarios under investigation, and it used only secondary information to analyze the statutory factors of circumvention.  As a result of this finding, Commerce also precluded these respondents from participating in the certification regime that would have allowed Greatriver to show that it wasn't producing any investigated merchandise.  Commerce thereby shut Greatriver out of the United

States market, despite there being no record evidence that it produced any one of the investigated production scenarios, let alone all five.

Even more remarkable was Commerce's repeated refusal to allow Greatriver any opportunity thereafter to address the facts underlying its finding of adverse facts available, or to provide new factual information demonstrating that the company was not producing investigated merchandise. Instead, Commerce shifted the blame, arguing that *respondents* could have submitted the relevant information unsolicited, even though Commerce has the obligation to ask questions to gather the information that it needs. Commerce's final affirmative determination of circumvention maintained its adverse facts available finding against Greatriver and the other respondents, despite providing them no opportunity to rebut that finding.

In short, Commerce's circumvention inquiry was arbitrary and capricious, as it unreasonably and contrary to law refused to reopen the record and rejected respondents' documentation showing that its plywood production in Vietnam was not circumventing the relevant orders. In addition, as a result of these procedural flaws, Commerce's determination that production of hardwood plywood is merely an assembly or completion process that is minor or insignificant is unsupported by substantial evidence.

## IV.    STATEMENT OF FACTS

### A.    Commerce Initiates a Joint Scope and Circumvention Investigation

The investigation at issue arose in response to allegations of circumvention filed by the Coalition for Fair Trade in Hardwood Plywood ("Petitioner" or "Coalition"). Ltr. from Wiley on behalf of the Coalition re: *Request for Scope Ruling/ Anti-Circumvention Ruling* (Feb. 25, 2020), **PR19; CR5**. The allegation concerned products allegedly circumventing the antidumping and countervailing duty orders on hardwood plywood from China. *See Certain Hardwood Plywood Products from the People's Republic of China*, *Amended Final Determination of Sales at Less*

3

*Than Fair Value and Antidumping Duty Order*, 83 Fed. Reg. 504 (Jan. 4, 2018); *Certain*

*Hardwood Plywood Products from the People's Republic of China*, Countervailing Duty Order,

83 Fed. Reg. 513 (Jan. 4, 2018) (collectively, the "Orders").

On June 17, 2020, Commerce published an initiation notice for simultaneous scope and

anticircumvention inquiries, covering "products produced under various production scenarios

alleged by petitioner", which were defined as hardwood plywood completed in Vietnam using:

i. Face veneer, back veneer, and assembled core components manufactured in China (e.g.,
   veneer core platforms) manufactured in China and assembled in Vietnam;

ii. Fully assembled veneer core platforms manufactured in China that are combined in
    Vietnam with face and/or back veneers produced in Vietnam or third countries;

iii. Multi-ply panels of glued core veneers manufactured in China that are combined in
     Vietnam to produce veneer core platforms and combined with either a face and/or back
     veneer produced in China, Vietnam, or a third country;

iv. Face veneer, back veneer, and individual core veneers produced in China and assembled
    into hardwood plywood in Vietnam;

v. Individual core veneers manufactured in China and processed into a veneer core platform
   in Vietnam and combined with a face and/or back veneer produced in Vietnam or other
   third country.

*Certain Hardwood Plywood Products from the People's Republic of China: Initiation of Anti-*

*Circumvention Inquiries and Scope Inquiries on the Antidumping Duty and Countervailing Duty*

*Orders; Vietnam Assembly*, 85 Fed. Reg. 36,530, 35,531. n.12 (June 17, 2020), **PR 4**.

On July 9, 2020, Commerce clarified the "various production scenarios" that were under

investigation.  Importantly, Commerce also clarified what the investigation did <u>not</u> include,

stating that "{t}he merchandise subject to these anticircumvention and scope inquiries *does not include core veneers fully produced in Vietnam* or a third-country that are assembled into a veneer core platform in Vietnam and combined with a face and back veneer produced in China." Memorandum, *Clarification of Merchandise Subject to Anti-Circumvention and Scope Inquiries* (July 9, 2020) (emphasis added) ("Clarification Memorandum"), **PR 21.** Thus, none of the production scenarios under investigation involved the production or assembly of hardwood plywood in Vietnam utilizing a core produced in Vietnam. *Id.*

### B. Greatriver Timely Responds to All of Commerce's Quantity and Value Questionnaires, Which Were the Only Questionnaires Issued by Commerce

Commerce conducted its investigation over a period of three years. During this time, Greatriver provided timely and complete responses to all of Commerce's Quantity and Value Questionnaires and supplemental Quantity and Value Questionnaires. Also, during this time, Commerce never issued follow-up questions addressing any perceived discrepancies or inconsistencies in any of Greatriver's responses. Never during this lengthy delay was there any explanation by Commerce as to what was occurring behind the scenes to cause such an unusual delay or lack or investigation.

