## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| SHELTER FOREST INTERNATIONAL ACQUISITION, INC., <br><br> Plaintiff, <br><br> GREATRIVER WOOD CO., LTD., ET AL., <br><br> Consolidated Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, and <br><br> COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD <br><br> Defendant-Intervenor. | Consol. Court No. 23-00144 |

## ORDER

Upon consideration of the Rule 56.2 Motion for Judgment on the Agency Record of Consolidated Plaintiffs Concannon Lumber Company, Northwest Hardwoods, Inc., Richmond International Forest Products LLC, Taraca Pacific Inc., UFP International, LLC, Medallion Forest Product, Hardwoods Specialty Products USLP, Paxton Hardwoods LLC and Rugby Holdings LLC dba Rugby Architectural Building Products, and all other pleadings, papers and proceedings herein, it is hereby

**ORDERED**, that the Rule 56.2 Motion is GRANTED, and it is further

**ORDERED**, that the final scope ruling and affirmative final determination of circumvention issued by the U.S. Department of Commerce on July 14, 2023 concerning the antidumping and countervailing duty orders on certain hardwood plywood products from the People's Republic of China covering certain hardwood plywood products and veneered panels ("hardwood plywood") assembled in the Socialist Republic of Vietnam is remanded to Commerce with instructions to revise its analysis and final determination in accordance with the Court's Opinion; and it is further

**ORDERED**, that Commerce shall provide the Court and parties with revised finding within 60 days of this order.  Parties shall have 30 days to submit briefs on the revised results to the Court.  Responses to those briefs shall be filed within 15 days.


Dated: _____                    _____
         New York, New York                              Mark A. Barnett
                                                               Chief Judge

## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| SHELTER FOREST INTERNATIONAL ACQUISITION, INC., <br><br> Plaintiff, <br><br> GREATRIVER WOOD CO., LTD., ET AL., <br><br> Consolidated Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, and <br><br> COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD <br><br> Defendant-Intervenor. | Consol. Court No. 23-00144 |

## RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD ON BEHALF OF CONSOLIDATED PLAINTIFFS CONCANNON LUMBER COMPANY, NORTHWEST HARDWOODS, INC., RICHMOND INTERNATIONAL FOREST PRODUCTS LLC, TARACA PACIFIC INC., UFP INTERNATIONAL, LLC, MEDALLION FOREST PRODUCT, HARDWOODS SPECIALTY PRODUCTS USLP, PAXTON HARDWOODS LLC AND RUGBY HOLDINGS LLC DBA RUGBY ARCHITECTURAL BUILDING PRODUCTS

Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade, Consolidated Plaintiffs Concannon Lumber Company, Northwest Hardwoods, Inc., Richmond International Forest Products LLC, Taraca Pacific Inc., UFP International, LLC, Medallion Forest Product, Hardwoods Specialty Products USLP, Paxton Hardwoods LLC and Rugby Holdings LLC dba Rugby Architectural Building Products (collectively, "M&G Plaintiffs") hereby move for judgment on the agency record. M&G Plaintiffs challenge certain aspects of the final scope ruling

and affirmative final determination of circumvention issued by the U.S. Department of Commerce ("Commerce") on July 14, 2023, concerning the antidumping and countervailing duty orders on certain hardwood plywood products from the People's Republic of China covering certain hardwood plywood products and veneered panels (hardwood plywood) assembled in the Socialist Republic of Vietnam ("Vietnam"). See Certain Hardwood Plywood Products From the People's Republic of China: Final Scope Determination and Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders, 88 Fed. Reg. 46,740 (July 20, 2023) ("Final Determination").

Specifically, M&G Plaintiffs seek judgment on the agency record because, for the reasons outlined below and as set forth in more detail in the M&G Plaintiffs' Memorandum of Points and Authorities in support of this motion related to the Tranche I issues identified in this Court's Scheduling Order, Scheduling Order (Nov. 29, 2023), ECF No. 30:

- Commerce abused its discretion in rejecting new factual information ("NFI") submitted by certain Vietnamese companies after Commerce's Preliminary Determination because Commerce failed to provide these companies with adequate notice of the alleged deficiencies that their NFI submissions sought to remedy and the requirement that Commerce ensure an accurate circumvention determination outweighed any concerns over finality or the burden on Commerce to review the NFI submissions;

- Commerce's affirmative circumvention finding was not supported by substantial evidence and was otherwise not in accordance with law because Commerce arbitrarily relied on outdated data from a separate proceeding (i.e., the "Finewood Scope Inquiry") - that the Court overturned - to wrongly conclude that the process of assembly of hardwood plywood in Vietnam is minor and insignificant;

- Commerce abused its discretion in implementing a certification regime and issuing customs instructions that unlawfully covered demonstrably non-scope merchandise (i.e., "safe harbor" merchandise) when exported by companies that Commerce found to be ineligible to complete a certification (i.e., the so-called, "blacklist" companies), thereby rendering its affirmative circumvention finding as not supported by substantial evidence and not in accordance with law.

For the reasons set forth above, the M&G Plaintiffs respectfully request that this Court:

(1) find that Commerce's actions as described above were an abuse of discretion and not supported by substantial evidence or otherwise not in accordance with law;

(2) remand to Commerce with instructions to accept and consider the new factual information submitted by certain Vietnamese companies following Commerce's Preliminary Determination;

(3) remand to Commerce with instructions not to rely on data from the Finewood Scope Inquiry in determining whether the process of assembly of hardwood plywood in Vietnam is minor and insignificant;

(4) remand to Commerce with instructions to amend its certification regime such that the safe harbor merchandise is not covered by the Orders even when exported by Vietnamese companies on Commerce's so-called backlist;

(5) remand to Commerce with instructions to reconsider its determination in accordance with this Court's decision;

(6) order Commerce to publish amended final results in the Federal Register in accordance with a final decision by this Court in this matter;

(7) order Commerce to issue cash deposit instructions to U.S. Customs and Border Protection consistent with this Court's decision; and

(8) provide such other relief as this honorable Court deems proper.

Respectfully submitted,

Dated:  March 4, 2023

/s/ Jeffrey S. Grimson
Jeffrey S. Grimson
Jill A. Cramer
Bryan P. Cenko
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW
Suite 810
Washington, DC 20015
202-688-3610 (ph)
202-595-8968 (fax)
trade@mowrygrimson.com
*Counsel to Concannon Lumber Company,
Northwest Hardwoods, Inc., Richmond
International Forest Products LLC, Taraca
Pacific Inc., UFP International, LLC,
Medallion Forest Product, Hardwoods
Specialty Products USLP, Paxton
Hardwoods LLC and Rugby Holdings LLC
dba Rugby Architectural Building Products*

## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| SHELTER FOREST INTERNATIONAL ACQUISITION, INC.,<br><br>Plaintiff,<br><br>GREATRIVER WOOD CO., LTD., ET AL.,<br><br>Consolidated Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant, and<br><br>COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD<br><br>Defendant-Intervenor. | Consol. Court No. 23-00144<br>Nonconfidential Version |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD ON BEHALF OF CONSOLIDATED PLAINTIFFS CONCANNON LUMBER COMPANY, NORTHWEST HARDWOODS, INC., RICHMOND INTERNATIONAL FOREST PRODUCTS LLC, TARACA PACIFIC INC., UFP INTERNATIONAL, LLC, MEDALLION FOREST PRODUCT, HARDWOODS SPECIALTY PRODUCTS USLP, PAXTON HARDWOODS LLC AND RUGBY HOLDINGS LLC DBA RUGBY ARCHITECTURAL BUILDING PRODUCTS

Jeffrey S. Grimson
Jill A. Cramer
Bryan P. Cenko
MOWRY & GRIMSON, PLLC
5335 Wisconsin Ave., NW, Suite 810
Washington, DC 20015
202.688.3610 (ph)
202.595.8968 (fax)
trade@mowrygrimson.com

March 4, 2024

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ....................................................................................... ii

ADMINISTRATIVE DETERMINATION UNDER REVIEW ...................................... 1

ISSUES PRESENTED ............................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 2

SUMMARY OF THE ARGUMENT ........................................................................... 2

STANDARD OF REVIEW ....................................................................................... 3

ARGUMENT .......................................................................................................... 5

    I.   COMMERCE ABUSED ITS DISCRETION IN REJECTING NFI AS UNTIMELY .............................. 5

       A.   Commerce Failed To Meet its Obligations Under 19 U.S.C. § 1677m(d) ..................... 8

       B.   Interests in Accuracy Outweighed Any Concerns by Commerce Over Finality and the Burden on Commerce to Review the NFI ........................................................................ 16

    II.   COMMERCE'S AFFIRMATIVE CIRCUMVENTION FINDING WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND WAS OTHERWISE NOT IN ACCORDANCE WITH LAW BECAUSE COMMERCE ARBITRARILY RELIED ON FLAWED DATA ............................ 28

    III.   COMMERCE UNLAWFULLY EXPANDED THE SCOPE OF ITS AFFIRMATIVE CIRCUMVENTION FINDING TO COVER MERCHANDISE IT EXPRESSLY STATED WAS NOT SUBJECT TO THE SCOPE/CIRCUMVENTION PROCEEDING ........................................ 33

    IV.   M&G PLAINTIFFS ADOPT COMMENTS FILED BY OTHER RESPONDENT PARTIES ............ 39

CONCLUSION ....................................................................................................... 39

**Cases**

Bosun Tools Co. v. United States,
__ CIT __, 405 F. Supp. 3d 1359 (2019) ............................................................ 19, 23

Changzhou Trina Solar Energy Co. v. United States,
975 F.3d 1318 (Fed. Cir. 2020) ........................................................... 3, 4, 33

Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States,
701 F.3d 1367 (Fed. Cir. 2012) .................................................................. 4

Chaparral Steel Co. v. United States,
901 F.2d 1097 (Fed. Cir. 1990) ................................................................ 19

Consol. Bearings Co. v. United States,
412 F.3d 1266 (Fed. Cir. 2005) ..................................................... 5, 35, 37

Consol. Edison Co. v. NLRB,
305 U.S. 197 (1938) ................................................................................ 4

Deacero S.A.P.I. de C.V. v. United States,
__ CIT __, 353 F. Supp. 3d 1303 (2018) ............................................... 27

Dep't of Com. v. New York,
139 S. Ct. 2551 (2019) ............................................................................. 4

Dongtai Peak Honey Indus. v. United States,
777 F.3d 1343 (Fed. Cir. 2015) ............................................................... 17

Essar Steel v. United States,
678 F.3d 1268 (Fed. Cir. 2012) .......................................................... 26, 27

Fischer S.A. v. United States,
31 CIT 334, 700 F. Supp. 2d 1364 (2010) ......................................... 19, 23

Grobest & I-Mei Indus. (Vietnam) Co., Ltd. v. United States,
36 CIT 98, 815 F. Supp. 2d 1342 (2012) ...................................... passim

