## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| SHELTER FOREST INTERNATIONAL ACQUISITION, INC., <br><br> *Plaintiff,* <br><br> and <br><br> GREATRIVER WOOD CO., LTD., ET AL., <br><br> *Consolidated Plaintiffs,* <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant,* <br><br> and <br><br> COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD, <br><br> *Defendant-Intervenor.* | Consol. Court No. 23-00144 |

## <u>CONSOLIDATED PLAINTIFFS' RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>

Pursuant to Rule 56.2 of this Court, Consolidated Plaintiffs Cabinetworks Group, Inc. f/k/a/ ACProducts, Inc., ACPI Wood Products, LLC, Cabinetworks Group Middlefield, LLC, Cabinetworks Group Michigan, LLC, Boise Cascade Building Materials Distribution LLC, and USPLY LLC (collectively, "ST&R Consolidated Plaintiffs"), hereby move for judgment on the agency record. ST&R Consolidated Plaintiffs challenge the U.S. Department of Commerce's (the "Department" or "Commerce") final affirmative determination concerning the anticircumvention inquiry of the antidumping and countervailing *Orders* on certain hardwood plywood products from

the People's Republic of China, conducted pursuant to Section 781(b) of the Tariff Act of 1930, as amended, and 19 C.F.R. § 351.225(g).  *See Certain Hardwood Plywood Products From the People's Republic of China: Final Scope Determination and Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders*, 88 Fed. Reg. 46,740 (Dep't of Commerce Jul. 20, 2023) ("*Final Determination*"); *see also* Memorandum from James Maeder, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, to Lisa W. Wang, Assistant Secretary for Enforcement and Compliance, *Subject: Issues and Decision Memorandum for Circumvention and Scope Inquiries of the Antidumping Duty and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China* (Jul. 14, 2023) ("Final I&D Memorandum").

Support for this motion is set forth in the brief annexed hereto and is hereby incorporated by reference.  A proposed order is also attached.

WHEREFORE, ST&R Consolidated Plaintiffs respectfully requests that this Court grant this motion, hold that Commerce's *Final Circumvention Determination* is unsupported by substantial evidence and is not otherwise in accordance with the law, and remand the *Final Circumvention Determination* to Commerce for disposition consistent with the Court's final decision.

Respectfully Submitted,

/s/ Kristen Smith
Kristen Smith
Sarah E. Yuskaitis

**SANDLER TRAVIS & ROSENBERG, P.A.**
1300 Pennsylvania Avenue, N.W.
Suite 400
Washington, DC 20004
Tel: (202) 730-4965
Fax: (202) 842-2247

*Counsel to Cabinetworks Group, Inc. f/k/a/*
*ACProducts, Inc., ACPI Wood Products,*
*LLC, Cabinetworks Group Middlefield,*
*LLC, Cabinetworks Group Michigan, LLC,*
*Boise Cascade Building Materials*
*Distribution LLC, USPLY LLC*

Dated: March 4, 2024

# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

SHELTER FOREST INTERNATIONAL
ACQUISITION, INC.,

         *Plaintiff,*

   and

GREATRIVER WOOD CO., LTD., ET AL,

         *Consolidated Plaintiffs,*

   v.

UNITED STATES,

         *Defendant,*

   and

COALITION FOR FAIR TRADE IN
HARDWOOD PLYWOOD,

         *Defendant-Intervenor.*

Consol. Court No. 23-00144

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS
RULE 56.2 MOTION FOR JUDGMENT
ON THE AGENCY RECORD**

Kristen Smith
Sarah E. Yuskaitis
**Sandler Travis & Rosenberg, P.A.**
1300 Pennsylvania Avenue, N.W.
Suite 400
Washington, DC 20004
Tel: (202) 730-4965

Dated: March 4, 2024

## TABLE OF CONTENTS

I.      RULE 56.2 STATEMENT ................................................................................. 1

  A.   THE ADMINISTRATIVE DETERMINATION UNDER REVIEW ................................. 1

  B.   ISSUES OF LAW PRESENTED ......................................................................... 2

II.     STATEMENT OF FACTS ................................................................................ 3

III.    SUMMARY OF ARGUMENT .......................................................................... 3

IV.     ARGUMENT .................................................................................................. 6

  A.   STANDARD OF REVIEW ............................................................................... 6

  B.   COMMERCE'S ACTIONS BARRED INTERESTED PARTIES FROM ADEQUATELY
       PARTICPATING IN THIS PROCEEDING AND ARE CONTRARY TO LAW ................... 7

    1.   Interested Parties Relied on Commerce's Definition of Inquiry Merchandise in the
         *Initiation Notice* and Commerce's Clarification Memorandum ............................... 7

    2.   Commerce's *Final Determination* is Deficient as Commerce Did Not Comply With the
         Statutory Requirements to Apply AFA And The Decision Is Therefore Contrary to Law ... 13

    3.   Commerce's Refusal to Allow New Factual Information to Correct Perceived
         Deficiencies and/or Allow Adequate Participation from Interested Parties is Contrary to
         Law                                       ...................................................................... 18

    4.   Commerce's Actions In the Underlying Inquiries Were Unreasonable ......................... 27

  C.   COMMERCE'S FAILURE TO ISSUE APPROPRIATE CBP INSTRUCTIONS IS
       CONTRARY TO LAW ................................................................................... 29

  D.   ST&R CONSOLIDATED PLAINTIFFS ADOPT COMMENTS FILED BY
       PLAINTIFFS AND CONSOLIDATED PLAINTIFFS ........................................... 31

V.      CONCLUSION ............................................................................................ 31

# **TABLE OF AUTHORITIES**

## **Cases**

*Aireko Constr., LLC v. United States*, 547 F. Supp. 3d 1350 (Ct. Int'l Trade 2021)................... 30

*AK Steel Corp. v. United States,* 22 CIT 1070, 34 F.Supp.2d 756 (1998)................................... 16

*BlueScope Steel v. United States*, 548 F. Supp. 3d 1351 (Ct. Int.'l Trade 2021)......................... 17

Böwe–Passat v. United States, 17 CIT 335 (1993)................................................................ 11, 16

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156 (1962) ............................................ 7

*Canadian Wheat Bd. v. United States*, 641 F. 3d 1344 (Fed. Cir. 2011) ...................................... 7

Chaparral Steel Co. v. United States, 901 F.2d 1097 (Fed.Cir.1990)......................................... 19

*Consol. Edison Co. of New York. v. NLRB*, 305 U.S. 197 (1938) ................................................. 6

*Essar Steel Ltd. v. United States*, 678 F.3d 1268 (Fed. Cir. 2012) ............................................ 24

*F.Lli de Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027 (Fed. Cir. 2000).................................................................................................................................... 16

*Federal-Mugul Corp. v. United States*, 18 CIT 1168, 872 F. Supp. 1011 (1994) ................. 12, 26

*Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319 (Fed. Cir. 2010)......................... 6

*Grobest & I-Mei Indus. (Vietnam) Co., Ltd. v U.S.*, 38 C.I.T. 98, 815 F.Supp.2d 1342 (Ct. In'l Trade 2012) ...................................................................................................................... 19

*Helmerich & Payne v. United States,* 24 F. Supp. 2d 304 (Ct. Int'l Trade 1998) ................. 12, 27

*Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375 (Fed. Cir. 2022) ............................... 18

*Hyundai Steel Co. v. United States*, 518 F. Supp. 3d 1309 (Ct. Int'l Trade 2021)...................... 17

*In re Murchison*, 349 U.S. 133 (1955)....................................................................................... 12

*Jindal Poly Films Ltd. of India v. United States*, 365 F. Supp. 3d 1379 (Ct. Int'l Trade 2019)... 17

*Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927 (Fed. Cir. 1984)............................... 7

*Melamine Chemicals, Inc. v. United States*, 561 F. Supp. 458 (Ct. Int'l Trade 1983) ................ 16

*Mitsubishi Elecs. Am. v. United States*, 44 F.3d 973 (Fed. Cir. 1994) ........................................ 30

*Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29 (1983)............. 7, 11

*Mukand, Ltd. v. United States*, 767 F.3d 1300 (Fed. Cir. 2014).................................................. 16

*Nippon Steel Corp. v. United States*, 458 F.3d 1345 (Fed. Cir. 2006)............................................ 6

*NMB Sing. Ltd. v. United States*, 557 F.3d 1316 (Fed. Cir. 2009) ................................................. 7

*Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185 (Fed. Cir. 1990)............................ 12, 19, 26

*Saha Thai Steel Pipe Public Co., Ltd. v. United States*, 605 F.Supp.3d 1348 (Ct. Int'l Trade 2022).................................................................................................................................. 17

