## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| SHELTER FOREST INTERNATIONAL ACQUISITION, INC.,<br><br>*Plaintiff,*<br><br>and<br><br>GREATRIVER WOOD CO., LTD., ET AL.,<br><br>*Consolidated Plaintiffs,*<br><br>v.<br><br>UNITED STATES,<br><br>*Defendant,*<br><br>and<br><br>COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD,<br><br>*Defendant-Intervenor.* | Consol. Court No. 23-00144 |

## <u>CONSOLIDATED PLAINTIFFS' TRANCHE 2 RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>

Pursuant to Rule 56.2 of this Court, Consolidated Plaintiffs Cabinetworks Group, Inc. f/k/a/ ACProducts, Inc., ACPI Wood Products, LLC, Cabinetworks Group Middlefield, LLC, Cabinetworks Group Michigan, LLC, Boise Cascade Building Materials Distribution LLC, and USPLY LLC (collectively, "ST&R Consolidated Plaintiffs"), hereby move for judgment on the agency record. ST&R Consolidated Plaintiffs challenge the U.S. Department of Commerce's (the "Department" or "Commerce") final affirmative determination concerning the anticircumvention inquiry of the antidumping and countervailing *Orders* on certain hardwood plywood products from

the People's Republic of China, conducted pursuant to Section 781(b) of the Tariff Act of 1930, as amended, and 19 C.F.R. § 351.225(g). *See Certain Hardwood Plywood Products From the People's Republic of China: Final Scope Determination and Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders*, 88 Fed. Reg. 46,740 (Dep't of Commerce Jul. 20, 2023) ("*Final Determination*"); *see also* Memorandum from James Maeder, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, to Lisa W. Wang, Assistant Secretary for Enforcement and Compliance, *Subject: Issues and Decision Memorandum for Circumvention and Scope Inquiries of the Antidumping Duty and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China* (Jul. 14, 2023) ("Final I&D Memorandum").

Support for this motion is set forth in the brief annexed hereto and is hereby incorporated by reference. A proposed order is also attached.

WHEREFORE, ST&R Consolidated Plaintiffs respectfully requests that this Court grant this motion, hold that Commerce's *Final Circumvention Determination* is unsupported by substantial evidence and is not otherwise in accordance with the law, and remand the *Final Circumvention Determination* to Commerce for disposition consistent with the Court's final decision.

Respectfully Submitted,

/s/ Kristen Smith
Kristen Smith
Sarah E. Yuskaitis

**SANDLER TRAVIS & ROSENBERG, P.A.**
1300 Pennsylvania Avenue, N.W.
Suite 400
Washington, DC 20004
Tel: (202) 730-4965
Fax: (202) 842-2247

*Counsel to Cabinetworks Group, Inc. f/k/a/
ACProducts, Inc., ACPI Wood Products,
LLC, Cabinetworks Group Middlefield,
LLC, Cabinetworks Group Michigan, LLC,
Boise Cascade Building Materials
Distribution LLC, and USPLY LLC*

Dated: April 1, 2024

## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| SHELTER FOREST INTERNATIONAL ACQUISITION, INC.,<br><br>    *Plaintiff,*<br><br> and<br><br>GREATRIVER WOOD CO., LTD., ET AL,<br><br>    *Consolidated Plaintiffs,*<br><br> v.<br><br>UNITED STATES,<br><br>    *Defendant,*<br><br> and<br><br>COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD,<br><br>    *Defendant-Intervenor.* | Consol. Court No. 23-00144<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD** |

Kristen Smith
Sarah E. Yuskaitis
**Sandler Travis & Rosenberg, P.A.**
1300 Pennsylvania Avenue, N.W.
Suite 400
Washington, DC 20004
Tel: (202) 730-4965

Dated: April 1, 2024

# TABLE OF CONTENTS

I.    RULE 56.2 STATEMENT ................................................................................ 1

A.    THE ADMINISTRATIVE DETERMINATION UNDER REVIEW ............................... 1

B.    ISSUES OF LAW PRESENTED ......................................................................... 2

II.    STATEMENT OF FACTS ............................................................................... 3

III.    SUMMARY OF ARGUMENT ......................................................................... 7

IV.    ARGUMENT ................................................................................................. 8

A.    STANDARD OF REVIEW .............................................................................. 8

B.    COMMERCE'S APPLICATION OF ADVERSE FACTS AVAILABLE WAS
CONTRARY TO LAW ......................................................................................... 9

    1.    The Legal Standard for Application of AFA ............................................ 9

    2.    Commerce's Application of AFA is Not Justified .................................. 14

    3.    Commerce Violated 19 U.S.C. § 1677m(d) By Failing To Provide an Opportunity to
Remedy Deficiencies ............................................................................... 16

C.    COMMERCE'S APPLICATION OF ADVERSE FACTS AVAILABLE WAS
INCONSISTENT WITH THE ADMINISTRATIVE RECORD ............................... 19

    1.    Commerce's Application of AFA With Respect to Innovgreen Is Not Supported by
Substantial Evidence and Contrary to Law ............................................. 19

    2.    Commerce's Application of AFA with Respect to Hai Hien Is Not Supported by
Substantial Evidence and Contrary to Law ............................................. 24

    3.    Commerce's Application of AFA With Respect to Camlam Is Not Supported by
Substantial Evidence and Contrary to Law ............................................. 28

    4.    Commerce's Application of AFA With Respect to Govina Is Not Supported by
Substantial Evidence and Contrary to Law ............................................. 31

    5.    Commerce's Application of AFA With Respect to Groll Ply Is Not Supported by
Substantial Evidence and Contrary to Law ............................................. 33

D.    ST&R CONSOLIDATED PLAINTIFFS ADOPT COMMENTS FILED BY
PLAINTIFFS AND CONSOLIDATED PLAINTIFFS ........................................... 35

V.    CONCLUSION .......................................................................................... 35

# **TABLE OF AUTHORITIES**

## **Cases**

*AK Steel Corp. v. United States,* 22 CIT 1070, 34 F.Supp.2d 756 (1998)..................................... 17

*Asociacion Colombiana de Exportadores de Flores v. United States*, 704 F. Supp. 1114, *aff'd*
    901 F.2d 1089 (Fed. Cir. 1990) ................................................................................................. 24

*Böwe–Passat v. United States,* 17 CIT 335 (1993) ................................................................. 17, 21

*Changzhou Trina Solar Energy Co. v. United States,* 352 F. Supp. 3d 1316 (Ct. Int'l Trade 2018)
    .................................................................................................................................................... 12

*China Nat'l Arts and Crafts Imp. and Exp. Corp. v. United States*, 771 F. Supp. 407 (Ct. Int'l
    Trade 1991) ............................................................................................................................... 24

*China Nat'l Mach. Imp. & Exp. Corp. v. United States*, 264 F. Supp. 2d 1229 (Ct. Int'l Trade
    2003) ......................................................................................................................................... 24

*F.Lli de Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027 (Fed. Cir.
    2000).......................................................................................................................... 12, 17, 21, 33

*Guizhou Tyre Co. v. United States*, 348 F. Supp. 3d 1261 (Ct. Int'l Trade 2018)....................... 13

*Helmerich & Payne v. United States*, 24 F.Supp.2d 304 (Ct. Int'l Trade 1998) ......................... 29

*Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375 (Fed. Cir. 2022) ................................ 18

*Melamine Chemicals, Inc. v. United States*, 561 F. Supp. 458 (Ct. Int'l Trade 1983) ................ 18

*Mueller Commercial de Mex., S. de R.L. de C.V. v. United States*, 753 F.3d 1227 (Fed. Cir. 2014)
    .................................................................................................................................................. 11, 14

*Mukand, Ltd. v. United States*, 767 F.3d 1300 (Fed. Cir. 2014).................................................. 17

*Ningbo Dafa Chem. Fiber Co. v. United States*, 580 F.3d 1247 (Fed. Cir. 2009)........................ 11

*Nippon Steel Corp. v. United States*, 24 C.I.T. 1158, 118 F. Supp. 2d 1366 (2000)............. 11, 14

*Nippon Steel Corp. v. United States,* 337 F.3d 1373 (Fed. Cir. 2003)........................ 11, 12, 21, 34

*NSK Ltd. v. United States*, 358 F. Supp. 2d 1276 (Ct. Int'l Trade 2005)..................................... 12

*NTN Bearing Corp. of America v. United States*, 368 F.3d 1369 (Fed. Cir. 2004)...................... 12

*Rhone Poulenc, Inc. v. United States,* 899 F.2d 1185 (Fed. Cir. 1990) ....................................... 30

*Saha Thai Steel Pipe Public Co., Ltd. v. United States*, 605 F.Supp.3d 1348 (Ct. Int'l Trade, Dec.
    2, 2022)...................................................................................................................................... 13

*Shandong Huarong Mach. Co. v. United States*, 435 F. Supp. 2d 1261 (Ct. Int'l Trade 2006)... 10

*Shelter Forest International Acquisition, Inc., et al. v. United States*, 497 F.Supp.3d 1388 (Ct. Int'l Trade 2021) .......................................................................................................... 18

*Sigma Corp. v. United States*, 841 F. Supp. 1255 (Ct. Int'l Trade 1993) .............................. 18, 27

*SKF USA, Inc. v. United States*, 391 F. Supp. 2d 1327 (Ct. Int'l Trade 2005)............................ 18

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370 (Fed. Cir. 2013) ........... 16

*Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333 (Fed. Cir. 2011)................. 11

## **Statutes and Regulations**

19 U.S.C. § 1677e ..................................................................................................... 2, 10, 11

