## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| SHELTER FOREST INTERNATIONAL ACQUISITION, INC., | ) |
| Plaintiff, | ) |
| and | ) |
| GREATRIVER WOOD CO., LTD., ET AL., | ) |
| Consolidated Plaintiffs, | ) |
| v. | ) Consol. Court No. 23-00144 |
| UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD | ) |
| Defendant-Intervenor. | ) |

## MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of the Court of International Trade, Plaintiff

Shelter Forest International Acquisition, Inc. ("Shelter Forest"), respectfully moves for

judgment upon the agency record in this consolidated action.

Plaintiff seeks judicial review of the U.S. Department of Commerce's

("Commerce") final scope determination and affirmative final determination of

circumvention of the antidumping and countervailing duty orders on certain hardwood

plywood products from China covering exports from Vietnam. *Certain Hardwood*

*Plywood Products From the People's Republic of China: Final Scope Determination and Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders*, 88 Fed. Reg. 46,740 (July 20, 2023) and the accompanying issues and decision memorandum (July 14, 2023). For the reasons set forth in the accompanying brief in support of this motion, which is incorporated into this motion by reference, Shelter Forest moves that this Court find that Commerce's final determination is not supported by substantial evidence on the record and is otherwise not in accordance with law.

WHEREFORE, Plaintiff respectfully request that this Court enter an Order (1) holding unlawful the aspects of Commerce's final determination challenged in the underlying complaint and (2) remanding the final determination with instructions for Commerce to render a new determination consistent with the Court's decision.

Respectfully Submitted,

/s/ Daniel L. Porter
Daniel L. Porter
James C. Beaty
Katherine R. Afzal

**Curtis, Mallet-Prevost, Colt & Mosle LLP**
1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
202-452-7373

May 1, 2024

*Counsel for Shelter Forest International Acquisition Inc.*

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| SHELTER FOREST INTERNATIONAL ACQUISITION, INC., | ) ) ) |
| Plaintiff, | ) ) |
| and | ) ) |
| GREATRIVER WOOD CO., LTD., ET AL., | ) ) |
| Consolidated Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD | ) ) |
| Defendant-Intervenor. | ) ) |

Consol. Court No. 23-00144

## PLAINTIFF SHELTER FOREST'S TRANCHE II RULE 56.2 MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE AGENCY RECORD

Daniel L. Porter
James C. Beaty
Katherine R. Afzal

**Curtis, Mallet-Prevost, Colt & Mosle LLP**
1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
202-452-7373

**May 1, 2024**

*Counsel for Shelter Forest International Acquisition Inc.*

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................ 1

PLAINTIFF'S STATEMENT PURSUANT TO RULE 56.2 ................................................... 3

    A.  Administrative Determination Under Appeal .................................................... 3

    B.  Issues of Law Presented ................................................................................... 3

    C.  Statement of Reasons for Vacating Commerce's Determination ...................... 3

STATEMENT OF FACTS ................................................................................................... 4

ARGUMENT ....................................................................................................................... 8

    I.  COMMERCE FAILED TO FOLLOW THE STATUTE WHEN IT APPLIED
        FACTS AVAILABLE WITH AN ADVERSE INFERENCE TO LECHENWOOD . 8

        A.  Commerce Failed to Notify Lechenwood Regarding Discrepancies Identified in its
             Second Supplemental Questionnaire Response .......................................... 9

        B.  Commerce's Treatment of Lechenwood's Affiliations Reporting Was Also
             Inconsistent With the Statute .................................................................... 18

        C.  Commerce Failed to Support its Finding That an Adverse Inference Was Warranted
             With Respect to Lechenwood's Affiliation Reporting ............................... 20

    II.  COMMERCE'S FINDING THAT LECHENWOOD SHOULD BE EXCLUDED
         FROM THE CERTIFICATION REGIME WAS NOT SUPPORTED BY
         SUBSTANTIAL EVIDENCE ................................................................................. 23

CONCLUSION AND PRAYER FOR RELIEF ................................................................... 28

# TABLE OF AUTHORITIES

**Cases**

*BlueScope Steel v. United States*,
    548 F. Supp. 3d 1351 (Ct. Int'l Trade 2021) .................................................... 12, 19

*Bowe-Passat v. United States*,
    17 CIT 335 (1993) ................................................................................................ 16

*Changzhou Trina Solar Energy Co. v. United States*,
    352 F. Supp. 3d 1316 (Ct. Int'l Trade 2018) ........................................................ 24

*Dalian Meisen Woodworking Co. v. United States*,
    2023 Ct. Intl. Trade LEXIS 61 (April 24, 2023) ................................................. 18

*Essar Steel Ltd. v. United States*,
    678 F.3d 1268 (Fed. Cir. 2012) ........................................................................... 24

*Garg Tube Exp. LLP v. United States*,
    2024 Ct. Int'l Trade LEXIS 46 (Apr. 8, 2024) ..................................................... 21

*Hitachi Energy USA. v. United States*,
    34 F.4th 1375 (Fed. Cir. 2022) ............................................................................ 11

*Lifestyle Enter. v. United States*,
    768 F. Supp. 2d 1286 (Ct. Int'l Trade 2011) ....................................................... 26

*Nippon Steel Corp. v. United States*,
    458 F.3d 1345 (Fed. Cir. 2006) ........................................................................... 26

*Saha Thai Steel Pip Pub. v. United States*,
    605 F. Supp. 3d 1348 (Ct. Int'l Trade 2022) .................................................. 12, 17

*Shelter Forest Int'l Acquisition v. United States*,
    2022 U.S. App. LEXIS 16491 (June 15, 2022) .................................................... 11

*Shelter Forest Int'l Acquisition, Inc. v. United States*,
    497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021) .................................................. 11, 17

*Sigma Corp. v. United States*,
    841 F. Supp. 1255 (Ct. Int'l Trade 1993) ............................................................ 12

