Consol. Ct. No. 23-00144                                    NON-CONFIDENTIAL VERSION

## THE UNITED STATES COURT OF INTERNATIONAL TRADE

SHELTER FOREST INTERNATIONAL
ACQUISITION, INC.,

                         **Plaintiff,**

GREATRIVER WOOD CO., LTD., *et. al*,

                         **Consolidated Plaintiffs,**

      **and**

CONCANNON LUMBER COMPANY, *et. al*,

                         **Plaintiff-Intervenors,**

      **v.**

UNITED STATES,

                   **Defendant,**

      **and**

COALITION FOR FAIR TRADE IN
HARDWOOD PLYWOOD,

                 **Defendant-Intervenor.**

Before: Hon. Mark A. Barnett,
        Chief Judge

Consol. Court No. 23-00144

<u>NON-CONFIDENTIAL VERSION</u>

Business Proprietary Information
Removed from Brackets on Pages 15-
16, 27, 28, and 32

<u>**DEFENDANT-INTERVENOR COALITION FOR FAIR TRADE IN
HARDWOOD PLYWOOD RESPONSE TO MOTION FOR
JUDGEMENT ON THE AGENCY RECORD**</u>

Timothy C. Brightbill, Esq.
Stephanie M. Bell, Esq.
Tessa V. Capeloto, Esq.
Maureen E. Thorson, Esq.
John Allen Riggins, Esq.

Wiley Rein LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to the Coalition for Fair Trade in
Hardwood Plywood*

August 16, 2024

Consol. Ct. No. 23-00144                                    NON-CONFIDENTIAL VERSION

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................. 1

II.    STATEMENT PURSUANT TO RULE 56.2 ...................................................... 2

       A.     Administrative Determination Under Review ........................................ 2

       B.     Issues Presented ..................................................................................... 3

III.   STATEMENT OF THE FACTS .......................................................................... 3

IV.    SUMMARY OF ARGUMENT ........................................................................... 8

V.     ARGUMENT ..................................................................................................... 11

       A.     The Circumvention Proceeding Was Not Procedurally Flawed ........... 11

              1.     Commerce's Information Collection Process Was Fulsome ...... 11

              2.     Commerce Properly Relied on the Evidence Placed on the
                     Record ........................................................................................ 14

              3.     Commerce's Actions Were Not Otherwise Unreasonable ......... 17

       B.     Commerce's Affirmative Circumvention Determination Is
              Supported by Substantial Evidence and in Accordance with Law ....... 18

              1.     Commerce's Analysis Was Consistent with the Statute ............ 18

              2.     Commerce Properly Considered and Made a Determination
                     Based on the Full Record, and that Determination Is
                     Supported by Substantial Evidence ........................................... 20

              3.     Commerce Properly Considered Patterns of Trade Data ........... 23

       C.     Commerce Properly Rejected Untimely NFI ....................................... 25

              1.     Commerce Complied with 19 U.S.C. § 1677m(d) ..................... 26

              2.     Commerce Was Not Required to Accept Untimely NFI ............ 29

       D.     Commerce Did Not Expand the Scope of the Order ............................ 33

       E.     Commerce Did Not Expand the Scope of the Circumvention
              Proceeding ............................................................................................ 34

VI.    CONCLUSION .................................................................................................. 38

Consol. Ct. No. 23-00144                                    NON-CONFIDENTIAL VERSION

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Al Ghurair Iron & Steel LLC v. United States,*
    65 F. 4th 1351 (Fed. Cir. 2023) ........................................................................20

*Bosun Tools Co. v. United States,*
    405 F. Supp. 3d 1359 (Ct. Int'l Trade 2019) ....................................................30

*Fine Furniture (Shanghai) Ltd. v. United States,*
    865 F. Supp. 2d 1254 (Ct. Int'l Trade 2012) ....................................................30

*Fischer S.A. Comercio v. United States,*
    700 F. Supp. 2d 1364 (Ct. Int'l Trade 2010) ....................................................31

*Grobest & I-Mei Indus. (Vietnam) v. United States,*
    815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012) ....................................................31

*Hitachi Energy USA v. United States,*
    34 F. 4th 1375 (Fed. Cir. 2022) ........................................................................28

*Hlds (B) Steel Sdn Bhd v. United States,*
    2024 WL 244937 (Ct. Int'l Trade Jan. 23, 2024) ..............................................19

*Hyundai Steel Co. v. United States,*
    518 F. Supp. 3d 1309 (Ct. Int'l Trade 2021) ....................................................15

*Linyi Chengen Import and Export Co. v. United States,*
    391 F. Supp. 3d 1283 (Ct. Int'l Trade 2019) ....................................................33

*Marsan Gida Sanayi ve Ticaret AS v. United States,*
    931 F. Supp. 2d 1258 (Ct. Int'l Trade 2013) ....................................................33

*Maverick Tube Corp. v. United States,*
    857 F.3d 1353 (Fed. Cir. 2017)..........................................................................29

*Max Fortune Indus. Co. v. United States,*
    37 CIT 549 (2013) ..............................................................................................37

*Nan Ya Plastics Corp. v. United States,*
    810 F.3d 1333 (Fed. Cir. 2016)..........................................................................16

*Peer Bearing Company-Changshan v. United States,*
    986 F. Supp. 2d 1389 (Ct. Int'l Trade 2014) ....................................................19

Consol. Ct. No. 23-00144                                    NON-CONFIDENTIAL VERSION

*Pro-Team Coil Nail Enterprise, Inc. v. United States,*
  419 F. Supp. 3d 1319 (Ct. Int'l Trade 2019) ..........................................31

*Saha Thai Steel Pipe Public Co. v. United States,*
  605 F. Supp. 3d 1348 (Ct. Int'l Trade 2022) ..........................................28

*Shelter Forest Int'l Acquisition, Inc. v. United States,*
  497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021) ....................................28, 31

*Shenzhen Xinboda Indus. Co. v. United States,*
  456 F. Supp. 3d 1272 (Ct. Int'l Trade 2020) ..........................................15

*Tel Sanayi AS v. United States,*
  557 F. Supp. 3d 1348 (Ct. Int'l Trade 2022) ..........................................30

**Statutes**

19 U.S.C. § 1677e(c)............................................................................16

19 U.S.C. § 1677f-1(c)(1)....................................................................13

19 U.S.C. § 1677j(b)(3)(A)..................................................................23

19 U.S.C. § 1677j(e)............................................................................33

19 U.S.C. § 1677j(f)............................................................................17

19 U.S.C. § 1677m(d)....................................................................26, 29

**Other Authorities**

*Aluminum Extrusions from the People's Republic of China,*
  84 Fed. Reg. 39,805 (Dep't Commerce Aug. 12, 2019)......................36

*Carbon Steel Butt-Weld Pipe Fittings From the People's Republic of China,*
  83 Fed. Reg. 35,205 (Dep't Commerce July 25, 2018)..................13, 36

*Certain Cold-Rolled Steel Flat Products from the Republic of Korea,*
  84 Fed. Reg. 70,934 (Dep't Commerce Dec. 26, 2019)......................36

*Certain Corrosion-Resistant Steel Products from the Republic of Korea,*
  84 Fed. Reg. 70,948 (Dep't Commerce Dec. 26, 2019)......................36

*Certain Corrosion-Resistant Steel Products from Taiwan,*
  84 Fed. Reg. 70,937 (Dep't Commerce Dec. 26, 2019)..................36, 37

*Certain Hardwood Plywood Products from the People's Republic of China,*
  88 Fed. Reg. 46,740 (Dep't Commerce July 20, 2023).................. *passim*

*Certain Hardwood Plywood Products from the People's Republic of China,*
    85 Fed. Reg. 36,530 (Dep't Commerce June 17, 2020) ................................................4

*Certain Hardwood Plywood Products from the People's Republic of China,*
    87 Fed. Reg. 45,753 (Dep't Commerce July 29, 2022) ..................................... *passim*

*Certain Tissue Paper Products from the People's Republic of China,*
    76 Fed. Reg. 47,551 (Dep't Commerce Aug. 5, 2011)..........................................36

*Fresh Garlic from the People's Republic of China,*
    77 Fed. Reg. 34,346 (Dep't Commerce June 11, 2012) .......................................17

*Hardwood and Decorative Plywood from the People's Republic of China,*
    78 Fed. Reg. 58,273 (Dep't Commerce Sept. 23, 2013).........................................17

*Omnibus Trade and Competitiveness Act of 1988,*
    H.R.Rep. No. 100–576 (1988) ............................................................34

*Uruguay Round Agreements Act, Statement of Administrative Action,*
    H.R. Doc. No. 103-316, vol. 1 (1994), reprinted in 1994 U.S.C.C.A.N. 4040..................19, 20

