UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| SHELTER FOREST INTERNATIONAL ACQUISITION, INC., )<br><br>Plaintiff, )<br><br>and )<br><br>GREATRIVER WOOD CO., LTD., ET AL., )<br><br>Consolidated Plaintiffs, )<br>v. )<br><br>UNITED STATES, )<br><br>Defendant, )<br><br>and )<br><br>COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD )<br><br>Defendant-Intervenor. ) | Consol. Court No. 23-00144 |

**CONSOLIDATED PLAINTIFFS AMERICAN WOODMARK CORPORATION, ET Al.
<u>REPLY BRIEF</u>**

Gregory S. Menegaz
Judith L. Holdsworth
Alexandra H. Salzman
Vivien J. Wang
**deKieffer & Horgan, PLLC**
1, N.W.  20005
Tel: (202) 783-6900
email:  gmenegaz@dhlaw.com
*Counsel to Consolidated Plaintiffs*

Dated: September 30, 2024

## TABLE OF CONTENTS

I.      Standard of Review ................................................................................................. 1

II.     Statutory Interpretation of "Completion or Assembly" ...................................... 4

III.    Statutory Interpretation of "Minor and Insignificant" .................................... 10

        A.      Commerce Eschewed its Fact-Finding Obligation ............................ 10

        B.      Commerce's Methodology is Not the Best Methodology. .............. 13

                1.      Commerce's Comparison of Vietnamese Plywood Production to Chinese Integrated Operations ...................................................... 14

                2.      Commerce's Application of Surrogate Values ............................. 17

IV.     Commerce's Circumvention Inquiry was Procedurally Flawed. ................. 20

        A.      Insufficiency of Commerce's Questionnaires to Determine Circumvention .... 20

        B.      Commerce's Delay in Completing its Circumvention Inquiry ........... 22

V.      Conclusion ................................................................................................. 23

# TABLE OF AUTHORITIES

## Cases

*Al Ghurair Iron & Steel LLC v. United States*, 536 F. Supp. 3d 1357 (Ct. Int'l Trade 2021) .........9

*Al Ghurair Iron & Steel LLC v. United States*, 65 F. 4th 1351 (Fed. Cir. 2023)......................... 8-9

*Allegheny Ludlum Corp. v. United States*, 287 F.3d 1365 (Fed. Cir. 2002 ..................................23

*Bailey v. United States*, 516 U.S. 137 (1995) .................................................................................6

*Bell Supply Co., LLC v. United States*, 348 F. Supp. 3d 1281 (Ct. Int'l Trade 2018 .............. 16-17

*Bomont Indus. v. United States*, 718 F. Supp. 958 (1989)............................................................23

*Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, *reh'g denied* 468 U.S. 1227 (1984)................................................................................... 1-3, 9, 10, 13

*Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197 (1938) ...............................................13

*Fujitsu Gen. v. United States*, 88 F.3d 1034 (Fed. Cir. 1996) .......................................................2

*Garland v. Ming Dai*, 593 U.S. 357, 366 (2021) ..........................................................................12

*HLDS B Steel SDN Bhd. v. United States Welded Tube USA, Inc.*, No. 21-00638, 2024 Ct. Intl. Trade LEXIS 6 (Jan. 23, 2024)........................................................................................5

*Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024) ..................1-4, 8-9, 10, 14, 17, 19, 23

*Macao Com. & Indus. Spring Mattress Mfr. v. United States*, 437 F. Supp. 3d 1324, (Ct. Int'l Trade 2020).............................................................................................................5

*Novosteel SA v. United States*, 284 F.3d 1261 (Fed. Cir. 2002) ...................................................13

*Olympic Adhesives, Inc. v. United States*, 899 F.2d 1565 (Fed. Cir. 1990)..................................23

*Peer Bearing Company-Changshan v. United States*, 986 F. Supp. 2d 1389 (Ct. Int'l Trade 2014) ............................................................................................................... 11-12

*Polaris Indus. v. Arctic Cat, Inc.*, 724 F. App'x 948 (Fed. Cir. 2018)...........................................19

*Saha Thai Steel Pipe Pub. Co. v. United States*, 547 F. Supp. 3d 1278 (Ct. Int'l Trade 2021) .....11

*Smith v. United States*, 508 U.S. 223 (1993) ..................................................................................5

*Trent Tube Div., Crucible Materials Corp. v. Avesta Sandvik Tube AB*, 975 F.2d 807 (Fed. Cir. 1992) ........................................................................................................................13

*U.K. Carbon & Graphite Co. v. United States*, " 931 F. Supp. 2d 1322 (Ct. Int'l Trade 2013) ...19

*Venus Wire Indus. PVT. v. United States*, 424 F. Supp. 3d 1369 (Ct. Int'l Trade 2019) ..............13

**Statutes**

19 U.S.C. § 1677b(a) ...........................................................................................................19

19 U.S.C. § 1677b(c)(B) ......................................................................................................19

19 U.S.C. § 1677j........................................................................................................................6

19 U.S.C. § 1677j(b) ...................................................................................................... *passim*

19 U.S.C. § 1677j(f)..........................................................................................................22

**Administrative Decisions**

*Certain Hardwood Plywood Products from the People's Republic of China: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Affirmative Determination of Critical Circumstances, in Part*, 82 Fed. Reg. 28,629 (Dep't Commerce June 23, 2017)...........................................................................................................................14

*Certain Hardwood Plywood from the People's Republic of China: Notice of Covered Merchandise Referral and Initiation of Scope Inquiry,* 85 Fed. Reg. 3024 (Dep't Commerce January 17, 2020).........................................................................................................................22

**Other Authorities**

Omnibus Trade Act of 1987, Report of the Senate Finance Committee, S. Rep. No. 100-71 (June 12, 2087)..................................................................................................................3

Omnibus Foreign Trade and Competitiveness Act of 1988, Public Law 100-418 (August 23, 1988) ........................................................................................................................3-4

Statement of Administrative Action, Accompanying the Uruguay Round Agreements Act (URAA), H. Doc. 103-316, vol. 1 (1994), U.S.C.C.A.N. 4040............................................6, 7, 17

