# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SHELTER FOREST INTERNATIONAL ACQUISITION, INC., <br><br> Plaintiff, <br><br> GREATRIVER WOOD CO., LTD (a.k.a. CONG TY TNHH GREATRIVER WOOD and GREATRIVER WOOD COMPANY LIMITED, ET. AL. <br><br> Consolidated Plaintiffs, <br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD, <br><br> Defendant-Intervenor. | Before: Hon. Mark A. Barnett, Chief Judge <br><br> Court No. 23-00144 |

**GREATRIVER WOOD CO., LTD's REPLY IN SUPPORT OF RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

                                                          Jeffrey S. Neeley, Esq.
                                                          Stephen Brophy, Esq.
                                                          Jamie Shookman, Esq.

                                                          HUSCH BLACKWELL, LLP
                                                          1801 Pennsylvania Avenue
                                                          NW Suite 1000
                                                          NW Washington, DC  20006
                                                          Tel. (202) 378-2357

                                                          *Counsel for Greatriver Wood Co., Ltd.*

Dated:  October 15, 2024

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT ......................................................................................................... 1

    A. Greatriver Joins In, and Incorporates by Reference, the Arguments Made in the Tranche 1 Reply Briefs Filed by Other Plaintiffs and Consolidated Plaintiffs. ............................................................................................................1

    B. Commerce's Questionnaires Were Not Adequate ......................................1

    C. Commerce's Failure to Select Mandatories was Unreasonable...............3

    D. Commerce's Refusal to Accept More Information Was Unreasonable...................4

III. CONCLUSION ..................................................................................................... 7

# TABLE OF AUTHORITIES

## Cases

*Far E. Am., Inc. v. United States*, 654 F. Supp. 3d 1308 (Ct. Int'l Trade 2023) .............................. 5

*Vietnam Finewood Co. v. United States,* 633 F. Supp. 3d 1243 (Ct. Int'l Trade 2023) ................. 5

## Statutes and Regulations

19 U.S.C. § 1677j(a)(D) and (b)(2) ................................................................................................ 3

19 U.S.C. § 1677j(b)(1)(B) ............................................................................................................ 3

19 C.F.R. § 351.301(c)(1)(v) ......................................................................................................... 6

I.      INTRODUCTION

On behalf of Greatriver Wood Co., Ltd., a.k.a. Cong Ty TNHH ("Greatriver"), we respectfully submit the following reply brief in further support of Greatriver's Rule 56.2 Motion for Judgment on the Agency Record, which addresses the U.S. Department of Commerce's ("Commerce") procedures in conducting the scope and circumvention inquiries at issue in this case. *See* ECF No. 33 (the "Tranche 1 Brief").

II.     ARGUMENT

A.      **Greatriver Joins In, and Incorporates by Reference, the Arguments Made in the Tranche 1 Reply Briefs Filed by Other Plaintiffs and Consolidated Plaintiffs.**

Greatriver hereby joins in and incorporates by reference the arguments made by DH Consolidated Plaintiffs[1] in their reply brief filed on September 30, 2024. *See* ECF No. 71. Greatriver also joins in, and incorporates by reference, the arguments made by other Plaintiffs and Consolidated Plaintiffs in their reply briefs filed on October 15, 2024. Greatriver offers the arguments below to supplement those submissions.

B.      **Commerce's Questionnaires Were Not Adequate**

Defendant United States emphasizes the number of questionnaire responses Commerce received, claims that the questionnaires issued by Commerce were adequate, and claims that simply because "…Commerce asked for information three separate times [this] demonstrates that it attempted to collect as much, and as accurate, information as possible to make a reasoned

---

[1] American Woodmark Corporation, Del Valle Kahman & Company, Ike Trading Company Limited, Pittsburgh Forest Products, Panoply Wood Products USA Inc., American Pacific Plywood, Inc., Eagle Industries Company Limited, Golden Bridge Industries Pte. Ltd., Lechenwood Viet Nam Company Limited, Arrow Forest International Co., Ltd., Her Hui Wood (Vietnam) Co., Vietnam Zhongjia Wood Company Limited, Long LUU Plywood Production Co., Ltd., and TEKCOM Corporation.

determination." Defendant United States Response Brief ("Def. Resp. Br.:) at 41.  The sheer volume of questionnaires issued by Commerce, however, does not prove that its investigation was reasonable.  To the contrary, the number of responses received by Commerce was the result of its own misguided decisions.  Instead of simply requiring a response to the quantity and value questionnaires from the 10 largest exporters, for example, Commerce required a response from 57 companies. **PR 62.**  Commerce cannot legitimately create an unreasonably unwieldly process and then complain that it was overwhelmed by its own process and thus had too much work to issue adequate questionnaires that solicit the information required by statute.

