# UNITED STATES COURT OF INTERNATIONAL TRADE

Before: The Honorable Mark A. Barnett, Chief Judge

| | |
|---|---|
| SHELTER FOREST INTERNATIONAL ACQUISITION, INC., <br><br> Plaintiff, <br><br> and <br><br> GREATRIVER WOOD CO., LTD., ET AL., <br><br> Consolidated Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD <br><br> Defendant-Intervenor. | **Consol. Court No. 23-00144** |

## PLAINTIFF SHELTER FOREST'S TRANCHE I REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE AGENCY RECORD

Daniel L. Porter
Katherine R. Afzal
Ana M. Amador Gil

**Curtis, Mallet-Prevost, Colt & Mosle LLP**
1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
202-452-7373

*Counsel for Shelter Forest International Acquisition Inc.*

**October 15, 2024**

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................... 1

ARGUMENT ............................................................................................................................ 3

I.   COMMERCE'S REFUSAL TO ACCEPT SHELTER FOREST'S CORE COUNTRY OF ORIGIN DOCUMENTATION SUBMITTED 329 DAYS BEFORE THE FINAL DETERMINATION IS NOT IN ACCORDANCE WITH LAW ........................................................................................................................ 3

    A.   Contrary to Defendant and Defendant-Intervenor's Arguments, Past Judicial Precedent Supports Shelter Forest's Position .................................. 3

    B.   Defendant and Defendant-Intervenor Do Not Address The Effective Three Step Approach For Analyzing Whether Commerce Abused Its Discretion When It Refused To Consider Shelter Forest's Core Country-of-Origin Documentation Submitted 329 Days Before The Final Determination ........ 6

    C.   Commerce's Purported Justification for Rejecting Shelter Forest's NFI Is Not Supported by the Record ....................................................................... 10

CONCLUSION AND PRAYER FOR RELIEF ................................................................. 16

## TABLE OF AUTHORITIES

**Cases**

*Chaparral Steel Co. v. United States*,
   901 F.2d 1097 (Fed. Cir. 1990) ................................................................................ 7

*Essar Steel Ltd. v. United States,*
   678 F.3d 1268 (Fed. Cir. 2012) ............................................................................. 4, 5

*Rhone Poulenc, Inc. v. United States*,
   899 F.2d 1185 (Fed. Cir. 1990) ................................................................................ 7

*Shelter Forest Int'l Acquisition, Inc. v. United States*,
   497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021),
   aff'd, 2022 U.S. App. LEXIS 16491 (Fed. Cir. 2022) ............................................. 5

*Sigma Corp. v. United States*,
   841 F. Supp. 1255 (1993) ...................................................................................... 10

*Timken U.S. Corp. v. United States*,
   434 F.3d 1345 (Fed. Cir. 2006) ................................................................................ 7

*Usinor Sacilor v. United States*,
   872 F. Supp. 1000 (Ct. of Int'l Trade 1994) ............................................................ 7

*Yantai Timken v. United States*,
   521 F. Supp. 2d 1356 (Ct. Int'l Trade 2007) ............................................................ 4

**Statutes**

28 U.S.C. § 1581(c) ........................................................................................................ 3

**Regulations**

19 C.F.R. § 351.102 (b)(21) .......................................................................................... 11

**INTRODUCTION AND SUMMARY OF ARGUMENT**

In its opening brief, Shelter Forest presented detailed arguments as to why's Commerce rejection of Shelter Forest's New Factual Information ("NFI") was an abuse of discretion. Shelter Forest hereby provides its Reply Brief to rebut the arguments set forth by Defendant and Defendant-Intervenors in their respective response briefs.

Both Defendant and Defendant-Intervenors argue that Commerce's rejection of Shelter Forest NFI is not an abuse of discretion because the submission was filed out of time, and that therefore, the rejection is in accordance with the law. However, in making this argument, both Defendant and Defendant-Intervenor do not properly address important past judicial precedent. In particular, (a) they fail to appreciate that the Federal Circuit's *Essar* decision addressed very different circumstances;(b) their interpretation of the earlier *Shelter Forest* decision is just wrong and (c) their attempts to distinguish the long history of cases referenced by Shelter Forest's opening brief focus on largely irrelevant minutiae.