Specifically, starting on July 17, 2020, Commerce released certain data maintained by U.S. Customs and Border Protection ("CBP") detailing entries of plywood from Vietnam between December 8, 2016, and March 31, 2020, and inviting parties to comment. Memorandum*, Release of U.S. Customs and Border Protection Data and Publicly Identifiable Companies* (July 17, 2020), **PR 26**. Then on September 10, 2020, Commerce issued quantity and value questionnaires to all interested parties. Letter to Interested Parties*, Anti-Circumvention Inquiry of the Antidumping Duty Order on Certain Hardwood Plywood Products from the People's Republic of China: Quantity and Value Questionnaire for Vietnamese Producers and*

*Exporters of Certain Hardwood Plywood Products* (Sept. 10, 2020), **PR 62**. On October 1, 2020, Greatriver timely filed a response to Commerce's questionnaire. Letter to Commerce, *Certain Hardwood Plywood Products from the People's from Republic of China: Quantity and Value Response* (Oct. 1, 2020), **PR 94**; **CR 45-46**.

On February 22, 2021, Commerce issued a supplemental Quantity and Value Questionnaire to all participating Vietnamese exporters. Letter to Interested Parties, *Anti-Circumvention Inquiry of the Antidumping Duty Order on Certain Hardwood Plywood Products from the People's Republic of China: Quantity and Value Supplemental Questionnaire for Vietnamese Producers and Exporters of Certain Hardwood Plywood Products* (Feb. 22, 2021), **PR 154**. On March 22, 2021, Greatriver timely filed a response to Commerce's supplemental questionnaire. Letter to Commerce, *Hardwood Plywood Products from the People's Republic of China: Supplemental Quantity and Value Questionnaire Response*, **PR 207**; **CR 184**.

On June 15, 2021, Commerce issued a second supplemental quantity and value questionnaire to all participating Vietnamese exporters. Letter to Interested Parties, *Anti-Circumvention Inquiry of the Antidumping and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China: Quantity and Value Second Supplemental Questionnaire for Vietnamese Producers and Exporters of Certain Hardwood Plywood Products* (June 15, 2021), **PR 257**. On July 9, 2021, Greatriver timely filed a response to Commerce's second supplemental questionnaire. Letter to Commerce, *Certain Hardwood Plywood Products from the People's from Republic of China: Submission of Second Supplemental Quantity and Value Response* (July 9, 2021), **PR 310**; **CR 280-282**.

Those were the only questionnaires issued by Commerce to Greatriver or any other party. Commerce issued cooperative respondents approximately six pages of questions through a

Quantity and Value Questionnaire and two supplemental Quantity and Value Questionnaires. Commerce never addressed questions regarding the substance of the case or selected mandatory respondents, or in a manner attempted to collect the information required by the statute in order to support an affirmative determination of circumvention. To say that this approach is highly irregular is an understatement.

### C. Commerce Preliminarily Reaches an Affirmative Determination of Circumvention Based on a Sparse Record and Applies Adverse Facts Available to Greatriver

On July 29, 2022, over two years after the inquiry was initiated, Commerce published its preliminary determination. *See Certain Hardwood Plywood Products from the People's Republic of China: Preliminary Scope Determination and Affirmative Preliminary Determination of Circumvention of the Antidumping and Countervailing Duty Orders*, 87 Fed. Reg. 45,753 (July 29, 2022) ("Preliminary Determination"), **PR 415**, and accompanying Issues and Decision Memorandum (July 25, 2022), **PR 409**; *see also* Memorandum*, Application of Adverse Facts Available for the Preliminary Determination* (July 25, 2022) ("AFA Memorandum"), **PR 410**.

Commerce preliminarily determined that three of the five production scenarios under investigated fell within the scope of the Orders. Preliminary Determination, 87 Fed. Reg. at 45754, **PR 415**. Commerce also preliminarily determined that the remaining two production scenarios under investigation were circumventing the Orders. *Id.* Importantly, and consistent with Commerce's Clarification Memorandum, none of the five production scenarios described in the Preliminary Determination included hardwood products with core veneers fully produced in Vietnam. *Id.* In reaching an affirmative determination, Commerce relied entirely on adverse facts available to determine that respondents were engaged in the alleged production scenarios and used secondary information to analyze the statutory elements.

In addition to its preliminary finding of circumvention, Commerce primarily determined, *inter alia*, that Greatriver had failed to cooperate to the best of its ability in the preceding investigation. Preliminary Determination, 87 Fed. Reg. at 45754, **PR 415**. Despite responding to every questionnaire, Commerce determined that Greatriver was among a group of 22 companies that allegedly "provided information that either contained significant discrepancies and inconsistencies or was misleading." *Id.* As a result, based on adverse facts available, Commerce preliminarily determined that these companies "produce hardwood plywood under all five of the production scenarios subject to these inquiries." *Id.* At no point prior to issuing the Preliminary Determination, however, had Commerce informed any of these companies of the alleged discrepancies, inconsistencies or misleading information in their questionnaire or supplemental questionnaire responses. As a result, none of the companies, including Greatriver, had an opportunity to address these concerns prior to the Preliminary Determination. With respect to Greatriver, Commerce indicated that its questionnaire responses allegedly (1) failed to report one supplier of Chinese inputs, (2) allegedly reported the wood species it used inconsistently, and allegedly answered one question incorrectly. Final IDM at 89-91, **PR 842**.