Hitachi Energy USA Inc. v. United States,
    34 F. 4th 1375 (Fed. Cir. 2022) ............................................................. 9, 16

Huayin Foreign Trade Corp. v. United States,
    322 F.3d 1369 (Fed. Cir. 2003) ............................................................. 4, 33

Invenergy Renewables LLC v. United States,
    __ CIT __, 552 F. Supp. 3d 1382 (2021) ........................................ 4, 28, 30

Mid Continent Nail Corp. v. United States,
    725 F.3d 1295 (Fed. Cir. 2013) ........................................................... 38, 39

Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,
    463 U.S. 29 (1983) ...................................................................................... 4

NMB Sing. Ltd. v. United States,
    557 F.3d 1316 (Fed. Cir. 2009) ............................................................. 4, 33

NTN Bearing Crop. v. United States,
    74 F.3d 1204 (Fed. Cir. 1995) ........................................................ 17, 18, 19

Papierfabrik August Koehler SE v. United States,
    843 F.3d 1373 (Fed. Cir. 2016) ................................................................... 5

Pro-Team Coil Nail Enter. v. United States,
    __ CIT __, 419 F. Supp. 3d 1319 (2019) .............................................. 19, 23

Rhone Poulenc, Inc. v. United States,
    899 F.2d 1185 (Fed. Cir. 1990) ...................................................... 12, 16, 19

Shelter Forest Int'l Acquisition, Inc. v. United States,
    __ CIT __, 497 F. Supp. 3d 1388 (2021) ............................................. passim

Shelter Forest Int'l Acquisition, Inc. v. United States,
    2022 U.S. App. LEXIS 16491 (Fed. Cir. 2022) .................................. 14, 15

Shelter Forest Int'l Acquisition, Inc. v. United States,
    No. 19-00212, 2021 Ct. Intl. Trade LEXIS 90 (Ct. Int'l Trade July 21, 2021) ........................ 14

SolarWorld Ams., Inc. v. United States,
    910 F.3d 1216 (Fed. Cir. 2018) ................................................................. 4

Timken United States Corp. v. United States,
    434 F.3d 1345 (Fed. Cir. 2006) .................................................. 17, 18, 19

U.S. Steel Corp. v. United States,
    37 CIT 1799, 953 F. Supp. 2d 1332 (2013) ............................................. 4

Uniroyal Marine Exps., Ltd. v. United States,
    33 CIT 803, 626 F. Supp. 2d 1312 (2009) ....................................... 15, 16

Usinor Sacilor v. United States,
    18 CIT 1155, 872 F. Supp. 1000 (1994) ................................................. 19

Vietnam Finewood Co. v. United States,
    __ CIT __, 633 F. Supp. 3d 1243 (2023) ............................................... 29

Yantai Timken Co., Ltd. v. United States,
    31 CIT 1741, 521 F. Supp. 2d 1356 (2007) ........................................... 27

**Statutes**

19 U.S.C. § 1509 ................................................................................................ 36

19 U.S.C. § 1677m ..................................................................................... passim


**Other Authorities**

Certain Hardwood Plywood Products From the People's Republic of China: Final Scope
    Determination and Affirmative Final Determination of Circumvention of the Antidumping and
    Countervailing Duty Orders, 88 Fed. Reg. 46,740 (July 20, 2023) ......................... 1, 21, 22, 34

Certain Hardwood Plywood Products From the People's Republic of China: Preliminary Scope
    Determination and Affirmative Preliminary Determination of Circumvention of the
    Antidumping and Countervailing Duty Orders, 87 Fed. Reg. 45,753 (July 29, 2022)... 5, 24 34,
    38

**Regulations**

19 C.F.R. § 351.102 ........................................................................................ 7, 8

19 C.F.R. § 351.301 .................................................................................... 7, 8, 13

19 C.F.R. § 351.302 .................................................................................................... 13

Consolidated Plaintiffs Concannon Lumber Company, Northwest Hardwoods, Inc., Richmond International Forest Products LLC, Taraca Pacific Inc., UFP International, LLC, Medallion Forest Product, Hardwoods Specialty Products USLP, Paxton Hardwoods LLC and Rugby Holdings LLC dba Rugby Architectural Building Products (collectively, "M&G Plaintiffs") challenge certain aspects of the final scope ruling and affirmative final determination of circumvention issued by the U.S. Department of Commerce ("Commerce") on July 14, 2023 concerning the antidumping ("AD") and countervailing duty ("CVD") orders on certain hardwood plywood products from the People's Republic of China ("China") covering certain hardwood plywood products and veneered panels (hardwood plywood) assembled in the Socialist Republic of Vietnam. See Certain Hardwood Plywood Products From the People's Republic of China: Final Scope Determination and Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders, 88 Fed. Reg. 46,740 (July 20, 2023) ("Final Determination") (P.R. 844),[1] and accompanying Issues and Dec. Mem. (July 14, 2023) ("Final I&D Mem.") (P.R. 842).

## ISSUES PRESENTED

1. Whether Commerce abused its discretion in rejecting new factual information ("NFI") submitted by certain Vietnamese companies to remedy alleged deficiencies in their submissions that Commerce first identified in its Preliminary Determination.

2. Whether Commerce's affirmative circumvention determination was supported by substantial evidence and was otherwise in accordance with law given that Commerce based its finding that the process of assembly of hardwood plywood in Vietnam is minor and insignificant on outdated data from an overturned proceeding.

---

[1] M&G Plaintiffs cite to the AD record throughout this brief as each document was also filed concurrently on the CVD record.

3. Whether Commerce abused its discretion in implementing a certification regime and issuing customs instructions that expanded the scope of its affirmative circumvention finding to cover merchandise not covered by its investigation, thereby rendering its affirmative circumvention finding as not supported by substantial evidence and not in accordance with law.

## STATEMENT OF FACTS

Consistent with the Court's scheduling order, M&G Plaintiffs hereby adopt the facts section contained in the Rule 56.2 Memorandum in Support of Motion for Judgment Upon the Agency Record of consolidated Plaintiffs American Woodmark Corporation, et al. ("DH Consolidated Plaintiffs") to avoid repetition. See Consolidated Pls.' American Woodmark Corporation, et al. Rule 56.2 Memorandum in Support of Motion for Judgment Upon the Agency Record at 3-13 (Feb. 1, 2024), ECF No. 31 ("DH Consolidated Plaintiffs' 56.2 Brief"); Scheduling Order (Nov. 29, 2023), ECF No. 30 (stating that consolidated Plaintiffs should "limit factual and procedural background statements to any additional information relevant to the parties represented in those briefs").

## SUMMARY OF THE ARGUMENT

Pursuant to the Court's Scheduling Order, the M&G Plaintiffs hereby adopt the arguments contained in the DH Consolidated Plaintiffs' 56.2 Brief that Commerce's affirmative circumvention finding was not supported by substantial evidence and was otherwise not in accordance with law. The M&G Plaintiffs expand on these arguments below concerning three issues.

First, Commerce abused its discretion in rejecting NFI submitted by certain Vietnamese exporters to either clarify or remedy the alleged discrepancies in their responses that Commerce identified in its Preliminary Determination. Commerce violated its statutory mandate under 19 U.S.C. § 1677m(d) by failing to provide Vietnamese respondents with adequate notice of the deficiencies in their responses. By failing to provide the Vietnamese respondents with adequate

notice, Commerce abused its discretion in rejecting the NFI submissions that sought to remedy these deficiencies. Further, even if this Court holds that Commerce complied with its statutory obligations and properly found the NFI submissions to be untimely, Commerce nonetheless abused its discretion in rejecting these submissions. The requirement that Commerce ensure an accurate circumvention determination outweighed any concerns for finality and the burden on Commerce given that Commerce had ample time to review these submissions prior to the Final Determination.

Second, Commerce's affirmative circumvention determination was not supported by substantial evidence and was otherwise not in accordance with law because Commerce arbitrarily relied on fatally flawed data to find that the process of assembly or completion in the Vietnam was minor or insignificant. In making this finding, Commerce failed to provide a rational explanation for relying on data from a separate inquiry that had been overturned by the Court. Further, this data was outdated, and, thus, could not support Commerce's affirmative circumvention finding.

Third, Commerce unlawfully expanded the scope of its affirmative circumvention finding to cover so-called safe harbor merchandise that it expressly stated at the outset of the investigation was not subject to the scope of its investigation. Commerce abused its discretion in implementing a certification regime and issuing customs instructions that covered safe harbor merchandise for certain companies found ineligible to complete a certification, thereby rendering its affirmative circumvention finding as unsupported by substantial evidence and not in accordance with law.

## STANDARD OF REVIEW

"The court shall hold unlawful any determination, finding or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence requires "more than a mere scintilla," e.g., Changzhou Trina Solar Energy Co. v. United States, 975 F.3d 1318, 1326 (Fed. Cir. 2020), and is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Huayin Foreign Trade Corp. v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

Moreover, substantial evidence supporting an agency determination must be based on the whole record, and the Court shall take into account not only the information that supports the agency's decision but also whatever in the "record fairly detracts from its {weight}." Changzhou Trina, 975 F.3d at 1326 (quoting SolarWorld Ams., Inc. v. United States, 910 F.3d 1216, 1222 (Fed. Cir. 2018)). Disregarding record information with no explanation defies this requirement. Although Commerce does not have to provide perfect explanations, "the path of Commerce's decision must be reasonably discernable." NMB Sing. Ltd. v. United States, 557 F.3d 1316, 1319 (Fed. Cir. 2009).

Further, "{t}o be in accordance with law, a decision must not be arbitrary and capricious . . . and must be supported by substantial evidence and reasoned explanations." U.S. Steel Corp. v. United States, 37 CIT 1799, 1801-02, 953 F. Supp. 2d 1332, 1336 (2013) (citing Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 41-43 (1983)). "Commerce's decision will be set aside if its arbitrary and capricious." Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States, 701 F.3d 1367, 1374 (Fed. Cir. 2012). "To survive review under the arbitrary and capricious standard, the agency must have 'examined 'the relevant data' and articulated 'a satisfactory explanation' for {its} decision, 'including a rational connection between the facts found and the choice made.'" Invenergy Renewables LLC v. United States, __ CIT __, __ 552 F. Supp. 3d 1382, 1394 (2021) (quoting Dep't of Com. v. New York, 139 S. Ct. 2551, 2569 (2019) (quoting Motor Vehicle, 463 U.S. at 43)).

Commerce's decision to either accept or reject information is an abuse of discretion if "the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." Consol. Bearings Co. v. United States, 412 F.3d 1266, 1269 (Fed. Cir. 2005) (citation omitted). Commerce can also abuse its discretion by "refusing to accept updated data when there {i}s plenty of time for Commerce to verify or consider it." Papierfabrik August Koehler SE v. United States, 843 F.3d 1373, 1384 (Fed. Cir. 2016).