*Shelter Forest International Acquisition, Inc., et al. v. United States*, 497 F.Supp.3d 1388 (Ct. Int'l Trade 2021) .................................................................................................... 18, 20

*Sigma Corp. v. United States*, 841 F. Supp. 1255 (Ct. Int'l Trade 1993) ..................................... 16

*SKF USA, Inc. v. United States*, 391 F. Supp. 2d 1327 (Ct. Int'l Trade 2005)............................ 18

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) .............................................................. 6

## Statutes and Regulations

19 C.F.R. § 351.301(c)(1)............................................................................................................ 20

19 C.F.R. § 351.301(c)(3)(i)-(ii) ................................................................................................. 20

19 C.F.R. § 351.301(c)(4)............................................................................................................ 25

19 U.S.C. § 1516a(b)(1)(B)(i)........................................................................................................ 6

19 U.S.C. § 1677(9)(A)............................................................................................................ 4, 10

19 U.S.C. § 1677e ........................................................................................................ 4, 13, 14, 15

19 U.S.C. § 1677e(a)............................................................................................................. 14, 15

19 U.S.C. § 1677e(b) .................................................................................................................... 14

19 U.S.C. § 1677j............................................................................................................... 20, 23

19 U.S.C. § 1677m(d) ............................................................................................................. passim

28 U.S.C. § 1581(c) ....................................................................................................................... 1

*Mid Continent Nail Corp. v. United States*, 725 F.3d 1295 (Fed. Cir. 2013) .............................. 10

*Yantai Timken Co., Ltd. v. United States*, 521 F. Supp. 2d 1356 (Ct. Int'l Trade 2007).............. 23

## Administrative Decisions

*Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review and Join Annual Inquiry Service List*, 87 Fed. Reg. 1396 (Jan. 11, 2022)........................................................................................................ 28

*Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review*, 85 Fed. Reg. 64 (Jan. 2, 2020) ........................................ 28

*Certain Hardwood Plywood From the People's Republic of China, Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order*, 83 Fed. Reg. 504 (Jan. 4, 2018) .................................................................................................................. 2

*Certain Hardwood Plywood From the People's Republic of China: Countervailing Duty Order*, 83 Fed. Reg. 513 (Jan. 4, 2018) ................................................................................................ 2

*Certain Hardwood Plywood Products From the People's Republic of China: Final Scope Determination and Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders*, 88 Fed. Reg. 46,740 (Dep't of Commerce Jul. 20, 2023)1, 24, 25, 26

*Certain Hardwood Plywood Products from the People's Republic of China: Initiation of Anti-Circumvention Inquiries and Scope Inquiries on the Antidumping Duty and Countervailing Duty Orders; Vietnam Assembly*, 85 Fed. Reg. 36,530 (June 17, 2020).......................... 8, 9, 25

*Certain Hardwood Plywood Products From the People's Republic of China: Preliminary Scope Determination and Affirmative Preliminary Determinations of Circumvention of the Antidumping and Countervailing Duty Orders*, 87 Fed. Reg. 45,753 (Jul. 29, 2022) ...... 4, 9, 25

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RULE 56.2**</u>
<u>**MOTION FOR JUDGEMENT ON THE AGENCY RECORD BY STR CONSOLIDATED**</u>
<u>**PLAINTIFFS**</u>

Consolidated Plaintiffs Cabinetworks Group, Inc. f/k/a/ ACProducts, Inc., ACPI Wood Products, LLC, Cabinetworks Group Middlefield, LLC, Cabinetworks Group Michigan, LLC, Boise Cascade Building Materials Distribution LLC, and USPLY LLC (collectively, ST&R Consolidated Plaintiffs), by and through their attorneys, hereby submit the following Memorandum in accordance with Rule 56.2(c) of the Rules of the United States Court of International Trade.

## I.   <u>RULE 56.2 STATEMENT</u>

### A.  **THE ADMINISTRATIVE DETERMINATION UNDER REVIEW**

Pursuant to 28 U.S.C. § 1581(c), ST&R Consolidated Plaintiffs challenge the U.S. Department of Commerce's (the "Department" or "Commerce") final scope and circumvention determination concerning the antidumping duty ("AD") and countervailing duty ("CVD") *Orders* on certain hardwood plywood products from the People's Republic of China, conducted pursuant to Section 781(b) of the Tariff Act of 1930, as amended.  *See Certain Hardwood Plywood Products From the People's Republic of China: Final Scope Determination and Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders*, 88 Fed. Reg. 46,740 (Dep't of Commerce Jul. 20, 2023) ("*Final Determination*"), P.R. 844[1]; *see also* Memorandum from James Maeder, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, to Lisa W. Wang, Assistant Secretary for Enforcement and

---

[1] Citations are denoted by reference to the document numbers assigned in the antidumping public administrative record ("P.R.") and antidumping confidential administrative record ("C.R.") as identified in the indices of the Administrative Records filed by Commerce with the Court on September 5, 2023, ECF Doc. Nos. 21-1, 21-2.

Compliance, *Subject: Issues and Decision Memorandum for Circumvention and Scope Inquiries of the Antidumping Duty and Countervailing Duty Orders on Certain Hardwood Plywood Product from the People's Republic of China* (Jul. 14, 2023) ("Final I&D Memorandum").  P.R. 842; *Certain Hardwood Plywood From the People's Republic of China, Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order*, 83 Fed. Reg. 504 (Jan. 4, 2018); *Certain Hardwood Plywood From the People's Republic of China: Countervailing Duty Order*, 83 Fed. Reg. 513 (Jan. 4, 2018) (collectively, "*China Orders*").

## B.  ISSUES OF LAW PRESENTED

ST&R Consolidated Plaintiffs bring this challenge to resolve the following issues of law presented herein:

1.  Whether Commerce's expansion of the scope of these inquiries beyond the definition of inquiry merchandise set forth in Commerce's *Initiation Notice* and Clarification Memorandum is arbitrary and capricious, not supported by substantial evidence and not in accordance with law.

2.  Whether Commerce's failure to provide notice and an opportunity to address perceived deficiencies, contradictions and inconsistencies to the 20 companies it applied AFA to was arbitrary and capricious, not supported by substantial evidence and no in accordance with law.

3.  Whether Commerce's refusal to allow and rejection of new factual information was unreasonable, arbitrary and capricious, not supported by substantial evidence and not in accordance with law.

4.  Whether Commerce's *Final Determination* is not supported by substantial evidence and not in accordance with law.

5.   Whether Commerce's failure to issue accurate and complete CBP instructions with respect to An An Plywood Joint Stock Company and Greatwood Hung Yen is not supported by substantial evidence and not in accordance with law.

## II.   STATEMENT OF FACTS

ST&R Consolidated Plaintiffs adopt the Statement of Facts set forth in Consolidated Plaintiffs', American Woodmark Corporation, *et al*., Rule 56.2 Memorandum in Support of Motion for Judgment Upon the Agency Record.   *See* ECF Doc. No. 31 ("DH Consolidated Plaintiffs' Br"). This is consistent with the Court's scheduling order, stating that consolidated Plaintiffs should "limit factual and procedural background statements to any additional information relevant to the parties represented in those briefs."  *See* Scheduling Order (Nov. 29, 2023), ECF Doc. No. 30.

## III.   SUMMARY OF ARGUMENT

ST&R Consolidated Plaintiffs adopt the arguments and information set forth in DH Consolidated Plaintiffs' Br.  Specifically, ST&R Consolidated Plaintiffs submit that Commerce's affirmative circumvention finding was not supported by substantial evidence and was otherwise not in accordance with law.  DH Consolidated Plaintiffs' Br. at 16-40.  ST&R Consolidated Plaintiffs seek judgement on the administrative record for the following additional reasons.

First, Commerce's actions in these investigations barred interested parties from fully participating in this proceeding.  Interested parties were not provided adequate notice of the merchandise potentially subject to these inquiries until the issuance of the *Preliminary Determination*.  More than two years after the *Initiation Notice* and Commerce's Clarification Memorandum, on July 29, 2022, Commerce published its *Preliminary Determination*, determining that certain hardwood plywood products and veneered panels exported from Vietnam, which were

assembled in Vietnam, are subject to the *China Orders*, and that certain hardwood plywood assembled in Vietnam are circumventing the *China Orders*. *Certain Hardwood Plywood Products From the People's Republic of China: Preliminary Scope Determination and Affirmative Preliminary Determinations of Circumvention of the Antidumping and Countervailing Duty Orders*, 87 Fed. Reg. 45,753 (Jul. 29, 2022) ("*Preliminary Determination*"), P.R. 415.