19 U.S.C. § 1677e(a) ........................................................................................................ passim

19 U.S.C. § 1677e(a)(2)(A) ..................................................................................................... 17

19 U.S.C. § 1677e(a)(2)(B)................................................................................................. 17, 18

19 U.S.C. § 1677e(b) ................................................................................................. 11, 12, 14, 16

19 U.S.C. § 1677m(d)....................................................................................................... passim

## **Other Authorities**

H.R. Rep. No. 103-316, at 869, *reprinted in* 1994 U.S.C.C.A.N. at 4198-99 ............................. 13

## **Administrative Decisions**

*Certain Hardwood Plywood From the People's Republic of China, Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order*, 83 Fed. Reg. 504 (Jan. 4, 2018) .................................................................................................... 2

*Certain Hardwood Plywood From the People's Republic of China: Countervailing Duty Order*, 83 Fed. Reg. 513 (Jan. 4, 2018) (collectively, "*China Orders*") ................................... 2

*Certain Hardwood Plywood Products From the People's Republic of China: Preliminary Scope Determination and Affirmative Preliminary Determinations of Circumvention of the Antidumping and Countervailing Duty Orders*, 87 Fed. Reg. 45,753 (Jul. 29, 2022) ........... 6, 8

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RULE 56.2**</u>
<u>**MOTION FOR JUDGEMENT ON THE AGENCY RECORD BY STR CONSOLIDATED**</u>
<u>**PLAINTIFFS**</u>

Consolidated Plaintiffs Cabinetworks Group, Inc. f/k/a/ ACProducts, Inc., ACPI Wood

Products, LLC, Cabinetworks Group Middlefield, LLC, Cabinetworks Group Michigan, LLC,

Boise Cascade Building Materials Distribution LLC, and USPLY LLC (collectively, ST&R

Consolidated Plaintiffs), by and through their attorneys, hereby submit the following

Memorandum in accordance with Rule 56.2(c) of the Rules of the United States Court of

International Trade.

## I.   <u>RULE 56.2 STATEMENT</u>

### A.  **THE ADMINISTRATIVE DETERMINATION UNDER REVIEW**

ST&R Consolidated Plaintiffs challenge the U.S. Department of Commerce's (the

"Department" or "Commerce") final scope and circumvention determination concerning the

antidumping duty ("AD") and countervailing duty ("CVD") *Orders* on certain hardwood plywood

products from the People's Republic of China, conducted pursuant to Section 781(b) of the Tariff

Act of 1930, as amended.  *See Certain Hardwood Plywood Products From the People's Republic*

*of China: Final Scope Determination and Affirmative Final Determination of Circumvention of*

*the Antidumping and Countervailing Duty Orders*, 88 Fed. Reg. 46,740 (Dep't of Commerce Jul.

20, 2023) ("*Final Determination*"), P.R. 844[1]; *see also* Memorandum from James Maeder, Deputy

Assistant Secretary for Antidumping and Countervailing Duty Operations, to Lisa W. Wang,

Assistant Secretary for Enforcement and Compliance, *Subject: Issues and Decision Memorandum*

---

[1] Citations are denoted by reference to the document numbers assigned in the antidumping public administrative record ("P.R.") and antidumping confidential administrative record ("C.R.") as identified in the indices of the Administrative Records filed by Commerce with the Court on September 5, 2023, ECF Doc. Nos. 21-1, 21-2.

*for Circumvention and Scope Inquiries of the Antidumping Duty and Countervailing Duty Orders on Certain Hardwood Plywood Product from the People's Republic of China* (Jul. 14, 2023) ("Final I&D Memorandum").  P.R. 842; *Certain Hardwood Plywood From the People's Republic of China, Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order*, 83 Fed. Reg. 504 (Jan. 4, 2018); *Certain Hardwood Plywood From the People's Republic of China: Countervailing Duty Order*, 83 Fed. Reg. 513 (Jan. 4, 2018) (collectively, "*China Orders*").

### B.  ISSUES OF LAW PRESENTED

ST&R Consolidated Plaintiffs bring this challenge to resolve the following issues of law and fact presented herein:

1. Whether Commerce's failure to meet the requirements of 19 U.S.C. § 1677e is not supported by substantial evidence and not in accordance with law

2. Whether Commerce's failure to notify the Vietnamese producers and to provide an opportunity to clarify, correct, explain or address Commerce's perceived deficiencies consistent with 19 U.S.C. § 1677m(d) was not supported by substantial evidence, arbitrary and capricious, and not in accordance with law.

3. Whether Commerce's *Final Determination* which determined that 20 Vietnamese manufacturers failed to cooperate to the best of their ability and applied AFA to is not supported by substantial evidence and not in accordance with law.

4. Whether Commerce's Final Determination that the application of AFA to specific Vietnamese manufacturers, *i.e.*, Innovgreen Thanh Hoa Co., Ltd. ("Innovgreen"), Hai Hien Bamboo Wood Joint Stock ("Hai Hien"), Camlam Joint Stock Company ("Camlam"), Govina Investment Joint Stock Company ("Govina"), and Groll Ply and

Cabinetry Co., Ltd. ("Groll Ply"), is not supported by substantial evidence and not in accordance with law.

## II.    STATEMENT OF FACTS

ST&R Consolidated Plaintiffs adopt the Statement of Facts set forth in Consolidated Plaintiffs', American Woodmark Corporation, *et al*., Rule 56.2 Memorandum in Support of Motion for Judgment Upon the Agency Record.  *See* ECF Doc. No. 31 ("DH Consolidated Plaintiffs' Br").  This is consistent with the Court's scheduling order, stating that consolidated Plaintiffs should "limit factual and procedural background statements to any additional information relevant to the parties represented in those briefs."  *See* Scheduling Order (Nov. 29, 2023), ECF Doc. No. 30.  The following statement of facts is in addition to those set forth in DH Consolidated Plaintiffs' Br. and addresses the responding Vietnamese exporters Innovgreen Thanh Hoa Co., Ltd. ("Innovgreen"), Hai Hien Bamboo Wood Joint Stock ("Hai Hien"), Camlam Joint Stock Company ("Camlam"), Govina Investment Joint Stock Company ("Govina"), and Groll Ply and Cabinetry Co., Ltd. ("Groll Ply") discussed herein.

The administrative record demonstrates that Innovgreen, Hai Hien, Camlam, Govina, and Groll Ply fully participated in Commerce's inquiry.  Each company timely filed initial questionnaire responses.  *See* Letter from Fox Rothschild LLP to Dep't of Commerce, *Re: Certain Hardwood Plywood Products from the People's Republic of China: Submission of Quantity and Value Response* (Oct. 1, 2020), P.R., C.R. ("Innovgreen's Q&V"), P.R. 121, C.R. 135; Letter from deKieffer & Horgan, PLLC to Dep't of Commerce, *RE: Anti-Circumvention Inquiry of Certain Hardwood Plywood Products from the People's Republic of China: Quantity and Value Questionnaire Response* (Oct. 1, 2020) ("Hai Hien's Q&V"), P.R. 106, C.R.76; Letter from Fox Rothschild LLP to Dep't of Commerce, *Re: Certain Hardwood Plywood Products from the*

*People's Republic of China: Submission of Quantity and Value Response* (Oct. 1, 2020) ("Camlam's Q&V"), P.R. 118, C.R. 126; Letter from Fox Rothschild LLP to Dep't of Commerce, *Re: Certain Hardwood Plywood Products from the People's Republic of China: Submission of Quantity and Value Response* (Oct. 1, 2020) ("Govina's Q&V"), P.R. 95, C.R. 47-48; Letter from Fox Rothschild LLP to Dep't of Commerce, *Re: Certain Hardwood Plywood Products from the People's Republic of China: Submission of Quantity and Value Response* (Oct. 1, 2020) ("Groll Ply's Q&V"), P.R. 120, C.R. 133-134.

Innovgreen, Hai Hien, Camlam, Govina, and Groll Ply also responded to Commerce's supplemental questionnaire. *See* Letter from Fox Rothschild LLP to Dep't of Commerce, *Re: Certain Hardwood Plywood Products from the People's Republic of China: Submission of Supplemental Quantity and Value Response* (Mar. 29, 2021) ("Innovgreen's Supplemental Q&V"), P.R. 236, C.R. 216-219; Letter from deKieffer & Horgan, PLLC to Dep't of Commerce, *RE: Anti-Circumvention Inquiry of Certain Hardwood Plywood Products from the People's Republic of China: Quantity and Value Supplemental Questionnaire Response* (Mar. 8, 2021) ("Hai Hien's Supplemental Q&V"), P.R. 189, C.R. 167; Letter from Fox Rothschild LLP to Dep't of Commerce, *Re: Certain Hardwood Plywood Products from the People's Republic of China: Submission of Supplemental Quantity and Value Response* (Mar. 29, 2021) ("Camlam's Supplemental Q&V"), P.R. 237, C.R. 220; Letter from Fox Rothschild LLP to Dep't of Commerce, *Re: Certain Hardwood Plywood Products from the People's Republic of China: Submission of Supplemental Quantity and Value Response* (Mar. 25, 2021) ("Govina's Supplemental Q&V"), P.R. 220, C.R. 199-200; Letter from Fox Rothschild LLP to Dep't of Commerce, *Re: Certain Hardwood Plywood Products from the People's Republic of China: Submission of Supplemental*

*Quantity and Value Response* (Mar. 29, 2021) ("Groll Ply's Supplemental Q&V"), P.R. 238, C.R. 221-222.