*SKF USA Inc v. United States*,
    391 F. Supp. 2d 1327 (Ct. Int'l Trade 2005) ....................................................... 13

*Vietnam Finewood Co. v. United States*,
    633 F. Supp. 1243 (Ct. Int'l Trade 2023) ............................................................ 25

*Wheatland Tube v. United States*,
    650 F. Supp. 3d 1379 (Ct. Int'l Trade 2023) ....................................................... 12

**Statutes**

19 U.S.C. § 1677e .............................................................................................. 10, 21

19 U.S.C. § 1677m ............................................................................................. 10, 24

**Regulations**

19 C.F.R. § 351.308 ................................................................................................ 24

**Administrative Determinations**

*Certain Hardwood Plywood Products From the People's Republic of China: Preliminary Scope Determination and Affirmative Preliminary Determination of Circumvention of the Antidumping and Countervailing Duty Orders*, 87 Fed. Reg. 45,753 (July 29, 2022) ................................................................................................................................ 5

*Certain Hardwood Plywood Products From the People's Republic of China: Final Scope Determination and Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders*, 88 Fed. Reg. 46,740 (July 20, 2023) .. 3, 7, 23

*Certain Hardwood Plywood Products From the People's Republic of China: Notice of Court Decision Not in Harmony With the Results of Antidumping and Countervailing Duty Scope Ruling; Notice of Amended Final Results*, 88 Fed. Reg. 60,643 (Sept. 5, 2023) ................................................................................................................. 25

**INTRODUCTION AND SUMMARY OF ARGUMENT**

This Tranche II brief addresses Shelter Forest International Acquisition Inc.'s ("Shelter Forest") remaining claims regarding the Department of Commerce's ("Commerce") affirmative finding of circumvention finding.  Specifically, this brief addresses deficiencies in Commerce's resort to facts available with an adverse inference to Lechenwood Viet Nam Company Limited ("Lechenwood") and certain other cooperating respondents.

Section I addresses Shelter Forest's Court 3 regarding the ways in which Commerce failed to observe the statute when applying adverse facts available to Lechenwood.  Specifically, Section I addresses Commerce's failure to observe the protections of 19 U.S.C. § 1677m(d).  Commerce's approach to Lechenwood's submissions, and the curative information submitted by Shelter Forest and Lechenwood was contrary law and cannot be sustained.  More broadly, Commerce's invocation of its authority under 19 U.S.C. § 1677e, including the adverse inference applied, suffered from underlying procedural defects that are a separate basis under which Commerce's findings in this proceeding were unlawful.  The Trade Court has rejected a number of analogous Commerce findings in recent years and Shelter Forest asks that this Court do the same here in order to protect the rights of respondents that are present in the statute

Section II addresses Shelter Forest's Court 4 challenging the lack of factual basis for the facts available applied by Commerce in this proceeding.  Commerce treated the twenty companies, including Lechenwood, that it found failed to cooperate as if they had never responded to Commerce's questionnaires.  Commerce's decision to ignore all of

the data submitted by those companies resulted in Commerce finding that those companies had exported inquiry merchandise to the United States and circumvented the orders.  The record is, however, devoid of any affirmative evidence that any company actually examined by Commerce exported inquiry merchandise.  Further, the administrative finding that was the basis for initiating the proceeding, alleged trans-shipment by Vietnam Finewood Company Limited, has been overturned in Court.  Regardless of those evidentiary issues, the actual inferences Commerce applied to Lechenwood were entirely disconnected from any analysis of deficiencies Commerce identified as the basis for applying facts available in the first place.  As a result, Commerce's application of facts available with an adverse inference to Lechenwood was not supported by substantial evidence.

Taken together these issues, and the issues identified in Shelter Forest's Tranche I opening brief, are fatal to Commerce's determination in this proceeding.  It was badly deficient on a number of fronts, both legal and factual, and must be remanded for further proceedings that protect the rights of respondents and other interested parties.

## PLAINTIFF'S STATEMENT PURSUANT TO RULE 56.2

**A.    Administrative Determination Under Appeal**

Shelter Forest seeks review of Commerce's circumvention finding under the antidumping and countervailing duty orders on hardwood plywood from China with respect to merchandise exported from Vietnam. *Certain Hardwood Plywood Products From the People's Republic of China: Final Scope Determination and Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders*, 88 Fed. Reg. 46,740 (July 20, 2023) ("*Final Determination*") (P.R. 844).

Commerce's analysis of issues pertaining to its affirmative circumvention determination is contained in Commerce's Issues and Decision Memorandum for Circumvention and Scope Inquiries of the Antidumping Duty and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China, dated July 14, 2023 ("IDM") (P.R. 842).

**B.    Issues of Law Presented**

This brief addresses Shelter Forest's remaining counts covering Commerce's failure to observe the strictures of 19 U.S.C. § 1677m(d) and whether Commerce's application of facts available with an adverse inference to Lechenwood was supported by substantial evidence.

**C.    Statement of Reasons for Vacating Commerce's Determination**

Commerce's final affirmative circumvention determination should be vacated because it is not in accordance with law and is not supported by substantial evidence. The reasons are set forth below.

- 3 -

## STATEMENT OF FACTS

Shelter Forest incorporates the statement of facts provided in its Tranche I opening brief and addresses here the key facts related to the counts addressed in this brief.  *See* Shelter Forest Tranche I Br. at 4-5 (ECF No. 32).  With respect to Commerce's application of facts available with an adverse inference to Lechenwood and its subsequent exclusion from the certification regime, the following facts are important for the Court's consideration.

After initiating the circumvention proceeding subject to this consolidated appeal, Commerce issued quantity and value questionnaires on September 10, 2020 to companies for which Commerce had "information indicat{ing} that {the company} produced and/or exported plywood from Vietnam to the United States during time period December 2016 through March 2020."  Quantity and Value Questionnaire at 1-2 (P.R. 62).  Shelter Forest's supplier Lechenwood timely responded to that questionnaire on October 1, 2020. *See* Lechenwood Quantity and Value Response (P.R. 125).