## I.    <u>INTRODUCTION</u>

On behalf of Defendant-Intervenor, the Coalition for Fair Trade in Hardwood Plywood ("Coalition"), we respectfully submit the following response to the opening briefs of Consolidated Plaintiffs American Woodmark Corporation, Del Valle Kahman & Company, Ike Trading Company Limited, Pittsburgh Forest Products, Panoply Wood Products USA Inc., American Pacific Plywood, Inc., Eagle Industries Company Limited, Golden Bridge Industries Pte. Ltd., Lechenwood Viet Nam Company Limited ("Lechenwood"), Arrow Forest International Co., Ltd., Her Hui Wood (Vietnam) Co., Vietnam Zhongjia Wood Company Limited, Long LUU Plywood Production Co., Ltd., and TEKCOM Corporation; Consolidated Plaintiff Greatriver Wood Co., Ltd. ("Greatriver"); Plaintiff-Intervenors Concannon Lumber Company, Northwest Hardwoods, Inc., Richmond International Forest Products LLC, Taraca Pacific Inc., UFP International, LLC, Medallion Forest Product, Hardwoods Specialty Products USLP, Paxton Hardwoods LLC, and Rugby Holdings LLC dba Rugby Architectural Building Products; Plaintiff Shelter Forest International Acquisition, Inc. ("Shelter Forest"); Consolidated Plaintiffs Cabinetworks Group, Inc. f/k/a/ ACProducts, Inc., ACPI Wood Products, LLC, Cabinetworks Group Middlefield, LLC, Cabinetworks Group Michigan, LLC, Boise Cascade Building Materials Distribution LLC, and USPLY LLC; and Consolidated Plaintiff Tumac Lumber Co., Inc. (collectively, "Respondents"). Consolidated Plaintiffs American Woodmark Corporation, et. al. R. 56.2 Mem. in Support of Mot. For J. upon the Agency Record (Feb. 1, 2024), ECF No. 31 ("DH Respondents Br."); Greatriver Wood Co., Ltd.'s Mem. in Support of R. 56.2 Mot. For J. on the Agency Record (Mar. 4, 2024), ECF No. 33 ("Greatriver Br."); R. 56.2 Mot. for J. on the Agency Record of Behalf of Consol. Pls. Concannon Lumber Company, Northwest Hardwoods, Inc., Richmond Int'l Forest Products LLC, Taraca Pacific Inc., UFP Int'l, LLC, Medallion Forest Product, Hardwood Specialty Products

USLP, Paxton Hardwoods LLC and Rugby Holdings LLC DBA Rugby Architectural Building Products (Mar. 4, 2024), ECF No. 36 ("M&G Respondents Br."); Pl. Shelter Forest's R. 56.2 Mem. in Support of Mot. for J. on the Agency Record (Mar. 4, 2024), ECF No. 32 ("Shelter Forest Br."); Mem. of Points and Authorities in Support of Its R. 56.2 Mot. for J. on the Agency Record (Mar. 4, 2024) ("ST&R Respondents Br."); Consol. Pl.'s Br. in Support of R. 56.2 Mot. for J. on the Agency Record (Mar. 4, 2024), ECF No. 34.[1]

The Coalition adopts the arguments made in Defendant the United States' July 2, 2024 response brief. Def.'s Resp. to Pls.' R. 56.2 Mots. For J. on the Agency Record (July 2, 2024), ECF No. 59 ("Defendant Br."). In this brief, the Coalition provides additional context and argument to aid the Court's understanding of the issues raised in Respondents' appeals.

## II.    STATEMENT PURSUANT TO RULE 56.2

### A.    Administrative Determination Under Review

Respondents challenge various aspects of the U.S. Department of Commerce's ("Commerce") final affirmative circumvention determination regarding the antidumping ("AD") and countervailing duty ("CVD") orders on hardwood plywood from China. *See* Issues and Decision Memorandum accompanying *Certain Hardwood Plywood Products from the People's Republic of China*, 88 Fed. Reg. 46,740 (Dep't Commerce July 20, 2023) (final scope deter. and affirm. final deter. of circ. of the AD and CVD orders), P.R. 842 ("IDM").[2]

---

[1]    The brief submitted by Tumac Lumber Co., Ltd. incorporated by reference the arguments raised by other plaintiffs and did not otherwise present any arguments. Accordingly, the Coalition does not further address this brief herein.

[2]    Documents on the agency record are referred to within this brief by the number provided in Commerce's administrative record index for the antidumping duty proceeding, filed with the Court on September 5, 2023, as ECF. Nos. 21-1 and 21-2. Confidential documents are referred to with the rubric "C.R." followed by the relevant number; public documents and public versions of confidential documents are referred to by the rubric "P.R." followed by the relevant number.

        **B.**     **Issues Presented**

1.     Whether the circumvention proceeding was procedurally flawed notwithstanding Commerce's extensive information collection and consideration of the full record.

2.     Whether Commerce's affirmative circumvention determination, in which the agency examined and discussed each statutory factor and the associated record evidence, was supported by substantial evidence and otherwise in accordance with law.

3.     Whether Commerce properly rejected the substantial volume of untimely filed new factual information ("NFI") submitted after the preliminary determination and after parties were afforded numerous opportunities to submit information.

4.     Whether Commerce expanded the scope of the orders despite the fact that the U.S. International Trade Commission ("ITC") did not indicate that it had any significant injury concerns.

5.     Whether Commerce expanded the scope of the circumvention proceeding by implementing a certification process to properly administer and enforce its determination, consistent with its normal practice.

**III.**     **STATEMENT OF THE FACTS**

The Coalition incorporates herein the statement of facts provided in Defendant's brief. Defendant. Br. at 3-15. The Coalition below highlights certain information and provides additional information and context to assist the Court in its consideration of the issues.

On February 25, 2020, the Coalition filed a request that Commerce issue a scope ruling or, in the alternative, a circumvention ruling, finding that certain plywood completed in Vietnam from components manufactured in China were covered by the AD and CVD orders on hardwood plywood from China. Letter from Wiley Rein LLP to Sec'y of Commerce, re: *Certain Hardwood Plywood Products from the People's Republic of China: Request for Scope Ruling/Anti-Circumvention Ruling* (Feb. 25, 2020), C.R. 5, P.R. 13, at 1-52 ("Coalition Request"). In its request, the Coalition provided supporting information addressing, *inter alia*, the statutory factors in the circumvention provision. *Id.* at 31-50. Prior to initiating a proceeding, Commerce requested additional information from the Coalition, which the Coalition provided, and received comments

from various other interested parties. *See Certain Hardwood Plywood Products from the People's Republic of China*, 85 Fed. Reg. 36,530, 36,530 (Dep't Commerce June 17, 2020) (initiation of anti-circumvention inquiries and scope inquiries on the AD and CVD orders; Vietnam assembly), P.R. 4 ("*Initiation Notice*"). In their submissions, the Coalition and certain other parties provided information regarding the circumvention factors. *See* Letter from Wiley Rein LLP to Sec'y of Commerce, re: *Hardwood Plywood Products from the People's Republic of China: Coalition's Response to Comments on Scope Ruling/Anti-Circumvention Request* (Mar. 27, 2020), P.R. 17, at 24-26 ("Coalition Response to Comments"); Letter from Wiley Rein LLP to Sec'y of Commerce, re: *Hardwood Plywood Products from the People's Republic of China: Coalition's Response to Request for Clarification* (May 12, 2020), C.R. 7, P.R. 20, at 8-13 ("Coalition Clarification"); Letter from deKieffer & Horgan, PLLC to Sec'y of Commerce, re: *Hardwood Plywood from the People's Republic of China: Comments to Petitioner's Request for Scope/Anti-Circumvention Inquiry* (Mar. 20, 2020), C.R. 6, P.R. 19, at 15-30 ("DH Response to Request"); Letter from Mowry & Grimson, PLLC to Sec'y of Commerce, re: *Investigation of the Antidumping and Countervailing Duty Orders on Hardwood Plywood Products From the People's Republic of China, Scope – Vietnam Assembly: Objection to Request for Scope and Anti-Circumvention Inquiry* (Mar. 20, 2020), P.R. 15, at 22-34 ("M&G Response to Request"); Letter from Fox Rothschild LLP to Sec'y Commerce, re: *Certain Hardwood Plywood Products from the People's Republic of China: Resubmission of Ike Trading's Scope Comments* (May 1, 2020), P.R. 17, at Attachment 1 ("FR Response to Request"); Letter from deKieffer & Horgan, PLLC to Sec'y of Commerce, re: *Hardwood Plywood from the People's Republic of China: Comments on Petitioner's Response to Request for Clarification* (May 22, 2020), C.R. 7, P.R. 20, at 15-18 ("DH Response to Clarification").

On June 20, 2020, Commerce initiated scope and circumvention inquiries. *Initiation Notice*. The initiation notice identified five scenarios that would be examined as part of the inquiry (*i.e.*, "inquiry merchandise"). *Id.* at 36,531 n.12. Commerce also explained that it was conducting the circumvention inquiries on a country-wide basis. *Id.* at 36,533.

After initiation, Commerce issued questionnaires to all potential respondents. *See* Preliminary Decision Memorandum accompanying *Certain Hardwood Plywood Products from the People's Republic of China*, 87 Fed. Reg. 45,753 (Dep't Commerce July 29, 2022) (prelim. scope deter. and affirm. prelim. deter. of circ. of the AD and CVD orders), P.R. 409, at 3 ("Prelim. Memo"). The questionnaire requested information on the quantity and value of companies' shipments of inquiry merchandise, as well as information relevant to Commerce's inquiry, including information on the types and sources of inputs used and affiliations with Chinese exporters or producers of plywood and plywood inputs. Letter from Kabir Archuletta, Program Manager, Off. V, AD/CVD Operations, Enf't & Compl., to All Interested Parties, re: *Anti-Circumvention Inquiry of the Antidumping Duty Order on Certain Hardwood Plywood Products from the People's Republic of China: Quantity and Value Questionnaire for Vietnamese Producers and Exporters of Certain Hardwood Plywood Products* (Sept. 10, 2020), P.R. 62, at Attachment II ("DOC Initial Q"). Commerce received questionnaire responses from 51 companies. *See* Prelim. Memo at 3. Commerce then issued supplemental questionnaires to these 51 companies, requesting, *inter alia*, additional information on the types and sources of inputs and affiliations with Chinese companies. Letter from Kabir Archuletta, Program Manager, Off. V, AD/CVD Operations, Enf't & Compl., to All Interested Parties, re: *Anti-Circumvention Inquiry of the Antidumping Duty Order on Certain Hardwood Plywood Products from the People's Republic of China: Quantity and Value Supplemental Questionnaire for Vietnamese Producers and Exporters of Certain Hardwood*

*Plywood Products* (Feb. 22, 2021), P.R. 154, at Attachment II ("DOC First Supplemental Q"). Commerce simultaneously issued additional questionnaires to certain respondents and a questionnaire to the Government of Vietnam ("GOV"). *See* Prelim. Memo at 3. Commerce then issued a second supplemental questionnaire to all participating respondents, requesting further information on the respondents' inputs from China, including inputs from affiliates. Letter from Kabir Archuletta, Program Manager, Off. V, AD/CVD Operations, Enf't & Compl., to All Interested Parties, re: *Anti-Circumvention Inquiry of the Antidumping and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China: Quantity and Value Second Supplemental Questionnaire for Vietnamese Producers and Exporters of Certain Hardwood Plywood Products* (June 15, 2021), P.R. 257, at Attachment II ("DOC Second Supplemental Q").