Consolidated Plaintiffs American Woodmark Corporation, Del Valle Kahman & Company, Ike Trading Company Limited, Pittsburgh Forest Products, Panoply Wood Products USA Inc., American Pacific Plywood, Inc., Eagle Industries Company Limited, Golden Bridge Industries Pte. Ltd., Lechenwood Viet Nam Company Limited, Arrow Forest International Co., Ltd., Her Hui Wood (Vietnam) Co., Vietnam Zhongjia Wood Company Limited, Long LUU Plywood Production Co., Ltd., and TEKCOM Corporation (together: "DH Plaintiffs") hereby reply to Defendant's Response to Plaintiffs' Rule 56.2 Motions for Judgment on the Agency Record (July 2, 2024), ECF No. 59 ("Def. Rsp. Br."), and Defendant-Intervenor Coalition for Fair Trade in Hardwood Plywood's Response to Motion for Judgement on the Agency Record (BPI Final Version, August 19, 2024), ECF 62 ("Coalition Rsp. Br.").

## I.    Standard of Review

The Supreme Court decided *Loper Bright Enters. V. Raimondo* on June 28, 2024, after DH Plaintiffs filed their moving brief on February 1, 2024 but before Defendant and Defendant-Intervenor filed their response briefs on July 2, 2024 and August 19, 2024. S*ee Loper Bright Enters. V. Raimondo*, 144 S. Ct. 2244 (2024). *Loper* concerned the question as to whether the Court owed deference under *Chevron* to the National Marine Fisheries Service's interpretation of its authority to require owners of regulated vessels to pay for at-sea monitors. *Loper*, 144 S. Ct. 2244, 2256. The National Marine Fisheries Service is a U.S. Federal agency within the U.S. Department of Commerce, and according to the *Chevron* doctrine, courts were required to defer to "permissible" agency interpretation of the statutes they administer. *Id*. at 2254. *See Chevron, U.S.A., Inc. v. NRDC, Inc*., 467 U.S. 837, 865, 866 (1984). In *Loper*, the Supreme Court overruled *Chevron*, stating.

> *Chevron* is overruled. Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires. Careful attention to the judgment of the Executive Branch may help inform that inquiry. And when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it. But courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous.

*Loper*, 144 S. Ct. 2244, 2273.  The standard of review for this court is therefore to apply all relevant tools in interpreting the U.S. antidumping statute to conclude which interpretation is the best.  *Id*. at 2266 ("It therefore makes no sense to speak of a 'permissible' interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best. In the business of statutory interpretation, if it is not the best, it is not permissible.").

In their response briefs, neither the Defendant nor the Coalition discussed the effect that *Loper* has on this Court's review of Commerce's circumvention determination that is subject to this litigation.  Indeed, without distinguishing *Loper*, Defendant maintains that tremendous deference is owed to Commerce because of its expertise in administering the antidumping law.  Def. Rsp. Br. at 18-19, citing to *Fujitsu Gen. v. United States*, 88 F.3d 1034 (Fed. Cir. 1996).  Further relying of *Fujitsu*, Defendant maintains that "'{t}his deference is both greater than and distinct from that accorded the agency in interpreting the statutes it administers, because it is based on Commerce's technical expertise in identifying, selecting and applying methodologies to implement the dictates set forth in the governing statute, as opposed to interpreting the meaning of the statute itself where ambiguous.'" *Id*.  Nevertheless, the standard set forth in *Fujitsu* is no longer applicable.

Indeed, the agency's "expertise" and the complex and technical subject matter of the statute, its interpretation, and the agency's methodologies in administrating the statute were

exactly the rationale behind *Chevron*, which *Loper* overturned.  For its part, the *Chevron* Court reasoned: "In these cases the Administrator's interpretation represents a reasonable accommodation of manifestly competing interests and is entitled to deference: the regulatory scheme is technical and complex, the agency considered the matter in a detailed and reasoned fashion, and the decision involves reconciling conflicting policies." *Chevron,* 467 U.S. 837, 865. (Footnotes omitted). In contrast, the Supreme Court found in *Loper* that "even when an ambiguity happens to implicate a technical matter, it does not follow that Congress has taken the power to authoritatively interpret the statute from the courts and given it to the agency. Congress expects courts to handle technical statutory questions."  *Loper*, 144 S. Ct. 2244, 2267.

Defendant attempts to also support its argument that the Court must defer to Commerce's discretion in interpreting the circumvention statute by citing from the Senate Finance Committee Report from 1987 on the legislation that was to become the Omnibus Foreign Trade and Competitiveness Act of 1988, Public Law 100-418 (August 23, 1988) ("1988 Circumvention Statute").  Def. Rsp. Br. at 21.  In that report, the Committee states that the circumvention statute grants Commerce "substantial discretion" in interpreting the terms of the statute and invoking the measures, and, as Defendant points out "the Committee expects the Commerce Department to use this authority to the fullest extent possible to combat diversion and circumvention of the antidumping and countervailing duty laws." Def. Rsp. Br. at 21; Omnibus Trade Act of 1987, Report of the Senate Finance Committee, S. Rep. No. 100-71 (June 12, 2087) at 100. Nevertheless, Congress did not grant express authority for Commerce to interpret the circumvention statute.  Defendant's argument can stand only under the now debunked *Chevron* standard of review.

Under *Loper*, the "intention" of a Senate committee is not enough to confer lawmaking authority on Commerce.  The *Loper* Court requires that "a particular statute" delegate the authority.  *Loper*, 144 S. Ct. 2244, 2273.  The circumvention statute does not delegate such authority, neither in its 1988 rendering, nor in its current version.  The 1988 Circumvention Statute allowed Commerce discretion to apply the statute if the criteria were met (subsections (A)-(C)) and (D) if Commerce determines that action is appropriate.  Public Law 100-418 at 102 STAT 1193.  The current circumvention statute provides that Commerce must also determine whether action is appropriate, but only if the criteria in (A) – (D) are given.  19 U.S.C. § 1677j(b)(1)(E). Otherwise, Commerce's statutory interpretations in the circumvention law are not binding, and the Court owes no deference to Commerce's interpretations.