Nor were the questionnaires issued adequate.  This inquiry took two years before Commerce even issued its preliminary determination.  Further, during the course of this inquiry, Commerce issued a mere six pages of questions even when one combines its quantity and value questionnaire and two supplemental quantity and value questionnaires. (**PR 62, PR 154, and PR 257)**.  It is apparent that Commerce did not even attempt to collect the information required by statute to support an affirmative determination of circumvention.

Defendant claims that it "solicited information directly relevant to its analysis of whether companies were producing and/or exporting merchandise that might include Chinese inputs, including information regarding companies' United States sales of Vietnamese plywood with Chinese inputs, imports of Chinese plywood inputs, affiliations with Chinese producers and/or exporters, and whether the core inputs consumed by the respondents were actually of Vietnamese origin." (Def. Resp. Br. at 23).   However, the production scenarios subject to these scope and circumvention inquiries relate to the production of plywood using *Chinese* origin cores.  Commerce points to no record evidence that supports the speculation that the alleged circumvention was even occurring in Vietnam, and whatever discrepancies on which Commerce

claims it based its affirmative determination were not relevant to the issue under investigation, *i.e.* the origin of the core material. As explained in Greatriver's Tranche II brief, there was no material information missing from the record as to the materials used to produce the plywood cores it used, and all of the information on the record confirms that those materials were of Vietnamese origin. Therefore, the only record evidence that relates to the production scenarios at issue clearly supports the conclusion that Greatriver did not circumvent the order.

Moreover, Commerce's questionnaires did not request information from the Vietnamese respondents to determine if their operations constituted mere assembly or completion, as required by the statute. *See* 19 U.S.C. § 1677j(b)(1)(B). Despite its extraordinarily long delays in decision-making, Commerce also did not request information on the Vietnamese respondents' investments, production costs, research and development expenses, the nature of their production processes, the extent of their production facilities, or the value of their processing, which are necessary elements to analyze an allegation of circumvention under the statute. 19 U.S.C. § 1677j(a)(D) and (b)(2). As a result, Commerce did not collect information necessary to make an affirmative determination of circumvention. As argued below, the reasonable way to determine if circumvention had occurred was to select mandatory respondents, and then investigate them. Commerce failed utterly in this task.

      **C.     Commerce's Failure to Select Mandatories was Unreasonable.**

All of the issues with Commerce's determinations could have been resolved through the selection of mandatories. Defendant argues that Commerce was not required to select mandatory respondents and that it did not do so in this case because no respondents reported producing any of the production scenarios at issue. Def. Resp. Br. at 27-28. But Commerce never explained why it was necessary to select a company that engaged in the production scenarios in order to gather the factual information required by the statute. Final IDM at 24, **PR842**. First,

3

Commerce could have selected the largest exporters and mandatories to determine if they had accurately reported that they did not export inquiry merchandise. Second, as discussed above, Commerce could also have requested information from mandatory respondents to assess the statutory factors. Such information was relevant to Commerce's determination even if the mandatories themselves did not export inquiry merchandise. Most importantly, this information was essential to an affirmative determination and was needed even if Commerce was going to use total adverse facts available to determine that the production scenarios at issue were occurring in Vietnam. Instead of collecting such information from mandatory respondents in Vietnam, Commerce unreasonably used secondary and unverified sources to analyze the statutory requirements, including information from Finewood's scope determination that has been overturned by this Court, as well as hypothetical information submitted by Petitioner. *See Vietnam Finewood Co. v. United States,* 633 F. Supp. 3d 1243 (Ct. Int'l Trade 2023); *see also Far E. Am., Inc. v. United States*, 654 F. Supp. 3d 1308 (Ct. Int'l Trade 2023) ("*Finewood Scope Litigation*"); s*ee, also,* Preliminary Decision Memo at 14-16, **PR409**, and Memorandum to File re Production Costs Analysis and Data for the Preliminary Determination (July 22, 2022), **PR411**; **CR413,** Final Issues and Decision Memorandum at 11-14 and n28-38, **PR842.** To forego selecting mandatory respondents to collect the relevant information from Vietnamese producers and instead issue limited questionnaires to more companies than Commerce could thoroughly investigate defies logic and contravenes the law. Moreover, it plainly results in a decision unsupported by substantial evidence on the record.

        D.      **Commerce's Refusal to Accept More Information Was Unreasonable**

After two years, without selecting any mandatory respondents, without collecting information on the statutory factors from any Vietnamese companies, and without notifying Greatriver or any respondents that it had allegedly identified discrepancies in their submissions,

4

Commerce issued an affirmative preliminary determination of circumvention and applied adverse facts available to Greatriver and certain other respondents, thereby excluding them from the certification regime established by Commerce. As a result, Greatriver requested that Commerce reopen the record to accept new factual information, noting that Commerce had made no attempt to resolve the alleged inconsistencies underlying its preliminary determination. **P.R. 430**.