Additionally, both Defendant and Defendant-Intervenor fail to address the effective three part test laid out by past precedent as discussed in the opening brief, for analyzing whether Commerce's refusal to accept Shelter Forest's proffered new factual information constituted an abuse of discretion. Apparently, Defendant and Defendant-Intervenor believe if they ignore three part test, this Court will do so as well.

Lastly, neither Defendant nor Defendant-Intervenor provide credible arguments as to how Commerce's purported justification for rejecting Shelter Forest's new factual information is supported by the administrative record.

- 1 -

- 2 -

And so, neither Defendant nor Defendant-Intervenor have refuted Shelter Forest's position that Commerce's rejection of Shelter Forest submission is an abuse of discretion and unsupported by substantial evidence.

# ARGUMENT

## I. COMMERCE'S REFUSAL TO ACCEPT SHELTER FOREST'S CORE COUNTRY OF ORIGIN DOCUMENTATION SUBMITTED 329 DAYS BEFORE THE FINAL DETERMINATION IS NOT IN ACCORDANCE WITH LAW

In response to Shelter Forest's primary argument that Commerce's refusal to accept Shelter Forest's new factual information was an abuse of discretion and otherwise not in accordance with the law, Defendant and Defendant-Intervenor make three arguments.

### A. Contrary to Defendant and Defendant-Intervenor's Arguments, Past Judicial Precedent Supports Shelter Forest's Position

Defendant and Defendant-Intervenor both argue in their response briefs that judicial precedent supports Commerce's rejection of new factual information, addressing various plaintiff arguments at once. Def. Br. 43-51; Def.-Inv. Br. 30-31. But this claim is just not true. When properly considered, the judicial precedent does not support the Commerce decision to reject Shelter Forest' proffered factual information.

First, in its section on the rejection of new factual information, the Defendant lists cases in which the courts have found that Commerce has discretion in establishing deadlines in administrative procedures. Def. Br. 40. Note, as stated below, Shelter Forest is not arguing that Commerce cannot set and enforce deadlines, rather, that it was an abuse of discretion <u>in this particular case</u> to reject the new factual information submitted by Shelter Forest. Shelter Forest highlights that in this particular proceeding there was no statutory deadline for Commerce to meet, which is different from many other 28 U.S.C. § 1581(c) cases before this Court. Commerce had all the time in the

- 3 -

world to conduct its proceeding.[1]  Instead it decided to completely reject all parties' additional information, without even distinguishing the quality or importance of information being submitted by party.  Therefore, this case has a different premise than many of those cases such as *Yantai Timken v. United States*, 521 F. Supp. 2d 1356 (Ct. Int'l Trade 2007),[2] cited by Defendant and Defendant-Intervenor as granting Commerce wide discretion to set and enforce deadlines.

    Second, we address the attempt by Defendant to claim that the Federal Circuit decision in *Essar Steel Ltd. v. United States,* 678 F.3d 1268 (Fed. Cir. 2012), supports Commerce's unreasonable rejection of the new factual information. Def. Br. 43-44.  In doing so Defendant claims that Shelter Forest is advancing an argument is has not made.  As Shelter Forest stated in its opening brief, it is not contesting Commerce's authority to reject new factual information in general. Rather, it is stating that in this case as it pertains to Shelter Forest's submission, Commerce must analyze whether accepting information is warranted under the good cause standard.  And as Commerce pointed out

---

[1]  Indeed, Commerce itself postponed its final determinations <u>eight</u> times. Eighth Extension of Deadline for Issuing the Final Determinations (May 26, 2023) (P.R. 831); Seventh Extension of Deadline for Issuing the Final Determinations (May 1, 2023) (P.R. 827); Sixth Extension of Deadline for Issuing the Final Determinations (March, 20, 2023) (P.R. 819); Fifth Extension of Deadline for Issuing the Final Determinations (January 26, 2023) (P.R. 774); Fourth Extension of Deadline for Issuing the Final Determinations (September 12, 2022) (P.R. 538); Third Extension of Deadline for Issuing the Final Determinations (April 18, 2022) (P.R. 406); Second Extension of Deadline for Issuing the Final Determinations (August 24, 2021) (P.R. 382); Extension of Deadline for Issuing the Final Determinations in the Anti-Circumvention and Scope Inquiries (March 11, 2021) (P.R. 197).