The consequence of Commerce's preliminary determination was dire for Greatriver. The Preliminary Determination established a certification regime for certain qualifying exporters to certify that their hardwood plywood was not produced using any of the production scenarios under investigation. Preliminary Determination, 87 Fed. Reg. at 45757-45758, **PR 415**. However, because of its facts available with an adverse inference finding, Commerce placed Greatriver on a list of companies that was ineligible to participate in that regime. Preliminary Determination, 87 Fed. Reg. at 45754, **PR 415**. Excluding Greatriver from the certification regime effectively shut it of the U.S. market for hardwood plywood.

**D.** **Commerce Ignored or Rejected Greatriver's and Other Parties' Attempts to Submit Additional Factual Information to Respond to the Alleged Facts Relied Upon in the Preliminary Determination or the Application of AFA**

Not only was Greatriver given no opportunity to address Commerce's concerns that led to the preliminary finding of adverse facts available, but in addition, neither Greatriver, nor any other respondents, had a subsequent opportunity to respond to the alleged facts supporting Commerce's preliminary finding of adverse facts available, or to place any additional factual information on the record regarding Commerce's preliminary finding that Greatriver produced hardwood plywood under all five of the production scenarios.

First, Commerce ignored Greatriver's request to reopen the record. On August 4, 2022, Greatriver filed comments on Commerce's preliminary determination. Letter to Commerce, *Anti-Circumvention Inquiry of Certain Hardwood Plywood Products from the People's Republic of China: Comments Regarding Preliminary Determination and Request to Submit New Factual Information* (August 4, 2022) ("Response to Preliminary Determination"), **PR 430**. Greatriver explained that it was alarmed by Commerce's application of total adverse facts available, as it had "responded to all of the Department's questionnaires and reasonably believed that it had fully cooperated with all of the Department's requests for information." *Id.*

Greatriver also noted that Commerce's application of total adverse facts available was based on "alleged inconsistences in the various responses of Greatriver and alleged inconsistencies with information submitted by the Government of Vietnam," but that Commerce had made no attempt to resolve these inconsistencies during the year since receiving the allegedly conflicting data from the Government of Vietnam. Response to Preliminary Determination, **PR 430**. Because Commerce "did not notify the parties that it had identified apparent discrepancies until the preliminary determination," it had failed to "provide the parties with the opportunity to explain or rebut the alleged discrepancies." *Id.*

As a result, Greatriver requested that Commerce issue a supplemental questionnaire to give Greatriver a chance to rebut or clarify the record pursuant to 19 U.S.C. § 1677m(d), or to set a deadline for Greatriver and similarly situated companies to submit new factual information.  *Id.* Commerce never responded to this request and never reopened the record or issued any additional supplemental questionnaires.

Second, Commerce rejected information that Greatriver prepared to submit at verification, after being selected to participate in the verification process.  Letter to Interested Parties*: Verification Preparedness Questionnaire* (September 27, 2022), **PR 572**.  Greatriver had indicated its willingness to cooperate in the verification process by timely responding to the verification preparedness questionnaire on October 4, 2022.  Letter to Commerce, *Verification Preparedness Questionnaire Response* (October 4, 2022), **PR 587**.

On October 13, 2022, Commerce then informed Greatriver that it would be verified on October 19, 2022.  Memorandum: *Circumvention Inquiry on the Antidumping and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China: Revised Verification Schedule* (October 13, 2022), **PR 609**.  In response, Greatriver prepared for verification and counsel traveled to Vietnam.

On October 18, 2022, the day before the scheduled verification, Commerce announced that it was cancelling the verification because Greatriver's inclusion on the list of companies to be verified was a mistake.  Memorandum: *Circumvention Inquiry on the Antidumping and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China: Verification Schedule Update* (October 18, 2022), **PR 611**.

By this time, however, Greatriver was fully prepared to participate in verification.  On October 27, 2022, Greatriver therefore attempted to submit the information for the record that it

had planned to submit at verification.  (Rejected) *Objection to Cancellation of Verification* (Oct. 27, 2022), **PR 640**.  The rejected submission detailed how Greatriver's hardwood plywood incorporates cores fully produced in Vietnam and should be considered outside the scope of Commerce's investigation.  This submission would have been Greatriver's first—and only— opportunity to address the findings that had blindsided it in the Preliminary Determination, namely, that based on adverse facts available, it "produce{s} hardwood plywood under *all five of the production scenarios* subject to these inquiries."  Preliminary Determination, 87 Fed. Reg. at 45754 (emphasis added), **PR 415**.

Commerce rejected this information and removed it from the record.  Memorandum: *Circumvention Inquiry on the Antidumping and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China: Rejection of Greatriver Wood Co., Ltd's Submission* (December 19, 2022).