<b>ARGUMENT</b>

## I. COMMERCE ABUSED ITS DISCRETION IN REJECTING NFI AS UNTIMELY

Despite receiving voluminous information from respondents in response to Commerce's quantity & value ("Q&V") questionnaires and supplemental Q&V questionnaires, and no evidence whatsoever of any production in Vietnam using Chinese core veneers, in its Preliminary Determination, Commerce found that multiple Vietnamese respondents of hardwood plywood failed to fully cooperate with its investigation and applied adverse facts available ("AFA") to instead find that these respondents "produced and/or exported hardwood plywood under all of the five production scenarios that {were} subject to {Commerce's} inquiries." Certain Hardwood Plywood Products From the People's Republic of China: Preliminary Scope Determination and Affirmative Preliminary Determination of Circumvention of the Antidumping and Countervailing Duty Orders, 87 Fed. Reg. 45,753 (July 29, 2022) ("Prelim. Determination") (P.R. 415), and accompanying Prelim. Dec. Mem. at 12 ("Prelim. I&D Mem.") (P.R. 409); see also Mem. from Kabir Archuletta to the File re: Application of Adverse Facts Available for the Preliminary Determination at 3-23 (July 22, 2022) (Public Version) ("AFA Mem.") (P.R. 410) (explaining

Commerce's basis for applying AFA against certain companies based on their allegedly deficient responses to Commerce's questionnaires).

Commerce's Preliminary Determination served as the first notice to many Vietnamese companies, including Bao Yen MDF Joint Stock Company ("Bao Yen"), Hai Hien Bamboo Wood Joint Stock Company ("Hai Hien"), Her Hui Wood (Vietnam) Co., Ltd. ("Her Hui"), Lechenwood Viet Nam Company Limited ("Lechenwood"), Long Luu Plywood Production Co., Ltd. ("Long Luu"), TEKCOM Corporation ("Tekcom"), Thang Long Wood Panel Company Ltd. ("Thang Long") and Win Faith Trading Limited ("Win Faith"), that Commerce found their responses to Commerce's questionnaires to be deficient. See id. Once Bao Yen, Hai Hien, Her Hui, Long Luu, Lechenwood, Tekcom, Thang Long and Win Faith became aware of either the alleged discrepancies that Commerce identified in their responses, or that they were required to respond to Commerce's supplemental Q&V questionnaires, they acted promptly to clarify and/or correct the record by submitting new factual information ("NFI") to Commerce. See Letter from Bao Yen to Commerce re: Comments Regarding Ministerial Errors and Procedure (August 19, 2022 (Public Version) ) ("Bao Yen Rebuttal") (P.R. 473); Letter on Behalf of Hai Hien to Commerce re: Hai Hien Rebuttal to the Department's Preliminary Determination (September 16, 2022) (Public Version) ("Hai Hien Rebuttal") (P.R. 551); Letter on Behalf of Her Hui to Commerce re: Her Hui Rebuttal to the Department's Preliminary Determination (September 16, 2022) (Public Version) ("Her Hui Rebuttal") (P.R. 555); Letter on Behalf of Lechenwood to Commerce re: Lechenwood Rebuttal to the Department's Preliminary Determination (September 16, 2022) (Public Version) ("Lechenwood Rebuttal") (P.R. 556); Letter on Behalf of Long Luu to Commerce re: Long Luu Rebuttal to the Department's Preliminary Determination (September 16, 2022) (Public Version) ("Long Luu Rebuttal") (P.R. 557); Letter on Behalf of Tekcom to Commerce re: Tekcom Rebuttal

to the Department's Preliminary Determination (Oct. 13, 2022) (Public Version) ("Tekcom Rebuttal") (P.R. 608); Letter on Behalf of Thang Long to Commerce re: Case briefs/Comments on Preliminary Scope Determination and Affirmative Preliminary Determination of Circumvention of the Antidumping and Countervailing Duty Orders (August 19, 2022) (Public Document) ("Thang Long Rebuttal") (P.R. 482); Letter on Behalf of Win Faith to Commerce re: Win Faith Rebuttal to the Department's Preliminary Determination (Sept. 21, 2022) (Public Version) ("Win Faith Rebuttal") (P.R. 562).

Commerce universally rejected all the NFI contained in these submissions. <u>See, e.g.,</u> Letter form Commerce to Hai Hien re: Rejection of Hai Hien's Submission (Oct. 25, 2022) (Public Document) (P.R. 630); <u>see also</u> Final I&D Mem. at 4-5 (P.R. 842). In rejecting the NFI, Commerce explained that its:

> regulations require that factual information submitted onto a record must be filed within the time frame established by Commerce or the regulations and either respond to a request for information, respond to other NFI placed on the record, or if the NFI is not submitted under those categories, respondents must explain what information is being submitted and why Commerce should accept the new information

Final I&D Mem. at 55 (P.R. 842) (citing to 19 C.F.R. § 351.301(b) and (c) and 19 C.F.R. § 351.102(b)(21)(i-v)). Commerce concluded that: 1) good cause did not exist to accept this NFI under 19 C.F.R. § 351.102(b)(21)(v) because the Vietnamese respondents "were provided with adequate notice about the discrepancies in their responses;" 2) the Vietnamese parties improperly framed their NFI as a response to Commerce's Preliminary Determination given that the "Preliminary Determination did not contain new evidence, new statements of fact, new documents, or new data;" and 3) the Vietnamese respondents failed to otherwise demonstrate good cause to accept the NFI. <u>See</u> Final I&D Mem. at 56-57 (P.R. 842). Commerce rejected the NFI submissions on the basis that the Vietnamese respondents submitted them outside of the timeframes set by

Commerce and its regulations under 19 C.F.R. § 351.301(b)-(c) and 19 C.F.R. § 351.102(b)(21)(i-v). See id. at 55.

Commerce abused its discretion in rejecting these NFI submissions as untimely because: 1) Commerce failed to comply with its obligation under 19 U.S.C. § 1677m(d) to provide these companies with notice of the alleged deficiencies in their responses and an opportunity to remedy these deficiencies and 2) Commerce's mandate to ensure accuracy in its determination outweighed any interest in finality or the burden on Commerce to review these submissions.

### A. Commerce Failed To Meet its Obligations Under 19 U.S.C. § 1677m(d)

Commerce abused its discretion in rejecting the NFI submitted by Hai Hien, Her Hui, Long Luu, Lechenwood, Tekcom and Win Faith following Commerce's Preliminary Determination because Commerce failed to provide these Vietnamese companies with notice of the alleged deficiencies in their responses to Commerce's questionnaires that these companies then sought to remedy in their NFI submissions, as required by 19 U.S.C. § 1677m(d).

Commerce violated its statutory mandate under 19 U.S.C. § 1677m(d) by failing to provide the Vietnamese respondents with adequate notice of the alleged deficiencies that Commerce identified in their questionnaire responses and then compounded this abuse by denying Vietnamese respondents with an opportunity to remedy or explain these deficiencies by rejecting their NFI submissions. 19 U.S.C. § 1677m(d) requires that:

> {i}f the administering authority or the Commission determines that a response to a request for information under this subtitle does not comply with the request, the administering authority or the Commission (as the case may be) shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this subtitle.

Id. There is no uncertainty in Commerce's statutory directive. See Hitachi Energy USA Inc. v. United States, 34 F. 4th 1375, 1385 (Fed. Cir. 2022) ("{T}he statutory entitlement to notice and opportunity to remedy any deficiency is unqualified."). Commerce must provide respondents with notice of any deficiencies in their responses and an opportunity to remedy those deficiencies.

Commerce failed to provide parties with adequate notice of the alleged discrepancies that it identified in their submissions. See Final I&D Mem. at 56 (P.R. 842). Examples of instances in which Commerce failed to provide these Vietnamese respondents with adequate notice of the alleged deficiencies that Commerce identified in their submissions abound. For example:

- For Hai Hien, Commerce identified [ ███████████████████████████ ████████ ]. See AFA Mem. at 12 (C.R. 412). Commerce cited to information from the International Trade Commission ("ITC") that the face veneers reported in Hai Hien's sales documents were too thick to be [ ██████████████ ]. See id. As Commerce did not identify the alleged discrepancy based on data from the ITC until its Preliminary Determination, and Commerce did not issue a supplemental questionnaire on this issue, the first notice that Hai Hien had of the alleged discrepancy was in Commerce's Preliminary Determination. Hai Hien sought to correct these discrepancies, as discussed in Section I.B below, in its NFI Submission.

- For Her Hui, for the first time in its Preliminary Determination, Commerce identified concerns that Her Hui's reported data conflicted with information submitted by the Government of Vietnam. See id. at 12. The Government of Vietnam ("GOV"), however, submitted its data after Her Hui responded to Commerce's second supplemental questionnaire. Compare Letter on Behalf of Her Hui Wood to Commerce re: Submission of Second Supplemental Quantity and Value Response (July 6, 2021) (Public Document)

(P.R. 292), <u>with</u> Letter on Behalf of the Government of Vietnam to Commerce re: Response to Supplemental Questionnaire (July 21, 2021) ("GOV Supplemental Response") (P.R. 351). Commerce <u>did not issue a supplemental questionnaire to Her Hui</u> on this issue after the GOV submitted its data[2] and, therefore, the first notice that Her Hui had of the alleged discrepancy in its responses was in Commerce's Preliminary Determination. Her Hui sought to correct these discrepancies, as discussed Section I.B below, in its NFI Submission.

- For Long Luu, Commerce faulted Long Luu for failing to provide any documentation in its second supplemental questionnaire that "it used its [ ███████████ ] as [ ███████████ ]" after Long Luu corrected certain information that it had submitted in its earlier questionnaire responses. <u>See</u> AFA Mem. at 18 (C.R. 412). Commerce <u>did not issue another supplemental questionnaire to Long Luu</u> and, thus, Commerce's Preliminary Determination was the first instance where Long Luu was made aware that Commerce sought further documentation. Long Luu sought to correct these discrepancies, as discussed in Section I.B below, in its NFI Submission.

- For Lechenwood, Commerce also identified concerns that Lechenwood's reported data conflicted with information submitted by the GOV. <u>See</u> AFA Mem. at 18 (P.R. 410). The GOV, however, submitted its data after Lechenwood responded to Commerce's second supplemental questionnaire. <u>Compare</u> Letter on Behalf of Lechenwood to Commerce re:

---

[2] In its Final Determination, Commerce noted that Vietnamese respondents had an opportunity to rebut the data placed by GOV as evidenced by the fact that certain Vietnamese respondents "submitted comments to clarify those discrepancies." Final I&D Mem. at 130 (P.R. 842). The fact that Commerce relies on another respondent's actions merely highlights that Commerce itself did not issue a supplemental questionnaire on the discrepancies between the GOV data and the Vietnamese respondents' submissions. Commerce's statutory mandate to provide adequate notice under 19 U.S.C. § 1677m(d) cannot be fulfilled by implication based on the actions of another party.