Despite Commerce's *Preliminary Determination*, interested parties relied in good faith on Commerce's statements in the July 9, 2020 Clarification Letter that inquiry merchandise "does not include core veneers fully produced in Vietnam or a third-country that are assembled into a veneer core platform in Vietnam and combined with a face and back veneer produced in China." *See* Memorandum from Kabir Archuletta, Senior International Trade Analyst, Enforcement & Compliance, Office V, to The File, *Subject: Re: Certain Hardwood Plywood from the People's Republic of China*, *Subject: Clarification of Merchandise Subject to Anti-Circumvention and Scope Inquiries* (Jul. 9, 2020) ("Clarification Memorandum"), P.R. 21. As such, Commerce's *Preliminary Determination* was the first instance in which (1) certain interested parties, including ST&R Consolidated Respondents as U.S. importers, were provided notice that Commerce deemed their entries inquiry merchandise and/or (2) such parties were considered interested parties pursuant to 19 U.S.C. § 1677(9)(A). Commerce's expansion of the scope of these inquiries beyond the definition of inquiry merchandise set forth in Commerce's *Initiation Notice* and Clarification Memorandum is arbitrary and capricious, not supported by substantial evidence and not in accordance with law.

Second, Commerce's *Final Determination* is procedurally deficient as Commerce's actions in the underlying inquiries amount to a complete failure to follow its statutory obligations set forth in 19 U.S.C. § 1677e and 19 U.S.C. § 1677m(d). Commerce has an obligation to notify responding

parties of the nature of any perceived deficiencies and provide an opportunity to remedy the perceived deficiency. Commerce first notified companies at the time of issuance of the *Preliminary Determination* that they are deemed ineligible for participation in the certification program due to perceived deficiencies in their questionnaire responses. Subsequently, Commerce refused to allow interested parties to address these perceived deficiencies through the submission of new factual information. As such, Commerce failed to allow the responding companies to participate in these ongoing proceedings. Such action is inconsistent with 19 U.S.C. § 1677m(d) and all notions of fair play and due process.

Third, several interest parties, including companies which Commerce applied AFA, submitted new factual information to address perceived deficiencies brought to light for the first time in the *Preliminary Determination*. Commerce abused its discretion by repeatedly refusing to accept this new factual information. The length of time between the *Notice of Initiation* and the *Final Determination*, a period of 768 days or more than three years, demonstrates that acceptance of the new factual information would not hinder Commerce's inquiries. Commerce's requirements to ensure a fair and accurate result outweigh Commerce's desire to issue a final determination and/or the minimal burden Commerce would have faced in reviewing new factual information.

Fourth, Commerce conducted these inquiries over three years, an unreasonable amount of time that created a number of procedural issues. For instance, in its *Final Determination*, Commerce indicated that it would allow companies to address future certification ability in the 2022 administrative review. However, Commerce's *Final Determination*, fails to adequately address procedural and due process concerns as it is not clear if Commerce will allow companies to address retroactive application of certification. Commerce's actions in this proceeding were unreasonable, not supported by substantial evidence and not in accordance with law.

Fifth, Commerce's CBP instructions following the *Final Determination* merely state that An An Plywood Joint Stock Company ("An An") and Greatwood Hung Yen ("Greatwood") these companies were "now eligible" for certification following Commerce's decision to not apply AFA for purposes of the final. CBP Message No. 3215402 (Aug. 4, 2023) at para 5a.(ii), P.R. 845. These instructions do not address the retroactive suspension and/or cash deposit assessment that resulted from the *Preliminary Determination* for entries of merchandise manufactured and/or exported by An An or Greatwood. As a result, Commerce failed to issue proper CBP instructions regarding An An and Greatwood concerning the retroactive application of the *China Orders* since initiation on June 17, 2020 and the reversal of its AFA application for these companies. Commerce's CBP instructions are not supported by substantial evidence and not in accordance with law.

## IV.  ARGUMENT

### A.  STANDARD OF REVIEW

Commerce must base its determination on "substantial evidence," consistent with 19 U.S.C. § 1516a(b)(1)(B)(i), including "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (*quoting Consol. Edison Co. of New York. v. NLRB*, 305 U.S. 197, 229 (1938)). Commerce's determinations must not be arbitrary and must be in accordance with law. *Id*. Substantial evidence review requires consideration of "the record as a whole, including any evidence that fairly detracts from the substantiality of the evidence," *Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319, 1323 (Fed. Cir. 2010) (internal quotation marks and citation omitted), and asks, in light of that evidence, whether Commerce's determination was reasonable. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006).

To support its findings, Commerce must also explain the standards that it applied and demonstrate a rational connection between the facts on the record and the conclusions drawn. *See Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984). Such explanations "must be reasonably discernible to a reviewing court." *NMB Sing. Ltd. v. United States*, 557 F.3d 1316, 1319 (Fed. Cir. 2009). A determination is arbitrary and, therefore, not in accordance with law, if "the agency . . . relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, . . . or is so implausible that it could not be ascribed to . . . the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156 (1962) (invalidating exercise of agency discretion where agency failed to explain basis of its actions); *Canadian Wheat Bd. v. United States*, 641 F. 3d 1344, 1352 (Fed. Cir. 2011) (declining to accord deference to Commerce's interpretation of the statute for failing to provide reasoned explanation for its action).

**B. COMMERCE'S ACTIONS BARRED INTERESTED PARTIES FROM ADEQUATELY PARTICPATING IN THIS PROCEEDING AND ARE CONTRARY TO LAW**

**1. Interested Parties Relied on Commerce's Definition of Inquiry Merchandise in the *Initiation Notice* and Commerce's Clarification Memorandum**

Interested parties were not provided adequate notice of the merchandise potential subject to these inquiries until the issuance of the *Preliminary Determination*. *Preliminary Determination*, P.R. 415; *see also* Memorandum from Scot Fullerton, Associate Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, to Lisa W. Wang, Assistant Secretary for Enforcement and Compliance, *SUBJECT: Preliminary Decision Memorandum for the Anti-Circumvention and Scope Inquiries on the Antidumping Duty and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China* (Jul. 22, 2022)

("Preliminary I&D Memorandum"), P.R. 409. The *Preliminary Determination* expanded the

scope of these inquiries to include merchandise for which Commerce expressly deemed not subject

to the inquiries at the time of initiation. Commerce's expansion of the definition of inquiry

merchandise at the time of the *Preliminary Determination* and its failure to allow interested parties

to submit new factual information to address this expanded inquiry was arbitrary and capricious,

not supported by substantial evidence and not in accordance with law.

Commerce's *Initiation Notice* defined inquiry merchandise for purposes of the

circumvention proceeding as follows:

> {t}hese anti-circumvention inquiries cover plywood completed in
> Vietnam using plywood components (face veneer, back veneer,
> and/or either an assembled core or individual core veneers)
> manufactured in China, or Chinese components (assembled cores,
> multi-ply core panels, or individual core veneers) combined in
> Vietnam with other components (face and/or back veneers)
> manufactured in Vietnam or third countries, and subsequently
> exported to the United States.

*Certain Hardwood Plywood Products from the People's Republic of China: Initiation of Anti-*

*Circumvention Inquiries and Scope Inquiries on the Antidumping Duty and Countervailing Duty*

*Orders; Vietnam Assembly*, 85 Fed. Reg. 36,530 (June 17, 2020) ("*Initiation Notice*"), P.R. 4. At

the same time, Commerce initiated scope inquiries to confirm whether certain scenarios in which

"Chinese producers and/or exporters are shipping the main components of plywood that are

manufactured in China . . . to Vietnam for assembly into completed plywood before being imported

to the United States, such further processing does not remove the merchandise from the coverage

of the *Orders*." *Id.* At the time of initiation, Commerce identified five product scenarios covered

by the scope and circumvention inquiries as follows:

> Specifically, these inquiries will cover plywood completed in
> Vietnam using: (1) Face veneer, back veneer, and assembled core
> components manufactured in China; and (2) face veneer, back

veneer, and individual core veneers produced in China. Additionally, these inquiries will also examine, should such production scenarios exist, plywood completed in Vietnam using: (1) Fully assembled veneer core platforms manufactured in China and face and/or back veneers produced in Vietnam or third countries; (2) multi-ply panels of glued core veneers manufactured in China that are combined in Vietnam to produce veneer core platforms and combined with either a face and/or back veneer produced in China, Vietnam, or a third country; and (3) core veneers manufactured in China and processed into a veneer core platform in Vietnam and combined with a face and/or back veneer produced in Vietnam or other third country. A veneer core platform is defined as two or more wood veneers that form the core of an otherwise completed hardwood plywood product (*i.e.,* a hardwood plywood product to which the outer (face and back) veneers have not yet been affixed (*see* Petitioner's Request at Exhibit 11).