Additionally, Innovgreen, Hai Hien, Camlam, Govina, and Groll Ply each submitted responses to Commerce's second supplemental questionnaire. *See* Letter from Fox Rothschild LLP to Dep't of Commerce, *Re: Certain Hardwood Plywood Products from the People's Republic of China: Submission of Second Supplemental Quantity and Value Response* (Jul. 9, 2021), P.R., C.R. ("Innovgreen's Second Supplemental Q&V"), P.R. 334, C.R. 339-341; Letter from deKieffer & Horgan, PLLC to Dep't of Commerce, *RE: Anti-Circumvention Inquiry of Certain Hardwood Plywood Products from the People's Republic of China: Hai Hien's Response to the General 2nd SQ and Company-Specific Q&V SQ* (Jul. 2, 2021) ("Hai Hien's Second Supplemental Q&V"), P.R. 284, C.R. 242-244; Letter from Fox Rothschild LLP to Dep't of Commerce, *Re: Certain Hardwood Plywood Products from the People's Republic of China: Submission of Second Supplemental Quantity and Value Response* (Jul. 9, 2021) ("Camlam's Second Supplemental Q&V"), P.R. 336, C.R. 346; Letter from Fox Rothschild LLP to Dep't of Commerce, *Re: Certain Hardwood Plywood Products from the People's Republic of China: Submission of Second Supplemental Quantity and Value Response* (Jul. 12, 2021) ("Govina's Second Supplemental Q&V"), P.R. 343, C.R. 355-358; Letter from Fox Rothschild LLP to Dep't of Commerce, *Re: Certain Hardwood Plywood Products from the People's Republic of China: Submission of Second Supplemental Quantity and Value Response* (Jul. 9, 2021) ("Groll Ply's Second Supplemental Q&V"), P.R. 290, C.R. 252.

On July 29, 2022, Commerce published its *Preliminary Determination*, determining that certain hardwood plywood products and veneered panels exported from Vietnam, which were assembled in Vietnam, are subject to the *China Orders*, and that certain hardwood plywood

assembled in Vietnam are circumventing the *China Orders*. *Certain Hardwood Plywood Products From the People's Republic of China: Preliminary Scope Determination and Affirmative Preliminary Determinations of Circumvention of the Antidumping and Countervailing Duty Orders*, 87 Fed. Reg. 45,753 (Jul. 29, 2022) ("*Preliminary Determination*"), P.R. 415.  In the *Preliminary Determination*, Commerce determined that the application of AFA was warranted, in part, for 22 companies whose questionnaire responses were deemed to be "deficient, contradictory, or inconsistent" and, therefore, Commerce found the application of facts available with an adverse inference was also warranted.  Preliminary I&D Memorandum at 12-13, P.R. 409; Preliminary AFA Memorandum at 2, P.R. 410.  These 22 AFA companies included Govina, Groll Ply, Hai Hien, and Innovgreen.  Preliminary I&D Memorandum at Appendix II, P.R. 409.  Camlam was not on the list of AFA, meaning that Camlam was initially eligible for certification of non-inquiry merchandise.

Commerce also scheduled and conducted verification of Camlam.  *See* Letter from Fox Rothschild LLP to Dep't of Commerce, *Re: Certain Hardwood Plywood Products from the People's Republic of China: Anti-Circumvention Inquiry – Vietnam Assembly, Minor Corrections of Camlam Joint Stock Company* (Oct. 27, 2022), P.R. 645, C.R. 530; Memorandum from Kabir Archuletta, Program Manager, Office V, AD/CVCD Operations, to The File, *Re: Verification of Cam Lam Joint Stock Company* (Dec. 21, 2022) ("Camlam's Verification Report"), P.R. 689, C.R. 571.  However, Commerce did not accept Camlam's minor corrections.  Camlam's Verification Report, P.R. 689, C.R. 571.  Commerce included factually incorrect information in the verification report.  After issuance of the verification report, Camlam requested corrections to the factually incorrect information in the verification report; however, Camlam's request was rejected.  Letter from Dep't of Commerce, to Camlam Vietnam Joint Stock Company, *Re: Circumvention Inquiry*

*of the Antidumping and Countervailing Duty Orders on Certain Hardwood Plywood from the People's Republic of China – Rejection of Camlam Vietnam Joint Stock Company's Submission* (Jan. 5, 2023) ("Rejection of Camlam's Submission"), P.R. 714.

In the *Final Determination*, Commerce continued to find that 20 of these 22 companies failed to provide useable questionnaire responses. Final I&D Memorandum at App. I, P.R. 842. Commerce's AFA determination resulted in these 22 Vietnamese companies becoming ineligible to certify that their exported product was not inquiry merchandise and assessed AD and CVD duties under the *China Orders*. Commerce's *Final Determination* continued to apply AFA to Innovgreen, Hai Hien, Govina, and Groll Ply. *Id.* Commerce's *Final Determination* also revised its *Preliminary Determination* and applied AFA to Camlam. *Id.*

## III.    <u>SUMMARY OF ARGUMENT</u>

Commerce improperly applied adverse facts available ("AFA") to 20 Vietnamese exporters of hardwood plywood based on minor, explainable, or unrelated discrepancies in their quantity and value initial and supplemental questionnaire responses. Section B discussions Commerce's application of AFA to these 20 Vietnamese exporters generally, detailing the legal and factual flaws of the AFA process in the underlying proceeding. Namely, the first time these 20 Vietnamese exporters were notified of the perceived deficiencies was at the time of issuance of Commerce's *Preliminary Determination*. *Certain Hardwood Plywood Products From the People's Republic of China: Preliminary Scope Determination and Affirmative Preliminary Determinations of Circumvention of the Antidumping and Countervailing Duty Orders*, 87 Fed. Reg. 45,753 (Jul. 29, 2022) ("*Preliminary Determination*"), P.R. 415. Both before and after the issuance of the *Preliminary Determination*, these exporters were not provided an opportunity to

address the perceived deficiencies.  Commerce therefore violated 19 U.S.C. § 1677m(d) by failing

to give the exporters reasonable notice of the deficiencies an opportunity to correct them prior to

applying AFA.  Commerce's application of AFA is therefore unsupported by the administrative

record and contrary to law.

Section C addresses Commerce's improper application of AFA to specific companies, *i.e.*,

Innovgreen, Hai Hien, Camlam, Govina, and Groll Ply.  The administrative record demonstrates

that the application of AFA to these companies was legally and/or factually flawed.  Often, the

application of AFA was the result of corrections made to initial quantity and value questionnaire

responses filed in supplemental questionnaires.  Corrections made by the Vietnamese exporters to

initial quantity and value questionnaire responses in supplemental filings were deemed

discrepancies rather than corrections.  However, corrections of information in a questionnaire

response is not evidence of noncooperation or withholding of information in an anticircumvention

proceeding.  Rather, it is evidence of a company cooperating to the best of its ability to provide

full and accurate information.  Additionally, at no point in this proceeding were interested parties

notified of a perceived deficiency in their questionnaire responses.  Likewise, these specific

exporters were not given the opportunity to correct or address these perceived deficiencies.  In

sum, the application of AFA is unsupported by the administrative record and otherwise contrary

to law.

## IV.    <u>ARGUMENT</u>

### A.  STANDARD OF REVIEW

ST&R Consolidated Plaintiffs adopt the Standard of Review set forth in STR Consolidated

Plaintiff's Tranche 1, Rule 56.2 Memorandum in Support of Motion for Judgment upon the

Agency Record.  *See* ECF Doc. No. 37 ("ST&R Consolidated Plaintiffs' Tranche 1 Brief").  This is consistent with the Court's scheduling order, stating that consolidated Plaintiffs should not repeat arguments made in the first round of opening and reply briefs for each tranche and should limit factual and procedural background statements to any additional information relevant to the parties.  ECF Doc. No. 30.

### B. COMMERCE'S APPLICATION OF ADVERSE FACTS AVAILABLE WAS CONTRARY TO LAW

Commerce may only apply adverse facts available under certain prescribed instances.  In this inquiry, Commerce found the application of AFA appropriate, finding that 20 Vietnamese companies produced inquiry merchandise which are circumventing the *Orders* based on AFA.  *See* Final I&D Memorandum at 119-120, P.R. 842.  However, Commerce did not comply with the statutory requirements to apply AFA.  As a result, Commerce's application of AFA is contrary to law.

#### 1.   The Legal Standard for Application of AFA

The use of "facts available" is governed by 19 U.S.C. § 1677e and 19 U.S.C. § 1677m(d).  Commerce's AFA finding must satisfy three criteria: (1) Commerce must identify a gap in the record; (2) Commerce must identify how the interested party failed to cooperate to the best of its ability; and (3) the overall AFA decision must be supported by substantial evidence.  As detailed below, Commerce's *Final Determination* does not comply with these statutory provisions as Commerce failed (1) to provide proper analysis concerning the perceived "gaps" in the record related to these 20 Vietnamese companies, (2) to demonstrate how these 20 Vietnamese companies that participated in this proceeding failed to cooperate to the best of their abilities, and/or (2) to notify these 20 companies of any perceived deficiencies.

The use of facts otherwise available is governed by 19 U.S.C. § 1677e(a):

> (a) In general
> If-
> (1) necessary information is not available on the record, or
> (2) an interested party or any other person-
>> (A) withholds information that has been requested by the administering authority or the Commission under this subtitle,
>> (B) fails to provide such information by the deadlines for submission of the information or in the form and manner requested, subject to subsections (c)(1) and (e) of section 1677m of this title,
>> (C) significantly impedes a proceeding under this subtitle, or
>> (D) provides such information but the information cannot be verified as provided in section 1677m(i) of this title,
> the administering authority and the Commission shall, **subject to section 1677m(d) of this title**, use the facts otherwise available in reaching the applicable determination under this subtitle.