On February 22, 2021, Commerce issued a supplemental quantity and value questionnaire to all interested parties requesting additional information regarding log sourcing, affiliations with Chinese entities, and details regarding shipments to the United States.  Quantity and Value Supplemental Questionnaire at Attachment II (P.R. 154).  In addition, Commerce also issued company-specific questionnaires to certain responding companies the following day on February 26, 2021.  Lechenwood Supplemental Quantity and Value Questionnaire (P.R. 161).  The company-specific questionnaire asked a question regarding Lechenwood's affiliation with a Chinese exporter of hardwood

plywood, Huainan Mengping.  *Id.* at Attachment (P.R. 161).  On March 29, 2021, Lechenwood timely provided a consolidated response to both questionnaires noting that it only consumed domestically purchased core veneers and addressing Commerce's questions regarding its affiliation with Huainan Mengping.  *See* Lechenwood Supplemental Quantity and Value Questionnaire Response (P.R. 239).

On June 15, 2021, Commerce issued a second quantity and value supplemental questionnaire to all interested parties requesting additional information regarding imported input purchases with a specific focus on the harmonized tariff schedule subheadings used to import those inputs.  Second Supplemental Quantity and Value Questionnaire at Attachment II (P.R. 257).  On July 9, 2021, Lechenwood timely filed its response.  *See* Lechenwood Second Supplemental Quantity and Value Questionnaire Response (P.R. 338).

On August 10, 2021, the Government of Vietnam finalized its submission of certain confidential customs data to the record of the proceeding.  Letter to Commerce, *Anti-Circumvention Inquiry of Certain Hardwood Plywood Products from the People's Republic of China: Request for Electronic Data from the Government of Viet Nam* (Aug. 9, 2021) ("Government of Vietnam Data Submission") (P.R. 371).

Almost an entire year later, on July 29, 2022,  Commerce's preliminary determination was published in the *Federal Register.  Certain Hardwood Plywood Products From the People's Republic of China: Preliminary Scope Determination and Affirmative Preliminary Determination of Circumvention of the Antidumping and Countervailing Duty Orders*, 87 Fed. Reg. 45,753 (July 29, 2022) (P.R. 408).

Commerce's analysis of issues pertaining to its preliminary determination were contained in Commerce's Preliminary Decision Memorandum for the Anti-Circumvention and Scope Inquiries of the Antidumping Duty and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China, dated July 22, 2022 ("Prelim. IDM") (P.R. 409).  In its determination Commerce found, *inter alia*, that Lechenwood had failed to cooperate with the proceeding and was thus excluded from the certification regime on the basis of facts available with an adverse inference.  *Id.*  The "AFA Memo" accompanying the unpublished decision memorandum made clear that Lechenwood was found uncooperative because of issues with its reporting of affiliations and certain discrepancies identified between Lechenwood's report imports of inputs and the confidential data submitted by the Government of Vietnam.  Adverse Facts Available Memorandum at 17-18 ("AFA Memo") (P.R. 410).

In the subsequent weeks, Shelter Forest and many other interested parties attempt to submit clarifying information to Commerce regarding the preliminary determination but those efforts were rebuffed.  Those factual details are addressed heavily in the Tranche I briefs previously submitted to the Court.  The legal and factual issues regarding Commerce's actions in that regard are also addressed in the Tranche I briefing.

In January of 2023, Shelter Forest submitted its administrative case brief and a rebuttal brief challenging Commerce's findings with respect to Lechenwood and noting specifically that Commerce had failed to observe the relevant statutory controls regarding the application of facts available with an adverse inference and that the underlying determination with respect to Lechenwood was not supported by substantial evidence.

Shelter Forest Admin. Case Br. at 3-15 (P.R. 790); *see also* Shelter Forest Rebuttal Admin. Case Br. (P.R. 791).

On February 15, 2023, Shelter Forest participated in the public hearing held by Commerce in this proceeding.  Hearing Transcript, *In Re: the Circumvention and Scope Queries on the Antidumping Case Nos. Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China* (Feb. 23, 2023) (P.R. 814).

On July 20, 2023, Commerce published a notice of its final determination in the *Federal Register* maintaining, *inter alia*, its facts available finding with respect to Lechenwood.  *Final Determination*, 88 Fed. Reg. 46,740 (July 20, 2023) (P.R. 844).

Numerous importers, exporters, and producers subsequently appealed that decision and the Court consolidated those cases into the above-captioned case.

**ARGUMENT**

I.    **COMMERCE FAILED TO FOLLOW THE STATUTE WHEN IT APPLIED FACTS AVAILABLE WITH AN ADVERSE INFERENCE TO LECHENWOOD**

In its preliminary determination Commerce found that Lechenwood was among a group of twenty-two companies that "provided critically deficient questionnaire responses" and "withheld information requested by Commerce." Prelim. IDM at 12 (P.R. 409). In addition, Commerce found that due to the issues identified with the individual responses, these "22 respondents significantly impeded these scope and anti-circumvention inquiries by providing inaccurate, misleading, or contradictory initial and supplemental Q&V questionnaire responses." *Id.* (P.R. 409). Commerce further found that, the companies should have been able to provide the relevant information but "failed to cooperate by not acting to best of their abilities to comply with Commerce's requests for information and that the application of AFA is warranted." *Id.* (P.R. 409). The adverse fact that Commerce inferred was that "these 22 respondents produced and/or exported hardwood plywood under all of the five production scenarios that are subject to these inquiries." *Id.* (P.R. 409).

In the final determination, Commerce's decision remained largely unchanged. Commerce stated that "{it} applied AFA to the participating companies based on pervasive discrepancies throughout their responses. {It} did not apply AFA based on one discrepancy, but rather, based on several discrepancies that rendered the responses from those companies unreliable." IDM at 75 (P.R. 841). With respect to Lechenwood, Commerce found that certain discrepancies in its questionnaire responses lead it "to find

- 8 -

that Lechenwood failed to consistently report accurate information about the sourcing of its plywood and plywood inputs as well as its affiliation with Chinese producers of plywood and plywood inputs." *Id.* at 99 (P.R. 841).