During this time, parties also submitted additional comments and information. *See, e.g.*, Letter from Wiley Rein LLP to Sec'y Commerce, re: *Hardwood Plywood Products from the People's Republic of China: Request for Affirmative Preliminary Determination* (Aug. 18, 2021), C.R. 232, P.R. 378. Commerce also placed on the record information collected in a related Enforce and Protect Act and scope proceeding regarding plywood exported by Vietnam Finewood Company Limited ("Finewood") made from Chinese-origin two-ply products finished in Vietnam. *See* Memorandum from Nicolas Mayora, Int'l Trade Compl. Analyst, Off. V Enf't & Compl., to The File, re: *Anti-Circumvention Inquiry of Certain Hardwood Plywood Products form the People's Republic of China: Placing Documents Relevant to this Proceeding on the Record* (Feb. 18, 2022), C.R. 235, P.R. 393, at 1 ("Memo Placing Info on Record"). Commerce expressly provided interested parties with an opportunity to submit information to rebut, correct, or clarify this information. *Id.*

On July 22, 2022, Commerce issued its preliminary determination. Prelim. Memo at 1. Commerce made a country-wide affirmative determination, finding that certain inquiry merchandise was within the scope of the orders and other inquiry merchandise was circumventing the orders. *Id.* In doing so, Commerce discussed each statutory factor, reviewing the relevant record evidence and explaining its conclusion. *Id.* at 14-26. Commerce also explained that it was applying adverse facts available ("AFA") to 36 companies that failed to fully cooperate. *Id.* 10-14; Memorandum from Kabir Archuletta, Program Manager, to The File, re: *Anti-Circumvention Inquiry of Certain Hardwood Plywood Products from the People's Republic of China Application of Adverse Facts Available for the Preliminary Determination* (July 22, 2022), C.R. 246, P.R. 410, ("AFA Memo"). Additionally, Commerce explained that, to administer its determination and "prevent evasion of the *Orders*" as required by the statute, it was implementing a certification process. Prelim. Memo at 27. Under this process, exporters and importers could certify that they were not shipping inquiry merchandise; however, Commerce prohibited the companies to which AFA was applied from participating in the certification process. *Id.*

After issuance of the preliminary determination, between August 2022 and October 2022, Commerce received numerous submissions from interested parties, including ministerial error allegations, requests to reopen the record and accept NFI, requests to modify the instructions sent to U.S. Customs and Border Protection ("CBP"), and requests to modify the certification requirements. *See* IDM at 4, n. 9-12. Commerce rejected requests to submit NFI and to modify the CBP instructions but did provide parties with additional time to comply with the certification requirements. *Id.* at 5. Commerce subsequently conducted verification of 11 companies in Vietnam. *Id.* After establishing a briefing schedule, Commerce received over 30 case briefs, as well as numerous rebuttal briefs. *Id.* at 3-4, n. 7-8.

Commerce issued its final determination on July 14, 2023. *Id.* at 1. Commerce continued to make an affirmative determination but found that certain inquiry merchandise was no longer covered by the scope due to litigation stemming from the Finewood proceeding; instead, Commerce found that all inquiry merchandise was circumventing the orders. *Id.* at 1-2. Commerce also concluded that 37 companies failed to fully cooperate and thus that the application of AFA was appropriate.

## IV.      SUMMARY OF ARGUMENT

Commerce's affirmative circumvention determination is supported by substantial evidence and in accordance with law and was conducted consistently with its practice and the statute. As such, Respondents' arguments should be rejected, and Commerce's determination should be sustained. *First*, there were no procedural flaws in Commerce's conduct of the circumvention proceeding. Commerce collected a substantial amount of information regarding the circumvention criteria from the parties, including through the submission of questionnaires and supplemental questionnaires, numerous other submissions from interested parties, and the placing of information on the record. Commerce was not required to expressly identify the circumvention factors in its questionnaires or to solicit company-specific data on these factors nor was Commerce required to limit its investigation to selected mandatory respondents. Commerce issued questionnaires and supplemental questionnaires to all participating respondents and afforded all parties multiple opportunities to submit information. Respondents fail to demonstrate how these extensive efforts to collect information were inadequate or otherwise flawed. Additionally, Commerce properly considered and weighed the information on the record. Respondents' attempts to undermine the propriety of Commerce relying on contemporaneous record information collected in a different proceeding and information submitted by the Coalition have no basis in law or in fact.

*Second*, Commerce's affirmative circumvention determination is supported by substantial evidence and otherwise in accordance with law. Commerce properly considered the factors identified in the statute to determine whether the processes occurring in Vietnam were minor and insignificant. Respondents attempt to improperly limit the third country manufacturing that can be captured by the circumvention provision. Respondents' claims that Commerce must first determine that third country activities are "mere assembly or completion operations" and that third country manufacturing must be limited to "screwdriver operations" are inconsistent with the statute, legislative history, and Court precedent. Additionally, Commerce's conclusion that the processes in Vietnam are minor and insignificant is based on a consideration of the record as a whole and supported by substantial evidence. Respondents' reliance on isolated pieces of information, without providing context or addressing Commerce's consideration and rejection of this information, does not demonstrate otherwise. Commerce similarly considered record evidence regarding patterns of trade, as the statute requires. Respondents' claim that information on the record regarding patterns of trade do not support an affirmative circumvention determination is based on a selective reading of the record. In fact, when considering the record as a whole, the information provided by Respondents further support Commerce's conclusion.

*Third*, Commerce properly rejected untimely submitted NFI. Commerce issued multiple questionnaires to all participating respondents and requested additional and clarifying information in its supplemental questionnaires. Respondents thus had multiple opportunities to provide complete and correct information and were aware of the information Commerce required. Accordingly, Commerce acted consistently with the requirements of 19 U.S.C. § 1677m(d), and Respondents' argument that Commerce should have accepted their NFI based on perceived violations of this provision are meritless. Moreover, Commerce is able to set and enforce deadlines

for the submission of NFI and properly did so here. Numerous parties submitted untimely NFI after the issuance of the preliminary determination, despite opportunities to do so earlier in the proceeding. Commerce considered this, in conjunction with the burden of examining the information—in addition to the already voluminous record—and its concerns with finality, properly concluding that the information should be rejected. Respondents' attempt to analogize the current proceeding with other cases in which the Court has required the acceptance of NFI fall short, as the cases relied on address substantively different scenarios, including with respect to the untimeliness of the information, the amount of information, and/or the stage of the proceeding in which the information was submitted.

*Fourth*, Commerce's affirmative determination did not improperly expand the scope of the orders. Commerce followed its statutory directive to notify the ITC of the circumvention proceeding. The ITC did not request consultations or otherwise indicate that there were any significant injury issues presented by the circumvention proceeding. Additionally, Respondents' argument that the ITC did not investigate veneers is moot, as the proper analysis relates to the merchandise that leaves the third country and enters the United States, *i.e.*, hardwood plywood.

*F,fth*, Commerce did not expand the scope of the circumvention proceeding. Commerce properly implemented a certification process consistent with its practice and its obligation to ensure administrability and enforcement of its circumvention determination. Commerce never stated that any merchandise would be excluded from an eventual certification process; to the contrary, certifications are for non-inquiry merchandise and thus it would be illogical to exclude non-inquiry merchandise from the certification process. Further, to excuse Respondents from the certification process for certain merchandise would undermine the application of AFA.

## V.    ARGUMENT

### A.    The Circumvention Proceeding Was Not Procedurally Flawed

#### 1.    Commerce's Information Collection Process Was Fulsome

Respondents raise various arguments concerning information collection during the course of the circumvention proceeding, claiming that Commerce failed to properly solicit information from the parties. DH Respondents Br. at 19-27; Greatriver Br. at 17-21. As explained by Defendant, Commerce conducted a fulsome review, collecting substantial information from numerous parties, and afforded interested parties multiple opportunities to submit information. *See* Defendant Br. at 21-29; IDM at 19-25. As such, these arguments are meritless and should be rejected. Defendant Br. at 21-29.

Respondents first assert that Commerce erred in not individually soliciting information regarding the circumvention criteria from respondents. DH Respondents Br. at 20-24. As Defendant explains, this argument ignores the record and misunderstands Commerce's circumvention determination. Defendant Br. at 22-24. Commerce issued multiple questionnaires to each participating respondent, requesting various types of information relevant to the circumvention determination. *Id.*; IDM at 19.  Indeed, Respondents rely on this information in arguing that the activity in Vietnam is not minor and insignificant. *See* DH Respondents Br. at 34. Interested parties also had additional opportunities to submit information regarding the circumvention criteria, as well as to rebut the information provided by other parties and the agency.

For example, in its initial request, the Coalition provided, *inter alia*, a detailed argument, with supporting documentation, demonstrating that the processes occurring in Vietnam were minor and insignificant. Coalition Request at 36-50. The Coalition provided additional information and argument on this point in subsequent pre-initiation submissions. Coalition Response to Comments at 24-26; Coalition Clarification at 8-13. Multiple parties responded to the Coalition's submissions,

including with regard to the Coalition's arguments on assembly or completion. *See* DH Response to Request at 15-30; M&G Response to Request at 22-34; FR Response to Request at Attachment 1; DH Response to Clarification at 15-18. Additionally, during the proceeding, the Department placed on the record certain information from the Finewood proceeding, in which it examined two-ply products manufactured in China and finished in Vietnam, and provided parties with an opportunity to submit information to rebut, correct, or clarify this information. *See* IDM at 27.