## II.    Statutory Interpretation of "Completion or Assembly"

Applying *Loper*, the Court is not bound by Commerce's statutory interpretation of "completion of assembly."

Since this issue concerns statutory interpretation, we start with the meaning of the words "Completion" and "Assembly" and whether Commerce must affirmatively find that the production of plywood in Vietnam is mere completion or assembly before its analysis of the significance of the operations in Vietnam.  *See* Consolidated Plaintiffs American Woodmark Corporation, et al. Rule 56.2 Memorandum in Support of Motion for Judgment Upon the Agency Record (February 1, 2024), ECF No. 31 at 28-39 ("DH Plaintiffs' 56.2 Br.").  In its moving brief, DH Plaintiffs argued that according to standards of statutory interpretation, the circumvention statute addresses the assembly and completion in a third country of inputs from a country under an antidumping or countervailing duty order for the finished product.  Applying the plain

meaning of the words "assembly" and "completion," plywood production in Vietnam is far more than an assembly or completion of veneers from China. DH Plaintiffs' 56.2 Br. at 28-29. "When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning." *Smith v. United States*, 508 U.S. 223, 228, 113 S. Ct. 2050, 2054 (1993).

Further, the structure of the statute requires that Commerce first determine whether the manufacture of plywood in Vietnam is mere completion or assembly before progressing to the next step of determining whether the processing is minor and insignificant. DH Plaintiffs' 56.2 Br. at 18-19. Legislative materials also show that the statute addresses processing operations similar to screwdriver operations. Again, the manufacture of plywood in Vietnam is far more extensive than merely screwing finished components together. DH Plaintiffs' 56.2 Br. at 29-30.

Defendant does not confront the argument that Commerce should have first determined whether plywood manufacturing in Vietnam was merely an assembly or completion of veneer. Def. Rsp. Br. at 30-32. The Coalition argues for its part that there is no difference between the terms "assembly" and "completion" on the one hand and "production" and "manufacturing" on the other hand. The Coalition relies on the Court's decisions in *HLDS(B) Steel* and *Macao Com. &Indus. Spring Mattress Mfr.*, which claimed that the statute equates completion or assembly with production processes, pointing to 19 U.S.C. 1677j(b)(2)(C) (Commerce must take into account "the nature of the production process in the foreign country"). *See HLDS B Steel SDN Bhd. v. United States Welded Tube USA, Inc*., No. 21-00638, 2024 Ct. Intl. Trade LEXIS 6, at *9 (Ct. Int'l Trade Jan. 23, 2024) *citing to Macao Com. & Indus. Spring Mattress Mfr. v. United States*, 437 F. Supp. 3d 1324, 1329, (Ct. Int'l Trade 2020). This position, however, disregards the "surplusage canon" that assumes that the words Congress uses convey meaning. This canon

5

compels courts to give each word and clause of a statute operative effect.  In its decision in

*Bailey v. United States*, the Supreme Court stated:

> We consider not only the bare meaning of the word but also its placement and
> purpose in the statutory scheme. "'The meaning of statutory language, plain or not,
> depends on context.'" *Brown v. Gardner*, 513 U.S. 115, 118, 130 L. Ed. 2d 462,
> 115 S. Ct. 552 (1994) (citing *King v. St. Vincent's Hospital*, 502 U.S. 215, 221,
> 116 L. Ed. 2d 578, 112 S. Ct. 570 (1991)). Looking past the word "use" itself, we
> read § 924(c)(1) with the assumption that Congress intended each of its terms to
> have meaning. "Judges should hesitate . . . to treat [as surplusage] statutory terms
> in any setting, . . . ..

 *Bailey v. United States*, 516 U.S. 137, 144-45 (1995).

Regarding the placement in the statutory scheme, "assembly" and "completion" are found

in the descriptive title of subsection (b) of 19 U.S.C. § 1677j ("Merchandise completed or

assembled in other foreign countries").  In addition, only "assembly" and "completion" are used

to describe the activity that the statute is regulating in the mandatory factors[1] listed in paragraph

(1)(A)-(E).  In contrast, within the mandatory factors (A), (B) & (D), "produced" describes the

activity in the foreign country to which the relevant antidumping duty or countervailing duty

order applies.  19 U.S.C. § 1677j(b)(1).

Notably, the Coalition's citations to the circumvention statute concern the factors listed in

paragraph (2), i.e., the factors Commerce must take into account to further determine whether the

assembly or completion in the inquiry country is "minor or insignificant."  In its minor or

insignificant analysis, Commerce may very well find that the investigated foreign facilities and

operations extend beyond mere assembly or completion, and, indeed, would be best

characterized by the term "production."  SAA at 4217 ("Because Commerce will find

---

[1] The Statement of Administrative Action clarifies that the factors listed in 19 U.S.C. §§ 1677j(b)(1)(A)-
(E) are "mandatory" factors.  SAA, U.S.C.C.A.N. 4040, 4216  .

circumvention only where assembly or completion operations in the United States or in third countries are minor, the proposed amendments will not deter legitimate investment, characterized by the addition of substantial value."). Nevertheless, regardless of whether assembly and completion are wholly distinct in meaning from "production" or "manufacturing" or whether assembly and completion are sub-categories or types of production processes, the statute intentionally used the terms "assembly" and "completion" to describe the subject matter of the circumvention statute. The statute gives these terms a distinct meaning, and the SAA, as Congress's authoritative interpretation of the statute equates assembly and completion with "screwdriver" operations. SAA at 4216, 4217 ("Section 230 of the bill amends existing sections 781(a) and 781(b) of the Act which address the circumvention of antidumping or countervailing duty orders through the establishment of screwdriver assembly operations in the United States or a third country, respectively."). The Coalition claims that the SAA referred to screwdriver operations as only an example of one type of activity regulated by the statute. Coalition Rsp Br. at 19-20. This statement is not supported by the SAA, and the Coalition gives no further examples from the SAA of the type of activity regulated by the statute.