Defendant United States defends Commerce's decision to deny this request and to reject other information submitted for the record because "Commerce had been seeking this information from the parties for over 302 days and had granted multiple extensions of time for parties to respond to the questionnaires and provide factual information". Def. Resp. Br. at 42. Defendant also appears to argue that accepting the information would be too burdensome given the number of parties and amount of information submitted.

First, the number of responses and the burden of reviewing the new factual information resulted from Commerce's own decision not to select mandatory respondents, and to instead send quantity and value questionnaires to 57 companies. These companies should not be punished for Commerce's decision to irrationally choose to issue this massive number of questionnaires. Moreover, these companies submitted new factual information after the preliminary determination because Commerce had failed to request it in the two years since the initiation of the inquiry. This was not information that Commerce had been asking for over 302 days. If they had asked for it, it would have been timely provided. Again, Commerce's misguided decisions cannot be held against respondents who were cooperating by answering Commerce's questions to the best of their ability, as well as attempting to make the

administrative record that Commerce itself had refused to do. Respondents cannot reasonably be required to read Commerce's mind.

In addition, Defendant agrees that the parties were not required to respond to the comments submitted by Petitioner, but notes that they could have done so.  In other words, respondents are not required to respond to Petitioner's comments, but Commerce will hold it against a respondent if they do not, even if Commerce declines to follow-up on any of the issues raised by Petitioner.  This position is absurd on its face and contrary to law.  The law and regulations are clear that Greatriver is not required to respond to allegations made by Petitioner, nor is Petitioner in charge of the investigation. The regulations provide that Greatriver was "permitted" to submit a rebuttal to Petitioner's comments, but this permission is not the same as being required to submit such comments. 19 C.F.R. § 351.301(c)(1)(v).  If Commerce needed the information referenced by Petitioner, it was required to ask for it.   In recognition of this fact, the Petitioner asked Commerce to issue respondents supplemental questionnaires and even provided draft questions for Commerce to ask.  Petitioner's Comments on Q&V Questionnaires at 5-9 (P.R. 135-136, C.R. 150-151).  Thus, the respondents waited for Commerce to actually ask which questions it had rather than guessing at Commerce's concerns and trying to provide a response.

Commerce also initially selected Greatriver for verification and actually issued the company a verification outline, in which it requested that Greatriver prepare certain factual information for verification. *Circumvention Inquiry of the Antidumping and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China: Verification Outline* (October 7, 2022), **PR 571**.  However, Commerce then cancelled the verification at virtually the last minute.  Greatriver then tried to submit the requested factual

information but its submission was rejected. Defendant argues that Commerce mistakenly selected Greatriver for verification. Def. Resp. Br. at 14. Defendant-Intervenor argues that it is not Commerce's standard practice to verify companies where it has applied AFA, and that it was too late to submit new factual information here. Defendant-Intervenor Coalition for Fair Trade in Hardwood Plywood Response to Motion for Judgment on the Agency Record ("Def. Int. Resp. Br.") at 32-33.

Even if this investigation was run in such a chaotic manner that Commerce mistakenly selected Greatriver for verification, the information submitted by Greatriver had been requested specifically by Commerce and should have been accepted. While Commerce may not normally verify companies that receive AFA, it also is not standard practice to select such a company for verification, issue requests for information, and then cancel verification and refuse the information that Commerce itself requested. Denying Greatriver the opportunity to submit this information to create a factual basis for the Commerce decision, after Commerce failed to request such information for over two years and failed to provide Greatriver any notice of the alleged discrepancies underlying the preliminary AFA determination, reiterates the highly unusual approach of Commerce in this case. The theme by Commerce throughout was a dedication to make findings without asking questions or verifying information.

### III.  CONCLUSION

For the reasons set forth above, Commerce's affirmative circumvention determination was not supported by substantial evidence and not in accordance with law. As a result, we respectfully request that the Court hold unlawful Commerce's affirmative finding of circumvention and remand this case for Commerce to revise the Final Determination in accordance with the Court's decision.

Respectfully submitted,

        <u>/s/ Jeffrey S. Neeley</u>
Jeffrey S. Neeley, Esq.
Stephen Brophy, Esq.
Jamie Shookman, Esq.
HUSCH BLACKWELL, LLP
1801 Pennsylvania Avenue NW Suite 1000
Washington, DC 20006
(202) 378-2334
jeffrey.neeley@huschblackwell.com

*Counsel for Greatriver Wood Co., Ltd.*

Dated: October 15, 2024

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the Court's word limitation requirement. The word count for the foregoing brief, as computed by Husch Blackwell's word processing system (Microsoft Word), is 2,044 words.

Dated: October 15, 2024                                          /s/ Jeffrey S. Neeley
                                                                              Jeffrey S. Neeley