[2] Shelter Forest also notes that Defendant incorrectly claims that Shelter Forest cited this case in support of its arguments, which Shelter Forest did not.  Shelter Forest further stresses that the decision in *Yantai*, is not similar to this one: (1) *Yantai* was an appeal of an antidumping administrative review, which involves strict statutory deadlines; (2) Yantai was a mandatory respondent, which submitted an initial questionnaire response as well as responding to <u>six</u> supplemental questionnaires and therefore had many opportunities to directly respond to Commerce requests, unlike Shelter Forest and; (3) Yantai's new factual information was submitted in its administrative case brief after the company had already undergone verification with the Commerce.  *Yantai Timken v. United States*, 521 F. Supp. 2d 1356, 1360-1364 (Ct. Int'l Trade 2007).

in its final determination, "it is the respondent that was required to respond to Commerce's requests for information." Final IDM at 57 (P.R. 842). Therefore, unlike the situation in *Essar*, which pertained to a respondent consistently refusing to provide an accurate answer to multiple requests from Commerce and only attempting to provide this information after the preliminary determination demonstrated its detrimental effect on the respondent, *Essar,* 678 F.3d at 1277, Shelter Forest did not previously have an opportunity to address these issues and did so at the earliest opportunity that Commerce made the parties aware of the issue.

Next, Defendant argues that Shelter Forest and other plaintiffs' reliance on *Shelter Forest Int'l Acquisition, Inc. v. United States*, 497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021), aff'd, 2022 U.S. App. LEXIS 16491 (Fed. Cir. 2022), is misplaced focusing on the idea that the Shelter Forest was a voluntary respondent and was not properly notified of the of the deficiencies. But again, Defendant's attempts at distinguishing fail. Here Defendant claims the "respondents and *other interested parties* had ample opportunity to provide complete and accurate information." Def. Br. 49. This is effectively the exact same argument that Commerce advanced in the earlier *Shelter Forest* case.

Moreover, as discussed in more detail below, in the instant case (like the earlier case) it was only after the preliminary determination that Shelter Forest learned that Commerce believed that the factual information that had been submitted was insufficient. Additionally, as noted in the opening brief, this Court found in *Shelter Forest* that the importance and relevance of the factual information submitted weighed in favor of a finding of good cause. *Shelter Forest*, 497 F. Supp. 3d at 1402. Similarly, here the new

- 5 -

factual information submitted demonstrates unequivocally that Shelter Forest's supplier, Lechenwood, did not export inquiry merchandise to the United States.

Both Defendant and Defendant-Intervenor attempt to distinguish the long list of cases cited by Shelter Forest and other plaintiffs, but do so by overstating minute factual differences are of no consequence. The cases were cited not to demonstrate that they had the exact same fact pattern as the case before this Court but to demonstrate that this Court and the Federal Circuit have a long standing practice of finding Commerce abuses its discretion when rejecting submissions of factual information that are proffered long before the final determination.

As can be seen from the above, the Trade Court has reviewed Commerce actions in numerous past cases with similar circumstances and has generally concluded that the type of harsh treatment that Commerce applied to Shelter Forest in this case is an unlawful abuse of discretion.

> **B.     Defendant and Defendant-Intervenor Do Not Address The Effective Three Step Approach For Analyzing Whether Commerce Abused Its Discretion When It Refused To Consider Shelter Forest's Core Country-of-Origin Documentation Submitted 329 Days Before The Final Determination**

In the section above we demonstrate that the discussion of past judicial precedent by Defendant and Defendant-Intervenor effectively ignore the true import of the past judicial precent. In this section we demonstrate that, likewise, the attempts by Defendant and Defendant-Intervenor to apply applicable law to the facts of this case – at least vis-à-vis Shelter Forest – also fail.

At the outset we note that both Defendant and Defendant-Intervenor completely ignore the three step test for analyzing whether Commerce abuse its discretion discussed in Shelter Forest's opening brief that has been established by past cases.  And so, we believe it is useful to reiterate it here.

First, the Court reviews whether the additional information is **important** (or necessary) for Commerce to render an accurate and correct determination. In conducting the analysis this Court is guided by the remedial, and not punitive, purpose of the antidumping statute, *Chaparral Steel Co. v. United States*, 901 F.2d 1097, 1103-04 (Fed. Cir. 1990), and the statute's goal of reaching the correct result "as accurately as possible," *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990).