As a result of Commerce ignoring Greatriver's request to reopen the record following the Preliminary Determination, and rejecting information that Greatriver prepared and planned to submit at verification, Greatriver had no opportunity to respond to (1) the alleged facts underlying Commerce's preliminary finding of adverse facts available, and (2) its resulting conclusion that Greatriver produced hardwood plywood under all five production scenarios, when, in fact, its products should have fallen squarely outside the scope of the investigation.

### E.   Commerce Maintains its Adverse Facts Available Finding Against Greatriver, Despite Providing No Opportunity to Rebut That Finding

Greatriver continued to participate in the underlying investigation to the best of its ability.  On January 9, 2023, Greatriver timely filed a case brief.  Letter to Commerce, *Greatriver Case Brief* (January 9, 2023), **PR 724**; **CR 576**.  On February 1, 2023, Greatriver filed a rebuttal brief. Letter to Commerce, *Greatriver Rebuttal Brief* (Jan. 30, 2023), **PR 796**.

As Greatriver detailed in these submissions, the record was void of any indication that it, or any Vietnamese respondent, had engaged in any of the production scenarios under investigation. Greatriver Case Brief at 3-4; 8-15, **PR 724**. Rather than reaching a negative determination supported by the record, Commerce made a country-wide circumvention determination based *solely* on a finding of total adverse facts available and the use of secondary information. *Id*. Greatriver further explained that the facts upon which this finding was based— "alleged discrepancies, inconsistences, or misleading information in the quantity and values questionnaire and supplemental questionnaire responses of some companies"—were either immaterial to the circumvention inquiry, or "could have been explained if the Department had properly followed the law and issued a supplemental questionnaire so that the companies could respond to the Department's concerns." *Id.*

On February 15, 2023, Greatriver's counsel participated in the public hearing held by Commerce in this proceeding. Hearing Transcript, *In Re: the Circumvention and Queries on the Antidumping Case Nos. Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China* (Feb. 23, 2023), **PR 814**.

On July 20, 2023, three years after initiating its investigation, Commerce published its Final Determination. *See Final Determination*, 88 Fed. Reg. 46,740, **PR 844**. The Final Determination modified Commerce's Preliminary Determination, which determined that only two production scenarios were circumventing the Orders, to instead find that all five production scenarios were circumventing the Orders. *Id.* at 46741. Commerce also maintained its finding of adverse facts available with respect to Greatriver, therefore determining, based on adverse inference, that Greatriver was producing "hardwood plywood under *all five of the production scenarios* subject to these inquiries." *Id.* at 46740 (emphasis added).

In reaching its affirmative circumvention determination, Commerce cited no evidence collected from any respondents that the five production scenarios were actually occurring in Vietnam. Instead of collecting the necessary information to make a reasoned determination, Commerce based its final determination on adverse facts available, information from other proceedings, and information placed on the record by Petitioner. Final Determination, 88 Fed. Reg. at 45740-45741, **PR 844**.

This appeal followed.

## V. STANDARD OF REVIEW

In reviewing a challenge to Commerce's determination, "{t}he Court shall hold unlawful any determination, finding or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Huaiyin Foreign Trade Corp. v. United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a mere scintilla." *Consol. Edison*, 305 U.S. at 229. A determination cannot be upheld if Commerce fails to articulate a "rational connection between the facts found and the choices made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 158 (1962). Furthermore, an agency determination must have a reasoned basis, and the "court may not defer to an agency determination premised on inadequate analysis or reasoning." *USX Corp. v. United States*, 655 F. Supp. 487, 492 (Ct. Int'l Trade 1987).

In addition, this Court must hold Commerce's final results unlawful if they are, in any material respect, arbitrary, or if Commerce acted other than as a fair and objective arbiter of U.S. trade disputes. It is well established that "{t}he standards of fairness and reasonableness are inherent" in the trade laws. *See, e.g.*, *Melamine Chemicals, Inc. v. United States*, 561 F. Supp.

458, 463 (Ct. Int'l Trade 1983). Inherent in these obligations is Commerce's basic responsibility under the law to conduct a fair investigation, which requires that its determination be based upon a reasoned analysis of the information in the record and not upon prejudgments or improper influence. *See, e.g., In re Murchison*, 349 U.S. 133, 136 (1955) ("a fair tribunal is a basic requirement of due process").

In addition, "the path of Commerce's decision must be reasonably discernable" to support judicial review. *NMB Singapore Ltd. v. United States,* 557 F.3d 1316, 1319 (Fed. Cir. 2009) (*citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)); *see also Timken U.S. Corp. v. United States,* 421 F.3d 1350, 1355 (Fed.Cir.2005) (explaining that "it is well settled that an agency must explain its action with sufficient clarity to permit 'effective judicial review,'" and that "[f]ailure to provide the necessary clarity requires the agency action be vacated") (*quoting Camp v. Pitts,* 411 U.S. 138, 142–43 (1973)); *see also* 19 U.S.C. § 1677f(i)(3)(A) (requiring Commerce to "include in a final determination ... an explanation of the basis for its determination"). It is Commerce's obligation that the trade laws are administered as accurately as possible. *See Al Tech Specialty Steel Corp. v. United States*, 28 C.I.T. 1468, 1504 (2004); *see also, Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990) (the "basic purpose" of the antidumping statute is to calculate duties "as accurately as possible").