Submission of Second Supplemental Quantity and Value Response (July 9, 2021) (Public Version) (P.R. 338), with GOV Supplemental Response (P.R. 351). Commerce did not issue any supplemental questionnaire to Lechenwood on this issue after the GOV submitted its data and, therefore, the first notice that Lechenwood had of the alleged discrepancy in its responses was in Commerce's Preliminary Determination. Lechenwood sought to correct these discrepancies, as discussed in Section I.B below, in its NFI Submission.

- For Win Faith, Commerce expressed concerns that Win Faith was affiliated with a Chinese plywood manufacturer. See AFA Mem. at 23 (P.R. 410). In alleged support of its concerns, Commerce cited certain information contained in a sales contract submitted by Win Faith. See id. Commerce, however, did not ask Win Faith a single question related to allegedly conflicting information that Commerce identified in Win Faith's sales contract. See Letter on Behalf of Win Faith to Commerce re: Submission of Quantity and Value Response (Oct. 1, 2020) (Public Version) (P.R. 116); Letter on Behalf of Win Faith Commerce re: Quantity & Value Supplemental Questionnaire Response (Mar. 8, 2021) (Public Version) (P.R. 196); Letter on Behalf of Win Faith to Commerce re: Win Faith's Response to the Q&V Supplemental Questionnaire (July 6, 2021) (Public Version) (P.R. 288); Letter on Behalf of Win Faith to Commerce re: Q&V Second Supplemental Questionnaire (July 9, 2021) (Public Version) (P.R. 322). The first notice that Win Faith had of the alleged discrepancy in its responses, therefore, was in Commerce's Preliminary Determination. Win Faith sought to correct these discrepancies, as discussed in Section I.B below, in its NFI Submission.

As the above examples illustrate, Commerce failed to provide Hai Hien, Her Hui, Long Luu, Lechenwood, Tekcom and Win Faith with notice of the alleged discrepancies in their responses as required by 19 U.S.C. § 1677m(d).

Commerce's obligations under 19 U.S.C. § 1677m(d) mandated that Commerce waive its own internal and regulatory deadlines to allow for the submission of NFI to remedy these deficiencies given that Commerce failed to provide the Vietnamese respondents with notice of the alleged deficiencies their submissions. Commerce's internal and regulatory deadlines must be subordinate to Commerce's overarching mandate from the statute to calculate margins as "accurately as possible." Rhone Poulenc, Inc. v. United States, 899 F.2d 1185, 1191 (Fed. Cir. 1990) (emphasis supplied) (holding that the antidumping duty statute is designed such that Commerce determines "current margins as accurately as possible"). As soon as Hai Hien, Her Hui, Long Luu, Lechenwood, Tekcom and Win Faith became of aware of the alleged discrepancies identified by Commerce in their responses following Commerce's Preliminary Determination, these Vietnamese companies attempted to clarify or correct the alleged discrepancies through their NFI submissions. See Final I&D Mem. at 55-56 (P.R. 842). Commerce, however, rejected the NFI in these submissions as untimely. See id. at 56. The Court has previously found unlawful Commerce's decision to reject record evidence that detracted from its conclusion in the course of its proceedings in a prior attempt by the Petitioners to bring a circumvention case under the AD/CVD case on hardwood plywood from China. See Shelter Forest Int'l Acquisition, Inc. v. United States, __ CIT__, 497 F. Supp. 3d 1388 (2021) ("Shelter Forest I").

In Shelter Forest I, another instance in the plywood case where Commerce failed to follow the statute, the Court concluded that Commerce abused its discretion in rejecting certain NFI submitted by a voluntary respondent that detracted from Commerce's finding of circumvention

under a theory of later developed merchandise.  See id. at __, 497 F. Supp 3d at 1399-1402.  There the issue was whether the record contained evidence of "whether inquiry merchandise {i.e., merchandise subject to Commerce's circumvention inquiry,} is later-developed such that it should be considered 'within the scope of an outstanding antidumping or countervailing duty order issued{.}'" Id. at __, 497 F. Supp. 3d at 1399 (quoting 19 U.S.C. § 1677j(d)).  In its preliminary determination, Commerce found that voluntary respondent's submissions contained discrepancies concerning the content of the glue in its hardwood plywood and, therefore, the respondent failed to demonstrate that inquiry merchandise was commercially available prior to the initiation of Commerce's investigation.  See id. at __, 497 F. Supp. 3d at 1393-94.  Following its preliminary determination, despite failing to provide the voluntary respondent with notice of the deficiencies in the information that it previously submitted on the content of the glue used in its production of hardwood plywood, Commerce rejected as untimely the voluntary respondent's attempt to clarify the content of its glue.  See id. at __, 497 F. Supp. 3d at 1401-02.  The Court ultimately held that Commerce unreasonably rejected this NFI given that Commerce did not provide the voluntary respondent with "adequate notice that its glue content was deficient." Id.  The Court elaborated that:

> 19 C.F.R. § 351.301 and § 351.302 cannot be read to discharge Commerce of its obligation to notify respondents of deficiencies in submissions under § 1677m(d) and then allow Commerce to claim attempts to correct those deficiencies are untimely.  Under 19 U.S.C. § 1677m(d), Commerce must raise identified deficiencies such as this one and provide respondents with an opportunity to explain, correct or supplement it.

Id.  In other words, the particular facts underlying the proceeding in Shelter Forest I required that Commerce accept NFI submitted by the voluntary respondent beyond Commerce's internal and regulatory deadlines consistent with its obligations 19 U.S.C. § 1677m(d) to provide respondents

with an opportunity to remedy any deficiencies in their submissions. The Court, therefore, remanded for Commerce to consider the voluntary respondent's NFI submission. See Shelter Forest I, __ CIT at __, 497 F. Supp. 3d at 1402.

In that case, following remand where Commerce accepted the NFI and found that the voluntary respondent proved that it produced inquiry merchandise prior to the initiation of Commerce's circumvention investigation, the Court sustained Commerce's negative circumvention determination. See Shelter Forest Int'l Acquisition, Inc. v. United States, No. 19-00212, 2021 Ct. Intl. Trade LEXIS 90, at *19-20 (Ct. Int'l Trade July 21, 2021) ("Shelter Forest II"). Following an appeal by Petitioners, in affirming the Court's judgment in Shelter Forest II, the Federal Circuit held that the Court properly found that Commerce had originally abused its discretion in failing to provide the respondent with notice of alleged deficiencies in its questionnaire and later rejecting the NFI submitted by the voluntary respondent to correct the alleged deficiencies as required under 19 U.S.C. § 1677m(d).[3] See Shelter Forest Int'l Acquisition, Inc. v. United States, 2022 U.S. App. LEXIS 16491, *13 (Fed. Cir. 2022).

There is a pattern in Commerce's manner of administering the plywood case where Commerce manipulates the record to achieve its desired outcome. Just as it did in the circumvention determination underlying Shelter Forest, Commerce failed to abide by the statutory mandate to provide the respondents with notice of an alleged discrepancy and an opportunity to correct and clarify the discrepancy before rejecting NFI that was subsequently submitted to correct an alleged discrepancy in a respondent's responses. The courts have already found such failure to

---

[3] Commerce's failure to meet its obligation under 19 U.S.C. § 1677m(d) is also relevant to the M&G Plaintiffs' claims that Commerce's application of AFA was not supported by substantial evidence and was otherwise not in accordance with law. Pursuant to this Court's scheduling order, the M&G Plaintiffs reserve these arguments for their Tranche II case brief. See Scheduling Order.

constitute an abuse of discretion.  See Shelter Forest III, 2022 U.S. App. LEXIS 16491, at *13.

Commerce wrongly ignored the holdings in Shelter Forest I and Shelter Forest III in refusing to

accept the NFI submitted by certain Vietnamese respondents.  Commerce claimed that, unlike in

Shelter Forest, in the Vietnam assembly case here Commerce issued three questionnaires to the

Vietnamese respondents that "made clear what information Commerce was looking for regarding

the parties inputs, suppliers, and affiliates."  Final I&D Mem. at 61 (P.R. 842).  The examples

discussed above, however, establish that the only reasonable reading of the record was that

Commerce failed to provide certain Vietnamese respondents with notice regarding the alleged

deficiencies in their responses.  The NFI submitted by the Vietnamese respondents cannot

reasonably be considered "untimely" as Commerce found in rejecting these submissions given that

Commerce did not provide adequate notice of the alleged discrepancies in the Vietnamese

respondents' responses until its Preliminary Determination.  The holding in this case should be no

different than it was in Shelter Forest; Commerce abused its discretion in rejecting the NFI

submitted by Hai Hien, Her Hui, Long Luu, Lechenwood, Tekcom and Win Faith.

In rejecting the NFI submitted by the Vietnamese respondents on the basis that Commerce's

questionnaires clearly identified the information that it sought, Commerce cited Uniroyal Marine

Exps., Ltd. v. United States, 33 CIT 803, 805-9, 626 F. Supp. 2d 1312, 1314-17 (2009).  See Final

I&D Mem. at 59-60 (P.R. 842).  Commerce's reliance on Uniroyal Marine for the proposition that

"allegedly 'unclear' questionnaires are not a basis to accept untimely NFI" when respondents do

not seek clarification from Commerce regarding its questionnaires is unconvincing.  See id. at 60

(P.R. 842).  In the administrative proceeding underlying Uniroyal Marine, despite the respondent's

claims to the contrary, the Court found that there was insufficient evidence on the record that the

respondent submitted its required response to Commerce's questionnaire.  See Uniroyal Marine,

33 CIT at 808, 626 F. Supp. 2d at 1316. Here, as outlined above, Commerce's basis for applying AFA against Hai Hien, Her Hui, Long Luu, Lechenwood, Tekcom and Win Faith was not that these respondents failed to respond to the questionnaires but that their responses contained discrepancies. See AFA Mem. at 3-23 (P.R. 410). By contrast in Uniroyal Marine, the issue underlying that proceeding was not "unclear questions" but a respondent's failure to respond to Commerce's Q&V questionnaire despite its claims that it mailed a response to Commerce. See id., 33 CIT at 808, 626 F. Supp. 2d at 1313-14. Uniroyal Marine does not represent persuasive authority that supports Commerce's decision here. Further, while it is true that a respondent has a duty to establish a clear record, see Final I&D Mem. at 38 (P.R. 842), an equal burden falls on Commerce to make its requests "clear and give {that respondent} a chance to correct the error prior to the issuance of a final decision." Hitachi, 34 F.4th at 1384 (internal citation and quotation omitted). As is clear from the examples provided above, Commerce failed to give the Vietnamese respondents a chance to correct the alleged discrepancies that Commerce identified in their responses before Commerce rejected their NFI submissions and prior to Commerce's Final Determination. This rendered Commerce's determination to reject these NFI submissions as an abuse of discretion in that Commerce failed to provide Hai Hien, Her Hui, Long Luu, Lechenwood, Tekcom and Win Faith with adequate notice of the allegedly missing or incorrect information in their responses that their NFI sought to either clarify or remedy.