*Id*. at 36,531, n12

Following Commerce's *Initiation Notice* and in response to requests by interested parties for clarification, Commerce clarified and confirmed the definition of inquiry merchandise, stating:

{t}he merchandise subject to these anticircumvention and scope inquiries *does not include* core veneers fully produced in Vietnam or a third-country that are assembled into a veneer core platform in Vietnam and combined with a face and back veneer produced in China.

*See* Clarification Memorandum, P.R. 21.

Interested parties relied in good faith on Commerce's assertions concerning the definition of inquiry merchandise. More than two years after the *Initiation Notice* and Commerce's Clarification Memorandum, on July 29, 2022, Commerce published its *Preliminary Determination*, determining that certain hardwood plywood products and veneered panels exported from Vietnam, which were assembled in Vietnam, are subject to the *China Orders*, and that certain hardwood plywood assembled in Vietnam are circumventing the *China Orders*. *Preliminary Determination* at 45,753, P.R. 415. Despite Commerce's *Preliminary Determination*, interested parties relied on Commerce's statements in the July 9, 2020 Clarification Letter that

inquiry merchandise "does not include core veneers fully produced in Vietnam or a third-country that are assembled into a veneer core platform in Vietnam and combined with a face and back veneer produced in China." Clarification Letter at 2, P.R. 21. As such, Commerce's *Preliminary Determination* was the first instance in which (1) certain interested parties, including ST&R Consolidated Respondents as U.S. importers, were provided notice that Commerce deemed their entries inquiry merchandise and/or (2) such parties were considered interested parties pursuant to 19 U.S.C. § 1677(9)(A).

Commerce's *Preliminary Determination* and CBP instructions resulted in the assessment of AD and CVD duties on merchandise expressly deemed not subject to these inquires in the Clarification Memorandum following Commerce's application of AFA on 22 exporters. CBP Message No. 2220409 (Aug. 8, 2022), Para. 5a-5-d, P.R. 445. This determination is therefore contrary to law as interested parties relied on Commerce's express confirmation concerning the definition of subject merchandise and Commerce did not provide adequate notice of the breadth of its inquiry. *See e.g., Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300 (Fed. Cir. 2013) ("the requirement that antidumping orders only be applied to merchandise that they may be reasonably interpreted to include ensures that before imposing a significant exaction in the form of an antidumping duty, Commerce will provide 'adequate notice of what conduct is regulated by the order.'").

Following issuance of the *Preliminary Determination*, interested parties raised serious due process and equity concerns for Commerce's consideration, demonstrating good cause to allow interested parties to participate in these proceedings through the submission of new factual information. *See e.g.*, Letter from Sandler, Travis & Rosenberg, P.A. to Dep't of Commerce, *Re: Certain Hardwood Plywood Products from the People's Republic of China – Request to Open the*

*Record for New Factual Information* (Aug. 16, 2022) ("ST&R's Request to Open Record"), P.R. 460; Letter From Husch Blackwell LLP to Dep't of Commerce, *Re: Anti-Circumvention Inquiry of Certain Hardwood Plywood Products from the People's Republic of China: Comments Regarding Preliminary Determination and Request to Submit New Factual Information* (Aug. 4, 2022), P.R. 430; Letter from deKieffer & Horgan, PLLC to Dep't of Commerce, *RE: Hardwood Plywood from the People's Republic of China: Request to Re-Open Record* (Aug. 19, 2022), P.R. 474. For instance, ST&R Consolidated Plaintiffs ACProducts, Inc., ACPI Wood Products, LLC, Cabinetworks Group Michigan, LLC, and Cabinetworks Group Middlefield LLC notified Commerce of these due process issues and requested Commerce to open the record for new factual information. *See e.g.*, ST&R's Request to Open Record, P.R. 460. Commerce never responded to these requests. In failing to adequately address these concerns, Commerce striped U.S. importers of their due process rights to participate in this proceeding by failing to adequately describe the product subject to its inquiry at the time of initiation. Commerce has entirely failed to consider important aspects of these inquiries, rendering its *Final Determination* arbitrary. *See e.g.*, *Motor Vehicle Mfrs*, 463 U.S. at 43 ("an agency rule would be arbitrary and capricious if the agency has . . . entirely failed to consider an important aspect of the problem.").

Commerce's action led U.S. importers, including ST&R Consolidated Plaintiffs, to be subject to a predatory policy of "gotcha." Here, Commerce provided a narrow definition of inquiry merchandise at the time of initiation, conducted these inquiries for years, issued a *Preliminary Determination* over two years after Commerce published the *Initiation Notice*, and expanded the scope of the inquiries at the time of issuance of the *Preliminary Determination*. Such actions are arbitrary and capricious. *Böwe–Passat v. United States,* 17 CIT 335, 343 (1993) (agency held arbitrary and capricious when it "sent out a general questionnaire and a brief deficiency letter, then

effectively retreated into its bureaucratic shell, poised to penalize Böwe for deficiencies . . . that {Commerce} would only disclose after it was too late, *i.e.*, after the preliminary determination"). While Commerce either ignored requests to submit new factual information or rejected submissions of new factual information following the issuance of the *Preliminary Determination*, Commerce did acknowledge that "the unique circumstances present in these inquiries may present procedural and equity concerns." *See* Memorandum from Kabir Archuletta, Program Manager AD/CVD Operations, Office V, to The File, *Re: Scope and Circumvention Inquiries of the Antidumping and Countervailing Duty Orders Certain Hardwood Plywood from the People's Republic of China, Subject: Extension of Deadline to Certify Entries of Hardwood Plywood and Response to Ministerial Error Allegations* (Nov. 30, 2022) at 3 ("November 30th Memorandum"), P.R. 664. However, these procedural and equity concerns were neither addressed nor rectified.

Commerce's expansion of the scope of these inquiries are contrary to Commerce's obligation to conduct fair and accurate proceedings. Commerce's basic reasonability under the law to conduct a fair investigation is an inherent obligation. *See e.g., Helmerich & Payne v. United States,* 24 F. Supp. 2d 304, 313 (Ct. Int'l Trade 1998). Determinations must be based upon a reasoned analysis of the information in the record and not upon prejudgments or improper influence. *See e.g.*, *In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair tribunal is a basic requirement of due process"). Furthermore, Commerce has an obligation to administer the AD/CVD laws fairly. *See e.g., Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990). "{F}air and accurate determinations are fundamental to the proper administration of our dumping laws." *Federal-Mogul Corp. v. United States*, 18 CIT 1168, 1172, 872 F. Supp. 1011, 1014 (1994). This inherent obligation of fairness has not been met in this inquiry.

Commerce's refusal to allow U.S. importers to submit new factual information to participate in these inquiries and/or address Commerce's *Preliminary Determination* is contrary to Commerce's mandate to conduct fair and accurate investigations and is inconsistent with its statutory authority.  Moreover, Commerce's actions stripped interested parties, including U.S. importers like ST&R Consolidated Plaintiffs, of their due process as interested parties as these companies were not provided adequate notice of the merchandise potentially subject to these inquiries until the issuance of the *Preliminary Determination* and then these companies were not granted the opportunity to adequately participate following the notice provided in the *Preliminary Determination*.

> **2.    Commerce's *Final Determination* is Deficient as Commerce Did Not Comply With the Statutory Requirements to Apply AFA And The Decision Is Therefore Contrary to Law**

Commerce's *Final Determination* is procedurally deficient.  Commerce's actions in the underlying inquiries amount a complete failure to follow its statutory obligations set forth in 19 U.S.C. § 1677e and 19 U.S.C. § 1677m(d).  Commerce abused its discretion in rejecting new factual information because Commerce failed to provide notice of perceived deficiencies and an opportunity to respond to these perceptions as required by statute.  *See* 19 U.S.C. § 1677m(d). Commerce's failures are fatal flaws, rendering the *Final Determination* arbitrary, capricious and contrary to law.

When Commerce issued its *Preliminary Determination* and assigned AFA, the impacted Vietnamese manufacturers first became aware that Commerce found their questionnaire and/or supplemental questionnaire responses deficient, inconsistent or contradictory with their own responses or information placed on the record by other parties to the proceeding.  Vietnamese manufacturers attempted to provide information and clarification on the administrative record with respect to their submission and information raised by Commerce.  Commerce rejected information

submitted by these companies as untimely new information, despite the fact that sufficient notice as required by Commerce's statute had not been provided to the Vietnamese manufacturers of perceived issues with questionnaire or supplemental questionnaire responses. Commerce's refusal to allow Vietnamese manufacturers and other interested parties to place information on the record to address Commerce's perceived deficiencies, contradictions, and inconsistencies was arbitrary and capricious, not supported by substantial evidence and not in accordance with law.