19 U.S.C. § 1677e (emphasis added).

The use of "adverse inferences" (*i.e.*, AFA), is governed by 19 U.S.C. § 1677e(b):

> If the administering authority or the Commission (as the case may be) finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority or the Commission, the administering authority or the Commission (as the case may be), in reaching the applicable determination under this title, may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available.

These two statutory provisions require separate findings, *i.e.*, an adverse inference cannot be applied unless it is appropriate to use facts otherwise available.  *See e.g.*, *Shandong Huarong Mach. Co. v. United States*, 435 F. Supp. 2d 1261, 1289 (Ct. Int'l Trade 2006) ("Absent a valid decision to use facts otherwise available, Commerce may not use an adverse inference").  The application of AFA is thus a two-part inquiry.

First, Commerce must identify why it needs to rely on facts otherwise available.  Second, Commerce must show how a party failed to cooperate to the best of its ability as to warrant the use of an adverse inference when "selecting from the facts otherwise available."  *See* 19 U.S.C. § 1677e(b); *see also Nippon Steel Corp. v. United States*, 24 C.I.T. 1158, 1170, 118 F. Supp. 2d

1366, 1378 (2000); *Mueller Commercial de Mex., S. de R.L. de C.V. v. United States*, 753 F.3d 1227, 1231-32 (Fed. Cir. 2014).

Commerce's reliance on facts otherwise available is only appropriate to "fill gaps" in the record necessary for Commerce to complete its inquiry. *See e.g., Nippon Steel Corp. v. United States,* 337 F.3d 1373, 1381 (Fed. Cir. 2003) (stating that the use of facts otherwise available is to "fill in the gaps" when "Commerce has received less than the full and complete facts needed to make a determination"); *Ningbo Dafa Chem. Fiber Co. v. United States*, 580 F.3d 1247, 1255 (Fed. Cir. 2009) (noting that "{t}he legislative history of the {Uruguay Round Agreements Act} thus reveals that Congress intended § 1677e(a) to provide Commerce with gap-filling power to facilitate its implementation of the antidumping laws"); *Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1348 (Fed. Cir. 2011) ("Commerce can only use facts otherwise available to fill a gap in the record"). Commerce is allowed to use facts available only when "necessary information is not available on the record," or an interested party has withheld requested information, significantly impeded the investigation, or provided unverifiable information. 19 U.S.C. § 1677e(a).

The prerequisite for the use of facts otherwise available pursuant to section 1677e(a) is a "gap" in the record resulting from missing information. The language in the legislative history confirms the intended purpose of section 1677e(a). The Statement of Administrative Action for the implementation of the Uruguay Round Agreements Act ("SAA") provides the following regarding the use of facts otherwise available:

> New section 776(a) requires Commerce and the Commission to make determinations on the basis of facts available where requested information is missing from the record or cannot be used because, for example, it has not been provided, it was provided late, or Commerce could not verify the information. . . . The agencies will be required, consistent with new section 782(e), to consider

> information requested from interested parties that: (1) is on the record; (2) was filed within the applicable deadlines; and (3) can be verified. … Section 776(a) generally will require Commerce to reach a determination by filling gaps in the record due to deficient submissions or other causes.

H.R. Rep. No. 103-316, at 869, *reprinted in* 1994 U.S.C.C.A.N. at 4198-99; *see also NTN Bearing Corp. of America v. United States*, 368 F.3d 1369, 1377 (Fed. Cir. 2004) (noting that the "post-1994 version of the statute permits the use of facts available when necessary information is not available on the record"); *NSK Ltd. v. United States*, 358 F. Supp. 2d 1276, 1290 (Ct. Int'l Trade 2005) (noting that "{b}y its nature, a 'facts available' analysis necessarily implies that Commerce used facts where the actual facts are an insufficient basis for a complete analysis").

Commerce is also required to show that the interested party "failed to cooperate by not acting to the best of its ability to comply with a request for information." 19 U.S.C. § 1677e(b). The Federal Circuit made clear that "the purpose of section 1677e(b) is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins." *F.Lli de Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000).

The Court has instructed Commerce that, in determining whether a party cooperated to the best of its ability, Commerce cannot apply AFA for a "failure to respond, but only under circumstances in which it is reasonable for Commerce to expect that more forthcoming responses should have been made; *i.e.*, under circumstances in which it is reasonable to conclude that less than full cooperation has been shown." *Nippon Steel*, 337 F.3d at 1383; *see also Changzhou Trina Solar Energy Co. v. United States,* 352 F. Supp. 3d 1316, 1326-27 (Ct. Int'l Trade 2018) ("*Changzhou Trina I*") ("The use of facts available allows Commerce to render determinations when information is missing and it may use an adverse inference if respondents fail to cooperate,

but is not permitted to skip either of these steps on the way to use of AFA."); *Guizhou Tyre Co. v. United States*, 348 F. Supp. 3d 1261, 1270 (Ct. Int'l Trade 2018) ("Compliance with the 'best of its ability' standard is determined by assessing whether the respondent puts forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation").

The Court has instructed Commerce on the requirements of the legal test at issue, stating:

> The legal test at issue here contains three steps. First, to rely on facts otherwise available, Commerce must identify why it is doing so. See 19 U.S.C. § 1677e(a). Then Commerce must "promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency . . . ." 19 U.S.C. § 1677m(d). Commerce may only apply an adverse inference if it finds that a respondent failed to cooperate to the best of its ability. 19 U.S.C. § 1677e(b)(1).

*Saha Thai Steel Pipe Public Co., Ltd. v. United States*, 605 F.Supp.3d 1348, 1361 (Ct. Int'l Trade, Dec. 2, 2022).

Finally, a conditional requirement for the use of adverse facts available is Commerce's compliance with 19 U.S.C. § 1677m(d). The statute, as reproduced above, expressly conditions the use of adverse facts available on Commerce's notice to responding parties.

Section 1677m(d) provides:

> If the administering authority or the Commission determines that a response to a request for information under this subtitle does not comply with a request, the administering authority or the Commission (as the case may be) **shall promptly inform the person submitting the response of the nature of the deficiency** and shall, to the extent possible, **provide that person with the opportunity to remedy** or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this subtitle. . . .

19 U.S.C. § 1677m(d) (emphasis added).

The statutory language is clear.  Commerce has an obligation to notify responding parties of the nature of any perceived deficiencies and provide an opportunity to remedy the perceived deficiency.  As discussed in detail below, Commerce's actions in these proceedings violate the clear statutory language set forth in 19 U.S.C. § 1677e and 19 U.S.C. § 1677m(d).  Commerce's *Final Determination* is therefore unsupported by the administrative record and otherwise not in accordance with law.

### 2. Commerce's Application of AFA is Not Justified

As detailed above, the application of AFA is a two-part inquiry.  First, Commerce must identify why it needs to rely on facts otherwise available.  Second, Commerce must show how a party failed to cooperate to the best of its ability as to warrant the use of an adverse inference when "selecting from the facts otherwise available."  *See* 19 U.S.C. § 1677e(b); *see also Nippon Steel*, 24 C.I.T. at 1170, 118 F. Supp. 2d at 1378; *Mueller Commercial*, 753 F.3d at 1231-32.  Commerce is allowed to use facts available only when "necessary information is not available on the record," or an interested party has withheld requested information, significantly impeded the investigation, or provided unverifiable information.  19 U.S.C. § 1677e(a).  Here, Commerce's *Final Determination* found that the use of facts otherwise available applies because the 20 companies' questionnaire responses withheld information, failed to provide timely information in the form and manner requested, and/or significantly impeded the proceeding as set forth in 19 U.S.C. § 1677e(a)(2)(A)-(C).  Final I&D Memorandum at 121, P.R. 842.  Commerce's *Final Determination* in applying AFA to these 20 Vietnamese companies is flawed for the reasons discussed below.  For a discussion as to specific exporters, refer to **Section C** below.

First, Commerce determined that the 20 companies withheld information requested by Commerce, warranting facts available pursuant to 19 U.S.C. § 1677e(a)(2)(A).  Final I&D Memorandum at 121, P.R. 842.  Assuming, *in arguendo*, that the 20 companies withheld

information, Commerce is required to notify respondents of the perceived deficiencies. As highlighted in **Section B.3.** below, Commerce failed to adhere to these strict statutory requirements set forth in 19 U.S.C. §§ 1677e(a)(2), 1677m(d). Commerce's *Final Determination* is therefore contrary to law.

Second, Commerce's reliance on 19 U.S.C. § 1677e(a)(2)(B) requires a finding that a responding party failed "to provide such information by the deadlines for submission of the information or in the form and manner requested." The administrative record demonstrates that the 20 companies did not miss a deadline or fail to submit their questionnaire responses in the form and manner requested. Commerce itself confirmed that questionnaire responses from the 20 AFA companies were submitted timely. *See e.g.,* Preliminary I&D Memorandum at 3-4, App. I, P.R. 409. Additionally, at no point does Commerce detail or explain that these 20 AFA companies failed to submit the information in the form and manner requested. As a result, the administrative record does not support the use of facts otherwise available in accordance with 19 U.S.C. § 1677e(a)(2)(B).