Commerce fails, however, to apply the statute properly in making its finding that it was appropriate to apply a facts available finding and then apply an adverse inference. Specifically, Commerce failed to observe its obligation to notify Lechenwood of the relevant discrepancies and offer it an opportunity to remedy those discrepancies. As a result, Commerce's application of facts available with an adverse inference to Lechenwood was unlawful and must be remanded.

### A. Commerce Failed to Notify Lechenwood Regarding Discrepancies Identified in its Second Supplemental Questionnaire Response

The application of facts available is governed by 19 U.S.C. § 1677e which establishes a set of procedures for determining whether it is appropriate to invoke this provision as follows:

(a) In general

If—

(1) necessary information is not available on the record, or

(2) an interested party or any other person—

> (A) withholds information that has been requested by the administering authority or the Commission under this subtitle,
>
> (B) fails to provide such information by the deadlines for submission of the information or in the form and manner requested, subject to subsections (c)(1) and (e) of section 1677m of this title,
>
> (C) significantly impedes a proceeding under this subtitle, or
>
> (D) provides such information but the information cannot be verified as provided in section 1677m(i) of this title,

- 9 -

the administering authority and the Commission shall, <u>subject to section 1677m(d) of this title</u>, use the facts otherwise available in reaching the applicable determination under this subtitle.

19 U.S.C. § 1677e.

As detailed above, Commerce must first conclude whether necessary information is missing from the record or determine that an interested party has withheld information, failed to provide information, impeded the proceeding, or provided unverifiable information. 19 U.S.C. § 1677e(a).

Importantly, these provisions are subject to a <u>separate provision</u> 19 U.S.C. § 1677m(d) which states as follows,

> If the administering authority or the Commission determines that a response to a request for information under this subtitle does not comply with the request, the administering authority or the Commission (as the case may be) <u>shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency</u> in light of the time limits established for the completion of investigations or reviews under this subtitle. If that person submits further information in response to such deficiency and either—
>
>> (1) the administering authority or the Commission (as the case may be) finds that such response is not satisfactory, or
>>
>> (2) such response is not submitted within the applicable time limits,
>
> then the administering authority or the Commission (as the case may be) may, subject to subsection (e), disregard all or part of the original and subsequent responses.

19 U.S.C. § 1677m(d) (emphasis supplied).

The jurisprudence in this circuit confirms that Commerce must observe this provision and do so explicitly. In *Hitachi Energy USA v. United States*, the Court of Appeals for the Federal Circuit ("Court of Appeals") found that "the statutory entitlement

to notice and opportunity to remedy any deficiency is <u>unqualified</u>." *Hitachi Energy USA.*

*v. United States*, 34 F.4th 1375, 1384 (Fed. Cir. 2022) (emphasis supplied). In that case,

the court found that Commerce's application of facts available with an adverse inference

to a respondent was unlawful because Commerce denied the respondent an opportunity to

supplement the record after Commerce identified issues with the information submitted.

*Id.* at 1384 ("Commerce's denial of Hyundai's request to provide any necessary

information was contrary to the statute").

The Court of Appeals ruled similarly in *Shelter Forest Int'l Acquisition v. United*

*States*, holding that Commerce's decision to reject Shelter Forest's curative supplemental

submission after a preliminary determination was an abuse of discretion and a violation

of Commerce's obligation of is duty under 19 U.S.C. § 1677m(d). *Shelter Forest Int'l*

*Acquisition v. United States*, 2022 U.S. App. LEXIS 16491 at *17 (June 15, 2022)

(nonprecedential decision). In the underlying Trade Court opinion, which the Court of

Appeals affirmed, Judge Restani found that Commerce's deadline regulations

> cannot be read to discharge Commerce of its obligation to notify
> respondents of deficiencies in submissions under § 1677m(d) and then
> allow Commerce to claim attempts to correct those deficiencies are
> untimely. Under 19 U.S.C. § 1677m(d), Commerce <u>must raise</u> identified
> deficiencies such as this one and provide respondents with an opportunity
> to explain, correct or supplement it.

*Shelter Forest Int'l Acquisition, Inc. v. United States*, 497 F. Supp. 3d 1388, 1401

(Ct. Int'l Trade 2021) (emphasis supplied).

A series of later Trade Court decisions have also addressed this issue. In *Saha*

*Thai Steel Pip Pub. v. United States*, Judge Vaden examined a highly analogous situation

- 11 -

where Commerce asserted that its deficiency notice was included in a supplemental questionnaire. The Court held that for a supplemental questionnaire to constitute notice within the meaning of 19 U.S.C. § 1677m(d) it must be sufficiently precise and cannot "force {a respondent} to have clairvoyance in order to avoid an adverse inference." *Saha Thai Steel Pip Pub. v. United States*, 605 F. Supp. 3d 1348, 1370 (Ct. Int'l Trade 2022) (*citing Sigma Corp. v. United States*, 841 F. Supp. 1255, 1267 (Ct. Int'l Trade 1993)).

In *BlueScope Steel v. United States*, the Trade Court examined a situation where Commerce determined to use facts available with an adverse inference based on certain changes made to the respondent's sales database in the context of a supplemental questionnaire. Judge Eaton found that Commerce's decision to replace all of the respondent's data with an adverse inference was unlawful because Commerce gave no notice of deficiency and "gave no reason as to why it would have been impracticable to ask further questions about the mismatch, or to request additional documentation." *BlueScope Steel v. United States*, 548 F. Supp. 3d 1351, 1365 (Ct. Int'l Trade 2021).