Further, as Defendant highlights, Respondents point to no legal requirement that Commerce expressly lay out the statutory criteria in requesting information from the parties. Defendant Br. at 22. Nor have Respondents explained why the multiple opportunities afforded to provide information regarding the circumvention criteria were insufficient. Respondents also fail to point to anything requiring that Commerce make company-specific determinations regarding whether the further manufacturing in Vietnam was minor and insignificant such that company-specific information on this point was required to be requested. DH Respondents Br. at 19-27; Greatriver Br. at 17-21. That Respondents chose not to place information on the record that they deemed relevant is not the fault of Commerce.

Respondents also assert that the circumvention proceeding was flawed because Commerce did not select mandatory respondents. DH Respondents Br. at 21-24; Greatriver Br. at 20-21. As Defendant explains, Respondents' argument has no legal basis and misinterprets the nature of a circumvention proceeding. Defendant Br. at 26-29. As an initial matter, Commerce's alleged "failure" to select mandatory respondents effectively resulted in the agency individually examining *every* respondent in the proceeding. *See* IDM at 21-22. Respondents fail to explain how collecting information from all participating companies is somehow at odds with Commerce's requirements. Instead, they presume that by not limiting the companies subject to review Commerce collected

less information than it would have if it had selected only a few companies for individual examination. DH Respondents Br. at 21-24; Greatriver Br. at 20-21. As Commerce explained, "{i}t defies logic to suggest that limiting Commerce's inquiry to fewer respondents would have somehow provided all of the Vietnamese respondents more opportunity to report their information." IDM at 24.

Additionally, Respondents point to 19 U.S.C. § 1677f-1(c)(1) in support of their claim. DH Respondents Br. at 22. But, as Defendant notes, this provision governs the calculation of dumping margins, which is not a consideration in circumvention proceedings. Defendant Br. at 26-27. Indeed, 19 U.S.C. § 1677f-1(c)(1) expressly references sections 1673d(c) (*i.e.*, final determinations in an AD investigation), 1673b(d) (*i.e.*, preliminary determinations in an AD investigation), and 1675(a) (*i.e.*, administrative reviews). Thus, on its face, this provision does not apply to circumvention proceedings and, as Defendant notes, Respondents provide no support for their claim about the alleged intent of this provision. Defendant Br. at 27 n.6.

Finally, Respondents note that Commerce has selected mandatory respondents in other circumvention proceedings. Greatriver Br. at 20-21. However, as Defendant explains, there is no requirement that it do so. Defendant Br. at 27. Moreover, in other similarly situated circumvention proceedings, *i.e.*, where all respondents have reported that they did not make the inquiry merchandise, Commerce has forgone limiting its review and issued supplemental questionnaires to all respondents as it did here. *See* Preliminary Decision Memorandum accompanying *Carbon Steel Butt-Weld Pipe Fittings From the People's Republic of China*, 83 Fed. Reg. 35,205 (Dep't Commerce July 25, 2018) (prelim. affirm. deter. of circ. of the AD order) at 4-5 (explaining that, because all responding companies reported no shipments of the inquiry merchandise, the agency "did not limit examination of respondents in this anti-circumvention inquiry and instead issued

supplemental questionnaires to" all companies). In short, Respondents have failed to show that Commerce was required to select mandatory respondents or that Commerce's choice to collect information from all participating respondents was somehow improper.

### 2. Commerce Properly Relied on the Evidence Placed on the Record

Respondents next fault Commerce for relying on "secondary sources" and supposedly "outdated" information. DH Respondents Br. at 24-27; Greatriver Br. at 18-19; M&G Respondents Br. at 28-33. Specifically, Respondents fault Commerce for relying on information submitted by the Coalition and placed on the record from the Finewood proceeding. DH Respondents Br. at 24-27; Greatriver Br. at 18-19; M&G Respondents Br. at 28-33. Commerce properly considered all the evidence on the record and made a determination that was supported by that information. Respondents fail to demonstrate otherwise or to show that there was any error in Commerce's reliance on this record evidence.

First, Respondents highlight the fact that Commerce's determination in the Finewood proceeding was ultimately overturned by the Court and claim Commerce should have explained its reliance on this information in light of this. DH Respondents Br. at 24; M&G Respondents Br. at 29. Respondents fail to explain the relevance of the Court's decision on the determination here. DH Respondents Br. at 24; M&G Respondents Br. at 29. In particular, the basis on which the Court overturned Commerce's determination (*i.e.*, finding that two-ply product was unambiguously outside the language of the scope) does not relate to or address the issues for which Commerce relied on the information from that proceeding (*i.e.*, whether further assembly in Vietnam was minor and insignificant). *See* Defendant Br. at 25. Moreover, Commerce acknowledged the Court's determination in the Finwood proceeding, explaining that it was reconsidering its preliminary

determination in light of it. *See* IDM at 10. Thus, it is unclear what additional explanation Respondents fault Commerce for not providing.

Second, Respondents point to Commerce's practice of treating each review as a separate segment. DH Respondents Br. at 24. But Commerce has done so here. All the information relied on by Commerce was placed on the record of this proceeding, and Commerce made its determination based on this record. *See* IDM at 26-27. Thus, Respondents' reliance on *Shenzhen Xinboda Indus. Co. v. United States* and *Hyundai Steel Co. v. United States* are misplaced, as both of those proceedings addressed the consideration of prior conclusions based on different facts. 456 F. Supp. 3d 1272, 1285, n.22 (Ct. Int'l Trade 2020) (rejecting argument that surrogate value determinations in prior segments should be considered); 518 F. Supp. 3d 1309, 1326 (Ct. Int'l Trade 2021) (rejecting claim that the use of AFA in a prior determination based on different facts could support such a determination in the present proceeding). In contrast, here, Commerce did not simply rely on the conclusion from the Finewood proceeding; instead, Commerce examined the information available in this proceeding—which included information developed in the Finewood proceeding—and made a determination based on the full record. *See* IDM at 29-45.

Third, Respondents claim that Commerce should not have relied on information from the Finewood proceeding because it was outdated. M&G Respondents Br. at 29-33. However, as Defendant explained, "the data are contemporaneous, with the Finewood data encompassing a timeframe entirely subsumed by the period for {the} underlying inquiries—December 2016 through March 2020." Defendant Br. at 25. In fact, [

] for the circumvention proceeding.[3] M&G

---

[3]    The Coalition notes that one set of data identified by the Respondents are the surrogate values, which are described as [

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED       NON-CONFIDENTIAL VERSION

Respondents Br. at 31-32. It is unclear why contemporaneous data should be considered outdated, and Respondents do not provide any explanation or support for this claim. Respondents also had an opportunity to submit information to rebut, correct, or clarify this information and chose not to; in other words, Respondents could have submitted data to demonstrate that this information was "outdated" or otherwise inappropriate to use, but they did not. *See* Memo Placing Info on Record at 1 (establishing a deadline to submit information in response to information placed on the record from the Finewood proceeding).

Finally, Respondents challenge Commerce's reliance on information submitted by the Coalition. DH Respondents Br. at 25-27. In doing so, Respondents do not engage with the substance of the information or claim that it is inconsistent with or undermined by other information on the record. *Id.* Instead, Respondents effectively argue that the information should not have been used because it was provided by the Coalition. Respondents attempt to discredit the information as "secondary sources," but point to no legal basis for considering it—much less rejecting it—as such. *Id.* at 27. Indeed, Respondents point only to *Nan Ya Plastics Corp. v. United States*, but this case discusses the use of secondary sources in identifying an AFA rate. 810 F.3d 1333, 1338 (Fed. Cir. 2016). Beyond the fact that this is a distinct factual circumstance, "secondary sources" is a specific concept identified in the statute governing the selection the of AFA rate and is thus not applicable here. 19 U.S.C. § 1677e(c). Further, in *Nan Ya*, the Federal Circuit described primary information as information obtained in the subject segment, which the information

---

]. M&G Respondents Br. at 32; Memorandum from Kabir Archuletta, Program Manager, Enf't & Compl., to The File, re: *Anti-Circumvention Inquiry of Certain Hardwood Plywood Products form the People's Republic of China: Production Costs Analysis and Data for the Preliminary Determination* (July 22, 2022), C.R. 247, P.R. 411, at Attachment.

submitted by the Coalition is. *See* DH Respondents Br. at 27. Thus, *Nan Ya* does not support Respondents' claim.

Respondents' reliance on prior Commerce determinations in *Fresh Garlic* and *Hardwood Plywood* likewise fail. *Id.* at 26. In both of those proceedings, Commerce was examining whether certain information was the best available information for the purpose of surrogate value selection and are thus factually distinct.[4] *Fresh Garlic from China* IDM at 15; *HWDPW from China* IDM at 49. Further, neither of those cases address the general reliability of declarations or demonstrate that Commerce has an established practice for considering such documentation. Consequently, they do not support Respondents' claims here.