Commerce's first task was therefore to gather primary evidence to determine whether the Vietnamese respondents were engaged in mere assembly or completion operations. Indeed, Commerce visited numerous respondent facilities in Vietnam for on-site verifications and had the opportunity to gather first-hand evidence of the extent of plywood production in Vietnam. *See, e.g.*, Dep't Commerce, Greatwood Verification Report, **PR677, CR564**; Zhongjia Verification Report, **PR679, CR566**; Fulin Wood Verification Report, **PR682, CR567**. Unfortunately, Commerce's verification reports give scanty details on the respondents' production operations and their production facilities, which the verifiers toured. Greatwood Ver.

Rpt. at 4; Zhongjia Ver. Rpt. at 4; Fulin Ver. Rpt. at 5.  Fact-finding is within Commerce's

province, but Commerce failed to provide the details it observed first-hand to support a finding

that plywood production in Vietnam was, in fact, mere assembly or completion within the

meaning of the circumvention statute.  In its Final Issues and Decision Memorandum, Commerce

adds nothing to its preliminary determination, issued before Commerce's on-site verifications,

regarding the sophistication of the plywood operations it visited.  *See* Dep't Commerce, Final

Issues & Decision Memorandum (July 17, 2023) at 44-45 ("Final IDM"), **PR842**.  Having

visited and verified several typical Vietnamese plywood production facilities, Commerce should

have been able to affirm that DH Plaintiffs' descriptions, pictures, sketches, and diagrams of

such facilities were accurate.  Instead, Commerce chose to conclude that  "{s}ketches and

diagrams of certain manufacturing facilities in Vietnam merely provide evidence that those

manufacturing facilities exist.  They do not indicate how, if at all, those facilities and capabilities

are employed under the production scenarios that Commerce is examining in this inquiry."  *Id*. at

45.  Commerce's statement is not credible in light of its on-site verifications.  *See also*

Defendant's reference to Commerce's conclusions, Defendant Rsp. Br. at 31.  The Court can,

however, rely upon the primary evidence filed with the verification exhibits as discussed in DH

Plaintiffs moving brief.  DH Plaintiffs' 56.2 Br. at 34-35, referencing Greatwood Joint Stock

Company Verification Exhibits (Oct. 24, 2022) at Exhibit VE-4, listing 24 different steps in its

plywood production, **PR623, CR479-485**; Fulin Wood Import Export Company Limited

Verification Exhibits (Oct. 26, 2022) at Exhibit VE-4, showing 13 steps in its production

process, **PR637, CR496-504**; and Zhongjia Wood Company Limited (Oct. 28, 2022) at Exhibit

VE-4, list 20 different steps in its production process, **PR646, CR531-539**.

       Finally, the Federal Circuit's decision in *Al Ghurair* requires a second look under *Loper*.

*See* Coalition Rsp Br. at 20, citing to *Al Ghurair Iron & Steel LLC v. United States*, 65 F. 4th

1351 (Fed. Cir. 2023).  In *Al Ghurair,* the plaintiff argued that Commerce erred in finding its

production operations insignificant.  *See* Coalition Rsp. Br. at 20.  The Federal Circuit rejected

Al Ghurair's arguments as "improper attempts to relitigate the facts."  *Al Ghurair*, 65 F. 4th at

1360-1361.  Yet, the decision on this issue of the U.S. Court of International Trade as the lower

court was based on *Chevron* deference to Commerce's methodologies in reaching a conclusion

that Al Ghurair's production operations were "insignificant" and thereby establishing the so-

called "facts."  The Lower Court stated:

> Based on the absence of a designated methodology, Commerce has the discretion
> to decide on its own method of analysis. *See Timken Co. v. United States*, 38
> CIT    ,    n.7, 968 F. Supp. 2d 1279, 1286 n.7 (2014), *aff'd*, 589 F. App'x 995
> (Fed. Cir. 2015) (when a statute "places no other limits on the methodologies that
> Commerce may employ . . ., [it] leav[es] Commerce discretion as to the choice of
> methodologies"). The statute does not provide for a specific minimum or
> maximum level of investment to qualify as minor or insignificant, so Commerce
> has the discretion to adapt to different factual circumstances to address
> circumvention.

*Al Ghurair Iron & Steel LLC v. United States*, 536 F. Supp. 3d 1357, 1368 (Ct. Int'l Trade 2021).

Significantly, the facts as to Al Ghurair's production processes and facilities that the Coalition

describes in its response brief were not disputed, neither before Commerce, this court, nor the

Federal Circuit.  *See* Coalition Rsp. Br. at 20; *Al Ghurair*, 536 F. Supp. 1366 (Ct. Int'l Trade); *Al

Ghurair*, 65 F. 4th at 1355 (Fed. Cir.).  The dispute in *Al Ghurair* concerned the methodology that

Commerce employed to come to its conclusion that Al Ghurair's production of the inquiry

merchandise was minor and insignificant.  As discussed below, under *Loper*, this question is for

the Court to decide de novo.  The Federal Court's *Al Ghurair* decision cannot stand under *Loper*.

**III.    Statutory Interpretation of "Minor and Insignificant"**

    **A.    Commerce Eschewed its Fact-Finding Obligation**

The circumvention statute provides certain factors Commerce must consider in determining whether the respondents' assembly or completion in the inquiry country is minor or insignificant.  19 U.S.C. § 1677j(b)(2).  Commerce's essential task is to collect the facts on the respondents' level of investment, nature of the production, production processes, and the value of the processing in the foreign country and the value of the finished merchandise imported into the United States.  *Id*.  Commerce then employs certain methodologies in interpreting the statute to determine what is "minor or insignificant."  As such, Commerce's discretion in selecting a methodology no longer enjoys *Chevron* deference under *Loper*.  The standard for the Court in assessing Commerce's methodology and statutory interpretation in this case is whether it was the "best' methodology; "if not the best, it is not permissible."  *Loper*, 144 S. Ct. at 2266.

First, as DH Plaintiffs pointed out it their moving brief, Commerce did not investigate any of the participating respondents as to whether they fulfilled the statutory circumvention criteria.  *See* DH Plaintiffs' 56.2 Br. at 20-27.  Defendant provides no argument that Commerce collected the facts from the respondents that could support a finding that their assembly or completion operations were minor and insignificant.  Def. Rsp. Br. at 22-24.  As Defendant notes, Commerce's collection of information focused on whether the core veneers used in respondents' plywood production were of Chinese origin.  Def. Rsp. Br. at 23.  And although the fact-finding lies in Commerce's hand, Commerce's facts must at the end of the day pass the substantial evidence test.  *See also* Def. Rsp. Br. at 22, referring to the deference generally accorded to Commerce in its fact-finding capacity.