In this case, the additional supporting documentation went to the very key issue of the investigation: whether Lechenwood exported to the U.S. hardwood plywood containing Chinese cores circumventing the AD order.  No party seriously contests this important fact.  This is because the supporting documentation proffered by Shelter Forest unequivocally demonstrated that those U.S. exports of hardwood plywood by Lechenwood contained cores originating in Vietnam, given that there were from acacia variety, and therefore and that no imports were made with cores from China.  Such fact directly addresses the very heart of the Commerce circumvention analysis.

Second, the Court weighs the **burden** imposed upon the agency by accepting the late submission, *Usinor Sacilor v. United States*, 872 F. Supp. 1000, 1008 (Ct. of Int'l Trade 1994), and "the need for finality at the final results stage," *Timken U.S. Corp. v. United States*, 434 F.3d 1345, 1353 (Fed. Cir. 2006).  Neither Defendant, nor Defendant-

Intervenors address why information provided by Shelter Forest more than 329 days before the final determination was too burdensome. Instead, Defendant excuses Commerce's lack of analysis on the basis of the many submissions (near to 30, although the exact number is not precise) [3] presented by the different parties in the administrative proceeding. Def. Br. 51. Here there were no concerns with finality. Although this may be a complex case, Shelter Forest's submission came early in the proceeding: almost a year before Commerce released the final results. This Court has required Commerce to take into considerations untimely filings when they were around a year apart from the final determination. *See* Shelter Forest Br. 12 detailing pasts court cases.[4] Additionally, in this case, as noted earlier, unlike many of the cases cited by Defendant and Defendant-Intervenor, there is <u>no statutory deadline in this type of proceeding.</u> Commerce took nearly 3 years to render a decision (extending its final determination <u>eight</u> times)[5], which is why the fact that Shelter Forest proffered its new factual information 329 days before the final determination is so critical. As can be seen from this record, Commerce could have easily taken the time to review and take this information into account, it would not have been a strenuous burden. Further, there is no explanation in Commerce's final determination as to why Shelter Forest's information would take an inordinate time to review.

---

[3] Oddly, Defendants sometimes refer to 30 NFI submissions (Def. Br. 51), other times refers to around 20 submissions consisting of comments on preliminary determination, requests for hearings, and NFI submissions (Def. Br. 42).

[4] Defendant's complaint as to the volume of Shelter Forest's documentation borders on the absurd, given Commerce's well know practice of demanding voluminous supporting documentation in AD-CVD cases. Moreover, the supporting documentation that Shelter Forest provided consisted primarily of import entry packagers, a type of supporting documentation that Commerce analysts are used to reviewing.

[5] *See supra* note 1.

Third, and most importantly, the court reviews whether the submitter of the new factual information had been **diligent**. In the instant case Shelter Forest was diligent, given that Shelter Forest compiled and submitted the supporting documentation within three weeks after it learned - for the first time – that Commerce believed that data submitted by another party different from Lechenwood (Government of Vietnam) was deficient. Again, the supporting documentation proffered by Shelter Forest was comprehensive, including commercial invoice, packaging list, Certified Plant and Plant Product Declaration Form, bill of lading and Customs Form 7501. No party disputes that this is the precise information needed for the certification regime.

Importantly, neither Defendant nor Defendant Intervenor indicate with any specificity a date when Shelter Forest should have proffered its supporting information. Rather, Defendant and Defendant-Intervenor simply reference multiple points throughout the proceedings and then just assert that Shelter Forest should have been on 'notice' that deficiencies or 'potential discrepancies' could have occurred. Def. Br. 44, fn 8. For example, Defendant lists the initiation and the supplemental questionnaire as putting parties on notice. Def. Br. 53. However, we invite this Court to examine these referenced Commerce documents. There is nothing in those documents that would lead a reasonable person to believe that Commerce had doubts as to the factual certifications made by Lechenwood that none of its US exports contained Chinese cores. And so, there is no specific date that either Defendant and Defendant-Intervenor rely on as the date on which it was clear that Commerce had doubts concerning the absence of Chinese cores in Lechenwood's hardwood plywood US. As the Court has pointed out before, Commerce

- 9 -

...

cannot expect parties to read its mind, as to which position it will take on a specific issue before the preliminary determination is rendered. *Sigma Corp. v. United States*, 841 F. Supp. 1255, 1267 (1993). It is incumbent on Commerce to notify parties in the proceeding about existing deficiencies or inconsistencies in the record.