Finally, Commerce's interpretation of the statute is reviewed under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984). *See Timken Co.* v. *United States,* 354 F.3d 1334, 1341 (Fed. Cir. 2004); *Beijing Tianhai Indus. Co. v. United States,* 52 F. Supp. 3d. 1351, 1361 (Ct. Int'l Trade 2015). "Under Chevron, the court first asks whether Congress has directly spoken to the precise question at issue; if so, the inquiry ends and the

Court 'must give effect to the unambiguously expressed intent of Congress.'" *Sahaviriya Steel Indus. Pub. Co.* v. *United States,* 649 F.3d 1371, 1375 (Fed. Cir. 2011) (citation omitted).  "If the statute is silent or ambiguous with respect to the issue, the court must ask whether Commerce's interpretation is based on a permissible construction of the statute."  *Id* (citing *Chevron,* 467 U.S. at 843).

## VI.   ARGUMENT

To determine whether circumvention is occurring with respect to "{m}erchandise completed or assembled in other foreign countries", the statute requires Commerce to analyze the factors below:

(1) In general.  If—

(A) merchandise imported into the United States is of the same class or kind as any merchandise produced in a foreign country that is the subject of--
(i) an antidumping duty order issued under <u>section 1673e</u> of this title,
(ii) a finding issued under the Antidumping Act, 1921, or
(iii) a countervailing duty order issued under <u>section 1671e</u> of this title or <u>section 1303</u> of this title,

(B) before importation into the United States, such imported merchandise is completed or assembled in another foreign country from merchandise which--
(i) is subject to such order or finding, or
(ii) is produced in the foreign country with respect to which such order or finding applies,

(C) the process of assembly or completion in the foreign country referred to in subparagraph (B) is minor or insignificant,

(D) the value of the merchandise produced in the foreign country to which the antidumping duty order applies is a significant portion of the total value of the merchandise exported to the United States, and

(E) the administering authority determines that action is appropriate under this paragraph to prevent evasion of such order or finding

*See* 19 U.S.C. § 1677j(b)(1)(A)-(E).    To determine whether the "process of assembly or completion in the foreign country" is "minor or insignificant," Commerce must consider:

(A) the level of investment in the foreign country,

(B) the level of research and development in the foreign country,

(C) the nature of the production process in the foreign country,

(D) the extent of production facilities in the foreign country, and

(E) whether the value of the processing performed in the foreign country represents a small proportion of the value of the merchandise imported into the United States.

*See* 19 U.S.C. § 1677j(b)(2). Finally, Commerce shall take into account other factors including:

(A) the pattern of trade, including sourcing patterns,

(B) whether the manufacturer or exporter of the merchandise described in paragraph (1)(B) is affiliated with the person who uses the merchandise described in paragraph (1)(B) to assemble or complete in the foreign country the merchandise that is subsequently imported into the United States, and

(C) whether imports into the foreign country of the merchandise described in paragraph (1)(B) have increased after the initiation of the investigation which resulted in the issuance of such order or finding.

*See* 19 U.S.C. § 1677j(b)(3).

Although Commerce can expand the scope of an antidumping or countervailing duty order through a circumvention inquiry, that authority is limited by the factors set forth in the statute above. Notably, Commerce must establish that the operations being performed in the third country are merely completion or assembly operations, as required by the statute. *Peer Bearing Co.-Changshan v. United States*, 986 F. Supp. 2d 1389, 1403 (Ct. Int'l Trade 2014) ("... the 'process of assembly or completion' conducted in Thailand was more than mere assembly or completion.").

In addition, the governing statute provides that Commerce shall "to the maximum extent practicable, make the determinations under this section *within 300 days from the*

*date of the initiation* of a countervailing duty or antidumping circumvention inquiry under this section." 19 U.S.C. § 1677j(f) (emphasis). Here, however, Commerce issued both its preliminary and final determinations well beyond the time contemplated by statute. Commerce published the Preliminary Determination on July 29, 2022, 742 days after the initiation of the circumvention inquiry on June 17, 2020, and it published the Final Determination on July 20, 2023, 1,098 days after the initiation.

### A. Greatriver Joins In, and Incorporates by Reference, the Tranche 1 Arguments of Other Plaintiffs and Consolidated Plaintiffs.

Greatriver hereby joins in and incorporates by reference the arguments made by DH Consolidated Plaintiffs[2] in their Motion for Judgement on Agency Record and Memorandum In Support filed on February 1, 2024. *See* ECF No. 31. Greatriver also joins in, and incorporates by reference, the arguments made by other Plaintiffs and Consolidated Plaintiffs in their Motions for Judgement on Agency Record and Memoranda In Support filed on March 4, 2024. Greatriver offers the arguments below to supplement those submissions.