**B. Interests in Accuracy Outweighed Any Concerns by Commerce Over Finality and the Burden on Commerce to Review the NFI**

Accuracy is paramount. See Rhone, 899 F.2d at 1191. Even if this Court holds that Commerce complied with its obligations under 19 U.S.C. § 1677m(d), and as a result the Vietnamese respondents submitted their NFI beyond Commerce's regulatory deadlines, Commerce nonetheless abused its discretion in rejecting the NFI from Bao Yen, Hai Hien, Her Hui,

Long Luu, Lechenwood, Tekcom, Thang Long and Win Faith because "the circumstances here suggest that 'the interests in fairness and accuracy outweigh {any} burden {placed} upon Commerce'" in considering this information. Shelter Forest I, __ CIT at __, 497 F. Supp. 3d at 1402 (quoting Grobest & I-Mei Indus. (Vietnam) Co., Ltd. v. United States, 36 CIT 98, 125, 815 F. Supp. 2d 1342, 1367 (2012)).

Commerce does not have unlimited authority to reject NFI that it deems untimely when that information is necessary to obtain an accurate result. As Commerce notes in its Final Determination, the Federal Circuit has held that "{i}t is fully within Commerce's discretion to 'set and enforce deadlines" and "external parties cannot 'establish Commerce's deadlines or dictate to Commerce whether and when Commerce actually needs the requested information.'" Final I&D Mem. at 62 (P.R. 842) (quoting Dongtai Peak Honey Indus. v. United States, 777 F.3d 1343, 1352 (Fed. Cir. 2015)).[4] Commerce fails, however, to note the important constraints on its authority. In deciding that its rejection of the NFI submitted by certain Vietnamese respondents was consistent with its "regulations and practice," Final I&D Mem. at 58 (P.R. 842), Commerce wrongfully ignored that its discretion is not absolute, and its deadlines must bend when the circumstances so demand. See NTN Bearing Crop. v. United States, 74 F.3d 1204, 1207 (Fed. Cir. 1995); see also Timken United States Corp. v. United States, 434 F.3d 1345, 1353 (Fed. Cir. 2006). In the administrative proceeding underlying NTN Bearing, the respondent submitted NFI in response to

---

[4] Commerce's reliance on Dongtai Peak was also misplaced because the facts in that case are distinguishable from those in the proceeding underlying the instant appeal. In Dongtai Peak, the Federal Circuit made clear that Commerce's rejection of untimely-filed factual information did not prompt "fairness and accuracy" concerns because "Dongtai Peak was afforded both notice {of the deadlines} and a meaningful opportunity to be heard." Dongtai Peak, 777 F.3d at 1353. Such circumstances do not exist here. As discussed, the Vietnamese respondents had no reason to know that Commerce found that their responses were insufficient when Commerce did not provide them notice of any deficiencies consistent with 19 U.S.C. § 1677m(d).

Commerce's preliminary determination. See NTN Bearing, 74 F.3d at 1207-08. The Federal Circuit held that Commerce abused its discretion by rejecting the NFI simply because it had been submitted after a deadline provided in Commerce's regulations reasoning that "a regulation which is not required by statute may, in appropriate circumstances, be waived and must be waived where failure to do so would amount to an abuse of discretion." Id. at 1207. Similarly, in Timken the Federal Circuit affirmed the lower court's remand order to Commerce to consider NFI submitted by a respondent after Commerce's preliminary results but prior to the final results in that case. See Timken, 434 F.3d at 1347-48. In holding that Commerce abused its discretion in declining to consider factual information concerning the misclassification of certain sales by the respondent, the Federal Circuit explained that "Commerce is free to correct any type of importer error--clerical, methodology, substantive, or one in judgment -- in the context of making an antidumping duty determination, provided that the importer seeks correction before Commerce issues its final results and adequately proves the need for the requested corrections." Id. at 1353. In sum, Federal Circuit precedent plainly holds that Commerce does not have carte blanche authority to reject information merely because it is submitted after certain regulatory deadlines.

The precedent of the Court likewise holds that Commerce's authority to reject untimely information is not unlimited. In determining whether Commerce abused its discretion in rejecting an untimely filing, the Court has consistently applied a balancing test where it "review{s} on a case-by-case basis whether the interests of accuracy and fairness outweigh the burden placed on {Commerce} and the interest in finality." Grobest, 36 CIT at 123, 815 F. Supp. at 1365; see also Shelter Forest I, __ CIT at __, 497 F. Supp. 3d at 1402 (finding that "the circumstances {presented in that case} suggest that 'the interests in fairness and accuracy outweigh {any} burden {placed} upon Commerce'" (citation omitted)); Bosun Tools Co. v. United States, __ CIT __, __, 405 F.

Supp. 3d 1359, 1365 (2019) (holding that Commerce must weigh its "interest in ensuring finality, the burden of incorporating the information, and consideration of whether the information will increase the accuracy of the calculated dumping margins"). This balancing test applied by the Court is based on guiding principles outlined in binding Federal Circuit precedent. For instance, the Court in <u>Grobest</u> explained that in developing the balancing test it was:

> guided first by the remedial, and not punitive, purpose of the antidumping statute, <u>Chaparral Steel Co. v. United States</u>, 901 F.2d 1097, 1103-04 (Fed. Cir. 1990), and the statute's goal of determining margins 'as accurately as possible,' <u>Rhone Poulenc, Inc. v. United States</u>, 899 F.2d 1185, 1191 (Fed. Cir. 1990). The court also weighs 'the burden imposed upon the agency by accepting the late submission,' <u>Usinor Sacilor v. United States</u>, 18 {CIT} 1155, 1164, 872 F. Supp. 1000, 1008 (1994), and 'the need for finality at the final results stage,' <u>Timken U.S. Corp. v. United States</u>, 434 F.3d 1345, 1353 (Fed. Cir. 2006).

<u>Grobest</u>, 36 CIT at 122-23, 815 F. Supp. 2d at 1365; <u>see also</u> <u>Pro-Team Coil Nail Enter. v. United States</u>, __ CIT __, __, 419 F. Supp. 3d 1319, 1331-33 (2019) (citing to <u>NTN Bearing</u> for the proposition that regulatory deadlines must be waived when the circumstances require and holding that Commerce must reconsider its disregard of certain untimely information); <u>Bosun</u>, __ CIT at __, 405 F. Supp. 3d at 1365 (citing to <u>NTN Bearing</u>, 74 F.3d at 1207-08, to hold that Commerce abused its discretion in rejecting a submission filed shortly after the deadline due to technical difficulties); <u>Fischer S.A. v. United States</u>, 31 CIT 334, 346, 700 F. Supp. 2d 1364, 1375 (2010) (holding that Commerce abused its discretion in rejecting certain factual information submitted in a case brief because "<u>Timken</u> and <u>NTN Bearing</u> both stress that . . . {f}inality concerns only begin to counterbalance accuracy concerns when the administrative review reaches the final results stage"). The Court's balancing test implements binding Federal Circuit precedent, and this Court must apply this balancing test. Here, Commerce's interest in making an accurate circumvention determination outweighed the need for finality and any perceived burden imposed on Commerce

to consider the NFI.

The record evidence does not support Commerce's conclusion that it properly balanced "interests of accuracy and finality" in rejecting the NFI submitted by certain Vietnamese respondents. Final I&D Mem. at 58 (P.R. 842). In balancing interests of accuracy and finality, a court first examines whether the rejection of the NFI led to an inaccurate result. For example, the Court in Grobest found that Commerce abused its discretion in rejecting a late-filed questionnaire response from a respondent partially on the basis that the "Vietnam-wide rate of 25.76% assigned to {the respondent} . . . stands in stark contrast to the 4.27% rate assigned to the separate-rate respondents . . . which was later revised down to 3.92%" and the respondent had previously received a separate rate in the prior two reviews. Id., 36 CIT at 122-23, 815 F. Supp. at 1366 (internal citation omitted). The Court in that case, therefore, concluded that Commerce's rejection of NFI "worked a substantial hardship upon that company and resulted in an inaccurate dumping margin." Id., 36 CIT at 122-3, 815 F. Supp. at 1366 (internal citation omitted). Similarly, in Shelter Forest I, the Court found that the NFI submitted by the voluntary respondent was central to Commerce's determination because the information rebutted Commerce's affirmative circumvention finding. See Shelter Forest I, __ CIT at __, 497 F. Supp. 3d at 1402. Here too, Commerce's rejection of the NFI submitted by certain Vietnamese respondents was "central to Commerce's determination" and, thus, the rejection of this information "worked a substantial hardship" on those companies because it led to inaccurate results.

Commerce's rejection of the NFI led to inaccurate results because the information contained in the rejected NFI submissions either corrected or clarified the alleged discrepancies identified by Commerce in its Preliminary Determination concerning the submissions of Bao Yen, Hai Hien, Her Hui, Lechenwood, Long Luu, Tekcom, Thang Long and Win Faith. See Bao Yen

Rebuttal at 2 (Public Document) (P.R. 473) (detailing that it did not "manufacture and export products attributed to the 5 scenarios announced by {Commerce} in its preliminary determination"); Hai Hien Rebuttal at 4 (Public Version) (P.R. 551) (rebutting Commerce's assumption that Hai Hien "cannot possibly sell plywood with poplar face veneers" with certain sales documents); Her Hui Rebuttal at 3 (Public Version) (P.R. 555) (correcting its responses based on the company's misunderstanding to include "an exhaustive list of wood species"); Long Luu Rebuttal at 3 (Public Version) (P.R. 557) (providing an invoice to support a correction it made to its questionnaire responses); Lechenwood Rebuttal at 5 (Public Version) (P.R. 556) (submitting corrections to the "exhaustive list of all tariff schedule subheadings" and a "complete list of Vietnamese suppliers of plywood inputs"); Tekcom Rebuttal at 4 (Public Version) (P.R. 608) (discussing information related to its imports); Thang Long Rebuttal at 1 (Public Document) (P.R. 482) (submitting evidence of its "production of plywood using the locally sourced raw materials"); Win Faith Rebuttal at 3 (Public Version) (P.R. 562) (submitting information concerning its affiliates). Despite being directly responsive to Commerce's Preliminary Determination, Commerce universally rejected these submissions. See Final I&D Mem. at 5 (P.R. 842). In its Final Determination, Commerce applied AFA against these respondents based on the alleged discrepancies that these companies tried to correct in their NFI submissions. See id. at 75-102, 119-145; see also AFA Mem. at 12-14, 17-18, 23 (P.R. 410). Based on its AFA finding, Commerce prohibited these companies from participating in its certification regime for their "applicable exports of hardwood plywood from Vietnam." Final Determination, 88 Fed. Reg. at 46,741 (P.R. 844). Commerce's refusal to allow Bao Yen, Hai Hien, Her Hui, Lechenwood, Long Luu, Tekcom, Thang Long and Win Faith to participate in its certification regime unreasonably ignored the claims by these companies that they did not produce hardwood plywood under the production

scenarios subject to Commerce's affirmative circumvention finding. See Final I&D Mem. at 21 (P.R. 842) (noting that all of the "respondents reported no shipments of inquiry merchandise"). Commerce's rejection of the NFI, therefore, had a significant impact on these companies and led to an inaccurate result because it deprived them of the opportunity to certify that their products were not circumventing merchandise and doomed their entries to the application of AD/CVD duties totaling 206.34 percent even if they used not a single piece of Chinese wood veneer in their production. See Final Determination, 88 Fed. Reg. at 46,741 (P.R. 844) (providing the China-wide entity rates). A difference of 206.34 percent versus zero percent is an even greater consequence of refusing to consider the NFI than in Grobest. See id., 36 CIT at 123, 815 F. Supp. 2d at 1366.