A conditional requirement for the application of adverse facts available pursuant to 19 U.S.C. § 1677e(a) and 19 U.S.C. § 1677e(b) is Commerce's compliance with 19 U.S.C. § 1677m(d). The statute expressly conditions the use of adverse facts available on Commerce's notice to responding parties. 19 U.S.C. § 1677e ("{T}he administering authority and the Commission shall, *subject to section 1677m(d)* of this title, use the facts otherwise available in reaching the applicable determination" (emphasis added)).

Section 1677m(d) provides:

> If the administering authority or the Commission determines that a response to a request for information under this subtitle does not comply with a request, the administering authority or the Commission (as the case may be) **shall promptly inform the person submitting the response of the nature of the deficiency** and shall, to the extent possible, **provide that person with the opportunity to remedy** or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this subtitle. . . .

19 U.S.C. § 1677m(d) (emphasis added).

The statutory language is clear. Commerce has an obligation to notify responding parties of the nature of any perceived deficiencies and provide an opportunity to remedy the perceived deficiency. This is not optional; this notice requirement is a statutory mandate. As discussed in

detail below, Commerce's actions in these proceedings blatantly violate this clear statutory language set forth in 19 U.S.C. § 1677e and 19 U.S.C. § 1677m(d).

In the *Preliminary Determination*, Commerce determined that the application of AFA was warranted, in part, for 22 companies whose questionnaire responses were deemed to be "deficient, contradictory, or inconsistent" and, therefore, Commerce found the application of facts available with an adverse inference was also warranted. Preliminary I&D Memorandum at 12-13, P.R. 409; Preliminary AFA Memorandum at 2, P.R. 410. In the *Final Determination*, Commerce continued to find that 20 of these 22 companies failed to provide useable questionnaire responses. Final I&D Memorandum at App. I, P.R. 842. Commerce's AFA determination resulted in these 22 Vietnamese companies becoming ineligible to certify that their exported product was not inquiry merchandise and assessed AD and CVD duties under the *China Orders*. Due to these procedural deficiencies resulting from Commerce's lack of notice to these companies, Commerce's use of facts available with an adverse inference is unlawful.

Even if the requirements of 19 U.S.C. § 1677e(a) were met, the *Preliminary Determination* is the first notice provided to the 22 Vietnamese companies of perceived "discrepancies, inconsistencies, or misleading information." Commerce is required to ask for the information and must give respondents a chance to correct any deficiencies with the provided information. 19 U.S.C. § 1677m(d). Here, Commerce failed to notify the  companies which were deemed ineligible for the certification program of any deficiencies in their responses and/or provide an opportunity to remedy. Commerce's actions are particularly troubling given that Commerce had an entire year from the deadline for the final supplemental quantity and value questionnaire until the issuance of the *Preliminary Determination* in July 2022. *See* June 28, 2021 Memorandum

(establishing deadline for second supplemental questionnaire), P.R. 275.  As a result, Commerce's actions in these inquiries are contrary to the requirements of 19 U.S.C. § 1677m(d) to apply AFA.

Importantly, 19 U.S.C. § 1677m(d) states that when Commerce identifies a gap in a response it "shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency."  19 U.S.C. § 1677m(d).  This notification requirement makes sense as the purpose of Commerce's authority to apply AFA is to "provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins."  *F.Lli de Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000); *see also Mukand, Ltd. v. United States*, 767 F.3d 1300, 1307 (Fed. Cir. 2014) ("{T}he purpose of the adverse inference provision is to encourage future cooperation and ensure that a respondent does not obtain a more favorable antidumping rate by failing to cooperate.").  As noted above, Commerce cannot conduct inquiries via predatory "gotcha" policies.  *See e.g.*, *Böwe–Passat,* 17 CIT at 343 (holding that Commerce's refusal to address previously unknown deficiencies was a "'gotcha' policy"); *AK Steel Corp. v. United States,* 22 CIT 1070, 34 F.Supp.2d 756 (1998) (sustaining Commerce's use of respondent's explanation of data discrepancy as record evidence because respondent "first became aware that reconciliation was in dispute upon receiving a copy of {d}omestic {p}roducers' {c}ase {b}rief" after the record closed).  Nor can Commerce require responding parties to be "mind-readers."  *Sigma Corp. v. United States*, 841 F. Supp. 1255, 1267 (Ct. Int'l Trade 1993) ("Commerce cannot expect a respondent to be a mind-reader").  Commerce's actions must echo the fact that "{t}he standards of fairness and reasonableness are inherent" in trade laws.  *See e.g., Melamine Chemicals, Inc. v. United States*, 561 F. Supp. 458, 463 (Ct. Int'l Trade 1983).

The Court has consistently reaffirmed Commerce's affirmative notice obligation under 19 U.S.C. § 1677m(d).  *See e.g.*, *Jindal Poly Films Ltd. of India v. United States*, 365 F. Supp. 3d 1379 (Ct. Int'l Trade 2019); *BlueScope Steel v. United States*, 548 F. Supp. 3d 1351 (Ct. Int.'l Trade 2021); *Hyundai Steel Co. v. United States*, 518 F. Supp. 3d 1309 (Ct. Int'l Trade 2021). Recently, the Court in *Saha Thai* remanded a determination to Commerce after Commerce found reason for the use of facts otherwise available yet failed to meet the statutory obligation under 19 U.S.C. § 1677m(d).  As the Court provided:

> Commerce collects information from respondents to calculate and support its antidumping determinations.  However, when (1) "necessary information is not available on the record, or" an interested party (2) "withholds information that has been requested," (3) "fails to provide such information by the deadlines for submission of the information or in the form and manner requested," (4) "significantly impedes a proceeding . . . or," (5) "provides such information but the information cannot be verified," then Commerce "shall, subject to section 1677m(d) of this title, use the facts otherwise available in reaching the applicable determination."  19 U.S.C. § 1677e(a)(1)–(2) (emphasis added).  When any one of those five preconditions is satisfied, the use of "facts otherwise available" is triggered.  *Id.*  Then Commerce must, pursuant to § 1677m(d), "promptly inform the person submitting the information of the nature of the deficiency" and "provide that person with an opportunity to remedy or explain the deficiency."  19 U.S.C. § 1677m(d).  If further responses are also unsatisfactory or untimely, Commerce may disregard the information respondents have provided and shall "use the facts otherwise available in reaching the applicable determination."  19 U.S.C. §§ 1677m(d), 1677e(a); *see also Diamond Sawblades Mfrs.' Coal. v. United States*, 986 F.3d 1351, 1362–64 (Fed. Cir. 2021) (analyzing the statutory framework).

*Saha Thai Steel Pipe Public Co., Ltd. v. United States*, 605 F.Supp.3d 1348, 1362 (Ct. Int'l Trade 2022).

With respect to the 20 companies not eligible for certification following the *Final Determination*, Commerce was required to provide respondents with notice of deemed deficiencies

and the opportunity to remedy such responses. This is particularly true in instances where Commerce is considering the extraordinary action of whether to bring non-subject merchandise under the scope of an order, as the case is here. "As part of this investigation, Commerce must give respondents notice when it identifies deficiencies in submissions and provide parties with an opportunity to respond." *Shelter Forest International Acquisition, Inc., et al. v. United States*, 497 F.Supp.3d 1388 (Ct. Int'l Trade 2021). Commerce must clearly and definitively ask for what it wants. Once it has done so, "if the Department wished to place the burden of error on {the respondent}, it had to make clear and give {the respondent} a chance to correct the error prior to the issuance of a final decision." *Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375, 1384 (Fed. Cir. 2022) (*citing SKF USA, Inc. v. United States*, 391 F. Supp. 2d 1327, 1336–37 (Ct. Int'l Trade 2005)).

Here, Commerce first notified companies at the time of issuance of the *Preliminary Determination* that they are deemed ineligible for participation in the certification program due to perceived deficiencies in their questionnaire responses. As such, Commerce failed to allow the responding companies to participate in these ongoing proceedings. Such action is inconsistent with 19 U.S.C. § 1677m(d). As a result, Commerce's *Final Determination* is procedurally deficient and not in accordance with law.