Third, Commerce's determination that these 20 companies impeded the investigation is meritless. Final I&D Memorandum at 121, P.R. 842. Such a determination is inconsistent with the administrative record. The 20 companies in no way impeded the proceeding; rather, the 20 companies, by Commerce's admission, responded timely to the limited quantity and value questionnaires. This is highlighted by the timeline of the proceeding. The deadline for the second supplemental quantity and value questionnaire was due July 9, 2021. Memorandum from Mark Harrison, International Trade Analyst, Office V, AD/CVD Operations, to The File, *Re: Anti-Circumvention Inquiry of Certain Hardwood Plywood Products from the People's Republic of China; Subject: Second Extension of Second Q&V Supplemental Questionnaire Response* (June

28, 2021) ("June 28, 2021 Memorandum"), P.R. 275.  From the filing of the last questionnaire in this inquiry, Commerce took 381 days to issue the *Preliminary Determination* on July 25, 2022. *See generally* Preliminary I&D Memorandum, P.R. 409.  Given Commerce's own timeline, there is no reasonable support that companies' responses to the Q&V impeded the timeline of the proceeding.

Fourth, the administrative record in this proceeding is based solely responses to questionnaires issued by Commerce.  Commerce is responsible for any limitations in the record before it.  Despite taking considerable time in reaching the *Preliminary Determination* (768 days between the Department's initiation and issuance of the *Preliminary Determination)*, Commerce even failed to select mandatory respondents for consideration.  *See* Certain Hardwood Plywood Products from the People's Republic of China: Initiation of Anti-circumvention Inquiries and Scope Inquiries on the Antidumping Duty and Countervailing Duty Orders; Vietnam Assembly, 85 Fed. Reg. 36,530 (June 17, 2020) ("*Initiation Notice*"), P.R. 4.  Commerce cannot penalize responding companies for its own failures to conduct a fair and accurate inquiry.  *See e.g.*, *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013) (Commerce may not "explain the absence of evidence by invoking procedural difficulties that were at least in part a creature of its own making.").

In sum, it is undisputed that the 20 AFA exporters responded to each of the questionnaires issued to the companies by Commerce.  Any perceived errors or deficiencies may have been easily correctable had Commerce identified such deficiencies and provided the 20 AFA companies the opportunity to clarify their responses.

### 3.  Commerce Violated 19 U.S.C. § 1677m(d) By Failing To Provide an Opportunity to Remedy Deficiencies

Even if the requirements of 19 U.S.C. § 1677e(a) were met, the *Preliminary Determination*

was the first notice provided to these 20 companies of perceived "discrepancies, inconsistencies, or misleading information."  Commerce is required to ask for the information and must give respondents a chance to correct any deficiencies with the provided information.  19 U.S.C. § 1677m(d).  Here, Commerce failed to notify the 20 companies of any deficiencies in their responses and/or provide an opportunity to remedy.  Commerce's actions are particularly troubling given that Commerce had an entire year from the deadline for the final supplemental quantity and value questionnaire until the issuance of the *Preliminary Determination* in July 2022.  *See* June 28, 2021 Memorandum, P.R. 275; Preliminary Determination, P.R. 415.  As a result, Commerce's actions in these inquiries are contrary to the requirements of 19 U.S.C. § 1677m(d) to apply AFA.

Importantly, 19 U.S.C. § 1677m(d) states that when Commerce identifies a gap in a response it "shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency."  19 U.S.C. § 1677m(d).  Commerce's authority to apply AFA is to "provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins."  *F.Lli de Cecco*, 216 F.3d at 1032; *see also Mukand, Ltd. v. United States*, 767 F.3d 1300, 1307 (Fed. Cir. 2014) ("{T}he purpose of the adverse inference provision is to encourage future cooperation and ensure that a respondent does not obtain a more favorable antidumping rate by failing to cooperate.").

Commerce cannot conduct inquiries via predatory "gotcha" policies.  *See e.g.*, *Böwe–Passat v. United States,* 17 CIT 335, 343 (1993) (holding that Commerce's refusal to address previously unknown deficiencies was a "'gotcha' policy"); *AK Steel Corp. v. United States,* 22 CIT 1070, 34 F.Supp.2d 756 (1998) (sustaining Commerce's use of respondent's explanation of data discrepancy as record evidence because respondent "first became aware that reconciliation

was in dispute upon receiving a copy of {d}omestic {p}roducers' {c}ase {b}rief" after the record closed). Nor can Commerce require responding parties to be "mind-readers." *Sigma Corp. v. United States*, 841 F. Supp. 1255, 1267 (Ct. Int'l Trade 1993) ("Commerce cannot expect a respondent to be a mind-reader"). Commerce's actions must echo the fact that "{t}he standards of fairness and reasonableness are inherent" in trade laws. *See e.g., Melamine Chemicals, Inc. v. United States*, 561 F. Supp. 458, 463 (Ct. Int'l Trade 1983).

With respect to the 20 companies which Commerce applied AFA and consequently are not eligible to participate in the certification for non-inquiry merchandise, Commerce is required to provide respondents with notice of deemed deficiencies and the opportunity to remedy such responses. This is particularly true in instances where Commerce is considering the extraordinary action of whether to bring non-subject merchandise under the scope of an order, as the case is here. "As part of this investigation, Commerce must give respondents notice when it identifies deficiencies in submissions and provide parties with an opportunity to respond." *Shelter Forest International Acquisition, Inc., et al. v. United States*, 497 F.Supp.3d 1388 (Ct. Int'l Trade 2021) Commerce must clearly and definitively ask for what it wants. Once it has done so, "if the Department wished to place the burden of error on {the respondent}, it had to make clear and give {the respondent} a chance to correct the error prior to the issuance of a final decision." *Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375, 1384 (Fed. Cir. 2022) (*citing SKF USA, Inc. v. United States*, 391 F. Supp. 2d 1327, 1336–37 (Ct. Int'l Trade 2005)).

Here, Commerce's inquiry is contrary to the statutory notification requirements. Commerce first notified companies at the time of issuance of the *Preliminary Determination* that they are deemed ineligible for participation in the certification program due to perceived deficiencies in their questionnaire responses. Commerce's *Final Determination* therefore amounts

to a failure to allow the responding companies to participate in these ongoing proceedings by failing to properly notify companies of perceived deficiencies and allowing the companies to address such deficiencies.  Such action is inconsistent with 19 U.S.C. § 1677m(d) and therefore contrary to law.

### C. COMMERCE'S APPLICATION OF ADVERSE FACTS AVAILABLE WAS INCONSISTENT WITH THE ADMINISTRATIVE RECORD

As detailed above, Commerce's application of AFA is unsupported by the administrative record and contrary to law.  At no point prior to the issuance of the *Preliminary Determination* did Commerce adhere to its statutory notification requirements set forth in 19 U.S.C. § 1677m(d).  As a result, Commerce wrongly applied AFA to 20 Vietnamese exporters of hardwood plywood based on minor or explainable discrepancies in their quantity and value initial and supplemental questionnaire responses.  Attempts by these companies to correct or address any perceived deficiencies were rejected.[2]

Below provides an overview of company specific issues related to Commerce's application of AFA for certain companies (*i.e.*, Innovgreen, Hai Hien, Camlam, Govina, and Groll Ply).  Issues related to other specific exporters will be addressed by other Consolidated Plaintiffs and are herein incorporated by referenced.

#### 1.  Commerce's Application of AFA With Respect to Innovgreen Is Not Supported by Substantial Evidence and Contrary to Law

Commerce applied AFA to Innovgreen, concluding that (1) there were alleged discrepancies in the reported species of face and back veneers in the initial quantity and value

---

[2] Discussions related to the Commerce's refusal to allow new factual information to correct perceived deficiencies and/or allow adequate participation from interested is addressed in ST&R Consolidated Plaintiff's March 4, 2024 Rule 56.2 Motion for Judgment on the Agency Record, ECF Doc No. 37, at Section IV.B.3.  While related to the issue at hand, this issue is provided for in Tranche 1 briefs and therefore will not be reproduced herein.

questionnaire response compared to what was reported in the company's second supplemental questionnaire response and (2) that Innovgreen incorrectly reported that the company did not import any inputs from China for core veneers because the physical characteristics reported on Vietnamese customs declarations indicate that its veneer imports are of a thickness consistent with that typical of the thickness of core veneers. *See* Preliminary AFA Memorandum, at 17, P.R. 410, C.R. 412; Final I&D Memorandum at 76-78, 97-98, P.R. 842. Commerce's purported discrepancies do not rise to the level of "pervasive and persistent" deficiencies that render Innovgreen's responses unreliable. The administrative record in this proceeding demonstrates that Innovgreen participated fully in the underlying inquiry and was provided no notice of these perceived deficiencies. As such, Commerce's application of AFA to Innovgreen is unsupported by the administrative record and contrary to law.

During the underlying proceeding, Innovgreen fully cooperated in good faith by timely responding to all requests for information to the best of its ability. *See* Innovgreen's Q&V, P.R. 121, C.R. 135; Innovgreen's Supplemental Q&V, P.R. 236, C.R. 216-219; Innovgreen's Second Supplemental Q&V, P.R. 334, C.R. 339-341. In the Second Supplemental Q&V, Innovgreen corrected the reported species of face and back veneers used in the plywood that it sold. A company's correction of information provided in its initial questionnaire response is not evidence that the company withheld information from Commerce. Commerce improperly characterized the revision made in a supplemental questionnaire as a "discrepancy" rather than properly calling it a correction. Innovgreen's participation in the underlying proceeding and correction of record evidence through its own participation demonstrates a respondent company acting in good faith to provide accurate information to Commerce. Innovgreen's Second Supplemental Q&V, P.R. 334,

C.R. 339.  Commerce wrongly characterized these corrections as "pervasive" deficiencies.  Final

I&D Memorandum at 75, P.R. 842.