In *Wheatland Tube v. United States*, Judge Reif considered the unusual situation where counsel for the domestic industry objected to Commerce's favorable finding for respondents where Commerce itself admitted to failing to observe 19 U.S.C. § 1677m(d). In that opinion, the court stated that "in view of Commerce's failure in the instant case to comply with its obligations set forth in 19 U.S.C. § 1677m(d), {} the court remands Commerce's decision in the Final Results." *Wheatland Tube v. United States*, 650 F. Supp. 3d 1379, 1383 (Ct. Int'l Trade 2023).

In an earlier case, *SKF v. United States*, the Trade Court criticized Commerce for applying facts available with an adverse inference to the respondent when it offered "no opportunity for {the respondent} to respond, correct, or clarify while finding {the respondent} had not cooperated to the best of its ability." *SKF USA Inc v. United States*, 391 F. Supp. 2d 1327, 1336 (Ct. Int'l Trade 2005). Importantly, Judge Wallach held that "if the Department wished to place the burden of error on {the respondent}, it had to make clear and give {the respondent} a chance to correct the error prior to the issuance of a final decision." *Id.* at 1336-37.

Despite the statutory command and numerous Court decisions directing Commerce to observe 19 U.S.C. § 1677m(d), Commerce's preliminary determination fails to mention this key provision entirely. In the final determination, when pressed by numerous parties, Commerce states that

> {w}e agree that Commerce is required to notify respondents of deficiencies in their responses, but we disagree with their claims that Commerce did not adequately notify respondents of the discrepancies within their submissions where it was required. A review of the questionnaires issued in these inquiries shows that respondents were repeatedly notified of the necessary information that Commerce requested and they were also provided with multiple opportunities to provide that information.

IDM at 122 (P.R. 841). This statement is not supported by the record with respect to Lechenwood and thus Commerce could not avoid its obligation under 19 U.S.C. § 1677m(d). Its failure to provide Lechenwood with an opportunity to remedy the deficiencies, or to state why such an opportunity was not practicable was thus unlawful.

The most obvious example of Commerce's error is its finding that Lechenwood impeded the proceeding by failing to accurately report its plywood input imports. On this issue Commerce found that the confidential data submitted by the Government of Vietnam contradicted information submitted by Lechenwood regarding its imports under certain HTS codes queried by Commerce in a supplemental questionnaire. AFA Memo at 18 (P.R. 410). The response to the questionnaire seeking a detailing of Lechenwood's trade data was submitted on July 9, 2021. *See* Lechenwood Second Supplemental Quantity and Value Questionnaire Response (P.R. 338). The trade data provided by the Government of Vietnam was finalized on August 10, 2021. Government of Vietnam Data Submission (P.R. 371).[1] Commerce issued no other questionnaires to Lechenwood or any other party. As a result, there is no possible way that Commerce could have given Lechenwood an opportunity to address any discrepancy because Commerce only received the final version of the relevant data after Lechenwood's questionnaire response was filed and did not ask Lechenwood any additional questions before issuing its preliminary determination.

In fact, Commerce's own enunciation of the legal standard surrounding these issues undermines its position. In an effort to distinguish the Court of Appeals' holding in *Hitachi Energy*, Commerce stated that the "parties fail to mention that in *Jindal Poly*

---

[1] Shelter Forest notes that Commerce asserts that the information submitted by the Government of Vietnam was submitted on April 6 and July 21. IDM at 76 (P.R. 841). It its decision Commerce cites the later July 21 submission as the source of the discrepancy in Lechenwood's response. *See* AFA Memo at 17, n. 158 (P.R. 410). As a result, Commerce's suggestion that Lechenwood should have been aware of the data is unsupportable when the data referenced was not actually finalized until August and the second supplemental questionnaire response was filed at the beginning of July.

*Films* and *Hitachi Energy*, Commerce did not issue a supplemental questionnaire to request the specific information it later found was withheld." IDM at 129 (P.R. 841). As noted above, there is no possible scenario where Commerce could have issued a supplemental questionnaire covering the trade data issue because of timing. Thus, even by Commerce's own standard it violated its obligation to give Lechenwood an opportunity to address the discrepancy identified.

Commerce can only avoid its obligation to notify parties of deficiencies if it determines that doing so would not be "practicable". 19 U.S.C. § 1677m(d). Here, Commerce made no such finding. Further, any suggestion that providing such an opportunity would not be practicable would be specious since the preliminary determination would not be issued for almost a year after Commerce received the final submission of the Government of Vietnam's data. Instead, Commerce states that it used the Government of Vietnam's "data as an independent source to fact-check the respondents' reporting, and in many cases, the GOV Import Data demonstrated that these companies were not accurately reporting information about their Chinese imports." IDM at 76 (P.R. 841). Whether the source of Commerce's discrepancy finding was based on an independent source or a non-independent source does not absolve Commerce of its obligation under 19 U.S.C. § 1677m(d).

In the administrative proceeding Commerce stated that it actually did provide notice of deficiencies in the form of the second supplemental quantity and value questionnaire. *Id.* at 125 (P.R. 841). Specifically, Commerce states that questions regarding input sourcing from affiliates in "the Second Supplemental Q&V Questionnaire

put respondents on notice that there were deficiencies in the responses to the first supplemental questionnaire regarding these issues." *Id.* (P.R. 841). A comparison of the first supplemental and second supplemental questionnaire, however, dispels any notion that Commerce's assertion comports with the level of notice required by the relevant case law. The first supplemental asked a general question regarding affiliations in question three and the second supplemental questionnaire asked for lists of affiliated suppliers in Vietnam and China and details regarding imports from those sources. Lechenwood Supplemental Quantity and Value Questionnaire (P.R. 161); Second Supplemental Quantity and Value Questionnaire (P.R. 257). Notably, the same questionnaire was issued to all respondents not to any specific company and the word deficiency does not appear anywhere in the questionnaire. Further, the actual discrepancy found with respect to Lechenwood's reported inputs was between the second supplemental questionnaire and the data later submitted by the Government of Vietnam. As a result, it was unreasonable for Commerce to charge Lechenwood with knowledge of the discrepancy prior to filing its second questionnaire response. This is exactly the kind of "gotcha" approach that the Court has found unlawful in the past. *Bowe-Passat v. United States*, 17 CIT 335, 343 (1993) ("{t}his predatory 'gotcha' policy does not promote cooperation or accuracy or reasonable disclosure by cooperating parties intended to result in realistic dumping determinations.").