### 3.    Commerce's Actions Were Not Otherwise Unreasonable

Respondents make various other claims regarding alleged unreasonable actions by Commerce, asserting that "{t}hese actions alone merit voiding Commerce's *Final Determination* . . ." ST&R Respondents Br. at 27-29. However, Respondents point to no legal grounds for "voiding" an agency determination based on any of the perceived errors. *Id.* For example, Respondents fault Commerce for the length of the proceeding. *Id.* at 27-29. Yet, the statute identifies a timeframe for the agency to conduct a circumvention proceeding only to the extent practicable. 19 U.S.C. § 1677j(f). Given the complexity of this proceeding and Commerce's extensive information collection, as evidenced by the significant size of the record, coupled with

---

[4]    Additionally, the factors listed by Respondents from *Fresh Garlic* are described as considerations "{i}n the particular case of a research report{,}" and the study discussed in *Hardwood Plywood* contained internally inconsistent information, further distinguishing these cases. Issues and Decision Memorandum accompanying *Fresh Garlic from the People's Republic of China*, 77 Fed. Reg. 34,346 (Dep't Commerce June 11, 2012) (final results of the 2009-2010 admin. rev. of the AD order) at 15 ("*Fresh Garlic from China* IDM"); Issues and Decision Memorandum accompanying *Hardwood and Decorative Plywood from the People's Republic of China*, 78 Fed. Reg. 58,273 (Dep't Commerce Sept. 23, 2013) (final deter. of sales at less than fair value) at 50, n.188 ("*HWDPW from China* IDM").

the fact that the Coalition's request was filed immediately before the outbreak of the COVID-19 pandemic, it is unsurprising that this proceeding was lengthy. Moreover, while Respondents assert there were "procedural consequences" as a result of the length of the inquiry, they fail to explain why these should result in "voiding" the determination. Indeed, as Respondents recognized, Commerce stated that it would undertake a process through which certification eligibility could be reconsidered as part of the administrative review process. ST&R Respondents Br. at 28-29; IDM at 188. Further, as Respondents also recognize, Commerce expanded the subsequent administrative review to encompass imports as of June 17, 2020, *i.e.*, the date of initiation of the circumvention proceeding and the earliest date for which inquiry merchandise could have been subject to duties. ST&R Respondents Br. at 28-29. Respondents provide no reason why this is insufficient to address the alleged "procedural consequences" or otherwise should render Commerce's determination void.

### B.     Commerce's Affirmative Circumvention Determination Is Supported by Substantial Evidence and in Accordance with Law

#### 1.     Commerce's Analysis Was Consistent with the Statute

Respondents claim that Commerce's determination was inconsistent with the statute because it considered merchandise beyond goods assembled or completed in a third country. DH Respondents Br. at 18-19, 28-30. According to Respondents, Commerce must determine whether the third country processing is "assembly or completion" before considering whether it is minor and insignificant and assembly and completion is essentially limited to "screwdriver operations." *Id.* These claims are not supported by law and should be rejected.

As Defendant explains, in undertaking its analysis, Commerce examined the factors identified in the statute and consistent with the Statement of Administrative Action accompanying the Uruguay Round Agreements Act ("SAA"). Defendant Br. at 30-31. Respondents fault

Commerce for not first addressing whether the activities occurring in Vietnam were "mere assembly or completion operations." DH Respondents Br. at 28. But this Court has already rejected this argument. In fact, in *Hlds (B) Steel Sdn Bhd v. United States*, the Court was confronted with an almost identical argument:

> {Plaintiff} argues that the statute requires the Department to determine whether a respondent's manufacturing processes in a third country "are *mere* assembly or completion operations." It further contends that "{o}nly if the answer is 'yes'" to that question should Commerce decide "whether the assembly or completion is minor or insignificant."

2024 WL 244937 at *3 (Ct. Int'l Trade Jan. 23, 2024) (internal citations omitted). In rejecting this claim, the Court explained that the statute "does not 'contemplate a distinction between manufacturing and completion or assembly.'" *Id.* at *4 (quoting *Macao Com. & Indus. Spring Mattress M,fr. v. United States*, 437 F. Supp. 3d 1324, 1329 (Ct. Int'l Trade 2020)). The Court further explained: "{w}e know this because the statute equates 'completion or assembly' with 'production process.'" *Id.* (quoting 19 U.S.C. § 1677j(b)(2)(C)). As such, Commerce was not required to first make a determination regarding "assembly or completion."[5] *Id.*

Respondents also argue that the SAA limits third country circumvention to "only screwdriver operations." DH Respondents Br. at 29-30. But Respondents' reliance on the SAA for this proposition is misplaced. A review of the SAA demonstrates that screwdriver operations are one type of activity that the circumvention provision seeks to address through third country manufacturing, but it is not the only one, as Respondents suggest. Specifically, in discussing

---

[5]     The Coalition notes Respondents' reliance on *Peer Bearing Company-Changshan v. United States* in support of the argument that circumvention is limited to "mere" assembly and completion. DH Respondents Br. at 18-19; Greatriver Br. at 16. That case, however, addressed a determination by Commerce in the course of an administrative review that certain merchandise should be considered within scope; Commerce did not conduct circumvention determination in that proceeding. 986 F. Supp. 2d 1389, 1393, 1403 (Ct. Int'l Trade 2014).

revisions to the circumvention provision, the SAA identifies screwdriver operations as an example

of a type of circumvention the statute seeks to address but does not limit assembly or completion

to such activities. SAA, H.R. Doc. No. 103-316, vol. 1, at 893 (1994), reprinted in 1994

U.S.C.C.A.N. 4040, 4216.

This is further confirmed by the U.S. Court of Appeals for the Federal Circuit. For example,

in *Al Ghurair Iron & Steel LLC v. United States*, the Federal Circuit affirmed Commerce's

circumvention determination regarding corrosion-resistant steel that was further processed from

hot-rolled and cold-rolled steel manufactured in China. 65 F. 4th 1351 (Fed. Cir. 2023). The

process of converting hot-rolled or cold-rolled steel into corrosion-resistant steel can include cold-

rolling, annealing, passing through a bath of molten zinc or aluminum or electrolytic cells,

recoiling, and cutting. *Id.* at 1355. These processes are clearly more involved than "all finished

parts {being} delivered to an assembly site or line, ready to assemble with tools no more

sophisticated than a screwdriver." DH Respondents Br. at 30.

### 2. Commerce Properly Considered and Made a Determination Based on the Full Record, and that Determination Is Supported by Substantial Evidence

Respondents assert that Commerce improperly ignored the evidence on the record and

thereby unreasonably concluded that the processing occurring in Vietnam constituted assembly or

completion. *Id.* at 31-39. As Defendant explains, the statute outlines the factors Commerce must

consider in determining whether third country processing is minor and insignificant, without any

one factor controlling. Defendant Br. at 30. Here, Commerce followed its statutory directive and

examined the record evidence with regard to each factor, including the evidence and argument put

forth by the parties. IDM at 29-45; Prelim. Memo at 19-25. Based on this analysis, Commerce

concluded that "the process of assembling hardwood plywood inputs in Vietnam to produce inquiry merchandise is minor and insignificant." IDM at 45.

Respondents challenge this analysis by highlighting individual pieces of record evidence they assert support their claim. DH Respondents Br. at 31-39. But this piecemeal representation of the record does not undermine Commerce's conclusion, particularly as Respondents discuss this information in isolation. For example, Respondents point to evidence allegedly showing the "procedures and equipment for the unsophisticated peeling of veneers in Vietnam . . ." *Id.* at 34. But they do not discuss how this is relevant to the statutory factors or explain what conclusion or evidence this undermines. *Id.* Perhaps more importantly, they fail to acknowledge that Commerce addressed this specific information in its final determination. IDM at 35 (citing DH Respondents' case brief, which pointed to Exhibit SQ-1 of An An's Supplemental Questionnaire Response and Exhibit 1.B of Arrow Forest's Supplemental Questionnaire Response). Commerce explained that this was a "straw man" argument, aimed at refuting a claim that the agency did not make and ignores the fact that the relevant inquiry for Commerce is the relative levels of sophistication of production in China versus Vietnam. *Id.* at 35-36. Respondents' identification of this information does not demonstrate how this analysis is unsupported.

Similarly, Respondents point to places on the record where Vietnamese entities identified the number of steps in their production process. DH Respondents Br. at 34-35. But, again, Respondents provide no context or discussion regarding how this detracts from the information relied on by Commerce or otherwise undermines the agency's determination. And again, Respondents fail to acknowledge that Commerce discussed arguments and information regarding the number of production steps in Vietnam, noting that certain steps were double-counted and that

this information did not demonstrate greater sophistication of the production process in Vietnam. IDM at 38.

Likewise, Respondents highlight the American National Standard for Hardwood and Decorative Plywood. DH Respondents Br. at 33. Here, too, Respondents do not explain how this information undermines Commerce's conclusions. Additionally, this issue was raised in almost identical manner in Respondents' case brief. Letter from deKieffer & Horgan, PLLC to Sec'y Commerce, re: *Hardwood Plywood from the People's Republic of China: General Issues Brief* (Jan. 10, 2023), C.R. 427, P.R. 760, at 68. Commerce addressed this argument, explaining that Respondents failed to explain or document how this is relevant to determining the level of investment in Vietnam versus China. IDM at 32. Respondents do not address this conclusion, much less explain how it is unsupported or otherwise incorrect. DH Respondents Br. at 33.

Respondents' claim that Commerce's analysis was in error because it included industries outside of plywood should also be rejected. *Id.* at 36-38. Respondents assert that costs associated with forestry are not borne by plywood manufacturers, but this ignores Commerce's finding that there are vertically integrated Chinese plywood producers (a finding Respondents do not challenge). *Id.* at 37; IDM at 38. Thus, Commerce properly began its analysis with the costs and production processes borne by plywood manufacturers.[6] Prelim. Memo at 24; IDM at 38-39. Respondents also take issue with Commerce's consideration of the certain processes undertaken by Chinese producers. DH Respondents Br. at 37-38. But as Defendant notes, this is ultimately a

---

[6]    Respondents identify costs associated with land, facilities, and equipment for the maintenance of forests or plantations for trees as among the costs accounted for by Commerce. DH Respondents Br. at 37. However, Commerce explained that its analysis began with the process of harvesting logs. IDM at 39; Prelim. Memo at 21.

disagreement with how Commerce weighed the evidence, which does not demonstrate that Commerce's determination was unsupported. Defendant Br. at 32.