The Coalition also acknowledges that Commerce did not seek to gather facts on the extent of respondents' plywood operations, implying that there is "no legal requirement that Commerce expressly lay out the statutory requirements in requesting information from the parties." Coalition Rsp. Br. at 12. The Coalition also evidently believes that Commerce has no obligation to collect company-specific information or make company-specific determinations on whether further manufacturing in Vietnam is minor and insignificant. *Id.* For the DH Plaintiffs, the above admissions from Defendant and the Coalition confirm that Commerce made no findings as to whether their plywood production operations are minor or insignificant, and no substantial record evidence supports an affirmative finding of circumvention as to the DH Plaintiffs.

As DH Plaintiffs stated in their moving brief, one of the secondary sources Commerce used for its circumvention analysis was documentation compiled in Commerce's Finewood scope inquiry. DH Plaintiffs' 56.2 Br. at 24-25; *see also* Prelim Decision Memo at 18-26, **PR409**, and Cost Production Memo, **PR411, CR413**. Both Defendant and the Coalition defend Commerce's decision to use this secondary material for its circumvention determination in this instant case. Def. Rsp. Br. at 24-26; Coalition Rsp. Br. at 14-16. Incongruous, however, are Defendant's critiques of DH Plaintiffs' reliance on documents from the Finewood scope inquiry and other legal authority based on scope determinations. For instance, Defendant criticized DH Plaintiffs for reliance on *Saha Thai Steel Pipe Pub. Co. v. United States*, 547 F. Supp. 3d 1278, 1290 (Ct. Int'l Trade 2021) because that case concerned a scope ruling, and "the considerations in scope proceedings are different than those in circumvention inquiries. Thus, the statements in *Saha Thai* regarding material injury are inapposite to the Court's analysis of the circumvention determination below." Def. Rsp. Br. at 24-25. The Coalition also complained of DH Plaintiffs'

reliance on *Peer Bearing Company-Changshan v. United States*, 986 F. Supp. 2d 1389 because that case concerned a scope issue that arose during an administrative review, and "Commerce did not conduct circumvention determination in that proceeding." Coalition Rsp Br. at 19 n.5. Commerce also did not conduct a circumvention analysis in *Finewood*. Dh Plaintiffs' 56.2 Br. at 8-9, 12-13.

These criticisms of DH Plaintiffs' legal authority are without merit, considering Commerce's reliance on the Finewood scope case in its affirmative finding of circumvention, specifically in its cost of production analysis. *See* Dep't Commerce, Production Costs Analysis and Data for the Preliminary Determination (July 22, 2022) **PR411, CR413**; Preliminary Decision Memorandum at 19, **PR409**. Commerce's evidence supporting the criteria of "minor and insignificant " concerns only the factor of "whether the value of the processing performed in the foreign country represents a small proportion of the value of the merchandise imported into the United States." 19 U.S.C. § 1677j(b)(2)(E). Although DH Plaintiffs disagree with Commerce's analysis and conclusions (DH Plaintiffs' 56.2 Br. at 28-36), the point here is that Commerce failed to provide any probative evidence to support a finding that investment, research and development, production processes, and production facilities in Vietnam are minor and insignificant. 19 U.S.C. § 1677j(b)(2)(A)-(D). DH Plaintiffs' 56.2 Br. at 24-27. Even bearing in mind the legal principles that the agency is the fact-finder in administrative cases,[2] and

---

[2] *See Garland v. Ming Dai*, 593 U.S. 357, 366, 141 S. Ct. 1669, 1677 (2021) (if a reasonable factfinder could find the evidence sufficient, a reviewing court may not overturn the agency's factual determination.).

the court will not reweigh the evidence,[3] Commerce's determinations must be based on actual evidence. A statutory interpretation or particular methodology does not establish a "fact." As this Court has summarized: "[t]heory will not suffice. The Court of Appeals has underscored this principle, explaining that '[i]t is well established that speculation does not constitute 'substantial evidence.'' *Novosteel SA v. United States*, 284 F.3d 1261, 1276 (Fed. Cir. 2002). Furthermore, proffered evidence must be reliable. "Mere uncorroborated hearsay or rumor does not constitute substantial evidence." *Consolidated Edison Corp. v. NLRB*, 305 U.S. 197, 230 (1938). Finally, the trade courts have consistently found that the probative value of primary sources of evidence as opposed to secondary sources is subject to judicial review. S*ee* DH Plaintiffs' 56.2 Br. at 24-27 & 31-36.

### B.    Commerce's Methodology Is Not the Best Methodology

The trade courts have in the past afforded *Chevron* deference to Commerce's choice of methodologies in implementing the antidumping statute. For example, in *Venus Wire*, the Court found:

> {t}he two-step framework provided in ***Chevron***, *U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-45, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984), guides judicial review of Commerce's interpretation and implementation of the antidumping and countervailing duty statutes. *See Apex Frozen Foods Private Ltd. v. United States*, 862 F.3d 1337, 1344 (Fed. Cir. 2017); *Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372, 1379-82 (Fed. Cir. 2001) (affording ***Chevron*** deference to **agency methodology** in furtherance of its statutory interpretations).

*Venus Wire Indus. PVT. v. United States*, 424 F. Supp. 3d 1369, 1374 (Ct. Int'l Trade 2019).

---

[3] *See Trent Tube Div., Crucible Materials Corp. v. Avesta Sandvik Tube AB*, 975 F.2d 807, 815 (Fed. Cir. 1992) ("It is not for this court on appeal to re-weigh the evidence or to reconsider questions of fact anew.").

With the Supreme Court's decision in *Loper*, however, the Court owes no deference to Commerce but must decide whether the methodology Commerce applied in determining whether the plywood production in Vietnam is typically minor and insignificant is the "best" methodology.  *See Loper*, 144 S. Ct. at 2267 ("In the business of statutory interpretation, if it is not the best, it is not permissible.").