    Additionally, Defendant highlights that Shelter Forest did not enter an appearance until after the preliminary determination as evidence that Shelter Forest was not following the proceeding. But this supposition is just wrong. Shelter Forest diligently followed the case through every public submission, including Commerce's supplemental questionnaires. And as soon as Shelter Forest was made aware of Commerce decisions regarding the factual information on the record (made for the first time in the preliminary determination), Shelter Forest entered an appearance in order to supplement the record.

    In short, the response briefs by Defendant and Defendant-Intervenor do not attempt to address in full the three part test advanced by past court precedent. Or stated differently, neither Defendant, nor Defendant-Intervenors have provided meaningful input on the key issue whether increase in accuracy might outweigh the administrative burden. The lack of analysis by Commerce, and now by Defendant and Defendant-Intervenors confirm that Commerce's administrative action was an abuse of discretion.

### C. Commerce's Purported Justification for Rejecting Shelter Forest's NFI Is Not Supported by the Record

The section above demonstrates that neither the response brief of Defendant nor the response brief of Defendant-Intervenor make any attempt to address the required three step approach for analyzing the central issues. In this section we explain how the

response briefs of Defendant and Defendant-Intervenor also fail to support the purported justification that Commerce offered in rejecting Shelter Forest's proffered documentation.

Initially, Defendant's response brief advances the position that Shelter Forest submission does not constitute rebuttal information pursuant to 19 C.F.R. § 351.102 (b)(21)(iv), as it does not address new information. Def. Br. 54. This position is just wrong as a matter of fact. As detailed in our opening brief, Shelter Forest's new factual information submission addressed completely new statements of facts by the Department, which were included for the first time in the Preliminary determination. Specifically, for the first time, Commerce's preliminary determination set forth its interpretation of data submitted by the Government of Vietnam that imports under certain subheadings are in fact prohibited inputs. AFA Memorandum at 6, 10, 18 (C.R. 243, P.R. 410). Such Commerce interpretation of data constitutes new factual information.

Defendant further argues that no good cause existed such that Commerce should have allowed the new information under 19 C.F.R. § 351.102(b)(21)(v). Def. Br. 54. Def.-Inv. Br. at 32. The information submitted by Shelter Forest included new documents and data concerning imports into the United States, which is the first time any party discussed this overtly on the record, as opposed to data on imports of input from China to Vietnam.

At the center of the argument as to why Shelter Forest information needed to be rejected is that Shelter Forest did not sufficiently monitor the proceedings. Def. Br. 56.

For multiple reasons, Defendant and Defendant-Intervenors arguments should not be entertained.

First, Shelter Forest was not a mandatory respondent in the investigation. The Department itself affirmatively stated that the inquiry would only cover core platforms or core veneers manufactured in China that were shipped to Vietnam and <u>subsequently exported</u> to the United States. The proceedings did not cover core veneers fully produced in Vietnam. *See* Clarification of Merchandise Subject to Anti-Circumvention and Scope Inquiries at 2 (July 9, 2020). (P.R. 21). Given that Shelter Forest both knew and had supporting documentation demonstrating that its supplier had only supplied hardwood plywood that did not have any Chinese core platforms or core veneers to the United States, Shelter Forest appropriately believed it was not affected by the investigation.

Shelter Forest was not a party required to provide information, and in any case, it proactively volunteered pertinent information, as soon as the Preliminary Determination claimed a lack of clarity from Lechenwood responses. As noted above, Defendant and Defendant-Intervenor fault Shelter Forest for not having submitted information at the pertinent time, however, they never specify when that time should have been.

Second, nothing in the ***three*** submissions from Lechenwood could have lead Shelter Forest to think Commerce would conclude Lechenwood was <u>exporting to the United States</u> core veneers manufactured in China. *See* Lechenwood Q&V (C.R. 60, P.R. 125), Lechenwood 1st Supp (C.R. 129, P.R. 223), Lechenwood 2nd Supp (C.R. 195, P.R. 338). The reason is simple: Lechenwood simply did not export to the United States

hardwood plywood with core veneers from China, as irrefutably demonstrated in the very information provided by Shelter Forest.