### B. Commerce's Circumvention Determination was Not Supported by Substantial Evidence and Was Otherwise Not in Accordance with Law Because Its Investigation was Procedurally Flawed

Commerce initiated the underlying circumvention inquiry on June 17, 2020. **PR4**. Commerce did not issue the Preliminary Determination until July 2022. **PR409**, **PR415**. During that two-year period, Commerce issued cooperative respondents approximately six pages of

---

[2] American Woodmark Corporation, Del Valle Kahman & Company, Ike Trading Company Limited, Pittsburgh Forest Products, Panoply Wood Products USA Inc., American Pacific Plywood, Inc., Eagle Industries Company Limited, Golden Bridge Industries Pte. Ltd., Lechenwood Viet Nam Company Limited, Arrow Forest International Co., Ltd., Her Hui Wood (Vietnam) Co., Vietnam Zhongjia Wood Company Limited, Long LUU Plywood Production Co., Ltd., and TEKCOM Corporation.

questions through a Quantity and Value Questionnaire and two supplemental Quantity and Value Questionnaires.  *See e.g.,* **PR 62**, **PR 154**, **PR 257**.

Commerce never selected mandatory respondents or even attempted to collect the information required by the circumvention statute required to support an affirmative determination of circumvention.  Instead, Commerce relied entirely on adverse facts available to determine that respondents were engaged in the alleged production scenarios and used secondary information to analyze the statutory factors.

Even assuming that the lack of response to the quantity and value questionnaires by certain Vietnamese companies, or the alleged discrepancies in the Quantity and Value Questionnaires and supplemental questionnaires of other respondents, supported a determination that the circumvention production scenarios were occurring in Vietnam (which Greatriver does not concede and will address further in its Tranche II brief), Commerce still needed to address the other elements of the statute in order to determine that any of the production scenarios constituted circumvention.  However, Commerce did not request information from the Vietnamese respondents to determine if their operations constituted mere assembly or completion, as required by the statute.  *See* 19 U.S.C. § 1677j(b)(1)(B).  Commerce also did not request information on the Vietnamese respondents' investments, production costs, research and development expenses, the nature of their production processes, the extent of their production facilities, or the value of their processing, which are necessary elements to analyze an allegation of circumvention under the statute.  19 U.S.C. § 1677j(a)(D) and (b)(2).

Instead of collecting such information, Commerce used secondary sources to analyze the statutory requirements, including information from Finewood's scope determination that has been overturned by this Court.  *See Vietnam Finewood Co. v. United States,* 633 F. Supp. 3d

1243 (Ct. Int'l Trade 2023); *see also Far E. Am., Inc. v. United States*, 654 F. Supp. 3d 1308 (Ct. Int'l Trade 2023) ("*Finewood Scope Litigation*").  *See, e.g.,* Prelim Decision Memo at 14-16, **PR409**, and Memorandum to File re Production Costs Analysis and Data for the Preliminary Determination (July 22, 2022) ("Cost Production Memo"), **PR411**; **CR413.**  Commerce also relied extensively on hypothetical data submitted by Petitioner rather than collect actual information from participating respondents.  *See* Final IDM at 11-14 and n28-38, **PR842**.  The reliance on secondary sources, rather than collecting information from the actual respondents subject to the inquiry who stood ready to provide information, was without any rational basis and resulted in Commerce's affirmative circumvention determination being unsupported by substantial evidence and otherwise not in accordance with law.  Commerce's excuse for not selecting mandatory respondents was that no Vietnamese companies reported engaging in any of the production scenarios under inquiry.  But Commerce never explained why it was necessary to select a company that engaged in the production scenarios in order to gather the factual information required by the statute.  Final IDM at 24, **PR842**.

In addition, after failing to ask the appropriate questions, Commerce makes the amazing argument that respondents could have submitted the relevant information unsolicited, and that respondents have the burden of establishing an accurate record.  Put simply, respondents are expected not only to answer Commerce's questions, but also read Commerce's mind regarding information that was of concern to Commerce.  However, Commerce, not respondents, has the obligation to ask questions to gather the information it needs.  "{I}t is Commerce, not the respondent, which bears the burden of asking questions[,]" and Commerce must ask "clear" questions "to let the respondent know what information it really wants."  *Ta Chen Stainless Steel Pipe, Ltd. v. United States,* 23 CIT 804, 820 (1999); *NSK Ltd. v. United States,* 910 F.Supp. 663,

671 (1995) ("[r]espondents should not be required to guess the parameters of Commerce's interpretation of a phrase in the statute"); *see also Wash. Int'l Ins. Co. v. United States*, 33 C.I.T. 1023, 1033, fn. 16 (2009). In *Ta Chen Stainless Steel Pipe*, this Court considered Commerce's argument that the burden of creating an accurate record lies with respondents, stating:

> Commerce grounds its argument on the truism that the respondent has the burden of creating an accurate record. *See Chinsung Indus. Co. v. United States*, 13 C.I.T. 103, 106, 705 F. Supp. 598, 601 (1989) (burden of creating an adequate record rests with respondents). This truism, however, cannot obviate Commerce's obligation to let the respondent know what information it really wants. *See Queen's Flowers de Colombia v. United States,* 21 C.I.T. 968, 981 F. Supp. 617, 628 (Ct. Int'l Trade 1997) ("alleged response deficiency cannot support application of [best information available] where the information sought was apparently never requested.") (citation omitted)

23 C.I.T. 804 (1999); *see also NTN Bearing Corp. of Am. v. United States*, 826 F. Supp. 1435, 1440-41 (Ct. Int'l Trade 1993) (same).