Commerce's finding that accepting the NFI would lead to a delay in finality was also not supported by substantial evidence. See Final I&D Mem. at 63 (P.R. 842) (finding that it was "necessary to limit factual information to the time periods and purposes described in our regulations to best parse an extremely large volume of information from dozens of interested parties and to prevent unnecessarily prolonging these inquiries"). Again, although the balancing test varies case-by-case, the Court's analysis in Grobest provides useful guidance in determining whether accepting the NFI implicated finality concerns here. There, the Court found that even though the respondent submitted the questionnaire "95 days late," it "arrived early in the review process" and, therefore, there was "no concern with finality." Id., 36 CIT at 125, 815 F. Supp. 2d at 1367. The table below reflects the timelines in other cases where the Court has similarly held that Commerce abused its discretion in rejecting NFI as untimely:

| Case | Nature of new factual information proffered | # of days before final determination that new information was proffered |
|---|---|---|
| Grobest & I-Mei Indus. (Vietnam) Co. v. United States, 36 CIT 98, 100-01, 815 F. Supp. 2d 1342, 1348 (2012) | Untimely submitted SRC | Approximately 374 |
| Fischer S.A. v. United States, 34 CIT 334, 338, 700 F. Supp. 2d 1364, 1368-69 (2010) | Additional pages of sales agreement already on record | Approximately 95 |
| Pro-Team Coil Nail Enter. v. United States, __ CIT __, __, 419 F. Supp. 3d 1319, 1329 (Ct. Int'l Trade 2019) | Quantity & Value Schedule | Approximately 244 |
| Bosun Tools Co. v. United States, __ CIT __, 405 F. Supp. 3d 1359, 1361-63 (2019) | Second Supplemental Questionnaire Response | Approximately 210 |
| Shelter Forest Int'l Acquisition, Inc. v. United States, __ CIT __, __, 497 F. Supp. 3d 1388, 1394-95 (2021) | Supplemental production documents | Approximately 149 |

In the instant matter, Bao Yen submitted its NFI on August 19, 2022, Thang Long submitted its NFI on August 22, 2022, Hai Hien, Her Hui, Long Luu and Lechenwood submitted their respective NFI on September 16, 2022, Win Faith submitted its NFI on September 21, 2022 and Tekcom submitted its NFI on October 13, 2022. See Bao Yen Rebuttal (Public Document) (P.R. 473); Hai Hien Rebuttal (Public Version) (P.R. 551); Her Hui Rebuttal (Public Version) (P.R. 555); Lechenwood Rebuttal (Public Version) (P.R. 556); Long Luu Rebuttal (Public Version) (P.R. 557); Tekcom Rebuttal (Public Version) (P.R. 608); Thang Long Rebuttal (Public Document) (P.R. 482); Win Faith Rebuttal (Public Version) (P.R. 562). Even taking the latest-in-time submission from Tekcom, Commerce still had 274 days to review this information before its Final Determination. Compare Tekcom Rebuttal (P.R. 608), with Final I&D Mem. at 196 (P.R. 842) (showing a signature date of July 14, 2023). The 274+ days that Commerce had to review the NFI is well within the

range in other cases as outlined above where the Court has found that Commerce abused its discretion in rejecting NFI given that Commerce had more than sufficient time to review the information. Commerce had no finality concerns in accepting the NFI from certain Vietnamese respondents because Commerce had more than half a year — ample time — to review this NFI to ensure the accuracy of its Final Determination.

Further, in holding that Commerce's concerns for finality did not outweigh the need to accept NFI to reach an accurate result, the Court in Grobest found it persuasive that the respondent "was diligent in seeking to correct the omission of its questionnaire response, promptly filing its late submission as soon as it discovered the omission" and the court "credit{ed} these efforts to cooperate in the review and to maintain the accuracy of the dumping margins." Id., 36 CIT at 125, 815 F. Supp. 2d at 1367. Similarly, in Shelter Forest I, the Court noted that the voluntary respondent "promptly attempted to correct the deficiencies identified" by Commerce in the respondent's responses concerning the content of its E0 glue. Id., __ CIT at __, 497 F. Supp. 3d at 1401. In this case, Bao Yen, Hai Hien, Her Hui, Lechenwood, Long Luu, Tekcom, Thang Long and Win Faith all submitted their NFI as soon as they became aware of the alleged discrepancies in their responses following Commerce's Preliminary Determination. Specifically, these companies were "diligent" to correct the alleged omissions in their responses by submitting their NFI around two months after Commerce published its Preliminary Determination in the Federal Register. See Prelim Determination, 87 F.R. at 45,753 (P.R. 415) (publishing Commerce's Preliminary Determination on July 29, 2022). Following its Preliminary Determination, Commerce repeatedly extended the deadline for its Final Determination. See Final I&D Mem. at 5 (P.R. 842). Given that the Vietnamese companies worked to correct any alleged discrepancies in their responses to Commerce's questionnaires as soon as they received notice in Commerce's

Preliminary Determination, and Commerce had abundant available time to review this information, Commerce's finding that any concerns over finality trumped Commerce's requirement to ensure an accurate result by reviewing these submissions was not supported by substantial evidence.

Nor can Commerce reasonably claim that reviewing the NFI would have increased the duration of these inquiries given that these submissions were all relatively small in terms of the number pages of submitted information. In all, the NFI contained in the rejected submissions total approximately 121 pages. See Bao Yen Rebuttal (Public Document) (P.R. 473) (totaling approximately 11 pages of NFI); Hai Hien Rebuttal (Business Proprietary Document) (C.R. 441) (totaling approximately 5 pages of NFI); Her Hui Rebuttal (Business Proprietary Document) (C.R. 443) (totaling approximately 11 pages of NFI); Lechenwood Rebuttal (Business Proprietary Document) (C.R. 444) (totaling approximately 12 pages of NFI); Long Luu Rebuttal (Business Proprietary Document) (C.R. 445) (totaling approximately 19 pages of NFI); Tekcom Rebuttal (Business Proprietary Document) (C.R. 453) (totaling approximately 55 pages of NFI); Thang Long Rebuttal (Public Document) (P.R. 482) (totaling approximately 4 pages of NFI); Win Faith Rebuttal (Business Proprietary Document) (C.R. 447) (totaling approximately 4 pages of NFI). By comparison, the Court in Shelter Forest I found that it was not burdensome for Commerce to review an "approximately 100-page submission" because Commerce had four months to review this information prior to its final determination. Id., ___ CIT at ___, 497 F. Supp. 3d at 1402. Here, Commerce had an even greater amount of time, approximately nine months, to review a comparable number of pages to the NFI at issue in Shelter Forest I. Commerce, therefore, cannot reasonably conclude that it would have been overly burdensome to review approximately 121 pages in approximately nine months.

Commerce's conclusion that its rejection of NFI submitted by certain Vietnamese respondents was consistent with "other cases where the {court} and the {Federal Circuit} sustained Commerce's determinations to reject untimely NFI as part of its mandate to administer AD/CVD laws" falls flat given the cases Commerce relied on are distinguishable from this appeal. Final I&D Mem. at 108 (P.R. 842); see also id. at 61 ("Moreover, the courts have consistently held that Commerce's rejection of NFI submitted after the applicable deadline is reasonable and not arbitrary")). For example, in relying on a quotation from Essar Steel in its Issues and Decision Memorandum relevant to its Final Determination, Commerce itself highlighted the factual differences between that case and the factual information submitted by the Vietnamese respondents in this appeal. The Federal Circuit noted in Essar Steel that the respondent "withheld" information only made concessions about this facility "when Essar knew that it would face countervailable subsidies." Final I&D Mem. at 58 (P.R. 842) (quoting Essar Steel v. United States, 678 F.3d 1268, 1276 (Fed. Cir. 2012)). Here, the Vietnamese respondents did not withhold information but merely sought to correct alleged discrepancies in their responses, or submit information that they did not know they were required to provide, consistent with the expectation that first-time respondents are not held to a standard of "perfection." Nippon Steel Corp. v. United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003).

Also, as Commerce quoted in its Final Determination, the Federal Circuit found in Essar Steel that "Essar's failure to cooperate with Commerce's questions lengthened the investigation." Final I&D Mem. at 58 (P.R. 842) (quoting Essar Steel, 678 F.3d at 1276). Commerce, analyzing the facts in the instant appeal to those at issue in Essar Steel, wrongly concluded that the Vietnamese respondents "failure to cooperate with Commerce's questions increased the duration of these inquiries because Commerce was required to closely examine multiple submissions from

46 responding parties." Final I&D Mem. at 58 (P.R. 842). This statement conflicts with Commerce's own actions in this case. Commerce concluded that it could not select mandatory respondents in this case because "all respondents reported no shipments of inquiry merchandise." Id. at 21. Commerce cannot reasonably conclude that a review of this NFI would have lengthened the investigation when the procedures of this case were a creature of Commerce's own making by insisting on reviewing responses from 46 companies. Further, as established above, Commerce's conclusion that it faced a significant burden in reviewing the information contained in the NFI was unreasonable. Commerce's reliance on the holding in Essar Steel is unconvincing.