### 3. Commerce's Refusal to Allow New Factual Information to Correct Perceived Deficiencies and/or Allow Adequate Participation from Interested Parties is Contrary to Law

Commerce's failure to follow statutory mandates set forth in 19 U.S.C. § 1677m(d) and allow new factual information to be placed on the record created significant due process concerns that precluded interested parties from participating in the proceedings. Following the issuance of the *Preliminary Determination*, multiple parties raised serious due process concerns, demonstrating good cause to allow interested parties to participate in these proceedings through

the submission of new factual information.  Additionally, several interest parties, including companies which Commerce applied AFA, submitted new factual information to address perceived deficiencies brought to light for the first time in the *Preliminary Determination*. Commerce abused its discretion by repeatedly refusing to accept this new factual information which resulted in an incomplete record that excluded evidence of non-circumvention.

While Commerce has discretion to decide whether to accept new factual information, this discretion is not absolute.  *Grobest & I-Mei Indus. (Vietnam) Co., Ltd. v U.S.*, 38 C.I.T. 98, 123, 815 F.Supp.2d 1342, 1365 (Ct. In'l Trade 2012).   Commerce abused this discretion in the underlying proceeding where the interest of accuracy and fairness outweighed the burden of accepting new factual information.  As explained in *Grobest*, "{w}hen considering whether Commerce's rejection of an untimely filing amounts to an abuse of discretion, the court is guided first by the remedial, and not punitive, purpose of the antidumping statute and the statute's goal of determining margins 'as accurately as possible'."  *Grobest*, 815 F.Supp.2d at 1365 (*citing Chaparral Steel Co. v. United States*, 901 F.2d 1097, 1103–04 (Fed.Cir.1990); *Rhone Poulenc,* 899 F.2d at 1191).

Application of this test to the facts on the administrative demonstrates that Commerce abused its discretion in refusing to accept pertinent new factual information.  While Commerce recognized its "statutory obligation to compile complete and accurate records, as well as a duty to conduct proceedings fairly, in accordance with due process" this did not occur in the underlying proceeding.  Final I&D Memorandum at 55, P.R. 842.  Commerce's failure to build a complete and accurate record in this proceeding by rejecting relevant evidence needed for its *Final Determination* constitutes an abuse of discretion and is not supported by the administrative record. Commerce's refusal to accept new factual information resulted in an unfairly skewed

determination that was punitive in nature.  As the result of this decision, non-subject Vietnamese hardwood plywood not meeting criteria determined to by Commerce to circumvent the *China Orders* is treated as subject merchandise, an outcome not contemplated by either the plain language of the statute or its remedial intent.

The facts of this proceeding are similar to the fact pattern considered in *Shelter Forest* where this Court found that Commerce abused its discretion by rejecting information, concluding that Commerce's failure to accept the information was inconsistent with Commerce's obligation to consider statutory factors set forth in 19 U.S.C. § 1677j.  *Shelter Forest*, 497 F.Supp.3d at 1401. This Court further concluded that Commerce "abused its discretion by rejecting Shelter Forest's submission as untimely when it had not provided notice to Shelter Forest regarding any deficiencies, as required by 19 U.S.C. § 1677m(d)."  *Shelter Forest*, 497 F.Supp.3d at 1400. According to the Court, Commerce's reliance on 19 C.F.R. §§ 351.301(c)(1), (c)(3)(i)-(ii) as justification to reject Shelter Forest's submission was unreasonable as "the tardiness {of Shelter Forest's submissions} resulted from Commerce's failure to notice Shelter Forest of any deficiencies in its submissions until Commerce released its preliminary determination memo."  *Id*. at 1401.

A comparable fact pattern exists in the underlying inquiries.  As discussed in **Section IV.B.1**, immediately following the publication of the *Initiation Notice*, Commerce issued a clarification memorandum, confirming that "{t}he merchandise subject to these anticircumvention and scope inquiries does not include core veneers fully produced in Vietnam or a third-country that are assembled into a veneer core platform in Vietnam and combined with a face and back veneer produced in China."  Clarification Memorandum at 2, P.R. 21.  It was not until Commerce's *Preliminary Determination* that interested parties learned of the need to place new factual

information on the record when Commerce's decision effectively expanded the scope of the anticircumvention inquiry. Interested parties responded by promptly submitting or requesting to submit new factual information to clarify and correct perceived deficiencies identified for the first time in the *Preliminary Determination*. Commerce has also repeatedly rejected the submission of new factual information following the issuance of the *Preliminary Determination*, deeming the new factual information untimely. *See e.g.*, Letter from Kabir Archuletta, Program Manager, Office V, Enforcement and Compliance, to Trade Remedies Authority of Vietnam, *Re: Circumvention Inquiry of the Antidumping and Countervailing Duty Orders Certain Hardwood Plywood from the People's Republic of China – Rejection of TRAV-MOIT's Submission* (Sept. 26, 2022), P.R. 569; Letter from Kabir Archuletta, Program Manager, Office V, Enforcement and Compliance, to Shelter Forest International Acquisition, Inc., *RE: Circumvention Inquiry of the Antidumping and Countervailing Duty Orders Certain Hardwood Plywood from the People's Republic of China –Rejection of Shelter Forest's Submission* (Oct. 19, 2022), P.R. 615; Letter from Kabir Archuletta, Program Manager, Office V, Enforcement and Compliance, to Lechenwood Viet Nam Company Limited, *RE: Circumvention Inquiry of the Antidumping and Countervailing Duty Orders Certain Hardwood Plywood from the People's Republic of China – Rejection of Lechenwood's Submission* (Oct. 25, 2022), P.R. 632; Letter from Kabir Archuletta, Program Manager, Office V, Enforcement and Compliance, to Long Luu Plywood Production Co., Ltd., *RE: Circumvention Inquiry of the Antidumping and Countervailing Duty Orders Certain Hardwood Plywood from the People's Republic of China – Rejection of Long Luu's Submission* (Oct. 25, 2022), P.R. 633; Letter from Kabir Archuletta, Program Manager, Office V, Enforcement and Compliance, to Hai Hien Bamboo Wood Joint Stock Company, *RE: Circumvention Inquiry of the Antidumping and Countervailing Duty Orders Certain Hardwood Plywood from the People's*

*Republic of China – Rejection of Hai Hien's Submission* (Oct. 25, 2022), P.R. 630; Letter from Kabir Archuletta, Program Manager, Office V, Enforcement and Compliance, to Arrow Forest International Co., Ltd., *RE: Circumvention Inquiry of the Antidumping and Countervailing Duty Orders Certain Hardwood Plywood from the People's Republic of China – Rejection of Arrow Forest's Submission* (Oct. 25, 2022), P.R. 629; Letter from Kabir Archuletta, Program Manager, Office V, Enforcement and Compliance, to Her Hui Wood (Vietnam) Co., Ltd., *RE: Circumvention Inquiry of the Antidumping and Countervailing Duty Orders Certain Hardwood Plywood from the People's Republic of China – Rejection of Her Hui's Submission* (Oct. 25, 2022), P.R. 631; Letter from Kabir Archuletta, Program Manager, Office V, Enforcement and Compliance, to TEKCOM CORPORATION, *RE: Circumvention Inquiry of the Antidumping and Countervailing Duty Orders Certain Hardwood Plywood from the People's Republic of China – Rejection of TEKCOM's Submission* (Nov. 29, 2022), P.R. 662; Letter from Kabir Archuletta, Program Manager, Office V, Enforcement and Compliance, to Win Faith Trading Limited, *RE: Circumvention Inquiry of the Antidumping and Countervailing Duty Orders Certain Hardwood Plywood from the People's Republic of China – Rejection of Win Faith's Submission* (Nov. 29, 2022), P.R. 661; Letter from Kabir Archuletta, Program Manager, Office V, Enforcement and Compliance, to An Plywood Joint Stock Company, *RE: Circumvention Inquiry of the Antidumping and Countervailing Duty Orders Certain Hardwood Plywood from the People's Republic of China – Rejection of An An's Submission* (Nov. 29, 2022), P.R. 659; Letter from Kabir Archuletta, Program Manager, Office V, Enforcement and Compliance, to Golden Bridge Industries Pte. Ltd., *RE: Circumvention Inquiry of the Antidumping and Countervailing Duty Orders Certain Hardwood Plywood from the People's Republic of China – Rejection of Golden Bridge's Submission* (Nov. 29, 2022), P.R. 658; Letter from Kabir Archuletta, Program Manager, Office V,

Enforcement and Compliance, to Greatriver Wood Co., Ltd., *RE: Circumvention Inquiry of the Antidumping and Countervailing Duty Orders Certain Hardwood Plywood from the People's Republic of China – Rejection of Greatriver Wood Co. Ltd.'s Submission* (Dec. 19, 2022), P.R. 675.