Clarifying and, where necessary, correcting information is a normal part of Commerce's

questionnaire process.  As Commerce itself recognizes, the "best of its ability" standard set forth

in the statute, "does not require perfection and recognizes that mistakes sometimes occur."  *Nippon*

*Steel*, 337 F.3d at 1382.  Correction of information in a questionnaire response is not evidence of

noncooperation or withholding of information in an anticircumvention proceeding.  Rather, it is

evidence of a company cooperating to the best of its ability to provide full and accurate

information.

The antidumping and countervailing duty statute is not punitive in nature.  *F.Lli de Cecco*,

216 F. 3d at 1032.  As detailed above, Commerce must "promptly inform the person submitting

the response of the nature of the deficiency and shall to the extent practicable, provide that person

with an opportunity to remedy or explain the deficiency."  19 U.S.C. § 1677m(d).  This did not

occur in the underlying proceeding.

Commerce claims that it cannot be expected to "perpetually supplement a respondent when

its supplemental questionnaire responses introduce contradictory information" or know why a

response has been modified.  Final I&D Memorandum at 78, P.R. 842.  Review of the

administrative record demonstrate that at no time throughout the pendency of the inquiries did

Commerce notify Innovgreen of any perceived deficiencies in questionnaire responses or provide

Innovgreen an opportunity to address said deficiencies.  This action is contrary to 19 U.S.C. §

1677m(d).  Commerce cannot be allowed to act with a "gotcha" policy.  *See e.g., Böwe-Passat*, 17

CIT at 343 (holding that Commerce's refusal to address previously unknown deficiencies was a

"'gotcha' policy").  The timing of this proceeding demonstrates how egregious Commerce's

failure to seek clarification was. Innovgreen filed its second supplemental questionnaire on July 9, 2021, and Commerce's Preliminary Determination AFA Memorandum was issued on July 22, 2022, more than a year later. Commerce had more than one year to request clarification and failed to do so.

Commerce's additional claims that adverse facts available was justified because the data was "flawed and unverifiable" also has no merit. *Id.* As noted, Innovgreen's second supplemental response was submitted on July 9, 2021. While this response could have been verified as is, Commerce had more than a year to seek clarification prior to verification which Commerce conducted during the period October 17, 2022, through October 25, 2022. *See* Memorandum From Miranda Bourdeua, International Trade Compliance Analyst AD/CVD Operations, Office V, through Kabir Archuelleta, Program Manager AD/CVD Operations, Office V, *Re: Circumvention Inquiry of the Antidumping and Countervailing Duty Orders on Certain Hardwood Plywood from the Peoples' Republic of China, SUBJECT: Revised Verification Schedule* (Oct. 13 2022), P.R. 609. Commerce's decision to ignore record evidence, failure to seek clarification if needed and then claim deficiencies contradicts all notions of fair play and is inconsistent with its mandate for accurate decisions.

Furthermore, Commerce's decision to apply AFA focuses on an immaterial fact. The perceived discrepancy between the species of face and back veneers reported in Innovgreen's initial and second supplemental Q&V responses is not an issue related to circumvention. The species of wood of the face and back veneers was not central to Commerce's analysis of circumvention. Rather, Commerce's analysis centered on the country of origin of the wood used to manufacture the plywood core under consideration.

Commerce's attempt to base AFA on reported thickness of veneers also has no merit. According to Commerce, the thickness of the veneer imported from China was more consistent with core veneer than face/back veneer as reported by Innovgreen. Final I&D Memorandum at 79, P.R. 842. As support for its finding, Commerce relied upon information related to another company in a separate proceeding. Commerce compared Innovgreen's imported veneers to veneers imported by Chengen in the underlying investigation without any support or discussion as to how the data reported by Chengen in the underlying investigation was comparable to Innovgreen. *See* Preliminary AFA Memorandum at 17, P.R. 410, C.R. 412; Final I&D Memorandum at 35, P.R. 842. The size of a veneer imported by an unrelated third party is not relevant in evaluating wood imported by Innovgreen and its actual use in the production process, something that could have easily been verified by Commerce. Commerce has an obligation to investigate Innovgreen's own data. Commerce failed to do so here.

As support for its determination, Commerce relied upon ITC data. However, Commerce cherry-picked the data. Final I&D Memorandum at 79, P.R. 842. Commerce relied on certain data as support for face veneer thickness. At the same time, Commerce ignored evidence in the same ITC data chart reporting imports of face veneers of a thickness similar to that imported by Innovgreen claiming that the data referred to non-subject (*i.e.*, non-Chinese) face veneers. *Id.* Plywood is a commodity product, data on thickness of face veneers is applicable regardless of country of origin.

As further support, Commerce noted that "the Petitioner's Request indicated that the value of Vietnam's hardwood plywood exports increased from 63.8 million USD in 2017 to 309.3 million USD in 2019, a 384 increase, which is a trajectory that suggests even more massive growth for the remainder of the inquiry period." *Id.* at 80. Commerce claims that while it "cannot

speculate as to what changes may have occurred in an industry that has undergone such transformations, we can extrapolate from the record developed in these inquires.  Notably, no party cited any record evidence supporting the claim that face veneers are produced and consumed in the same thickness as core veneers."  *Id.*

Commerce's attempted justification regarding thickness is pure speculation.  "Extrapolate" and "speculate" are one in the same and do not constitute record evidence.  Commerce points to no evidence on the actual record that demonstrates face veneers imported by Innovgreen were not face veneers.  That more than one company imported similar face veneers demonstrates use as face veneers; a fact that Commerce easily, and should have, verified.

As a fundamental principle, Commerce anti-circumvention determinations mut be based upon the administrative record in the proceeding.  Speculation and conjecture are no basis for antidumping and countervailing duty determinations.  *See e.g.*, *Asociacion Colombiana de Exportadores de Flores v. United States*, 704 F. Supp. 1114, *aff'd* 901 F.2d 1089 (Fed. Cir. 1990) ("Speculation is not support for a finding . . ."); *China Nat'l Mach. Imp. & Exp. Corp. v. United States*, 264 F. Supp. 2d 1229, 1241 (Ct. Int'l Trade 2003) ("Conjectures are not facts and cannot constitute substantial evidence") (citing *China Nat'l Arts and Crafts Imp. and Exp. Corp. v. United States*, 771 F. Supp. 407, 413 (Ct. Int'l Trade 1991) ("Guesswork is no substitute for substantial evidence in justifying decisions")).

Accordingly, Commerce's application of AFA to Innovgreen is not supported by substantial evidence and is otherwise not in accordance with law.

## 2. Commerce's Application of AFA with Respect to Hai Hien Is Not Supported by Substantial Evidence and Contrary to Law

Commerce's application of AFA to Hai Hien is not supported by substantial evidence on the administrative record and contrary to law as there are no gaps on the record and Hai Hien fully

cooperated with Commerce's request for information. *See* Hai Hien's Q&V, P.R. 106, C.R.76; Hai Hien's Supplemental Questionnaire Response, P.R. 189, C.R. 167; Hai Hien's Second Supplemental Q&V at 3, 5, P.R. 284, C.R. 242-244.   In the *Final Determination*, Commerce applied AFA to Hai Hien finding that Hai Hien failed to accurately report information regarding its Chinese affiliate's exports and mischaracterized its veneer imports, rendering Hai Hien's submissions unreliable.   Final I&D Memorandum at 94, P.R. 842.   Commerce's *Final Determination* with respect to Hai Hien is unsupported by the administrative record and contrary to law.

First, Commerce's determination that Hai Hien failed to report an affiliated supplier has no merit.  Final I&D Memorandum at 93, P.R. 842.  Hai Hien reported in its initial questionnaire response that the company was not related to any producers or exporters of plywood products from China.  *See* Hai Hien's Q&V at 5, P.R. 106, C.R.76.  The company confirmed in its supplemental and second supplemental questionnaire responses that the company was not related to any producers or exporters of plywood products from China and confirmed in the second supplemental questionnaire that a shareholder had previously worked at a Chinese producer.  *See* Hai Hien's Supplemental Q&V at 2, 3 P. R. 189, C.R. 167; Hai Hien's Second Supplemental Q&V at 3, 5, P.R. 284, C.R. 242.

As set forth in briefing before Commerce, the alleged discrepancy arose over a misunderstanding of one sentence in Hai Hien's second supplemental questionnaire concerning one of Hai Hien's shareholder's prior employment history.  *See* Letter from deKieffer & Horgan, PLLC to Dep't of Commerce, *Re: Hardwood Plywood from the People's Republic of China: Hai Hien Case Brief* (Jan. 10, 2023), P.R. 752, C.R. 592 ("Hai Hien Brief").  In Hei Hien's initial Q&V response, Hai Hien reported to Commerce that "the company was reconstructed and started

production and sales business of plywood." *See* Hai Hien Q&V at 2. P.R. 106, C.R. 76.  Hai Hien

further explained that it reported sales data after the company was restructured.  *Id*.  In responding

to Commerce's questions regarding affiliation, it is clear that the questionnaire response refers to

the restructured company.  Hai Hien Brief at 3, P.R. 752, C.R. 592.  Likewise, in the supplemental

questionnaire in response to Commerce's question on affiliation, Hai Hien stated that it was not

affiliated with any Chinese plywood producers.  Hai Hien Supplemental Q&V at 2, P.R. P.R. 189,

C.R. 167; *see also* Hai Hien Brief at 3-4, P.R. 752, C.R. 592.