In addition, the Courts have been clear that Commerce must consider efforts by respondents to cure information gaps that Commerce has identified. The Trade Court's opinion in *Shelter Forest* is directly relevant to this issue. There, Judge Restani held that

Commerce violated 19 U.S.C. § 1677m(d) by unreasonably rejecting curative factual information when it had not previously provided notice of the identified deficiency. *Shelter Forest*, 497 F. Supp. 3d at 1401. The Court's ruling in *Saha Thai* echoes this requirement, finding that Commerce has an agency practice of granting respondents an opportunity to cure under 19 U.S.C. § 1677m(d). *Saha Thai*, 605 F. Supp. 3d at 1369. Here, Commerce rejected both Lechenwood's efforts to cure its error and Shelter Forest's efforts to submit factual information showing that Commerce's conclusion was in error. Either of those submissions could have resolved issues related to the information Commerce deemed to be missing from the record and dispels the notion that Lechenwood was purposefully impeding the proceeding.

In the subsequent briefing, Lechenwood stated that the discrepancy identified by Commerce was the result of certain misunderstandings between it and its broker regarding what data Commerce was requesting. Lechenwood Admin. Case Br. at 6-8 (P.R. 755). This is exactly the type of issue that could have been addressed by a deficiency questionnaire but instead Commerce sat on the decision for a year before finding that Lechenwood failed to cooperate and pushing an issue that could have easily been addressed at the administrative level into court. Notably, Lechenwood tried to submit information relevant to this issue, and others, quickly after Commerce issued its preliminary determination filing factual information on September 16, 2022–49 days after the preliminary determination was issued. As the Court knows, Commerce rejected that submission out of hand. In sum, there is no support for Commerce's assertion that Lechenwood or any other party had the opportunity to address deficiencies identified in

the second supplemental questionnaire response with respect to inconsistencies with the data submitted by the Government of Vietnam.  On this basis alone, the Court should remand this decision to Commerce for further proceedings consistent with the law.

## B. Commerce's Treatment of Lechenwood's Affiliations Reporting Was Also Inconsistent With the Statute

In addition to the trade data issue discussed above, Commerce identified discrepancies with Lechenwood's reporting of its affiliations.  Specifically, Commerce found that Lechenwood's contradictory submissions regarding its affiliations with Chinese entities warranted the application of adverse facts available with an adverse inference to Lechenwood's entire response.  IDM at 98-99 (P.R. 841).  With respect to the intersection of this issue with Commerce's authority to apply facts available with an adverse inference, Commerce states that "Lechenwood repeatedly reported conflicting and incorrect information in its certified accurate responses.  Lechenwood was able to report information about its affiliate, and its affiliate's exports to the United States, but did not—and repeatedly failed in responding accurately to questions regarding this exact issue." IDM at 99 (P.R. 841).  Commerce likens this situation to the one in *Dailan Meisen v. United States*, but that reference is inapposite.

In the portion of *Dailan Meisen* referenced by Commerce, the Court considered whether facts available with an adverse inference was appropriate where the respondent "admit{ed} that it withheld requested information" about its affiliations.  *Dalian Meisen Woodworking Co. v. United States*, 2023 Ct. Intl. Trade LEXIS 61 at *15 (April 24, 2023).  That is not the situation here.  Here, Lechenwood initially misunderstood the

question and then corrected itself submitting documentation that confirmed its affiliation

relationship with the entity queried by Commerce.  Lechenwood Supplemental

Questionnaire Response at 4 (P.R. 239).  It was only Lechenwood's later

misinterpretation of the second supplemental questionnaire that introduced the ambiguity

that Commerce now relies on for the broader conclusion that Lechenwood was being

disingenuous.  *See* IDM at 99 (P.R. 841).

A close review of how the question in the second supplemental was posed

demonstrates that a misinterpretation was easy given that question three in that

questionnaire specifically asked for details regarding <u>inputs</u> sourced from affiliates.  *See*

Second Supplemental Quantity and Value Questionnaire at Attachment II (P.R. 257).

Commerce, having previously received original documentation regarding Lechenwood's

affiliations could have made the very minor leap that Lechenwood's intent was to say that

it did not source inputs from its affiliates but was not flip-flopping on its underlying

reporting.  Instead, Commerce took the extreme position that this minor error warranted

the application of facts available with an adverse inference to all of Lechenwood's

information.

These facts are far more similar to the situation in *BlueScope* where a response to

Commerce's later question introduced the discrepancy that Commerce found warranted

facts available with an adverse inference.  In that case, The Court found that Commerce

was in error because "Commerce gave no reason as to why it would have been

impracticable to ask further questions about the mismatch, or to request additional

documentation to support {the respondent's} claim."  *BlueScope Steel*, 548 F. Supp. 3d at

1365.  As with the issues related to the HS reporting, a simple clarification could have

addressed these issues and fostered compliance with 19 U.S.C. § 1677m(d).  Instead

Commerce ignored those protections and applied facts available with an adverse

inference, which was unlawful.

### C.  Commerce Failed to Support its Finding That an Adverse Inference Was Warranted With Respect to Lechenwood's Affiliation Reporting

Commerce's approach to Lechenwood's questionnaire responses also raises the

broader issue of whether Commerce had any basis for finding that facts available or an

adverse inference was warranted with respect to Lechenwood's affiliations reporting.  In

view of the Court's desire to avoid duplication, here Shelter Forest references the section

of the brief filed by consolidated plaintiffs addressing this issue.  Consol. Pls. Br. at 42-

46 (ECF No. 49).  In addition to the arguments made in that brief regarding whether there

actually was a gap in the record, Shelter Forest notes that Commerce failed to describe

what specific basis for resorting to facts available it was asserting with respect to

Lechenwood.