In short, in challenging Commerce's finding that processing in Vietnam is minor and insignificant, Respondents do little more than cite isolated pieced of information, without providing any discussion of how this information undermines Commerce's determination or renders its conclusion unsupported. Moreover, Respondents fail to acknowledge that Commerce did address this information and thus fail to demonstrate any error in Commerce's analysis and consideration of this information. Consequently, Respondents have failed to show that Commerce's determination is unsupported or otherwise in error.

### 3.    Commerce Properly Considered Patterns of Trade Data

Respondents next challenge Commerce's finding that patterns of trade data support its circumvention determination. DH Respondents Br. at 40-45. According to Respondents, Commerce did not properly consider the information on the record regarding import and export trends. *Id.* This argument is detached from the record and should be rejected.

As an initial matter, as Defendant notes, the statute instructs Commerce to consider patterns of trade in a circumvention analysis regarding merchandise completed or assembled in a third country. Defendant Br. at 33; *see* 19 U.S.C. § 1677j(b)(3)(A). And while Respondents urge that "import data alone is not a basis for finding circumvention{,}" Respondents also acknowledge that "Commerce's patterns of trade analysis is but one factor in its circumvention analysis." DH Respondents Br. at 41, 45 (citing IDM at 43). Thus, Commerce properly considered record evidence regarding the patterns of trade and relied on these data as one of many factors supporting its affirmative determination.

Respondents asserts that Commerce's conclusion regarding pattern of trade information improperly ignores evidence and is not supported by the record. *Id.* at 41-45. This is simply incorrect. As Defendant discusses in detail, substantial record evidence supports Commerce's determination that patterns of trade information weighs in favor of a circumvention finding. Defendant Br. at 33-36; *see* IDM at 45-47. Indeed, the GOV itself raised concerns about fraud and Chinese plywood being imported into Vietnam, further processed, and then exported to the United States based in part on trade patterns observed after the petitions were filed. Letter from Wiley Rein LLP to Sec'y Commerce, re: *Hardwood Plywood Products from the People's Republic of China: Comments on Quantity and Value Questionnaire Responses* (Oct. 15, 2020), C.R. 63, P.R. 135, at 3 and Exhibit 3. Respondents' evidence does not undermine this conclusion. For example, Respondents highlight that Vietnamese exports of plywood continually increased from 2006 to 2017. DH Respondents Br. at 43. But this ignores what occurred after the petitions were filed; specifically, U.S. imports from Vietnam increased approximately 950 percent between 2016 (*i.e.*, the year the petitions were filed) and 2019. Coalition Request at 11; Prelim Memo at 18. In comparison, between 2007 and 2016, exports from Vietnam to the United States grew only 150 percent. DH Response to Request at Exhibit 11. Thus, it is not reasonable to state that the increases seen after the petitions were simply a continuation of ongoing trends. *See* DH Respondents Br. at 43.

Respondents similarly claim that the United States was not the primary beneficiary of Vietnam's expanded exports, noting that South Korea was Vietnam's top market for plywood in 2017. *Id.* But this again ignores the actual data. While it is true that South Korea was the largest export market for Vietnamese plywood in 2017, exports from Vietnam to South Korea increase by 30 percent between 2016 and 2017; in contrast exports from Vietnam to the United States increased

by almost 500 percent in that time. DH Response to Request at Exhibit 11. In fact, exports to the United States alone accounted for over 40 percent of the increase in Vietnam's plywood exports between 2016 and 2017.

In short, Respondents' assertion that trends prior to the filing of the petition undermine Commerce's conclusions are simply not borne out by the record. The disparate trends with regard to Vietnamese exports to the United States versus other countries and with regard to exports to the United States before and after the petitions were filed are fully consistent with Commerce's determination regarding patterns of trade. *See* IDM at 47. Thus, not only have Respondents failed to identify record evidence that detracts from Commerce's determination, but the evidence they point to further supports the conclusion that patterns of trade are indicative of circumvention.

### C.    Commerce Properly Rejected Untimely NFI

Respondents assert that Commerce erred in rejecting untimely NFI that was submitted after the issuance of the preliminary determination. Greatriver Br. at 21-25; M&G Respondents Br. at 5-28; ST&R Respondents Br. at 13-26; Shelter Forest Br. at 6-19. According to Respondents, Commerce should have accepted this NFI because the agency failed to notify them of deficiencies in their responses and interests of fairness require that the untimely information be accepted. Greatriver Br. at 21-25; M&G Respondents Br. at 5-28; ST&R Respondents Br. at 13-26; Shelter Forest Br. at 6-19. There is no merit to these claims. As Defendant explains in detail, Commerce's regulations establish definitions of and time limits for the submission of NFI and the Courts have "long upheld" Commerce's ability to set and enforce time limits. Defendant Br. at 39-40. Commerce's actions here were consistent with its regulations, practice, and Court precedent, and Respondents' claims to the contrary should be rejected.

### 1.   Commerce Complied with 19 U.S.C. § 1677m(d)

Respondents claim that Commerce erred in rejecting untimely NFI because the agency did not provide parties with notice of the deficiencies in their responses pursuant to 19 U.S.C. § 1677m(d). M&G Respondents Br. at 8-16; ST&R Respondents Br. at 13-18. This claim should be rejected. As Defendant explains, Commerce provided Respondents with sufficient notice and opportunity to correct their responses. Defendant Br. at 56-61; IDM at 123-134. Indeed, each Respondent received two supplemental questionnaires, with some receiving an additional supplemental questionnaire. *See* Defendant Br. at 57-59; IDM at 123-125. These questionnaires addressed the deficiencies in Respondents' questionnaire responses and, consequently, Commerce met its obligations under 19 U.S.C. § 1677m(d). *See* Defendant Br. at 57-59.

Respondents fail to explain how Commerce's issuance of multiple supplemental questionnaires did not satisfy the requirements of 19 U.S.C. § 1677m(d). As required, the supplemental questionnaires requested additional information and clarification of information that was requested previously. *See id.* For example:

- The initial questionnaire requested that parties state whether they are affiliated with producers or exporters of plywood or plywood inputs in China. DOC Initial Q at Attachment II, p. I-2. The first supplemental questionnaire again requested that parties identify Chinese affiliates that produce or export plywood or plywood inputs and sought additional specific information regarding any such entity. *See* DOC First Supplemental Q.

- The initial questionnaire requested that parties state whether they obtained inputs made in China from Vietnamese resellers. DOC Initial Q at Attachment II, p. I-4. In the second supplemental questionnaire, Commerce requested further clarifying information regarding inputs from China provided by Vietnamese resellers. DOC Second Supplemental Q at Attachment II, p. 2.

- The initial questionnaire requested that parties provide information on the core species used. DOC Initial Q at Attachment II, p. I-7. The first supplemental questionnaire requested supporting documentation regarding core materials used. DOC First Supplemental Q at Attachment II, p. VI-4.

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

Notably, each of these issues—affiliations, purchases from China, and core materials—were areas where Commerce found multiple Respondents had failed to fully cooperate and to provide complete and accurate information. *See* IDM at 75-103. Respondents fail to explain why these multiple requests were insufficient or otherwise did not provide the parties with an opportunity to correct deficiencies in their responses.

Respondents attempt to put forth examples of specific information that Commerce failed to request as evidence of the agency's alleged inadequate notice. M&G Respondents Br. at 9-11. But these examples do not persuade, as Respondents fail to recognize the full record regarding these issues. For example, for Lechenwood, Respondents state that the company was not afforded an opportunity to address information submitted by the GOV showing that the company [

 ]. *Id.* at 10-11; *see* AFA Memo at 17-18. However, this ignores the actual information at issue. Specifically, Lechenwood originally stated that it was not affiliated with any Chinese producer or exporter of plywood or plywood inputs, [

 ], in response to Commerce's first request for information about Chinese affiliates and the inputs they provided. *See* AFA Memo at 17. When Commerce asked a supplemental question about affiliates (including the inputs they provided), Lechenwood acknowledged that it was [

 ] but stated that the company does not supply Lechenwood; it then reversed course again saying that [                                    ] when Commerce asked a third question about affiliates and the inputs they provided. *See id.* at 17. Thus, Commerce requested, and Lechenwood had multiple opportunities to provide, complete and accurate information on Chinese affiliates and inputs supplied by any such company. While information from the GOV confirmed the inaccuracy of Lechenwood's reporting, this was not the basis for the deficiencies in Lechenwood's reporting

**BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED**

nor was Commerce required to give Lechenwood another bite at the apple after multiple opportunities to accurately report [                                    ] its Chinese affiliate.

Additionally, while Respondents identify various cases in support of their claims, these are factually distinguishable. M&G Respondents Br. at 12-16; ST&R Respondents Br. at 17-18. For example, as Commerce noted in its final determination, in *Shelter Forest Int'l Acquisition, Inc. v. United States*, Commerce did not issue any questionnaires to the respondent at issue, which had voluntarily responded to the questionnaires issued to the mandatory respondents. IDM at 60-61. Here, in contrast, the respondents each received at least two supplemental questionnaires. *See id.* In *Hitachi Energy USA v. United States*, the Court faulted Commerce for applying AFA where the respondent's alleged failure to provide information stemmed from Commerce changing its method for evaluating the information at issue. 34 F. 4th 1375, 1380, 1383-84 (Fed. Cir. 2022). This is not the case here, as Commerce applied AFA based on information that was clearly requested and for which respondents were afforded an opportunity to correct or clarify. And in *Saha Thai Steel Pipe Public Co. v. United States*, the Court found that Commerce erred in applying AFA based on a respondent's failure to report certain merchandise that was subject to an ongoing scope proceeding, but the agency never requested that sales for all such merchandise be reported. 605 F. Supp. 3d 1348, 1361, 1369 (Ct. Int'l Trade 2022). Here, in contrast, the information Commerce identified as being incomplete or inaccurate was clearly requested on more than one occasion.