     **1. Commerce's Comparison of Vietnamese Plywood Production to Chinese Integrated Operations**

For the reasons stated in DH Plaintiffs' moving brief, Commerce's methodology to compare Vietnamese plywood production operations with an integrated operation that includes the forestry and logging industries is not only <u>not</u> the "best" methodology, it is unreasonable. DH Plaintiffs' 56.2 Br. at 36-39.  Commerce does not even provide evidence that such a theoretical integrated operation exists, noting only that one Chinese respondent in the initial plywood investigation had a shareholder that holds an interest in a business selling logs.  Final IDM at 38, **PR842** citing to *Certain Hardwood Plywood Products from the People's Republic of China: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Affirmative Determination of Critical Circumstances, in Part*, 82 Fed. Reg. 28,629 (June 23, 2017), and accompanying Preliminary Decision Memorandum at 25. The preliminary decision memorandum from the investigation in no way indicates that the respondent itself operated an integrated plywood operation that included forestry and logging.  Commerce's observation does not justify the conclusion that "the record of this inquiry indicates that some of the largest producers in China are fully integrated and managed forest resources and produced logs."  Final IDM at 40.  To the contrary, neither the cited interest of a shareholder nor any other fact or evidence on the record of this case allows a conclusion that <u>any</u> plywood manufacturer in China

14

or Vietnam is an integrated operation that includes forestry and logging.

In its response brief, Defendant repeats Commerce's rationale and relies on the Coalition's claims that plywood production begins with harvesting logs.  *See* Def. Rsp. Br. at 31-32; *but see*, DH Plaintiffs' 56.2 Br. at 25-27 (showing that the Coalitions' claims in its scope ruling request are secondary sources with no corroborative evidence and of little or no probative value).  Defendant is also mistaken in its assertion that DH Plaintiffs point to no contrary record evidence, and therefore, DH Plaintiffs arguments are mere disagreements and Commerce must prevail with its methodology.  In fact, DH Plaintiffs rely on numerous record sources to show that the plywood industry does not include forestry and logging.  This documentation includes a primary source, namely the final report of the International Trade Commission in describing the plywood manufacturing process (DH Plaintiffs' 56.2 Br. at 31-32).  Additional record sources include documentation form the Coalition's initial petition (*Id*. at 33), questionnaire responses from Vietnamese plywood producers submitted in the instant circumvention proceeding, (*Id*. at 34), and Commerce's on-site verifications (*Id*. at 34-36).

In its argument on Commerce's comparison methodology, the Coalition states that "the relevant inquiry for Commerce is the relative levels of sophistication of production in China versus Vietnam."  Coalition Rsp Br. at 21, citing to Final IDM at 35-36.  The Coalition's understanding of Commerce's intent is, however, not quite correct.  To be sure, Commerce's statement in the indicated passage is not clear[4] but DH Plaintiffs understand Commerce to mean

---

[4] Commerce stated: "In the Preliminary Determination, Commerce did not state that the plywood production process in China is generally high tech or sophisticated. Rather, Commerce determined that Chinese production was sophisticated *in comparison to Vietnam production of inquiry merchandise*.  The sophistication level of production of hardwood plywood in China, in and of itself, is irrelevant to our analysis. Instead, our analysis focused on a comparison between production operations in China and

that it is comparing a Chinese plywood producer that maintains forests and harvests logs, peels veneer from the logs and uses its own peeled veneer in its production of plywood to a Vietnamese producer of plywood that purchases veneer from an outside source for its plywood production.  Commerce's methodology is hypothetical only and not the "best."  In fact, some plywood producers in both China and Vietnam, and globally, purchase logs and peel their own veneer for plywood production.  Others, in China and Vietnam and globally, produce plywood from purchased core veneer.  But no record evidence supports the supposition that any "integrated" producer, *anywhere*, also maintains forests or harvests logs.  That addition skews Commerce's comparison methodology and analysis for the "minor and insignificant" factor.  *See* Coalition Rsp. Br. at 22.  A Vietnamese manufacturer producing plywood from the direct raw materials performs "all" the steps that a Chinese producer performs, and "all" cannot be minor or insignificant assembly.

Indeed, Commerce has recognized that the best method to assess the significance of investment in the third country for downstream processing is to compare it to the investment in the same third country for a production facility that conducts the entire production process.  *See Bell Supply Co., LLC v. United States*, 348 F. Supp. 3d 1281, 1295 (Ct. Int'l Trade 2018) ("Here, as Commerce noted, the ideal analytical approach would be to compare the level of investment for the processing of OCTG *in Indonesia* to the investment required for the processing company to completely produce OCTG *in Indonesia*.") {emphasis added}.  This same principle applies to all of the "minor" or "insignificant" factors listed in 19 U.S.C. § 1677j(b)(2).

---

Vietnam, and we concluded that the Chinese production was sophisticated when compared to production in Vietnam."  Final IDM at 35-36

DH Plaintiffs have shown that in both China and Vietnam, the mere process of peeling

veneers is unsophisticated and requires minimal machinery to rotary cut logs into veneer. *See*

DH Plaintiffs' 56.2 Br. at 37-39. *Bell Supply* concerned a scope inquiry, and Commerce's

statement was made as a part of its "substantial transformation" analysis. However, insofar as

the Court considers the record documents from the *Finewood* scope inquiry to be in any way

probative for this case, it must also consider the evidence from that record showing the

processing steps for cutting, debarking, and slicing veneer in China was minor and

unsophisticated. *See* DH Plaintiffs' Moving Br. at 24; *see also*, Dep't Commerce EAPA Scope

Document No. 15, Finewood Supplemental Questionnaire Response, Part IV (April 20, 2021),

Exhibits SQ1-28 through SQ1-42 & SQ1-49, **PR398, CR400**.

### 2. Commerce's Application of Surrogate Values.

Another methodology that skews the circumvention determination in this case, which

involves two non-market economies, is Commerce's use of surrogate values in its added-value

analysis. *See* Cost of Production Memorandum at 3, **PR411, CR413 &CR414**. *Loper* requires

the court to take a fresh look at this methodology as applied to circumvention inquiries and

determine whether it is the most accurate and best methodology to determine the value added to

the merchandise produced in the foreign country. This is an important issue in circumvention

cases because, as the SAA stated: "{b}ecause Commerce will find circumvention only where

assembly or completion operations in the United States or in third countries are minor, the

proposed amendments will not deter legitimate investment, *characterized by the addition of*

*substantial value.* SAA at 4217.