Third, Shelter Forest could not predict that information provided by the Government of Vietnam could be used to conclude Lechenwood was exporting prohibited merchandise to the United States. A closer look to the Government of Vietnam data shows that Lechenwood was importing from China inputs under certain subheadings. *See* Supp. Response from Government of Vietnam, Ex. Gov-02 (C.R. 203, C.R. 206; P.R. 260). Yet, nothing shows that Lechenwood used these inputs to export to the United States, as required by the Clarification of Merchandise Subject to Anti-Circumvention and Scope Inquiries at 2 (July 9, 2020) (P.R. 21). And further neither Defendant nor Defendant-Intervenor points to any submission or point in time where Shelter Forest could have been made aware of such fact prior to the preliminary determination. Therefore, Shelter Forest had no reason to believe that Commerce would consider that these inputs would be exported to the United States, particularly having evidence at hand that this was not being the case.

Most surprisingly, Commerce did not follow-up with Lechenwood after receiving its responses to the supplemental questionnaires or information from the Government of Vietnam. Without any hint that Lechenwood responses were deficient following information supplied by the Government of Vietnam, Shelter Forest had little to say until the Preliminary determination. It was only then that Commerce made the finding that Lechenwood provided inaccurate information, connecting with information provided by a

different party (Government of Vietnam), on an input imported from China, considered a prohibited input. AFA Memorandum 17-18 (C.R. 243, P.R. 410).

In sum, Shelter Forest was diligent in providing the information as soon as practically as possible, and therefore good cause exists for Commerce to accept the information, given its importance to clarify the record.

Separately, Defendant contradicts itself when it argues, as Commerce did in its IDM at 57 (P.R. 842), that Shelter Forest did not sufficiently monitor the proceedings, when at the same time it is argued that it is the respondent (and not the importer) that is required to respond to Commerce's requests for information, since an importer cannot provide with a complete picture of respondent's production practices. Def. Br. 55. Commerce and now Defendant's argument is nonsense as on the one hand they require Shelter Forest to submit an entry of appearance despite not importing product with input from China, review all information submitted by interest parties and timely comment on it despite no suggestion on how Commerce will use the information. But at the same time, any information provided will not be used to cure any existing deficiency from Lechenwood submissions. This Court should reject the foundations of Commerce's final determination and Defendant's argument as a complete illogical fallacy with no support in the law. No statute or regulation requires Commerce to reject information from an importer addressing a deficiency from a respondent.

Defendant further, cannot simply assume that because Lechenwood responses were considered unreliable, Shelter Forest submission, should similarly be considered as "unreliable." Def. Br. 55. Shelter Forest is U.S. corporation that has no legal affiliation

- 14 -

- 15 -

with Lechenwood.  Shelter Forest is not Lechenwood.  It is not proper for Defendant to advance the repugnant suggestion that Shelter Forest is not trustworthy just because Shelter Forest imports from Vietnam.  Moreover, at the end of the day, the real question is the content of the supporting documentation.  Not even Defendant suggest that what Shelter Forest provided were not exact copies of certified documentation provided to U.S. Government authorities.

## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Shelter Forest requests that the Court remand the final determination with instructions to reopen the record, accept and consider Shelter Forest's factual information submission, and render a remand redetermination consistent with the expanded record.

                                          Respectfully submitted,

                                          /s/ Daniel L. Porter

                                          Daniel L. Porter
                                          Katherine R. Afzal
                                          Ana Amador Gil

                                          *Counsel for Shelter Forest International Acquisition Inc.*

Dated: October 15, 2024

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2010 using a proportionally spaced typeface 13 point Times New Roman font.

In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth in the Chambers Procedures.  Specifically, excluding those exempted portions of the brief as set forth in 2B(1) of the Chambers Procedures, I hereby certify that this brief contains 3,748.  In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Daniel L. Porter

Daniel L. Porter

Curtis, Mallet-Prevost, Colt & Mosle LLP
1717 Pennsylvania Avenue, NW
Washington, D.C., 20006

*Counsel for Shelter Forest International Acquisition Inc.*

Dated: October 15, 2024