Moreover, it was reasonable for respondents to expect that Commerce would at some point select mandatory respondents and collect information from them. In fact, Commerce indicated in its initiation notice that it intended to select mandatory respondents. *Certain Hardwood Plywood Products from the People's Republic of China: Initiation of Anti-Circumvention Inquiries and Scope Inquiries on the Antidumping Duty and Countervailing Duty Orders; Vietnam Assembly*, 85 Fed. Reg. 36,530, 36,533 (June 17, 2020), **PR 4**. Commerce also has selected mandatory respondents in other circumvention inquiries. *See, e.g., Certain Corrosion-Resistant Steel Products From the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 83 Fed. Reg. 23,895 (May 23, 2018); *CORE from China Preliminary Determination*, unchanged in *Corrosion-Resistant Steel Productions from the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 83

FR 23895 (May 23, 2018). It is also unreasonable to expect all or any of the 51 companies that submitted quantity and value questionnaires to submit data on the statutory factors without any request or guidance from Commerce, or any indication of the exact type of information to be reported or the format in which it should be presented.

### C. Commerce Unreasonably Rejected Requests to Reopen the Record and Unreasonably Rejected Information Submitted by Respondents.

After two years, without selecting any mandatory respondents, without collecting information on the statutory factors from any Vietnamese companies, and without notice to Greatriver or any respondents that it had allegedly identified discrepancies in their submissions, Commerce issued an affirmative preliminary determination of circumvention and applied adverse facts available to Greatriver and certain other respondents, excluding them from the certification regime established by Commerce.

At that time, realizing that Commerce was not planning to extend the deadline to collect such information, Greatriver requested that Commerce reopen the record to accept new factual information. Response to Preliminary Determination, **PR 430**. Greatriver noted that Commerce's application of total adverse facts available was based on "alleged inconsistences in the various responses of Greatriver and alleged inconsistencies with information submitted by the Government of Vietnam," but that Commerce had made no attempt to resolve these inconsistencies in the year since receiving the allegedly conflicting data from the Government of Vietnam. *Id.* Because Commerce "did not notify the parties that it had identified apparent discrepancies until the preliminary determination," it had failed to "provide the parties with the opportunity to explain or rebut the alleged discrepancies." *Id.* As a result, Greatriver requested that Commerce issue a supplemental questionnaire to give Greatriver a chance to rebut or clarify the record pursuant to 19 U.S.C. § 1677m(d), or to set a deadline for Greatriver and similarly

situated companies to submit new factual information.  *Id.*  Commerce never responded to this request and never reopened the record or issued any additional supplemental questionnaires.

Other respondents submitted new factual information which was subsequently rejected. *See*, *e.g.*, Dep't Commerce, Rejection Letters dated Sept. 9, 2022 (**PR 531, PR 532, PR 533, PR 534, PR 535, PR 536**), Sept. 26, 2022 (**PR 568, PR 569, PR 570, PR5 71**), Oct. 19, 2022 (**PR 615, PR 616**), and Nov. 29, 2022 (**PR 658, PR 659, PR 660, PR 661, PR 662, PR 663**). Commerce's refusal to reopen the record, and its rejection of new factual information after failing to conduct a normal investigation, was unreasonable and contrary to law.

Greatriver will address Commerce's failure to notify the parties of any deficiencies in their questionnaire response in its Tranche II brief.  However, if Commerce was not going to issue supplemental questionnaires to give Greatriver and other respondents an opportunity to address these issues, then it should have granted Greatriver's request to reopen the record or accepted new factual information submitted by Greatriver and other respondents.   It is well-established that "[t]he standards of fairness and reasonableness are inherent" in the trade laws. *Melamine Chemicals,* 561 F. Supp. at 463 (Ct. Int'l Trade, 1983).  "Fair and accurate determinations are fundamental to the proper administration of our dumping laws." *Helmerich & Payne v. United States*, 24 F. Supp. 2d 304, 313 (Ct. Int'l Trade 1998).  While Commerce has discretion in both setting and enforcing its deadlines, Commerce abuses its discretion when the interests of accuracy and fairness outweigh the burden placed on Commerce and the interest in finality.  *See Grobest & I-Mei Indus. (Vietnam) Co., Ltd. v. United States*, 815 F. Supp. 2d 1342, 1365 (Ct. Int'l Trade 2012).