Similarly, Commerce incorrectly found that the facts in this case are similar to those at issue in Yantai Timken Co., Ltd. v. United States, 31 CIT 1741, 1753, 521 F. Supp. 2d 1356, 1370 (2007) and Deacero S.A.P.I. de C.V. v. United States, __ CIT __, __, 353 F. Supp. 3d. 1303, 1307 (2018), where the Court found that Commerce did not abuse its discretion in rejecting certain NFI or other corrections to a respondent's responses. See Final I&D Mem. at 59, 62 (P.R. 842). In Yantai Timken, the respondent sought to submit NFI after verification had taken place. See id., 31 CIT at 1755, 521 F. Supp. 3d at 1371. Indeed, the Court specifically noted that Commerce rejected the additional NFI because it "was not subjected to verification." Id. By contrast, here the Vietnamese respondents submitted their responses well before verification. See Final I&D Mem. at 5 (P.R. 842) (noting that Commerce conducted verification "{f}rom October 17 through 25, 2022"). Not only did Commerce have time to solicit further clarification from these respondents as necessary concerning their NFI, but Commerce also could have confirmed this information at verification. Likewise, the facts underlying Deacero are distinguishable from this action. In Deacero, the Court found that Commerce did not abuse its discretion in disregarding corrected information because the company "did not substantiate the revisions made" to its prior submissions

in response to a later supplemental questionnaire.  Id., __ CIT at __, 353 F. Supp. 3d at 1309.

Commerce did not seek clarification on many of the alleged discrepancies that the NFI submitted

by the Vietnamese respondents sought to clarify or correct.  Commerce's reliance on Yantai

Timken and Deacero to support its rejection of the NFI from the Vietnamese respondents was

unreasonable because the facts in both of those cares are distinguishable from this action.

Here, Commerce's requirement to ensure an accurate result outweighed any finality

concerns and the insignificant burden faced by Commerce in reviewing the NFI given the ample

time that Commerce had to review the limited amount of information contained in these

submissions.  For these reasons, the Court should remand Commerce's affirmative circumvention

finding because Commerce's abused its discretion in rejecting NFI submitted by certain

Vietnamese respondents and its determination was further unsupported by substantial evidence

and not in accordance with law.

## II. COMMERCE'S AFFIRMATIVE CIRCUMVENTION FINDING WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND WAS OTHERWISE NOT IN ACCORDANCE WITH LAW BECAUSE COMMERCE ARBITRARILY RELIED ON FLAWED DATA

In addition to Commerce's flawed reliance on data from its scope inquiry of Vietnam

Finewood Co. ("Finewood") ("Finewood Scope Inquiry") as established in the DH Consolidated

Plaintiffs' 56.2 Brief, Commerce's affirmative circumvention finding was also unsupported by

substantial evidence and otherwise not in accordance with law because Commerce arbitrarily

relied on data that were both unrelated to the companies under investigation and outdated as

compared to Commerce's circumvention inquiry.

Commerce acted arbitrarily by failing to provide a "satisfactory explanation" for its

decision to rely on data in a case that has been overturned by the court.  Invenergy, __ CIT at __,

552 F. Supp. 3d at 1394 (citation omitted).  As part of its circumvention inquiry, Commerce

examined whether the process of assembly or completion in Vietnam was minor or insignificant. See Final I&D Mem. at 12 (P.R. 842). In making this determination, Commerce relied on information submitted by Finewood in Commerce's separate scope proceeding to support its conclusion that the value of processing in Vietnam represents a small proportion of the value of merchandise imported into the United States and further that the value of the merchandise produced in China is a significant portion of the total value of the merchandise exported to the United States. See Prelim I&D Mem at 19-25 (P.R. 409) (citing to Mem. from Kabir Archuletta to the File re: Productions Costs Analysis and Data for the Preliminary Determination (July 22, 2022) (Public Version) ("Cost Production Mem.") (P.R. 411); see also Final I&D Mem. at 13 (P.R. 842) (citing to the Cost Production Memorandum in support of its finding that "most of the productions costs for hardwood plywood was accounted for in China"). As Commerce itself recognized, however, the Court remanded Commerce's determination in Finewood and Commerce found in its remand redetermination that "two-ply panels from China were not subject to the scope of the orders." Id. at 10 (citing Vietnam Finewood Co. v. United States, __ CIT __, 633 F. Supp. 3d 1243 (2023)). Further, Commerce relied on Finewood as a proxy for the entire Vietnam industry despite the fact that Finewood utilized Chinese raw materials in its cores while not a single Vietnamese respondent reported using any Chinese core materials. See Final I&D Mem. at 21 (P.R. 842). By choosing a company that used Chinese inputs, and that Commerce had already found "guilty," despite being later overturned by the courts, in its scope proceeding as the model for all of Vietnam, Commerce's country-wide affirmative finding of circumvention was a foregone conclusion. Commerce failed to provide any explanation for its continued reliance on the data from the Finewood Scope Inquiry after the Court found that Commerce's scope determination in that proceeding was not supported by substantial evidence and was otherwise not in accordance

with law.  Nor could Commerce supply such an explanation for its arbitrary finding as there is no "rational connection" between Commerce's affirmative circumvention finding ahd the overturned Finewood data.  Invenergy, __ CIT at __, 552 F. Supp. 3d at 1394 (citation omitted).  Commerce's affirmative circumvention determination, therefore, was not supported by substantial evidence and was otherwise not in accordance with law because Commerce acted arbitrarily by relying on data from the overturned Finewood decision.

Commerce's affirmative circumvention determination was also not supported by substantial evidence and otherwise not in accordance with law because the Finewood data were outdated compared to the period of investigation of Commerce's circumvention inquiry.  The below table presents some of the information from the entirely separate, and ultimately invalidated Finewood decision that Commerce relief on to conclude that the assembly of plywood in Vietnam from hardwood plywood inputs was minor or insignificant:

| Data Point | Source Document | Source | Proceeding | Time Period of Data |
|---|---|---|---|---|
| Yield Ratio from poplar veneer to plywood | Mem. from Nicolas Mayora to the File re: Placing Documents Relevant to this Proceeding on the Record at Document 14, at Exhibit AI-5 Chengen Supplemental Section D Questionnaire Response (December 2, 2019) (February 18, 2022) (Business Proprietary Document) ("EAPA Documents") (C.R. 396-406) and Cost Production Mem. at n.5 (Public Version) (P.R. 411) | Linyi Chengen | China Administrative Review | [ ███████ ███████ ] |
| Per-Unit Consumption Quantities (i.e., "FOPs") to Produce Panels of Containing 2-ply veneer from China | EAPA Documents at Document 1, Plywood China EAPA 7252 Final Scope Ruling Memorandum at 37-41 (C.R. 396-406); Cost Production Mem. at Attach., [ ███████ ███ ] (Business Proprietary Document) (413-414) and Cost Production Mem. at 2 (Business Proprietary Document) (413-414) | Vietnam Finewood | Finewood Scope Inquiry | [ ███████ ███████ ] |

| Cost Information, i.e., Surrogate Values, to Value FOPs | Cost Production Mem. at Attach., [ ▇▇▇ ] (Business Proprietary Document) (413-414) and Cost Production Mem. at 2 (Business Proprietary Document) (413-414) | [ ▇▇▇▇▇▇ ] | Finewood Scope Inquiry | [ ▇▇▇▇▇▇ ] |
| --- | --- | --- | --- | --- |
| U.S. selling price data | Cost Production Mem. at Attach., [ ▇▇▇ ] (Business Proprietary Document) (C.R. 413- 414) and Cost Production Mem. at 3 (Public Version) (P.R. 411) | Vietnam Finewood | Finewood Scope Inquiry | [ ▇▇ ] |

In the instant proceeding, Commerce had the Vietnamese respondents report data covering December 2016 through March 2020. See Letter on Behalf of Commerce to All Interested Parties re: Quantity and Value Questionnaire for Vietnamese Producers and Exporters of Certain Hardwood Plywood Products at Attach. II (Sept. 10, 2020) (Public Document) (P.R. 64). The information gathered in the Finewood Scope Inquiry, by contrast, generally [ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ] and related to a company to whom Commerce did not issue a Q&V questionnaire in this very proceeding. Not to mention the fact that Commerce's determination with respect to Finewood was ultimately overturned.

Commerce did not address the issue of these outdated data in its Final Determination despite the parties expressly raising this concern. Compare Letter on Behalf of the Importers'

Alliance to Commerce re: Case Brief at 32-35 (Jan. 9, 2023) (Public Version) ("M&G Case Brief") (P.R. 746) (arguing that the Finewood data was outdated), with Final I&D Mem. at 10, 35, 51 (P.R. 842) (citing to the Finewood data but failing to discuss any arguments that said data is outdated). Because Commerce did not consider all the facts that "detract{ed}" from its conclusion, Commerce's determination was unsupported by substantial evidence and contrary to law. Changzhou Trina, 975 F.3d at 1326 (citation omitted). Nor did Commerce provide a "reasonably discernable" explanation for relying on such data. NMB, 557 F.3d at 1319. Even if Commerce had addressed the arguments regarding the outdated, faulty data from the Finewood Investigation, such outdated information, that [ ██████████████████████████████ ], would not represent relevant evidence that a "reasonable mind" would accept as adequate to support Commerce's determination that the process of assembly or completion of the hardwood plywood in Vietnam is minor or insignificant in the instant proceeding because Commerce lacked information on plywood production in Vietnam for the [ ████ ] period of its investigation at issue in this case. See Huayin, 322 F.3d at 1374.

For these reasons, the Court should remand Commerce's affirmative circumvention finding because Commerce's finding was not supported by substantial evidence and was otherwise not in accordance with law because Commerce arbitrarily relied on outdated data that had already been found to be fatally flawed by the Court in its earlier Finewood determination.

**III.    COMMERCE UNLAWFULLY EXPANDED THE SCOPE OF ITS AFFIRMATIVE CIRCUMVENTION FINDING TO COVER MERCHANDISE IT EXPRESSLY STATED WAS NOT SUBJECT TO THE SCOPE/CIRCUMVENTION PROCEEDING**

Commerce acted arbitrarily and capriciously and abused its discretion by implementing a certification regime and issuing customs instructions that conflicted with guidance provided by Commerce on the scope of its circumvention inquiry. At the outset of this case, Commerce

expressly stated that "{t}he merchandise subject to these anticircumvention and scope inquiries does not include core veneers fully produced in Vietnam or a third-country that are assembled into a veneer core platform in Vietnam and combined with a face and back veneer produced in China" (i.e., "safe harbor merchandise"). Mem. from Kabir Archuletta to The File re: Clarification of Merchandise Subject to Anti-Circumvention and Scope Inquiries at 2 (July 9, 2020) (Public Document) (P.R. 21). Indeed, the Petitioner stated on the record that it was "not requesting that {Commerce} include in its analysis core veneers fully produced in Vietnam or a third country assembled into a veneer core platform in Vietnam and combined with a face and back veneer produced in China." Mem. from Dep't of Commerce to the File Re: Moving Public Versions and Public Documents to Vietnam Assembly Anti-Circumvention Segment at Part Public Version 2 (July 6, 2020) (Public Version) (P.R. 10-20) (attaching Letter on Behalf of the Coalition to Commerce re: Coalition's Response to Request for Clarification at 6 (May 12, 2020) (Public Version) (Barcode: 3974382-01)). Commerce arbitrarily reversed course in its Preliminary and Final Determinations ignoring its own express statement to the parties on the public docket that safe harbor merchandise was not covered by the scope/circumvention proceeding. Commerce instead brought that expressly excluded merchandise back into the proceeding, implementing procedures in its both its Preliminary and Final Determinations that prevented certain blacklist companies, i.e., those companies that Commerce found did not fully cooperate with its investigations and applied AFA against, from participating in Commerce's certification regime without specifying that this certification regime does not apply to safe harbor merchandise. See Prelim. Determination, 87 Fed. Reg. at 45,754 (P.R. 415); Final Determination, 88 Fed. Reg. 46,740 (P.R. 844). In doing so, Commerce unlawfully expanded the scope of its investigation to cover certain merchandise that both Commerce and the Petitioner intended to exclude from the

scope of these investigations. Commerce abused its discretion in arbitrarily implementing a certification regime and issuing customs instructions that conflicted with earlier guidance provided by Commerce in its circumvention inquiry and prevented U.S. Customs and Border Protection ("CBP") from exercising its own expertise.[5]