The need to accept the proffered new factual information outweighs any interest in finality or the burden on Commerce when considering Commerce's mandate to issue a fair and accurate anticircumvention determination that examines production occurring in Vietnam and 19 U.S.C. § 1677j factors against the need for finality. As interested parties only learned of perceived deficiencies and a departure from Commerce's Clarification Memorandum when Commerce issued its *Preliminary Determination*, interested parties had no prior notice of the need to place information on the record.

Commerce's reliance on *Yantai Timkin* to support claims that Commerce did not abuse its discretion as the rejections "balance{d} the competing interests of accuracy and finality" has no merit. Final I&D Memorandum at 58, P.R. 842 (*citing Yantai Timken Co., Ltd. v. United States*, 521 F. Supp. 2d 1356, 1370 (Ct. Int'l Trade 2007)). The issue before the Court in *Yantai Timkin* compared to this proceeding is drastically different. In *Yantai Timkin*, throughout the administrative review process, Yantai had ample opportunities to submit complete and accurate information in response to the original questionnaire and to six supplemental questionnaires as well as during verification. Commerce refused to accept Yantai's new information in a case brief after Commerce conducted verification.

Here, the administrative record demonstrates that the acceptance of new factual information would have been added to the record prior to verification ensuring sufficient time for Commerce to confirm its accuracy and to include in its anticircumvention analysis. While

Commerce claims that it "sought to build a robust and complete record within its resource and timing constraints," these claims are not supported by the administrative record. *Final I&D Memorandum* at 63, P.R. 842. The length of time between the *Notice of Initiation* and the *Final Determination*, a period of 768 days or more than three years, demonstrates that acceptance of the new factual information would not hinder Commerce's inquiries. In fact, from the filing of the last questionnaire in this inquiry, Commerce took 381 days to issue the *Preliminary Determination* on July 25, 2022. Moreover, the fact that Commerce declined to pick a mandatory respondent in the proceeding reduced the amount of information that Commerce had to review.

Commerce's reliance on *Essar Steel* as justification for rejecting new factual is also misplaced. *Final I&D Memorandum* at 58, P.R. 842 (*citing Essar Steel Ltd. v. United States*, 678 F.3d 1268 (Fed. Cir. 2012)). In *Essar Steel*, the mandatory respondent was asked whether it had a plant located in Chhattisgarh to which the company answered no, and, accordingly, in the preliminary results, Commerce found that Essar had no facilities in Chhattisgath and therefore did not benefit from certain subsidies. *Essar Steel*, 678 F.3d at 1271. The company repeatedly denied the existence of such a plant throughout the proceeding, despite evidence disputing and contradicting these statements. *Id*. at 1275. In affirming Commerce's refusal to accept Essar's new information, the Court noted that the "record on review included Essar's reported dishonest denials of a facility in Chhattisgarh" and concluded that reopening of the record would lead to inefficiency and delay in finality. *Id*. at 1277. The facts in *Essar Steel* cannot be compared to the issues at hand.

In this proceeding, there is no evidence or even allegations of "gamesmanship" or attempts to place misleading or fraudulent information on the record. Nor did any perceived deficiency result in a lengthening of the anticircumvention proceeding. Rather, similar to the proceeding in

*Shelter Forrest*, parties sought to add information to the record to address alleged deficiencies that only came to light in Commerce's *Preliminary Determination*. Moreover, any "lengthening" of the decision was based upon Commerce's own self-imposed delays and in no way reflected improper behavior of interested parties to the proceeding.

Responding companies cannot be penalized for Commerce's own failures adhering to a proper timeline in these inquiries. The underlying proceeding was initiated on June 17, 2020. *Initiation Notice*, P.R. 4. Commerce published its *Preliminary Determination* on July 29, 2022. *Preliminary Determination*, P.R. 415. Commerce's *Final Determination* was published 357 days after the *Preliminary Determination* on July 20, 2023, more than three years after the case was initiated. *Final Determination*, P.R. 844. Thus, the administrative record demonstrates that Commerce had more than sufficient time to accept and evaluate the new information. Moreover, accepting the new factual information placed no undue burden on Commerce. The type of information sought to be placed on the record was information that Commerce typically considers in making its anticircumvention determinations. Furthermore, there is nothing in the regulations that precludes Commerce from accepting new information regardless of timing. Commerce's regulations instruct that "the Department may place factual information on the record of the proceeding at any time." 19 C.F.R. § 351.301(c)(4).

Moreover, the extraordinary nature of an anticircumvention case which places merchandise that falls outside the literal scope under an order requires that Commerce consider probative information and not reject information that would be inconsistent with its anticircumvention determination. Commerce should not be allowed to cherry pick what information can be placed on the record and what it excludes where interested parties relied on the Commerce's own clarification as to what merchandise subject to the proceeding. Commerce's failure to accept the

new information was an abuse of discretion and contrary to notions of equity and fair play. Commerce has an obligation to administer the AD/CVD laws fairly. *See e.g., Rhone Poulenc*, 899 F.2d at 1191. {F}air and accurate determinations are fundamental to the proper administration of our dumping law." *Federal-Mogul,* 899 F. 2d at 1191.

Commerce claims that it may establish its own rules governing administrative procedures, including the establishment and enforcement of time limits as this is necessary for it to complete its work. Final I&D Memorandum at 61, P.R. 842. While Commerce may set deadlines in a case, refusal to accept new factual information may be deemed an abuse of discretion when refusal results in an inaccurate and unfair determination. This is particularly true where, as is the case here, Commerce had sufficient time to consider the information and Commerce failed to properly notify parties to perceived deficiencies in their submissions. A punitive final determination, in which interested parties relied on the Clarification Memorandum issued by Commerce establishing the parameters of the inquiries, created serious equity and due process concerns. In fact, Commerce itself acknowledged these concerns. November 30th Memorandum, P.R. 664. Commerce concluded "that the unique circumstances present in these inquiries may present procedural and equity concerns." *Id*. Given the equities at issue, the need for an accurate, non-punitive determination and the extraordinary long decision-making process, Commerce's refusal and rejection of new factual information was an abuse of discretion.

Commerce's requirements to ensure a fair and accurate result outweigh Commerce's desire to issue a final determination and/or the minimal burden Commerce would have faced in reviewing new factual information. For the reasons detailed above, Commerce's rejection of new factual information was an abuse of discretion, was not supported by substantial evidence, and not in accordance with law.

### 4.  Commerce's Actions In the Underlying Inquiries Were Unreasonable

Although the Court generally gives deference to Commerce when the agency slightly exceeds statutory deadlines for its review functions, Commerce's actions in these inquiries were unreasonable.  A few factual highlights demonstrate Commerce's unreasonable and arbitrary procedures during the pendency of these inquiries.  These actions alone merit voiding Commerce's *Final Determination* as such actions are contrary to Commerce's mandate to conduct and issue fair and accurate determinations.  *See e.g., Helmerich,* 24 F. Supp. 2d at 313

First, while preliminary determinations in anticircumvention inquiries typically last six to nine months, Commerce initiated the anticircumvention proceeding in June 2020 and did not issue the *Preliminary Determination* until July 2022, some 24 months later.  *See* Prelim. I&D Memorandum at 1, P.R.,409 (stating that Commerce initiated its circumvention inquiry in June 2020 and dating its Preliminary I&D Memorandum July 22, 2022).  As detailed above, Commerce's *Preliminary Determination* is fatally flawed due to the lack of notice of perceived deficiencies to responding companies assigned AFA and an expansion of the definition of inquiry merchandise.  *See supra* Section IV.B.I-2.  Moreover, Commerce's (1) failure to follow its statutory notice mandates and (2) expansion of the scope of these inquiries to include merchandise previously deemed not subject based on Commerce's Clarification Memorandum had further consequences.  Commerce caused significant duty liability to accrue for importers that relied on Commerce's Clarification Memorandum.  This unexpected duty liability occurred without prior notice and resulted in rates of 206.34% imposed upon importers who relied in good faith upon representations of Commerce on the scope of the anti-circumvention proceeding.  *See Final Determination*, 88 Fed. Reg. at 46,741, P.R. 844 (providing the China-wide entity rates).