Commerce took issue with the timeframe associated with the shareholder's prior

employment, disagreeing with the statement that "{s}ince Hai Hien was established, {this

individual} has not held any positions, or owned any shares of any, Chinese producers or exporters

of plywood or plywood inputs."  Final I&D Memorandum at 93, P.R. 842.  Commerce concluded

that "there is nothing on the record to support Hai Hien's proposition that it was reasonable for

Hai Hien to consider this 'restructure' time to be the date it was established."  *Id*.  Commerce's

conclusion is not supported by the record.  Hai Hien's reporting was consistent with effective dates

on the articles of incorporation that were reported in the same questionnaire responses.  Hai Hien's

Second Supplemental Q&V at Exhibit SQ2-1, P.R. 284, C.R. 242 *Id*. at.  Thus, Hai Hien's

reporting was reasonable based on the records before Commerce.

There were no gaps on the record or any evidence of noncooperation.  Hai Hien's responses

to Commerce were consistent.  This misunderstanding could have been clarified had Commerce

notified Hei Hien of the perceived discrepancy and allowed Hei Hien to clarify.  Commerce failed

to do so. Based upon the record evidence and level of cooperation demonstrated by Hai Hien, if

Commerce deemed the reporting of no affiliation and the fact that a shareholder once was

employed by a Chinese producer inconsistent, Commerce should have issued a questionnaire to

clarify the issue.  Commerce cannot require responding parties to be "mind-readers".  *Sigma Corp.*, 841 F. Supp. at 1267.

Moreover, as Hai Hien submitted its second supplemental questionnaire on July 2, 2021, and Commerce issued its preliminary AFA memorandum on July 22, 2022, Commerce had over a year to clarify the alleged deficiency.  Commerce's failure to notify Hai Hien of perceived deficiencies is inconsistent with the statute's mandate that Commerce "must promptly inform the person submitting the response of the nature of the deficiency and shall to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency."  19 U.S.C. § 1677m(d).

Additionally, Commerce's finding that Hai Hien's face veneers are core veneers based upon thickness and species amounts to mere speculation and is not supported by the administrative record.  *See* Preliminary AFA Memorandum at 12-13, P.R. 410, C.R. 412; Final I&D Memorandum at 92-93, P.R. 842.  Commerce's findings are flawed.  Commerce's questions concerning Hai Hien's use of poplar veneer as face veneers were made for the first time in the *Preliminary Determination* in violation of 19 U.S.C. § 1677m(d).  Attempts by Hai Hien to submit post-preliminary factual information to address the issue of Hai Hien's use of poplar veneer as face veneers after first notification of Commerce's concerns were rejected.  *See* Letter from Dep't of Commerce, *Rejection of Hai Hien's Submission* (Oct. 25, 2022) (rejecting Exhibit 1 in Hai Hien September 16, 2022 Rejected Comments), P.R. 630.

In questionnaire responses filed with Commerce, Hai Hien reported the import of poplar face veneer from China.  *See* Hai Hien Q&V at Exhibit 3, P.R. 106, C.R. 76; Hai Hien Second Supplemental Q&V at 12 and Exhibit SQ2-1, P.R. 284, C.R. 242.  If Commerce had questions regarding what was reported or felt that the information was deficient or inconsistent in anyway

Hai Hien should have been notified and been afforded the opportunity to remedy or explain. 19 U.S.C. § 1677m(d). Commerce asked no questions and requested no documentation on the actual use of the face veneers. Hai Hien cannot be penalized for Commerce's failure to request information in the first place.

Moreover, as discussed in **Section C.1** above, Commerce's analysis amounted to nothing more that conjecture or speculation. Commerce based its information in part on data collected by the U.S. International Trade Commission ("ITC"), as well as production data and bills of materials provided by Chengen's during Commerce's first administrative review of the China Order. Preliminary AFA Memorandum at 13, P.R. 410, C.R. 412; Final I&D Memorandum at 79-80, P.R. 842. However, Commerce must look at each producer on its own. The fact that one producer in another, separate proceeding produces a veneer that is a specific size or species does not mean that a different manufacturer in a different country will. If Commerce required more information, Commerce should have requested information. Moreover, as discussed above, Commerce's reliance on ITC data was faulty as it ignored evidence of face veneers that were of similar dimensions to Hai Hien's.

In sum, Commerce's application of AFA to Hai Hen was based on conjecture rather than evidence. As a result, the *Final Determination* is not supported by record evidence. Moreover, Commerce's failure to notify Hai Hien of perceived deficiencies is contrary law, rendering the *Final Determination* legally flawed.

### 3. Commerce's Application of AFA With Respect to Camlam Is Not Supported by Substantial Evidence and Contrary to Law

The administrative record demonstrates that Camlam fully cooperated in the underlying proceeding, timely responding to all requests for information. Camlam's Q&V, P.R. 118, C.R. 126; Camlam's Supplemental Q&V, P.R. 237, C.R. 220. Despite this cooperation, when Camlam

presented minor corrections at verification, Commerce refused to consider explanations provided by the company.  *See* Camlam's Minor Corrections, P.R. 645, C.R. 530; Camlam's Verification Report, P.R. 689, C.R. 571.  Nor did Commerce correct factually incorrect information in the verification report.  *See* Rejection of Camlam's Submission, P.R. 714.

Commerce's failure to consider information presented at verification and failure to correct factually incorrect information is contrary to Commerce's obligation to conduct fair and accurate proceedings.  *See e.g., Helmerich & Payne v. United States*, 24 F.Supp.2d 304, 313 (Ct. Int'l Trade 1998).  Commerce routinely considers minor corrections as part of the verification process.  In this proceeding, Commerce refused to listen to explanations regarding the minor corrections prior to ending verification.  *See* Letter from Fox Rothschild LLP to Dep't of Commerce, *Re: Certain Hardwood Plywood Products from the People's Republic of China: Anti-Circumvention Inquiry – Vietnam Assembly, Submission of Redacted Letter in Lieu of Case Brief* (Jan. 31, 2023) ("Camlam's Redacted Case Brief") at 2-3, P.R. 795.  Moreover, when counsel notified Commerce of inaccurate statements in the verification report Commerce declined to consider or revise these misstatements going as far as to decline Camlam's letter claiming that information provided was new factual information.  P.R. 714.

By failing to allow Camlam to explain reported minor discrepancies, reasons for the discrepancies and why the discrepancies were minor in nature, Commerce made an unsupported decision to end verification. Camlam's Redacted Case Brief at 2-3, P.R. 795.  As Commerce acknowledged in the verification report, counsel requested the opportunity to explain the minor discrepancies on more than one occasion and Commerce declined.  Camlam's Verification Report at 4, P.R. 689, C.R. 571.  Indeed, minor discrepancies, which included a discrepancy related to the conversion from pieces to cubic meters, do not impact Commerce's ability to verify whether the

company used material inputs in their production process that circumvent the China orders. Camlam's Redacted Case Brief at 2, P.R. 795. Moreover, had Commerce listened to Camlam and counsel, Commerce could have determined the nature of other minor discrepancies that were reported. As Commerce itself recognizes, it is Commerce's practice to accept factual information related to minor corrections at verification. Final I&D Memorandum at 148, P.R. 842.

Commerce likewise failed to address the minor discrepancies as well as the factual inaccuracies in the verification report. Camlam's requests to revise the verification report were rejected and Commerce deemed discussions on this incorrect information in the verification report as new factual information. Letter from Dep't of Commerce, to Camlam Joint Stock Company, *Re: Circumvention Inquiry of the Antidumping and Countervailing Duty Orders on Certain Hardwood Plywood from the People's Republic of China – Rejection of Camlam's Letter in Lieu of a Case Brief* (Jan. 27, 2023), P.R. 784. In the Final I&D Memorandum, Commerce determined that Camlam failed to explain why the minor corrections presented were minor. Final I&D Memorandum at 149-150, P.R. 842. However, Camlam's attempts to provide this information at verification, after verification and in briefing to explain this information were rejected. Commerce's rejection of explanations of factual information, disregard for incorrect factual information on the record, and refusal to accept Camlam's explanation of questionnaire responses presents due process concerns and is contrary to Commerce's duty to conduct fair and accurate proceedings. *See e.g., Rhone Poulenc, Inc. v. United States,* 899 F.2d 1185, 1191 (Fed. Cir. 1990) (standing for the position that "the basic purpose of the statute – determining current margins as accurately as possible.").

Finally, the minor correction to Camlam's Q&V response were not material to the determination of circumvention. Camlam's Redacted Case Brief at 5, P.R. 795. The

administrative record demonstrates that had Commerce conducted the verification, the information would have reconciled to Camlam's sales records and financial statements. *Id*.

In sum, the administrative record demonstrates that Camlam cooperated fully with the circumvention inquiries and was prepared for onsite verification. Commerce's refusal to hear the company's explanations regarding the preparation of the Q&V minor corrections was unreasonable. Moreover, the errors in Commerce's Verification Report demonstrates that Commerce relied on incorrect and/or unsupported record evidence in its application of AFA to Camlam. As a result, Commerce' application of AFA to Camlam is unsupported by the administrative record and contrary to law.