The preliminary determination cites a broad spectrum of statutory bases for its

facts available finding with respect to the "22 companies" but provides no additional

detail.  Prelim. IDM at 12 (P.R. 409).  The AFA Memo details the factual aspects of the

record that bear on the decision but fails to anchor those facts to a specific legal finding.

AFA Memo at 17-18 (P.R. 410).  The final determinations reflect a similarly generic

reference to 19 U.S.C. § 1677e.  Since information regarding Lechenwood's affiliation

status was on the record in a timely response, there would be no basis for Commerce to

find facts available on this point due to subsection (A), withholding information, or subsection (B), an untimely submission.  Further, subsection (D) relates to verification which Commerce refused for Lechenwood so Commerce has no knowledge of whether the information provided could have been verified or not.  Thus, assuming that Commerce was applying 19 U.S.C. § 1677e(a)(2)(C), impeding the investigation, Commerce still needed to make an appropriate adverse inference under 19 U.S.C. § 1677e(b).

Commerce's enunciation of the standard for the appropriate application of facts available with an adverse inference, however, entirely conflates these two steps.  In order to apply an adverse inference, Commerce must determine that a respondent "failed to cooperate by not acting to the best of its ability".  19 U.S.C. § 1677e(b)(1).  Here, it is unclear how Commerce could conclude that, with respect to its affiliation status, Lechenwood had not supplied the relevant information.  Commerce had evidence that was dispositive to this question and it was submitted by Lechenwood in its first supplemental questionnaire response.  Lechenwood Supplemental Quantity and Value Questionnaire Response at Ex. 3, 4 (P.R. 239).  Commerce's citation to general concerns regarding accuracy are of no moment since Commerce had in its possession an original document that was dispositive as to Lechenwood's affiliation status.

The Court has recently criticized Commerce for this type of imprecision in its facts available findings.  Specifically, in *Garg Tube v. United States*, Judge Kelly remanded a facts available finding to Commerce due to imprecision in the relevant statutory basis and a finding that Commerce's rationale was not "reasonably discernable."

*Garg Tube Exp. LLP v. United States*, 2024 Ct. Int'l Trade LEXIS 46 at \*13 (Apr. 8, 2024).  Here, Commerce states that "we did not apply AFA to any respondent for failing to accurately report or failing to provide just one piece of information.  Rather, we applied AFA to the respondents for two[2] or more of the following failures."  IDM at 140 (P.R. 841).  The statute, however, requires Commerce to tie specific statutory findings to specific elements of the record and its failure to do so here makes its finding unlawful.  Because of Commerce's imprecision key issues remain unaddressed.  For example, why did Commerce not find as facts available with an adverse inference that Lechenwood was affiliated with the entity at issue and rule accordingly?  If there truly was a question about the issue in Commerce's mind that would have been wholly appropriate.  Instead, Commerce used the issues with Lechenwood's questionnaire response as a pretense to ignore ALL of the data timely submitted by Lechenwood and exclude it from the certification regime as if it had never responded to any of Commerce' questionnaires.  This failure renders Commerce's determination unlawful.

---

[2]  Shelter Forest notes that under this enunciation a finding that one of the two failings ascribed to Lechenwood was unlawful would necessitate the retraction of the broader finding against Lechenwood.

II.    **COMMERCE'S FINDING THAT LECHENWOOD SHOULD BE EXCLUDED FROM THE CERTIFICATION REGIME WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**

Commerce determination applied facts available with an adverse inference to two groups of companies in this proceeding.  One group was companies that did not respond to Commerce's questionnaires.  *Final Determination*, 88 Fed. Reg. at 46,743-44 (identifying "companies that failed to response") (P.R. 844).  The other group was companies that Commerce determined had "failed to cooperate".  *Id.* at 46,743 (P.R. 844).  Despite two very different groups of companies and very different bases for the application of facts available with an adverse Commerce applied the same assumption to both groups—that all "produce{d} hardwood plywood under all five of the production scenarios subject to these inquiries," *id.* at 46,740 (P.R. 844), and that all were "precluded from participating in the certification program we established for applicable exports of hardwood plywood from Vietnam."  *Id.* (P.R. 844).  There was no attempt to apply facts available with an adverse inference to the actual issues identified with the responses of the companies that Commerce found had "failed to cooperate", Commerce simply treated them the same as if they had never responded.

Commerce stated in its final decision memorandum that this was appropriate because no party "suggested any alternative manner for Commerce to apply AFA that would induce the non-responsive, uncooperative, and unverifiable companies to cooperate, and not provide a more favorable result by failing to cooperate."  IDM at 50 (P.R. 841).  The suggestion that the burden was on the parties to identify the appropriate form of adverse inference does not free Commerce of its own legal obligations in this

regard. Commerce must ground its findings, even those based on facts available, in the record. The Trade Court has found that "AFA is not a magic phrase that permits Commerce to skip an analysis of the record . . . Commerce must actually engage in an analysis of the information on the record and explain how adverse inferences lead to the conclusion." *Changzhou Trina Solar Energy Co. v. United States*, 352 F. Supp. 3d 1316, 1342 (Ct. Int'l Trade 2018). Doing so requires that Commerce "consider all information timely filed by interested parties." *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1277 (Fed. Cir. 2012); *see also* 19 U.S.C. § 1677m(e) (requiring Commerce to consider all timely information); 19 C.F.R. § 351.308(e) (Commerce must "not decline to consider information that is submitted by an interested party and is necessary to the determination."). None of the facts available findings with respect to the twenty companies that Commerce found had failed to cooperate in the final determination features any aspect of the data they actually reported. In effect, their responses were totally ignored and they were treated as entirely uncooperative.