In short, Respondents point to isolated pieces of evidence to claim that Commerce did not afford companies with an opportunity to clarify the record. But these arguments ignore the full record, including the information that was requested and the inconsistent and incomplete information that was provided. Commerce is not required to provide companies with unlimited opportunities to provide complete and accurate information. Instead, Commerce is required to

provide parties with "an opportunity" to correct or clarify their reporting. 19 U.S.C. § 1677m(d); *see Maverick Tube Corp. v. United States*, 857 F.3d 1353, 1360-61 (Fed. Cir. 2017) (rejecting argument that Commerce should have provided respondent with another opportunity to correct a deficiency after it issued a supplemental questionnaire). Commerce did so here. As such, Respondents have not demonstrated that Commerce acted inconsistently with its obligations under 19 U.S.C. § 1677m(d), and Respondents' claims that Commerce should have accepted untimely NFI because Commerce did not comply with this provision are meritless.

### 2. Commerce Was Not Required to Accept Untimely NFI

Respondents assert that Commerce unreasonably rejected untimely NFI submitted by multiple parties because interests in fairness and accuracy outweighed Commerce's concerns regarding finality and the burden of reviewing this information. M&G Respondents Br. at 16-28; Shelter Forest Br. at 7-19; ST&R Respondents Br. at 18-26. As Defendant discusses in detail, Commerce's rejection of untimely submitted NFI was supported by the record and consistent judicial precedent, and Respondents have failed to show otherwise. Defendant Br. at 43-56. Thus, these arguments are meritless and should be rejected. *Id.* at 38-61.

In challenging Commerce's rejection of untimely submitted information, Respondents assert that this was an abuse of discretion and Commerce was required to balance interests of fairness with those of finality. M&G Respondents Br. at 16-28; Shelter Forest Br. at 7-19; ST&R Respondents Br. at 18-26. These claims ignore Commerce's determination and the record. As Defendant explains, Commerce did consider whether it would be appropriate to accept this information, highlighting the burden of accepting "an extremely large volume of information from dozens of interested parties" and the effect this would have on reaching a final determination. Defendant Br. at 40, 42-43; *see* IDM at 63 ("In making this determination, we considered the

amount of time we would need to collect all information that parties requested to submit, to receive comments and rebuttal comments, and the additional time necessary to analyze such a large amount of information."). Moreover, as Defendant notes, Commerce received over 20 submissions of NFI from numerous parties following the preliminary determination. Defendant Br. at 41-42. Consideration of this information would have been in addition to the 146 questionnaires responses received from 37 respondents as well as additional submissions from interested parties. *See id.* at 41. Respondents' broad claim that Commerce had "ample" time to consider this information cannot be squared with the reality of the record.[7] M&G Respondents Br. at 24; ST&R Respondent Br. at 23; Shelter Forest Br. at 15. Respondents were also provided with multiple opportunities to submit this information to Commerce, both in the form of responses to questionnaires and otherwise. *See* IDM at 60-63.

Respondents' failure to grapple with the actual facts of this case is further demonstrated by their attempt to analogize this proceeding to those where the Court has found that Commerce should have accepted untimely NFI. M&G Respondents Br. at 22-23; Shelter Forest Br. at 12. But these cases are far from analogous:[8]

- In *Celik Halat ve Tel Sanayi AS v. United States*, Commerce had rejected a respondent's initial questionnaire responses in their entirety because the respondent uploaded a single exhibit 21 minutes after the deadline. 557 F. Supp. 3d 1348, 1354 (Ct. Int'l Trade 2022).

- In *Bosun Tools Co. v. United States*, the Court addressed Commerce's rejection of a single supplemental questionnaire response that the respondent attempted to timely file

---

[7]       Notably, Respondents elsewhere fault Commerce for taking too long to complete the proceeding. ST&R Respondents Br. at 23.

[8]       The Coalition notes that Respondents also point to *Fine Furniture (Shanghai) Ltd. v. United States* in support of their claims. Shelter Forest Br. at 12. However, in that case, the Court faulted Commerce for requesting and then failing to take into account additional information. 865 F. Supp. 2d 1254, 1266-69 (Ct. Int'l Trade 2012). Thus, this case is also not analogous.

but for which the public version uploaded only in part. 405 F. Supp. 3d 1359, 1365 (Ct. Int'l Trade 2019).

- In *Grobest & I-Mei Indus. (Vietnam) v. United States*, the Court considered Commerce's rejection of a single separate rate certification submitted seven months before the preliminary determination. 815 F. Supp. 2d 1342, 1365 (Ct. Int'l Trade 2012).

- In *Shelter Forest Int'l Acquisition, Inc. v. United States*, the Commerce had rejected supplemental information from a single respondent where the respondent had not been issued any supplemental questionnaires. 497 F. Supp. 3d 1388, 1400-01 (Ct. Int'l Trade 2021).

- In *Fischer S.A. Comercio v. United States*, the Court addressed Commerce's rejection of "additional pages" of a previously submitted agreement that revealed a calculation error in the dumping margin. 700 F. Supp. 2d 1364, 1373 (Ct. Int'l Trade 2010).

- In *Pro-Team Coil Nail Enterprise, Inc. v. United States*, Commerce had rejected information submitted in a quantity and value questionnaire response that was provided before the preliminary determination and summarized information already on the record. 419 F. Supp. 3d 1319, 1332 (Ct. Int'l Trade 2019).

These are not "similar proceedings{,}" as Respondents assert. Shelter Forest Br. at 11; M&G Respondents Br. at 22. To the contrary, the scope and scale of this proceeding and of the information Respondents sought to have accepted are fundamentally different than the issues addressed in the cases on which Respondents rely. As Defendant explains, consideration of whether untimely NFI can be accepted is a case-by-case determination. Defendant Br. at 50-51. Commerce undertook such a determination here and properly concluded that the NFI should be rejected. This determination was also consistent with numerous prior cases, as Defendant explained, and Respondents fails to demonstrate otherwise. *Id.* at 43-48.

Finally, as Defendant discusses, the remaining, company-specific arguments likewise fail. *Id.* at 52-61. Notably, Shelter Forest argued that its information should have been accepted because it was important, Commerce had time to consider it, and the company was diligent in providing this information. Shelter Forest Br. at 13-16. But, as Defendant explains, Commerce properly rejected this information. Defendant Br. at 54-56. To start, the fact that this information is allegedly

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

important does not, in and of itself, mean that it should have been accepted. Shelter Forest Br. at 13-14. Nor does it appear that this information would resolve the issues identified by Commerce.[9] As discussed above, Commerce must undertake a case-by-case analysis to determine whether it is appropriate to accept untimely NFI. Commerce did so here. Similarly, as discussed above, the claim that Commerce had "ample" time to review this information ignores the record. Shelter Forest Br. at 15. Finally, Shelter Forest was not diligent in providing this information. *See id.* Shelter Forest claims that it did not provide information earlier in the proceeding because it believed the information provided by its supplier would be sufficient. *Id.* That, however, does not provide a basis for the company to provide untimely information. If Shelter Forest had information it believed was relevant, it had the opportunity to provide it throughout the proceeding. Shelter Forest chose not to do so and should not now be permitted to do so because it regrets its earlier failures.

Additionally, Greatriver's claim that Commerce's rejection of its untimely information is "especially egregious" because it had initially been selected for verification, which Commerce subsequently withdrew, is meritless. Greatriver Br. at 23-24. According to Greatriver, the information rejected by Commerce was information that Greatriver "had intended to present at verification . . ." *Id.* at 24. This misunderstand Commerce's practice regarding verification. To start, it is Commerce's standard practice not to verify companies where it has applied AFA. *See* Memorandum from Emily Halle, Acting Office Dir., AD/CVD Operations, Off. V, to Interested Parties, re: *Circumvention Inquiry of the Antidumping and Countervailing Duty Orders on Certain*

---

[9]    The Commerce's basis for applying AFA to Shelter Forest's supplier goes beyond the information Shelter Forest seeks to provide. *See* Shelter Forest Br. at 18. Notably, Commerce found that Lecehenwood repeatedly provided incorrect and inaccurate information regarding [

].  *See* AFA Memo at 17-18.

*Hardwood Plywood from the People's Republic of China: Verification Schedule Update* (Oct. 18, 2022), P.R. 611; *Linyi Chengen Import and Export Co. v. United States*, 391 F. Supp. 3d 1283, 1288, 1299 (Ct. Int'l Trade 2019) (affirming Commerce's refusal to verify a company to which AFA was applied because the agency did not rely on the company's questionnaire responses). Additionally, as Commerce made clear in its verification outline, and consistent with its longstanding practice, verification cannot be used as an avenue for submitting NFI. *See* Memorandum from Kabir Archuletta, Program Manager, AD/CVD Operations, Off. V, to The File, re: *Circumvention Inquiry on the Antidumping and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China: Verification of Questionnaire Responses* (Oct. 7, 2022), P.R. 606, at 2; *see Marsan Gida Sanayi ve Ticaret AS v. United States*, 931 F. Supp. 2d 1258, 1280 (Ct. Int'l Trade 2013). Thus, had Greatriver attempted to submit this information at verification, it would have properly been rejected then.