Commerce uses surrogate values to calculate dumping margins in antidumping

nonmarket economy cases.  19 U.S.C. § 1677b(c)(1) (calculation of normal value for nonmarket economy countries).  As Defendant and the Coalition point out, the nature of Commerce's anticircumvention inquiry is different from Commerce's calculation of dumping.  Namely, a circumvention inquiry "is not geared toward calculating individual dumping margins for respondents, but rather finding that certain merchandise is subject to the order by way of circumvention. . . . Commerce determines dumping margins for respondents in antidumping and countervailing duty investigations and administrative reviews. By contrast, in affirmative circumvention determinations, Commerce does not calculate dumping margins . . .."  Def. Rsp. Br. at 26-27; *see also* Coalition Rsp. Br. at 13.

As seen in Commerce's cost of production memorandum, Commerce's use of surrogate values in ascertaining the value added by the plywood production in Vietnam leads to absurd results.  *See* Cost of Production Memo at 3, finding that the core veneer represents 109% of the value of the finished product.  The most appropriate and best methodology in circumvention cases is to use the producer's own production costs, even for inquiries involving nonmarket economy countries.

Furthermore, DH Plaintiffs have not waived this argument regarding Commerce's use of surrogate values in its value-added calculations even though this issue was not raised in the underlying administrative proceeding or in DH Plaintiffs' complaint or moving brief.  Based on Commerce's consistent practice and the trade courts' confirmation of Commerce's application of its surrogate value methodology in circumvention cases, an argument challenging Commerce's methodology would have been futile.  *See, e.g., Al Ghurair Iron & Steel LLC v. United States*, 536 F. Supp. 3d 1357, 1378 (Ct. Int'l Trade 2021) ("this Court has sustained Commerce's use of

surrogate values in previous circumvention inquiries involving merchandise assembled in an ME country, because the decision to do so reflects Commerce's reasonable construction of the statute.") *and U.K. Carbon & Graphite Co. v. United States*, " 931 F. Supp. 2d 1322, 1336 (2013) ("The Court defers to Commerce's decision to use a surrogate value methodology in determining the value of inputs from a NME country in an anticircumvention inquiry, because it is a reasonable construction of the statute.").

The new authority in *Loper*, however, requires that the court allow this argument in this case, and consider whether it is the "best" methodology.  As the Federal Appeals Court held in *Polaris*: "

> Precedent holds that a party does not waive an argument that arises from a significant change in law during the pendency of an appeal.  *See, e.g., Hormel v. Helvering*, 312 U.S. 552, 558-59, 61 S. Ct. 719, 85 L. Ed. 1037 (1941) (holding an exception to the waiver rule exists in "those [cases] in which there have been judicial interpretations of existing law after decision below and pending appeal—interpretations which if applied might have materially altered the result");

*Polaris Indus. v. Arctic Cat, Inc.*, 724 F. App'x 948, 949 (Fed. Cir. 2018).

Commerce's surrogate value approach is not the best methodology for calculating added value for purposes of determining circumvention.  Surrogate values are used to calculate factors of production to determine the normal value in non-market economy cases, which in turn are compared to export prices or constructed exported prices to ascertain the fair price and margin of dumping of imports into the United States.  19 U.S.C. §§ 1677b(a) & 1677b(c)(B).  In contrast, the "value added" calculation in this case concerns the Vietnamese producer's *actual* cost of veneer from China and the additional value of the producer's *actual* costs of production performed in Vietnam.  This has nothing to do with the "fair" price of the finished merchandise sold to the United States.  Commerce's application of its surrogate values skews the value-added

calculation and is not the best methodology for ascertaining the value added by the production operations in Vietnam.  Moreover, Commerce failed to add to the Vietnam calculation of value the selling, general, and administrative (SG&A) and overhead expenses, whether costed at actual amounts or with a surrogate value; after all, the materials were converted in Vietnam.  deKieffer & Horgan, General Issues Case Brief (January 9, 2023) at 51-54, **PR760, CR599**.

## IV.    Commerce's Circumvention Inquiry was Procedurally Flawed.

DH Plaintiffs discuss above the fact that Commerce's circumvention inquiry was procedurally flawed because Commerce did not analyze the circumvention factors based on primary information provided by the participating respondents.  *See also* DH Plaintiffs' 56.2 Br. at 19-27.  Defendant and Defendant-Intervenor do not deny DH Plaintiffs' argument but rather claim that Commerce is not required to investigate whether the respondents fulfill the statutory circumvention criteria.  Def. Rsp. Br. at 22; Coalition Rsp. Br. at 12.  Rather, Defendant and the Coalition claim that Commerce's questionnaires covered comprehensively and sufficiently the important question of the country of origin of core veneers used in the production of plywood in Vietnam.  Def. Rsp. Br. at 22-23; Coalition Rsp. Br. at 11-12.  In circumvention cases, however, the country of origin of an input is irrelevant if the statutory circumvention criteria are not given.

### A.    Insufficiency of Commerce's Questionnaires to Determine Circumvention

As Defendant and the Coalition acknowledge, Commerce failed to collect data from respondents to analyze the relevant circumvention criteria.  Def. Rsp. Br. at 22-24; Coalition Rsp. Br. 11-12.  In addition, Commerce's questionnaires in this instant case differ vastly from Commerce's normal requests for information in circumvention cases.  *See* Importers Alliance, Response to Q&V Questionnaire Rebuttal Comments (Oct. 28, 2020) at Exhibit 1, **PR142-144,**

**CR152-154** ("Importers Alliance Oct. 28, 2020 Cmts").  This exhibit includes two sample questionnaires that Commerce issued to respondents in circumvention cases.  One of the sample questionnaires is 19 pages long, and the other, 16 pages.  The questionnaires request detailed information on the production process and facilities, level of investment, level of research and development, and value of processing.  DH Plaintiffs expected that Commerce would eventually issue such requests for information.  To say the least, Commerce's path in this inquiry leading up to the preliminary determination two years after initiation was anything but reasonably discernable.  As the Importers Alliance points out, the inclusion of Chinese inputs in hardwood plywood manufactured in Vietnam does not, by itself, constitute circumvention.  *Id*. at 3. Commerce must also show that the statutory circumvention factors exist.