The Court of International Trade has made clear that Commerce's rejection of factual information is arbitrary where "the circumstances {} suggest that 'the interests in fairness and

accuracy outweigh {any} burden {placed} upon Commerce.'" *Shelter Forest Int'l Acquisition, Inc. v. United States*, 497 F. Supp. 3d 1388, 1402 (Ct. Int'l Trade 2021), *aff'd*, 2022 U.S. App. LEXIS 16491 (Fed. Cir. 2022) (finding that "Commerce cannot plausibly argue that it does not have the resources to review" the respondent's untimely submission when it had "four months to review the approximately 100-page submission prior to its issuance of the final determination") (quoting *Grobest*, 815 F. Supp. 2d at 1365-67; *Linyi Chengen Imp. & Exp. Co. v. United States*, 433 F. Supp. 3d 1278, 1285 (Ct. Int'l Trade 2020) (holding that it was "unreasonable for {Commerce} to refuse to consider the entirety of {a document submitted at verification} purporting to be the Chinese National Standard").

In this case, the importance of reaching an accurate determination based on actual information from the Vietnamese industry, as well as the drastic impact of a final affirmative determination on the Vietnamese industry and U.S. importers, far outweighed any interest Commerce had in declaring the factual record final. This is especially true given that Commerce had unilateral authority to extend the deadline for the final determination, which it ultimately did four times. In fact, Commerce would not issue a final determination until a year after the Preliminary Determination. **PR 842, PR 844.** There was, therefore, sufficient time for the Commerce to consider the information submitted or to reopen the record to collect more information.

The unreasonableness of Commerce's decisions is especially egregious in the case of Greatriver. Greatriver was selected for verification and was issued a verification preparedness questionnaire, to which Greatriver responded. Verification Preparedness Questionnaire, **PR 572**, and Verification Preparedness Questionnaire Response, **PR 587**. Commerce also issued Greatriver and certain other respondents a verification outline, in which it requested that

Greatriver prepare information for verification. *Circumvention Inquiry of the Antidumping and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China: Verification Outline* (October 7, 2022), **PR 571**.

However, the day before verification was set to commence, Commerce informed Greatriver that it was selected for verification by mistake and would not be verified. *Verification Schedule Update* (October 18, 2022). **PR 576**. When Greatriver attempted to submit the information requested by Commerce that it had intended to present at verification, the information was rejected as untimely. *Circumvention Inquiry of the Antidumping and Countervailing Duty Orders on Certain Hardwood Plywood from the People's Republic of China – Rejection of Greatriver Wood Co. Ltd.'s Submission* (December 19, 2022), **PR 641**. It appears that Commerce was intent on avoiding the submission of any information that might contradict its conclusions and undermine its desired outcome.

In its Final Determination, Commerce suggests that respondents could have submitted factual information in response to the comments and factual information submitted by Petitioner during the proceeding. Final IDM at 25-26, **PR 842**. However, the law and regulations are clear that Greatriver is not required to respond to allegations made by Petitioner, nor is Petitioner in charge of the investigation. The regulations provide, that Greatriver was "permitted" to submit a rebuttal to Petitioner's comments, but permission is not the same as being required to submit comments. 19 C.F.R. § 351.301(c)(1)(v).

This is particularly so when Commerce itself may have different questions than those posed by Petitioners. Petitioners may propose questions to Commerce, but they are not allowed to ask such questions directly. This regulation is written so that a respondent must respond to the concerns of Commerce, not to the concerns of adverse parties. The statute states that Commerce

24

is the entity tasked with the conduct of antidumping duty investigations. Specifically, Section 771 of the Tariff Act of 1930 (as amended) states that the administering authority "means the Secretary of Commerce, or any other officer of the United States to whom the responsibility for carrying out the duties of the administering authority under this title are transferred by law." 19 U.S.C. § 1677.

In this instance, the administering authority is Commerce, and no other entity may usurp Commerce's role as fact finder and substitute their analysis for that of Commerce. *See Torrington Co. v. United States,* 25 C.I.T. 395 (2001). Furthermore, Commerce's regulations also make clear that it is the Secretary (i.e., Commerce) that will issue questionnaires and that responding parties must respond within the time limits specified by Commerce. *See* 19 C.F.R. §351.301(c)(1). Nowhere in the statute or regulations does it state that Petitioners may assume the status of either the "administering authority" or the "Secretary" in order to mandatorily require a respondent to reply to Petitioner's allegations. Greatriver is only required to respond to questions asked by Commerce. In this case, Commerce declined to issue follow-up questions with respect to Greatriver or to collect relevant factual information from mandatory respondents. Under these circumstances, it was unreasonable for Commerce to then reject factual information that was submitted subsequent to the Preliminary Determination, when there was still sufficient time to analyze that information prior to the Final Determination.

## VII.    CONCLUSION

For the reasons set forth above, Commerce's affirmative circumvention determination was not supported by substantial evidence and not in accordance with law. As a result, we respectfully request that the Court hold unlawful Commerce's affirmative finding of circumvention and remand this case for Commerce to revise the Final Determination in accordance with the Court's decision.

Respectfully submitted,

/s/ Jeffrey S. Neeley
Jeffrey S. Neeley, Esq.
Stephen Brophy, Esq.
Jamie Shookman, Esq.
HUSCH BLACKWELL, LLP
1801 Pennsylvania Avenue
NW Suite 1000
Washington, DC 20006
(202) 378-2334
jeffrey.neeley@huschblackwell.com

*Counsel for Greatriver Wood Co., Ltd.*

Dated: March 4, 2024