Indeed, after stating that Commerce's language complied with the Petitioner's intent, Commerce then acknowledged that the "{p}arties are correct that the petitioner did not intend for the above-described merchandise to be included in the inquiries, and that Commerce clarified in the July 9 Memorandum that the merchandise was not one of the production scenarios Commerce intended to examine in these inquiries." Final I&D Mem. at 172 (P.R. 842). By Commerce's own acknowledgement, the record is clear that both Commerce and the Petitioner never intended for Safe Harbor merchandise to be covered by Commerce's circumvention inquiry. Commerce abuses its discretion when its "decision is based . . . on factual findings that are not supported by substantial evidence." Consol. Bearings, 412 F.3d at 1269. Commerce's finding that its instructions to CBP were consistent with its prior guidance, and the Petitioner's intent, was not supported by substantial evidence given that the record is clear that safe harbor merchandise was never intended to be covered by these investigations. Commerce abused its discretion in implementing a certification regime and issuing customs instructions that covered safe harbor merchandise.

---

[5] In its cash deposit instructions, Commerce similarly omitted any reference to the express exclusion of safe harbor merchandise. See Letter on Behalf of the Importers' Alliance to Commerce re: Request to Correct Cash Deposit Instructions at Ex. 1 (Aug. 10, 2022) (Public Document) (P.R. 443) (attaching Customs Instructions No. 2220401 (Aug. 8, 2022) and Customs Instructions No. 2220409 (Aug. 8, 2022)); see also Customs Instructions from Commerce to CBP re: Final Determination of Circumvention and Final Scope Ruling (Aug. 3, 2023) (P.R. 845).

As a further matter, by failing to exclude safe harbor merchandise in its certification regime and instructions to CBP, Commerce also abused its discretion by making an "unreasonable judgment in weighing relevant factors" given that any enforcement concerns Commerce had in excluding safe harbor merchandise could easily be protected by CBP's own authority. See id. Commerce found that "excluding certain merchandise from the certification program would undermine the enforcement mechanism at Commerce's disposal; companies could simply enter such merchandise as non-subject merchandise and avoid AD/CVD duties with the knowledge that Commerce would not be able to audit such claims." Final I&D Mem. at 174 (P.R. 842). Commerce's finding, however, disregards that CBP maintains its own independent authority to conduct such an audit for example, by issuing Requests for Information ("CF-28"), physical exam, or other techniques within CBP's routine expertise. See, e.g., 19 U.S.C. § 1509(a). Here, whether plywood contains a Chinese core, and is subject to duties, is readily confirmable by the naked eye and could be easily audited by CBP. See M&G Case Brief at 39 (Public Version) (P.R. 746).[6] But Commerce's certification regime and instructions to CBP force U.S. importers to declare safe harbor merchandise, which Commerce expressly affirmed from the very outset of the case is excluded from the investigation, as subject to AD/CVD under the Orders against China because a Vietnamese company allegedly failed to fully cooperate with Commerce's investigations. Commerce's existing customs instructions require CBP to close its eyes to the physical reality of an imported article and to fail to fulfil its independent responsibility to examine merchandise and

---

[6] The certification regime subject to this appeal is distinguishable from HFCs R-421A from China, as relied on Commerce, where "Commerce examined a subset of merchandise (consisting of unpatented R-421A) that is not readily distinguishable from a broader pool of merchandise based on its physical characteristics (i.e., patented or unpatented R-421A)." Final I&D Mem. at 173-174 (P.R. 842) (citation omitted). As detailed above, it is easy to distinguish whether hardwood plywood contains a Chinese core and is subject to duties under Commerce's affirmative circumvention finding.

determine its essential character. Commerce's certification regime and customs instructions, thus, unlawfully prevent CBP from exercising its expertise and independent responsibility to determine the nature and character of imported goods. Commerce abused its discretion in adopting a certification regime and issuing customs instructions that weighed Commerce's need to enforce its own AD/CVD orders as greater than providing CBP and U.S. importers with proper guidance concerning the scope of those orders given that Commerce's enforcement concerns are readily protected by CBP's own independent authority to determine the nature of character of imported goods. See Consol. Bearings, 412 F.3d at 1269.

Not only did Commerce act arbitrarily and capriciously and abuse its discretion, Commerce's overall affirmative circumvention finding was also not supported by substantial evidence and was otherwise not in accordance with law because Commerce's certification regime and customs instructions unlawfully result in the application of duties to demonstrably non-scope merchandise. Commerce concluded that "{r}emoving certain non-inquiry merchandise from the certification requirement would conflict with Commerce's mandate to provide an administrable and enforceable remedy by making the enforcement of the affirmative circumvention determination more difficult." Final I&D Mem. at 173 (P.R. 842). Commerce's conclusion, however, ignores its underlying duty to only collect duties on merchandise subject to the scope of an order. Indeed, the Federal Circuit has held that:

> the requirement that antidumping orders only be applied to merchandise that they may be reasonably interpreted to include ensures that before imposing a significant exaction in the form of an antidumping duty, Commerce will provide 'adequate notice of what conduct is regulated by the order . . . The requirement therefore reflects the broader due-process principle that before an agency may enforce an order or regulation by means of a penalty or monetary sanction, it must provide regulated parties fair warning of the conduct {the order or regulation} prohibits or requires.

<u>Mid Continent Nail Corp. v. United States</u>, 725 F.3d 1295, 1300-01 (Fed. Cir. 2013). Commerce unequivocally excluded a carefully defined product, i.e., one with core veneers fully produced in Vietnam or a third-country that are assembled into a veneer core platform in Vietnam and combined with a face and back veneer produced in China. Commerce failed to provide parties with "fair warning" of the conduct prohibited by expanding its investigations to cover safe harbor merchandise produced and/or exported by the blacklist companies by subjecting such merchandise to both its certification regime and customs instructions. Both Vietnamese respondents and U.S. importers relied on Commerce's own statement that safe harbor merchandise was not covered by the scope of these investigations while Commerce stretched the length of its investigation for almost a year before even issuing its Preliminary Determination. <u>See</u> Prelim. I&D Mem. at 1 (P.R. 409) (stating that Commerce initiated its circumvention inquiry in June 2020 and dating its Preliminary Determination memorandum on July 22, 2022); <u>see also</u> <u>Prelim. Determination</u>, 87 Fed. Reg. at 45,753 (P.R. 415) (providing the first indication that safe harbor merchandise may be subject to duties). Commerce then further delayed any potential relief for the blacklist companies shipping safe harbor merchandise by requiring that these companies go through a lengthy administrative review process, as opposed to a changed circumstances review, to demonstrate their eligibility to participate in Commerce's certification regime. <u>See</u> Final I&D Mem. at 186-188 (P.R. 842). The Court should recognize that Commerce started the circumvention inquiry by explicitly defining a safe harbor product, based on its physical characteristics, and then reversing course almost a year later after importers had relied on Commerce's instruction. Commerce's about-face after such a lengthy time, where importers relied on the safe harbor instruction, was an abuse of the administrative process. Moreover, Commerce lost sight of the fact that AD/CVD applies based on the scope of the case and the physical characteristics of an imported product, not based on the

alleged <u>behavior</u> of the parties involved.  <u>See</u> <u>Mid Continent</u>, 725 F.3d at 1300-01.  Commerce's Final Determination, therefore, was not supported by substantial evidence and was otherwise not in accordance with law because its certification regime and customs instructions impose duties on merchandise that Commerce stated from the outset of the case was not subject to the AD/CVD orders on hardwood plywood from China.

For these reasons, the Court should remand the Final Determination because Commerce acted arbitrarily and abused its discretion in implementing a certification regime and issuing customs instructions that failed to exclude safe harbor merchandise, resulting in an affirmative circumvention determination as not supported by substantial evidence not in accordance with law.

## IV.    M&G PLAINTIFFS ADOPT COMMENTS FILED BY OTHER RESPONDENT PARTIES

In addition to adopting the arguments in DH Consolidated Plaintiffs 56.2 Brief that Commerce's affirmative circumvention finding applied on a country-wide basis was not supported by substantial evidence and was otherwise not in accordance with law, the M&G Plaintiffs also hereby adopt and incorporate by reference the briefs filed by other respondent parties to the extent they do not dispute the arguments presented in this brief.

## CONCLUSION

For the foregoing reasons, the Court should grant this Rule 56.2 Motion for Judgment on the Agency Record because Commerce's actions as described above were either an abuse of discretion, arbitrary and capricious and not supported by substantial evidence or otherwise not in accordance with law.

Accordingly, the Court should remand the Final Results to Commerce for a determination in accordance with the points of fact and law discussed above.

Respectfully submitted,

Dated: March 4, 2024

/s/ Jeffrey S. Grimson
Jeffrey S. Grimson
Jill A. Cramer
Bryan P. Cenko
*Counsel to Concannon Lumber Company, Northwest Hardwoods, Inc., Richmond International Forest Products LLC, Taraca Pacific Inc., UFP International, LLC, Medallion Forest Product, Hardwoods Specialty Products USLP, Paxton Hardwoods LLC and Rugby Holdings LLC dba Rugby Architectural Building Products*

**CERTIFICATE OF COMPLIANCE**

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Jeffrey S. Grimson, hereby certify that this brief complies with the word limitations set forth in Paragraph 2(B) of the Standard Chamber Procedures and the Scheduling Order to this case. Excluding the table of contents, table of authorities, signature block and any certificates of counsel, the word count for this brief is 11,812 words.

Dated: March 4, 2024

/s/ Jeffrey S. Grimson
Jeffrey S. Grimson
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, D.C. 20015
202-688-3610
trade@mowrygrimson.com
*Concannon Lumber Company, Northwest Hardwoods, Inc., Richmond International Forest Products LLC, Taraca Pacific Inc., UFP International, LLC, Medallion Forest Product, Hardwoods Specialty Products USLP, Paxton Hardwoods LLC and Rugby Holdings LLC dba Rugby Architectural Building Products*