Second, Commerce further extended its final determination into the summer of 2023, again abusing the statutory guidance.  *See* Final I&D Memorandum at 196, P.R. 842 (showing a signature

date of July 14, 2023).   In total, where the statute contemplated 300 days to come to a circumvention final determination, *see* 19 U.S.C. § 1677j(f), Commerce took approximately 1,120 days to complete its review.  This unreasonably timeline extends far beyond a mere missing of the target set forth in the statute.  *Compare* Preliminary I&D Memorandum at 1, n.1, P.R. 409 (citing the *Initiation Notice* that Commerce published in the Federal Register on June 17, 2020), *with* Final I&D Memorandum at 196, P.R. 842 (showing a signature date of July 14, 2023).

A number of procedural consequences flowed from Commerce's unreasonable actions. For instance, as a result of the three year-long inquiry, the earliest date that parties could request an administrative review was January 2023 for the 2022 period of review.  *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review and Join Annual Inquiry Service List*, 87 Fed. Reg. 1396 (Jan. 11, 2022); *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review*, 85 Fed. Reg. 64 (Jan. 2, 2020).  Commerce expanded the 2022 administrative review to include suspended entries retroactive to June 17, 2020, to determine the appropriate AD/CVD duties to apply, if any.  However, no clear procedures were established by Commerce's *Final Determination* for the administrative review process, despite Commerce's previous acknowledgement "that the unique circumstances present in these inquiries may present procedural and equity concerns."  November 30th Memorandum at 3, P.R. 664.

In its November 30th Memorandum, Commerce indicated that it was considering modifying the certification program to allow the companies that submitted quantity and value questionnaires found ineligible to certify imports for the period June 17, 2020, through December 31, 2021.  *Id.* In part, this proposal would have ensured that importers, such as the ST&R Consolidated Plaintiffs, would not be required to pay antidumping and countervailing duties on imports of non-subject

merchandise.  In its *Final Determination*, Commerce refused to modify its certification program. Commerce indicated that it would allow companies to address future certification ability in the 2022 administrative review.  However, Commerce's *Final Determination* fails to adequately address procedural and due process concerns as it is not clear if Commerce will allow companies to address retroactive application of certification.

In sum, Commerce's actions in this proceeding were unreasonable, not supported by substantial evidence and not in accordance with law.

## C. COMMERCE'S FAILURE TO ISSUE APPROPRIATE CBP INSTRUCTIONS IS CONTRARY TO LAW

In the *Final Determination*, Commerce found that the application of AFA was not applicable to An An Plywood Joint Stock Company ("An An") and Greatwood Hung Yen ("Greatwood").  Final I&D Memorandum at 75-76, P.R. 842.  Commerce agreed that Commerce's initial AFA determinations against these companies was not warranted.  *Id*. at 75.  Commerce indicated that it would issue instructions to CBP regarding An An and Greatwood's ability to certify.  *Id*. at 76 ("Accordingly, we will modify the instructions issued to CBP to permit An An {and Greatwood} to certify its entries of non-inquiry merchandise.").  Commerce's *Final Determination* did not indicate that it would issue corrective instructions to CBP instructing CBP to unsuspend entries of imports not produced under one of the five processing scenarios found to circumvent the *China Orders* and/or to issue refunds for entries of non-inquiry merchandise manufactured by An An or Greatwood.

In Commerce's CBP instructions following the *Final Determination*, Commerce notified CBP that "{t}he following companies are now eligible to participate in the certification program: An An Plywood Joint Stock Company{,} Greatwood Company Limited {, and} Greatwood Hung Yen Joint Stock Company."  CBP Message No. 3215402 at para 5a.(ii), P.R. 845.  Despite

determining that the application of AFA against An An and Greatwood was not warranted, Commerce's instructions to CBP did not rectify its previous assessment of AFA against these companies, the suspension of liquidation, and/or the collection of cash deposits. Specifically, as a result of the *Preliminary Determination*, Commerce instructed CBP to suspend liquidation and require cash deposits retroactive to the date of initiation of these inquiries for product scenarios 4 and 5 (*i.e.*, June 17, 2020) for these companies as they were not eligible for certification at the time. CBP Message No. 2220409 (Aug. 8, 2022), para. 5a-5-d, P.R. 445.

Commerce's CBP instructions following the *Final Determination* merely state that these companies were "now eligible" for certification. CBP Message No. 3215402 (Aug. 4, 2023) at para 5a.(ii), P.R. 845. These instructions do not address the retroactive suspension and/or cash deposit assessment that resulted for entries of merchandise manufactured and/or exported by An An or Greatwood. Rather, the instructions direct CBP to continue to suspend liquidation "of entries of inquiry merchandise already subject to the suspension of liquidation under" the *China Orders* in accordance with Commerce's previous CBP instructions. *Id*. at para 4a. As a result, Commerce failed to issue proper CBP instructions regarding An An and Greatwood concerning the retroactive application of the *China Orders* since initiation on June 17, 2020 and the reversal of its AFA application for these companies.

CBP cannot modify Commerce's determinations and enforcement of those determinations absent express instructions from Commerce. *See e.g.*, *Mitsubishi Elecs. Am. v. United States*, 44 F.3d 973, 977 (Fed. Cir. 1994). CBP acts only in a ministerial capacity in the assessment and collection of ADCVD duties. *See Aireko Constr., LLC v. United States*, 547 F. Supp. 3d 1350, 1357 (Ct. Int'l Trade 2021) ("CBP's role is to liquidate the goods pursuant to the Department of Commerce's instructions."). Without an express statement by Commerce to CBP in its instructions

concerning both the certification program and cash deposit instructions, CBP is not able to revert the instructions issued at the time of the *Preliminary Determination* to suspend the liquidation of these entries and/or collect cash deposits despite these instructions directly conflicting with Commerce's *Final Determination* that these companies are eligible to certify that they are not subject to these inquiries.

In sum, Commerce failed to issue CBP instructions consistent with its Final Determination that the application of AFA for An An and Greatwood was not warranted and that these companies were eligible for certification.  CBP instructions concerning the suspension of liquidation and refund of cash deposits for these companies must be issued so that CBP is instructed to act in accordance with Commerce's *Final Determination*.  Absent corrected instructed related to An An and Greatwood, Commerce's CBP instructions are not supported by substantial evidence and not in accordance with law.

### D. ST&R CONSOLIDATED PLAINTIFFS ADOPT COMMENTS FILED BY PLAINTIFFS AND CONSOLIDATED PLAINTIFFS

ST&R Consolidated Plaintiffs hereby adopt and incorporate by reference the briefs filed by Plaintiffs DH Consolidated Plaintiffs on February 1, 2024, ECF Doc. No. 31, and Consolidated Plaintiffs on March 4, 2024 to the extent that the briefs dispute Commerce's *Final Determination* concerning the *China Orders* as Commerce's affirmative circumvention finding was not supported by substantial evidence and was not otherwise in accordance with law.  Moreover, Consistent with this Court's Scheduling Order, ECF Doc No. 30, issues related to Commerce's  application of total adverse facts available to specific foreign exporters will be addressed in Tranche Two briefing.

### V.   <u>CONCLUSION</u>

For the reasons set forth in this brief, ST&R Consolidated Plaintiffs respectfully request that this Court hold that Commerce's *Final Determination* was not supported by substantial

evidence and otherwise not in accordance with law. ST&R Consolidated Plaintiffs respectfully requests this Court to remand this matter to Commerce with instructions to issue a new determination that is consistent with this Court's decision.

Respectfully Submitted,

By:    /s/ Kristen Smith
        Kristen Smith
        Sarah E. Yuskaitis

**SANDLER TRAVIS & ROSENBERG, P.A.**
1300 Pennsylvania Avenue, N.W.
Suite 400
Washington, DC 20004
Tel: (202) 730-4965
Fax: (202) 842-2247

*Counsel to Cabinetworks Group, Inc. f/k/a/
ACProducts, Inc., ACPI Wood Products,
LLC, Cabinetworks Group Middlefield,
LLC, Cabinetworks Group Michigan, LLC,
Boise Cascade Building Materials
Distribution LLC, USPLY LLC*

Dated: March 4, 2024

<u>**Certificate of Compliance with Chamber Procedure 2(B)(1)**</u>

The undersigned hereby certifies that the foregoing brief contains 9,266 words, inclusive of footnotes, exclusive of the table of contents, table of authorities, and certificates of counsel, and counsel's signature block, and therefore complies with the maximum 12,000-word count limitation set forth in the Scheduling Order, ECF Doc. No. 30.

By:    <u>/s/ Sarah E. Yuskaitis</u>
*Counsel to Cabinetworks Group, Inc. f/k/a/ ACProducts, Inc., ACPI Wood Products, LLC, Cabinetworks Group Middlefield, LLC, Cabinetworks Group Michigan, LLC, Boise Cascade Building Materials Distribution LLC, USPLY LLC*

Dated: March 4, 2024