### 4. Commerce's Application of AFA With Respect to Govina Is Not Supported by Substantial Evidence and Contrary to Law

Commerce's application of AFA to Govina is not supported by substantial evidence and is contrary to law. The administrative record demonstrates that Govina cooperated in the underlying proceeding, timely responding to all request for information. *See* Govina's Q&V, P.R. 95, C.R. 47-48; Govina's Supplemental Q&V, P.R. 220, C.R. 199-200; Govina's Second Supplemental Q&V, P.R. 343, C.R. 355-358. Commerce's application of AFA is based, in part, on the determination that Govina reported in its initial Q&V that it had not sourced any plywood inputs from resellers in Vietnam. Final I&D Memorandum, at 88, P.R. 842. Govina ultimately corrected its errors in its second supplemental questionnaire. Commerce determined that the correction in the second supplemental questionnaire was a discrepancy rather than a correction. *Id*. Commerce's determination is legally and factually flawed.

While Govina did not report these suppliers in the initial Q&V response due to language issues and misunderstandings regarding Commerce's request for information, Govina reported the suppliers in its Second Supplemental Questionnaire thereby eliminating any potential gap on the

administrative record.  Govina's Second Supplemental Q&V, P.R. 343, C.R.355; *see also*, Letter from Fox Rothschild LLP to Dep't of Commerce, *Re: Certain Hardwood Plywood Products from the People's Republic of China: Administrative Case Brief* at 13 (Jan. 10, 2023) ("Administrative Case Brief"), P.R. 761, C.R. 600.  After submitting this information to Commerce, Govina received no requests for further information or clarification from Commerce as is required pursuant to 19 U.S.C. § 1677m(d).

Importantly, Govina requested to provide further information in response to Petitioner comments to further clarify and explain.  *See* Letter from Fox Rothschild LLP to Dep't of Commerce, *Re: Certain Hardwood Plywood Products from the People's {sic} from the People's Republic of China: Request for Leave to Submit New Factual Information to Respond to Petitioner's July 26, 2021 Comments* (Aug. 20, 2021), P.R. 379.  Petitioner's comments were the first instance that Govina was notify of a potential need to clarify information on the record.  *See* Letter from Wiley Rein LLP to Dep't of Commerce, *Re:  Hardwood Plywood Products from the People's Republic of China: Comments on Additional Second Supplemental Quantity and Value Questionnaire Reponses* (Jul. 26, 2021) at 14-15, P.R. 357, C.R. 380. Commerce refused this request.  *See* Letter from Kabir Archuletta, Program Manager, Office V, Enforcement and Compliance to Govina International Joint Stock Company et al., *Re: Certain Hardwood Plywood from the People's Republic of China: Request to Submit New Factual Information* (Sept. 10, 2021), P.R. 386.  Petitioner's comments are no replacement for Commerce's notice requirements. Regardless, Commerce did not satisfy its statutory obligations consistent with 19 U.S.C. § 1677m(d) as the company was not provided the opportunity to clarify or respond to the perceived deficiencies.

Commerce applied AFA because it determined that Govina did not provide source documentation (*i.e.*, customs declaration). *Preliminary AFA Memorandum* at 9, P.R. 410, C.R. 412; Final I&D Memorandum at 88, P.R. 842. Commerce also stated that Govina failed to report the HS subheading under which it imported its plywood imports from China. Final I&D Memorandum at 88, P.R. 842. The administrative record demonstrates, however, that while Govina did not submit the customs declaration, the company complied with the request for sample entry documents by providing customs entry documentation including invoices, packing lists in bills of lading that contained the appropriated HTS codes confirming classification (*i.e.*, HT subheadings 4408 and 4412). Govina's Second Supplemental Q&V at Exhibit 2, P.R. 343, C.R. 355. Commerce should have identified that it needed the missing customs declaration as a deficiency and permitted the opportunity to provide the missing information. Govina substantially complied with Commerce's request for information by provided all the other requested entry documentation.

Commerce's refusal to consider evidence on the record or to notify Govina of deficiencies in the company's response is punitive in nature which is contrary to the nature of the antidumping and countervailing duty statute. *F.Lli de Cecco*, 216 F. 3d at 1032. For the foregoing reasons, Commerce's application of AFA to Govina was unsupported by substantial evidence and otherwise not in accordance with law.

### 5. Commerce's Application of AFA With Respect to Groll Ply Is Not Supported by Substantial Evidence and Contrary to Law

Commerce applied AFA to Groll Ply because (1) Commerce determined that Groll Ply did not disclose its affiliation with a Chinese producer or exporter of plywood or plywood inputs in China, (2) Commerce found the Government of Vietnam ("GOV") import data contradicted Groll Ply's reporting of its Chinese inputs under certain HS subheadings, and (3) Commerce relied on

GOV information to find that Groll Ply purchased plywood inputs with characteristics of core veneers from Chinese suppliers.  Final I&D Memorandum at 91-92, P.R. 842.  Commerce's AFA application to Groll Ply is legally and factually flawed.  As a result, Commerce's application of AFA to Groll Ply is not supported by substantial evidence and is contrary to law.

First, the administrative record demonstrates that Groll Ply cooperated in the underlying proceeding, timely responding to all request for information.  *See* Groll Ply's Q&V, P.R. 120, C.R. 133-134; Groll Ply's Supplemental Q&V, P.R. 238, C.R. 221-222; Groll Ply's Second Supplemental Q&V, P.R. 290, C.R. 252.  Second, Commerce's affiliation determination is not supported by record evidence.  As noted in Groll Ply's case brief, Commerce appeared to have misunderstood Groll Ply's explanation about its relationship with the Chinese company.  Administrative Case Brief at 15, P.R. 761, C.R. 600.  Contrary to Commerce's determination, Groll Ply maintained all along its affiliation with this Chinese company.  *Id.* at 15-16 (citing to Groll Ply's First Supplemental Response dated March 29, 2021, P.R., C.R. ).  However, Commerce found issue with Groll Ply's contention that the Chinese company is not a producer or exporter of plywood or plywood products from China is supported by the record.  However, Groll Ply corrected its earlier response regarding this affiliation and submitted documentation in the second supplemental response.  Groll Ply's Supplemental Q&V, P.R. 238, C.R. 221-222.

Commerce improperly deemed this correction as a contradiction.  Clarifying and, where necessary, correcting information is a normal part of Commerce's questionnaire process.  As Commerce itself recognizes, the "best of its ability" standard set forth in the statute, "does not require perfection and recognizes that mistakes sometimes occur." *Nippon Steel*, 337 F.3d at 1382. Correction of information in a supplemental questionnaire response is not evidence of noncooperation or withholding of information in an anticircumvention proceeding.  Rather, it is

evidence of a company cooperating to the best of its ability to provide full and accurate information.    Moreover, if Commerce found this information deficient or contradictory, Commerce is obligated to issue a supplemental questionnaire or permit Groll Ply the opportunity to explain or clarify its submission.  Commerce failed to do so.

Third, Commerce rendered its determination concerning the GOV trade data without providing companies, including Groll Ply, notification of the alleged discrepancy or the ability to explain or clarify the submission.  As such, Commerce failed to identify these deficiencies in accordance with 19 U.S.C. 1677m(d).  As a result, Commerce's failure to provide Groll Ply with the statutorily required notice of a perceived deficiency render its Final Determination and application of AFA to Groll Ply unsupported by substantial evidence and otherwise contrary to law.

### D. ST&R CONSOLIDATED PLAINTIFFS ADOPT COMMENTS FILED BY PLAINTIFFS AND CONSOLIDATED PLAINTIFFS

ST&R Consolidated Plaintiffs hereby adopt and incorporate by reference the brief filed by Plaintiffs DH Consolidated Plaintiffs on April 1, 2024, to the extent that the brief disputes Commerce's *Final Determination* concerning the *China Orders* as Commerce's affirmative circumvention finding was not supported by substantial evidence and was not otherwise in accordance with law.

### V. <u>CONCLUSION</u>

For the reasons set forth in this brief, ST&R Consolidated Plaintiffs respectfully request that this Court hold that Commerce's *Final Determination* was not supported by substantial evidence and otherwise not in accordance with law.  ST&R Consolidated Plaintiffs respectfully

requests this Court to remand this matter to Commerce with instructions to issue a new determination that is consistent with this Court's decision.

Respectfully Submitted,

By:    /s/ Kristen Smith
          Kristen Smith
          Sarah E. Yuskaitis

**SANDLER TRAVIS & ROSENBERG, P.A.**
1300 Pennsylvania Avenue, N.W.
Suite 400
Washington, DC 20004
Tel: (202) 730-4965
Fax: (202) 842-2247

*Counsel to Cabinetworks Group, Inc. f/k/a/ ACProducts, Inc., ACPI Wood Products, LLC, Cabinetworks Group Middlefield, LLC, Cabinetworks Group Michigan, LLC, Boise Cascade Building Materials Distribution LLC, and USPLY LLC*

Dated: April 1, 2024

36

## <u>Certificate of Compliance with Chamber Procedure 2(B)(1)</u>

The undersigned hereby certifies that the foregoing brief contains 10,392 words, inclusive of footnotes, exclusive of the table of contents, table of authorities, and certificates of counsel, and counsel's signature block, and therefore complies with the maximum 14,000-word count limitation set forth in the Scheduling Order, ECF Doc. No. 30.

By:    /s/ Sarah E. Yuskaitis

*Counsel to Cabinetworks Group, Inc. f/k/a/ ACProducts, Inc., ACPI Wood Products, LLC, Cabinetworks Group Middlefield, LLC, Cabinetworks Group Michigan, LLC, Boise Cascade Building Materials Distribution LLC, and USPLY LLC*

Dated: April 1, 2024