This proceeding was notable for the complete absence of any evidence that any company actually reviewed by Commerce produced merchandise in any of the scenarios that Commerce examined or circumvented the Order in the ways alleged by the domestic industry. The initial request that was submitted to Commerce alleged two factual bases for initiating the request (1) alleged trans-shipment identified in a CBP Enforce and Protect Act ("EAPA") and (2) an increase in exports of hardwood plywood from Vietnam to the United States. Circumvention Allegation at 9-15 (P.R. 19). Of those two, only the

EAPA proceeding contained any affirmative evidence of alleged circumvention, the trade trends were merely circumstantial.

The EAPA proceeding was ultimately litigated and Commerce's finding overturned.  *See generally*, *Vietnam Finewood Co. v. United States*, 633 F. Supp. 1243 (Ct. Int'l Trade 2023).  Commerce's recent Timken Notice states that the merchandise "exported to United States by Finewood that was produced using two-ply panels imported into Vietnam from China is not subject to the scope of the Orders." *Certain Hardwood Plywood Products From the People's Republic of China: Notice of Court Decision Not in Harmony With the Results of Antidumping and Countervailing Duty Scope Ruling; Notice of Amended Final Results*, 88 Fed. Reg. 60,643 (Sept. 5, 2023).  As a result, the basis upon which Commerce initiated now has no support.

Further, no company that Commerce actually examined in full was found to be circumventing the order.  The only companies that were found to be circumventing were those companies to which Commerce applied facts available with and adverse inference.  Commerce did not apply partial facts to any company and instead ignored all of the reported data of every company it found failed to comply in full.  With respect to the twenty companies that cooperated but were excluded from the certification regime, no aspect of Commerce's finding is supported by record evidence.  In fact, the only evidence on the record was that many companies in Vietnam were producing hardwood plywood at facilities in Vietnam and sourcing their inputs from suppliers in Vietnam who were producing those inputs from trees grown and harvested in Vietnam.  Applying facts available with an adverse inference without some basis in the record is legally prohibited.

Commerce is not permitted to rely "upon suspicion, surmise, implications, or plainly incredible evidence." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351-52 (Fed. Cir. 2006); *see also Lifestyle Enter. v. United States*, 768 F. Supp. 2d 1286, 1309 (Ct. Int'l Trade 2011) ("Commerce cannot base its analysis on mere speculation."). As a result, Commerce's application of facts available with an adverse inference to companies that did respond was not supported by the record.

Commerce's treatment of Lechenwood was especially egregious. With respect to Lechenwood, Commerce had information demonstrating that it did not actually circumvent the orders on hardwood plywood from China. On August 18, 2022 Shelter Forest submitted certain factual information in response to Commerce's preliminary determination. *See* Shelter Forest's NFI Submission (P.R. 475).[3] That factual information demonstrated, unequivocally, that none of the plywood produced and exported by Lechenwood fell within Commerce's scope determination or any of the production scenarios contemplated in Commerce's circumvention findings.

Specifically, the additional supporting documentation demonstrated that a key factual assumption that Commerce made in its preliminary determination for Lechenwood – that Lechenwood had U.S. exports of hardwood plywood containing Chinese cores – was wrong. The supporting documentation included a sworn declaration from Ryan Loe, President of Shelter Forest, that set forth information related to (a) due diligence that Shelter Forest had performed regarding its suppliers in Vietnam, (b) the

---

[3] This PR reference is to the page that appears on ACCESS noting the rejection of the submission. In the joint appendix Shelter Forest will also submit a full copy of the original submission for the Court's convenience.

species of the cores that are available from trees sourced in Vietnam (i.e. acacia), (c) evidence demonstrating that Lechenwood supplied plywood with acacia cores, and (d) evidence demonstrating that ALL of Shelter Forest's entries of plywood during the examination period were made using inputs grown in Vietnam. *Id.* (P.R. 475).

Notwithstanding that evidence, Commerce determined that its concerns regarding affiliation and the consistency of Lechenwood's input reporting warranted treating Lechenwood as if it had not responded to Commerce's questionnaires. Other than some general concern about Lechenwood's reporting there is no evidence on the record that Lechenwood actually did any of the things that Commerce implicitly found it did. Importantly, Commerce did go to Vietnam and verify the responses of other parties. This would have been a perfect tool to ensure that Commerce was actually sanctioning prohibited behavior and not punishing cooperating companies for minor errors that were entirely unrelated to the conduct Commerce was probing. Commerce, however, declined to verify any company subject to a facts available finding.

For these reasons, Commerce's application of facts available with an adverse inference to Lechenwood was not supported by substantial evidence. While it may have been appropriate to find that the non-responding companies should be found to have circumvented the orders, there was ample evidence on the record that the companies that did respond, including Lechenwood, were not engaged in circumvention. To the extent that facts available was appropriate it need to be grounded in the record and focused on those elements of the responses that Commerce found deficient. As a result, this aspect

of Commerce's final determination must be remanded as unsupported by substantial evidence.

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Shelter Forest asks that the Court find Commerce's conclusion that the application of facts available to Lechenwood was unlawful and not supported by substantial evidence.

<u>/s/ Daniel L. Porter</u>

Daniel L. Porter
James C. Beaty
Katherine R. Afzal

**Curtis, Mallet-Prevost, Colt & Mosle LLP**
1717 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 452 7340
*Counsel for Shelter Forest International Acquisition Inc.*

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2010 using a proportionally spaced typeface 13 point Times New Roman font.

In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth in the Chambers Procedures. Specifically, excluding those exempted portions of the brief as set forth in 2B(1) of the Chambers Procedures, I hereby certify that this brief contains 6,714. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

<u>/s/ Daniel L. Porter</u>

Daniel L. Porter
James C. Beaty
Katherine R. Afzal

**Curtis, Mallet-Prevost, Colt & Mosle LLP**
1717 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 452 7340
*Counsel for Shelter Forest International
Acquisition Inc.*

May 1, 2024