**D.    Commerce Did Not Expand the Scope of the Order**

Respondents assert that Commerce expanded the scope of the order because the inquiry merchandise was not covered by the ITC's injury determination. DH Respondents Br. at 39-40. In particular, Respondents claim that Commerce's determination is impermissible because the ITC did not investigate the impact of Chinese veneers on the U.S. industry. *Id.* However, this argument ignores the purpose of the circumvention provision and the statutory provisions regarding notification to the ITC. Defendant Br. at 36-38. To start, as Defendant notes, Commerce followed its statutory obligation regarding notification. *Id.* at 38; *see* 19 U.S.C. § 1677j(e). While Respondents recognize this, they effectively ask the Court to ignore the fact that the ITC did not request consultations or otherwise indicate that there were significant injury issues regarding

Commerce's determination. DH Respondents Br. at 39. Respondents fail explain why the ITC's lack of consultation or advice should be disregarded.

Moreover, as Defendant explains, Respondents improperly focus on veneers, ignoring the fact that the merchandise leaving Vietnam and entering the United States is hardwood plywood and is thus undeniably of the same class or kind of merchandise investigated by the ITC. Defendant Br. at 37. That the proper focus is the product leaving Vietnam is confirmed by the legislative history regarding the ITC consultation provision. Specifically, in discussing the issues that the ITC was anticipated to face when confronted with notification under the consultation provision, Congress explained:

> The third country assembly situation will typically involve the same class or kind of merchandise, where Commerce has found that the de facto country of origin of merchandise completed or assembled in a third country is the country subject to the {AD or CVD} order. Hence, the focus of ITC advise should be whether the *imported class or kind of merchandise* is a like product within the meaning of the prior injury determination, or whether *imports from the third country* were specifically excluded (and if so, whether circumstances have changed since then, by virtue of circumvention).

*Omnibus Trade and Competitiveness Act of 1988*, H.R. Rep. No. 100–576 at 603 (1988) (emphasis added). Thus, Respondents' argument that Commerce impermissibly expanded the scope is meritless and should be rejected.

### E.    Commerce Did Not Expand the Scope of the Circumvention Proceeding

Respondents claim that Commerce improperly expanded the scope of the circumvention proceeding by including merchandise that was excluded from the definition of inquiry merchandise. M&G Respondents Br. at 33-39; ST&R Respondents Br. at 7-13. These arguments are based on the fact that Commerce did not accept Respondents' request that certain merchandise be exempt from the certification process. M&G Respondents Br. at 33-39; ST&R Respondents Br. at 7-13. This ignores the purpose of the Commerce's certification regimes, the purpose of the AFA

statute, and the need to have enforceable circumvention determinations. As such these claims should be rejected.

To start, as Defendant notes, in clarifying the inquiry merchandise covered by the circumvention proceeding, Commerce did not state that any non-inquiry merchandise would be exempt from any resulting certification process. Defendant Br. at 63; *see* IDM at 182-83. Indeed, such an approach would be illogical. The purpose of circumvention certification requirements is to have parties certify that the merchandise is not inquiry merchandise; if certifications did not need to be provided for non-inquiry merchandise, then there would be no purpose to having certifications. Moreover, as Defendant explained, it is Commerce's "standard practice" when dealing with inquiry merchandise that is indistinguishable on its face from non-inquiry merchandise to establish a certification requirement to implement a circumvention determination. Defendant Br. at 63; IDM at 183. In fact, out the outset of this proceeding, Respondents requested that, if Commerce makes an affirmative determination, a certification process be put in place that would allow exporters and importers to certify that their merchandise does not meet the criteria of the inquiry merchandise. DH Response to Request at 34-35. Thus, as Commerce noted, "it strains credulity that interested parties were unaware that imports of non-inquiry merchandise would require certification in order to avoid suspension of liquidation." IDM at 183.

Additionally, as Defendant explains, such certification requirements are necessary to implement an enforceable and administrable determination. Defendant Br. at 63; IDM at 173. Respondents attempt to avoid this by claiming that "whether plywood contains a Chinese core, and is subject to duties, is readily confirmable by the naked eye . . ." M&G Respondents Br.

at 36, n.6. However, they provided no support, or even explanation, for this claim.[10] Further, robust enforcement is particularly important here in light of Commerce's application of AFA. Commerce has repeatedly excluded non-cooperating companies from certification processes and rejected arguments that these actions are punitive or unpredictable. *See, e.g.*, Issues and Decision Memorandum accompanying *Certain Corrosion-Resistant Steel Products from Taiwan*, 84 Fed. Reg. 70,937 (Dep't Commerce Dec. 26, 2019) (affirm. final deter. of circ. inquiry on the AD order) at 21-25 ("*CORE from Taiwan* IDM"); Issues and Decision Memorandum accompanying *Certain Corrosion-Resistant Steel Products from the Republic of Korea*, 84 Fed. Reg. 70,948 (Dep't Commerce Dec. 26, 2019) (affirm. final deter. of circ. inquiry on the AD and CVD orders) at 24-28; Issues and Decision Memorandum accompanying *Certain Cold-Rolled Steel Flat Products from the Republic of Korea*, 84 Fed. Reg. 70,934 (Dep't Commerce Dec. 26, 2019) (affirm. final deter. of circ. inquiry on the AD and CVD orders) at 25-29; Issues and Decision Memorandum accompanying *Aluminum Extrusions from the People's Republic of China*, 84 Fed. Reg. 39,805 (Dep't Commerce Aug. 12, 2019) (final affirm. deter. of circ. of the AD and CVD orders, and partial recission) at 7-8, 23; Preliminary Decision Memorandum accompanying *Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China*, 83 Fed. Reg. 35,205 (Dep't Commerce July 25, 2018) (prelim. affirm. deter. of circ. of the AD order) at 21; Issues and Decision Memorandum accompanying *Certain Tissue Paper Products from the People's Republic of China*,

---

[10]    Specifically, Respondents do not explain how to make such a distinction or what identifiers would allow CBP to identify plywood with Chinese core materials. M&G Respondents Br. at 36. The only citation provided is to a case brief from the underlying proceeding, but that brief contains nothing more than the same unsupported assertion. Letter from Mowry & Grimson to Sec'y Commerce, re: *Scope and Anti-circumvention Inquiries on Certain Hardwood Plywood Products from the People's Republic of China – Case Brief* (Jan. 9, 2023), C.R. 414, P.R. 746, at 39.

76 Fed. Reg. 47,551 (Dep't Commerce Aug. 5, 2011) (affirm. final deter. of circ. of the AD order)

at 23-25. In doing do, the agency has explained:

> Commerce's authority to apply AFA to uncooperative parties, including in
> countrywide anti-circumvention inquiries, and indeed to extend AFA to barring
> uncooperative parties from participating in a certification program is not only
> necessary to ensure compliance, it has a firm basis in Commerce's practice, and
> indeed, has been affirmed by the CIT. As the petitioners point out, Commerce has
> recognized that it has a "duty to both ensure that uncooperative parties do not
> benefit from their lack of cooperation and to encourage their future compliance."
> Moreover, as the petitioners also point out, the application of AFA to uncooperative
> respondents is required by the Act and by Commerce's regulations, and is well
> established in Commerce's practice, and has also been found to be appropriate by
> the CIT and the {CAFC}.

*CORE from Taiwan* IDM at 21. In fact, Commerce has explained that, where it has allowed non-

cooperative companies to participate in certification processes, there has been an insufficient

inducement of cooperation, undermining the effect and purpose of the application of AFA. *Id.*

at 22-25. Moreover, as Commerce has recognized, this practice has been affirmed by the CIT,

which has described such an approach as "in accordance with its 'obligation to administer the law

in a manner that prevents evasion of the order' . . ." *Max Fortune Indus. Co. v. United States*,

37 CIT 549, 561 (2013). Modifying the certification requirement to exempt certain merchandise

would allow non-cooperating parties get around their ineligibility for certification, which would

be contrary to Commerce's determination, agency practice, and Commerce's duty to ensure that

non-cooperative parties do not benefit from non-cooperation.

**Consol. Ct. No. 23-00144**                                    NON-CONFIDENTIAL VERSION

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, in conjunction with the arguments presented in Defendant's brief, we respectfully request that the Court deny Respondents' motions for judgement on the agency record and sustain Commerce's final circumvention determination.

Respectfully submitted,

<u>/s/ Timothy C. Brightbill</u>
Timothy C. Brightbill, Esq.
Stephanie M. Bell, Esq.
Tessa V. Capeloto, Esq.
Maureen E. Thorson, Esq.
John Allen Riggins, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to the Coalition for Fair Trade in Hardwood Plywood*

Dated:  August 16, 2024

CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Defendant-Intervenor Coalition for Fair Trade in Hardwood Plywood's Response to Motions for Judgement on the Agency Record, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2016), is 11,387 words.

*/s/ Timothy C. Brightbill*
(Signature of Attorney)

Timothy C. Brightbill
(Name of Attorney)

Coalition for Fair Trade in Hardwood Plywood
(Representative Of)

August 16, 2024
(Date)

## THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **SHELTER FOREST INTERNATIONAL ACQUISITION, INC.,**<br><br>           **Plaintiff,**<br>**GREATRIVER WOOD CO., LTD.,** *et. al*,<br>           **Consolidated Plaintiffs,**<br>    **and**<br>**CONCANNON LUMBER COMPANY,** *et. al*,<br>           **Plaintiff-Intervenors,**<br>    **v.**<br>**UNITED STATES,**<br>           **Defendant,**<br>    **and**<br>**COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD,**<br>           **Defendant-Intervenor.** | **Before: Hon. Mark A. Barnett, Chief Judge**<br><br>**Consol. Court No. 23-00144** |

## <u>ORDER</u>

Upon consideration of Plaintiffs' motions for judgement upon the agency record and all other papers and proceedings herein, it is hereby

ORDERED that Plaintiffs' motions are denied; and it is further

ORDERED that the U.S. Department of Commerce's determination is sustained.

SO ORDERED.

Dated: _____        _____
      New York, New York               Hon. Mark A. Barnett, Chief Judge