Defendant claims that parties had ample opportunity in these two years to raise their concerns regarding the insufficiency of Commerce's questionnaires but no party availed itself of this opportunity.  Def. Rsp Br. at 24.  This is not true.  In their October 29, 2020 comments, the Importers Alliance raised its justified concern that Commerce would adopt the Coalition's suggestion that Commerce should rely on the Coalition's allegations alone and reject the record evidence Commerce itself had gathered.  Importers Alliance Oct. 28, 2020 Cmts at 6. Unacceptably, even allowing itself a further one and three-quarters year after the Importers Alliance's submission, Commerce still followed the Coalition's advice and based its circumvention analysis in the preliminary determination primarily on the Coalition's claims rather than relevant record evidence Commerce originating from the instant circumvention inquiry.  *See* DH Plaintiffs Br at 19-27, 33-36.  For two years between Commerce's initiation of this circumvention inquiry on June 9, 2020 and Commerce's preliminary determination on July 22, 2022, Commerce never requested from respondents detailed information on their production

process and facilities, level of investment, level of research and development, and value of processing.  *See* 19 U.S.C. §§ 1677j(b)(1) & (2).

      **B.**    **Commerce's Delay in Completing its Circumvention Inquiry**

The circumvention statute provides that Commerce should normally complete its inquiry within 300 days.  19 U.S.C. § 1677j(f).  In this case, however, Commerce took almost four times as long, specifically, 1128 days (three years, one month, three days), to complete its circumvention  inquiry.  *See* Initiation Notice dated June 17, 2020, **PR4,** and Final Circumvention Determination dated July 20, 2023, **PR 844**.  Defendant argues that the fault for the long delay lies with respondents.  *See, e.g*., Def. Rsp Br. at 45, citing to IDM at 58, 59, blaming respondents' failure to cooperate and the "sheer volume and inaccuracy" of respondents' submissions for the length of time that transpired between the last questionnaire responses in August 2021 and Commerce' preliminary determination in July 2022.  In reality, however, Commerce's delay began immediately upon initiation of the circumvention inquiry, when Commerce decided to align the deadlines of its EAPA scope inquiry with this circumvention inquiry.  Initiation Notice, 85 Fed. Reg. at 36,533, **PR4**; *see also Certain Hardwood Plywood from the People's Republic of China: Notice of Covered Merchandise Referral and Initiation of Scope Inquiry,* 85 FR 3024 (January 17, 2020) (EAPA Scope Inquiry Initiation).  Unfortunately, Commerce needed two years to devise a rationalization for its scope finding, during which time, Commerce abandoned any pretense at moving this circumvention inquiry forward.  During this "wait and see" period, DH Plaintiffs had no information from Commerce nor any inkling of Commerce's intentions of how it intended to continue with its circumvention inquiry.

Both Defendant and the Coalition claim that DH Plaintiffs and other respondents should have voluntarily offered additional information if they believed it necessary to avoid an affirmative circumvention determination or a determination based on adverse facts available. Def. Rsp. Br. at 24, 41; Coalition Rsp. B. at 12. Defendant's and the Coalition's stance is not in accordance with prevailing law. *See, e.g., Olympic Adhesives, Inc. v. United States*, 899 F.2d 1565, 1574 (Fed. Cir. 1990) ("a submitter need only provide complete answers to the questions presented in an information request."); *see also Allegheny Ludlum Corp. v. United States*, 287 F.3d 1365, 1373 (Fed. Cir. 2002) (finding that the U.S. International Trade Commission may not shirk its duty to seek accessible information by asserting a failure of the parties to request that the Commission gather specific information.") *and Bomont Indus. v. United States*, 13 Ct. Int'l Trade 546, 552, 718 F. Supp. 958, 964 (1989) ("the provisions of the Trade Agreements Act of 1979 clearly express congressional intent that the administrative agency will obtain information through its own investigative efforts.").

Accordingly, Defendant has no basis to thrust the blame upon DH Plaintiffs and other respondents for Commerce's deficient conduct of this circumvention inquiry, including Commerce's failure to collect relevant data for an affirmative finding of circumvention and unacceptable delay in making its preliminary and final determinations.

## V.    Conclusion

In light of the foregoing, Commerce's Final Determination is not supported by substantial evidence or in accordance with the law. Further, Commerce's interpretations of the circumvention law are not the best statutory interpretations. *Loper*, 144 S. Ct. 2244, 2266. In other respects, such as rejection of primary sourced evidence and use of secondary sources to

support its speculative conclusions, Commerce's Final Determination was arbitrary and capricious.  DH Plaintiffs respectfully request that the Court nullify Commerce's affirmative findings, as they resulted from severely faulty fact-finding and extremely unreasonable procedures.  If not, the Court should remand this case with instructions to Commerce that it must reconsider its circumvention finding in this case because the manufacture of plywood in Vietnam cannot be considered mere assembly or completion of veneers.

Respectfully submitted,

 /s/ Gregory S. Menegaz
Gregory S. Menegaz
Alexandra H. Salzman
Vivien J. Wang
**DEKIEFFER & HORGAN, PLLC**
1156 Fifteenth St., N.W.
Suite 1101
Washington D.C.  20005
Tel: (202) 783-6900
Email: gmenegaz@dhlaw.com

Date: September 30, 2024        *Counsel to DH Consolidated Plaintiffs*

## <u>WORD COUNT CERTIFICATE OF COMPLIANCE</u>

This brief has been prepared utilizing Microsoft Word 2016 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth in the Chambers Procedures.  Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains **6,967** words.  In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

Gregory S. Menegaz
**DEKIEFFER & HORGAN, PLLC**
1156 Fifteenth St., N.W.
Suite 1101
Washington D.C.  20005
*Counsel to DH Consolidated Plaintiffs*

1