## UNITED STATES COURT OF INTERNATIONAL TRADE

### BEFORE THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| SHELTER FOREST INTERNATIONAL ACQUISITION, INC., | ) ) ) |
| Plaintiff, | ) ) |
| GREATRIVER WOOD CO., LTD., ET AL., | ) ) |
| Consolidated Plaintiffs, | ) ) |
| v. | ) ) ) |
| UNITED STATES, | ) ) |
| Defendant, and | ) ) |
| COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD | ) ) ) |
| Defendant-Intervenor. | ) ) ) |

**Consol. Court No. 23-00144**
**Nonconfidential Version**

## REPLY BRIEF ON BEHALF OF CONSOLIDATED PLAINTIFFS CONCANNON LUMBER COMPANY, NORTHWEST HARDWOODS, INC., RICHMOND INTERNATIONAL FOREST PRODUCTS LLC, TARACA PACIFIC INC., UFP INTERNATIONAL, LLC, MEDALLION FOREST PRODUCT, HARDWOODS SPECIALTY PRODUCTS USLP, PAXTON HARDWOODS LLC AND RUGBY HOLDINGS LLC DBA RUGBY ARCHITECTURAL BUILDING PRODUCTS

Jeffrey S. Grimson
Jill A. Cramer
Bryan P. Cenko
MOWRY & GRIMSON, PLLC
5335 Wisconsin Ave., NW, Suite 810
Washington, DC 20015
202.688.3610 (ph)
202.595.8968 (fax)
trade@mowrygrimson.com

October 15, 2024

TABLE OF CONTENTS

Table of Contents ................................................................................................................ i

Table of Authorities ........................................................................................................... ii

ARGUMENT ...................................................................................................................... 1

    I.   Commerce Abused its Discretion in Rejecting NFI Submitted by the Respondents
and the Government's and Coalition's Arguments to the Contrary Fail .................. 1

        A.   Commerce Did Not Comply With its Obligations Under 19 U.S.C. § 1677m(d) .......... 2

        B.   Interests in Accuracy Outweighed the Alleged Burden on Commerce To Review the
Respondents' NFI ................................................................................................. 8

    II.   The Government and the Coalition Fail to Support Commerce's Reliance on
Outdated Data ....................................................................................................... 10

    III.   The Government and the Coalition Fail to Support Commerce's Unlawful
Expansion of its Circumvention Finding to Cover Safe Harbor Merchandise .......... 13

CONCLUSION .................................................................................................................. 17

TABLE OF AUTHORITIES

**Cases**

Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States,
    701 F.3d 1367 (Fed. Cir. 2012) ................................................................................. 13

Essar Steel Ltd. v. United States,
    678 F.3d 1268 (Fed. Cir. 2012) ................................................................................... 9

Grobest & I-Mei Indus. (Vietnam) Co., Ltd. v. United States,
    36 CIT 98, 815 F. Supp. 2d 1342 (2012) ............................................................... 1, 9

Hitachi Energy USA Inc. v. United States,
    34 F. 4th 1375 (Fed. Cir. 2022) ................................................................................... 6

Huayin Foreign Trade Corp. v. United States,
    322 F.3d 1369 (Fed. Cir. 2003) ............................................................................10, 11

Invenergy Renewables LLC v. United States,
    __ CIT __, 552 F. Supp. 3d 1382 (2021) ............................................................ 14, 16

Mid Continent Nail Corp. v. United States,
    725 F.3d 1295 (Fed. Cir. 2013) ................................................................................. 14

NMB Sing. Ltd. v. United States,
    557 F.3d 1316 (Fed. Cir. 2009) ................................................................................. 12

Shelter Forest Int'l Acquisition, Inc. v. United States,
    __ CIT__, 497 F. Supp. 3d 1388 (2021) ................................................................. 7, 9

Shelter Forest Int'l Acquisition, Inc. v. United States,
    2022 U.S. App. LEXIS 16491 (Fed. Cir. 2022) .......................................................... 7

Shelter Forest Int'l Acquisition, Inc. v. United States,
    No. 19-00212, 2021 Ct. Intl. Trade LEXIS 90 (Ct. Int'l Trade July 21, 2021) ......................... 7

U.S. Steel Corp. v. United States,
    37 CIT 1799, 953 F. Supp. 2d 1332 (2013) .............................................................. 13

Vietnam Finewood Co. v. United States,
  __ CIT __, 633 F. Supp. 3d 1243 (2023) ...........................................................................10, 11

**Statutes**

19 U.S.C. § 1516a ..................................................................................................................... 1

19 U.S.C. § 1677j ................................................................................................................. 10, 12

19 U.S.C. § 1677m .............................................................................................................. passim

**Other Authorities**

Hydrofluorocarbon Blends from the People's Republic of China: Final Scope Ruling on
  Unpatented R- 421A; Affirmative Final Determination of Circumvention of the Antidumping
  Duty Order for Unpatented R-421A, 85 Fed. Reg 34,416 (Commerce June 4, 2020) ............. 15

Consolidated Plaintiffs Concannon Lumber Company, Northwest Hardwoods, Inc., Richmond International Forest Products LLC, Taraca Pacific Inc., UFP International, LLC, Medallion Forest Product, Hardwoods Specialty Products USLP, Paxton Hardwoods LLC and Rugby Holdings LLC dba Rugby Architectural Building Products (collectively, "M&G Plaintiffs") reply to the response briefs of Defendant United States (the "Government") and Defendant-Intervenor the Coalition for Fair Trade in Hardwood Plywood (the "Coalition"). See Def.'s Resp. to Pls.' Rule 56.2 Mot. for J. on the Agency R. (July 2, 2024) (Nonconfidential Version), ECF No. 59 ("Government's Br."); Def.-Int. Coalition for Fair Trade in Hardwood Plywood Resp. to Mot. for J. on the Agency R. (Aug. 16, 2024) (Nonconfidential Version), ECF No. 63 ("Coalition's Br.").[1]

## ARGUMENT

### I.  COMMERCE ABUSED ITS DISCRETION IN REJECTING NFI SUBMITTED BY THE RESPONDENTS AND THE GOVERNMENT'S AND COALITION'S ARGUMENTS TO THE CONTRARY FAIL

The U.S. Department of Commerce abused its discretion in rejecting certain Vietnamese respondents' submissions containing new factual information ("NFI"). See Mem. of P&A in Support of Pls.' Mot. for J. on the Agency R. on Behalf of M&G Plaintiffs at 5-28 (Mar. 4, 2024) (Nonconfidential Version), ECF No. 36 ("M&G Pls.' Br."). The court will sustain a determination by Commerce unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Commerce's decision to reject untimely NFI is reviewed for an abuse of discretion. See Grobest & I-Mei Indus. (Vietnam) Co., Ltd. v. United States, 36 CIT 98, 122, 815 F. Supp. 2d 1342, 1365 (2012). Commerce universally rejected the NFI submitted by respondents in response to the alleged deficiencies identified by Commerce

---

[1] All citations are to the parties' nonconfidential briefs unless otherwise noted.

for the first time in the Preliminary Determination or, in the cases Bao Yen MDF Joint Stock Company ("Bao Yen") and Thang Long Wood Panel Company Ltd. ("Thang Long"), after these respondents first became aware that they were required to respond to Commerce's supplemental questionnaires. See id. at 6-8. The arguments by the Government and the Coalition that Commerce did not abuse its discretion in rejecting the NFI submissions are unpersuasive. See Government's Br. at 38-56; Coalition's Br. at 25-33.

**A. Commerce Did Not Comply With its Obligations Under 19 U.S.C. § 1677m(d)**

Commerce abused its discretion in rejecting the NFI that Hai Hien Bamboo Wood Joint Stock Company ("Hai Hien"), Her Hui Wood (Vietnam) Co., Ltd. ("Her Hui"), Lechenwood Viet Nam Company Limited ("Lechenwood"), Long Luu Plywood Production Co., Ltd. ("Long Luu"), TEKCOM Corporation ("TEKCOM") and Win Faith Trading Limited ("Win Faith") promptly submitted to clarify or correct the alleged deficiencies that Commerce first identified in their responses in the Preliminary Determination. See M&G Pls.' Br. at 5-16. Commerce claimed that good cause did not exist to accept the NFI filed by the respondents after Commerce's deadlines to submit this information had passed because the respondents "were provided with adequate notice about the discrepancies in their responses." Mem. from James Maeder to Lisa W. Wang re: I&D Mem. at 56 (July 14, 2023) (Public Document) ("Final I&D Mem.") (P.R. 842). The statute requires that Commerce must inform a respondent of the "nature of the deficiency {in its response} and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency." 19 U.S.C. § 1677m(d). Contrary to Government's and the Coalition's arguments, Commerce failed to provide these respondents with notice of the specific deficiencies that Commerce identified in their questionnaire responses as required under 19 U.S.C. § 1677m(d). See Government's Br. at 56-61; Coalition's Br. at 26-29.

Both the Government and the Coalition maintain that Commerce provided Win Faith and Hai Hien with adequate notice of the alleged inconsistencies in their responses concerning their affiliation with Chinese companies.  See Government's Br. at 58-59; see also Coalition's Br. at 26-27.  In the Preliminary Determination, Commerce found that Win Faith was allegedly affiliated with a Chinese plywood manufacturer based on certain information contained in a sales contract submitted by Win Faith.  See M&G Pls.' Br. at 11 (citing Mem. from Kabir Archuletta to the File re: Application of Adverse Facts Available for the Preliminary Determination at 23 (July 22, 2022) (Public Version) ("AFA Mem.") (P.R. 410)).  Commerce's questionnaires did not address this contract in any fashion.  Instead, Commerce's first and second supplemental questionnaires contained only generic questions that Commerce issued to all respondents.  See Mem. from Commerce to All Interested Parties: re: Quantity and Value Supplemental Questionnaire at VI-4 (Feb. 22, 2021) (Public Document) (P.R. 154) ("First Supplemental Q&V Questionnaire") (including a general request that respondents "please indicate whether you are affiliated with any Chinese manufacturers and/or exporters of plywood or plywood inputs"); Mem. from Commerce to All Interested Parties re: Quantity and Value Second Supplemental Questionnaire (June 15, 2021) (Public Document) ("Second Supplemental Q&V Questionnaire") (P.R. 257) (including only a general question asking that the respondents provide "{t}he identity of each Vietnamese company your Chinese affiliates supplied with products under subheading 4408 or 4412" and no specific question on affiliation).  In a company-specific supplemental questionnaire issued to Win Faith, Commerce merely cited to a letter from the Coalition to support its request for Win Faith to reconcile its statement that it was not affiliated with any Chinese plywood or plywood input producers given that record evidence, which Commerce did not identify, allegedly contradicted this claim.  See Letter from Commerce to Win Faith re: Win Faith Q&V Supplemental

NONCONFIDENTIAL DOCUMENT
CONFIDENTIAL INFORMATION REMOVED

Questionnaire at Attachment (June 29, 2021) (Business Proprietary Document) (C.R. 238).  In response to Commerce's questionnaire, Win Faith reasonably explained that it its relationship with the Chinese entity identified by the Coalition was merely for "advertisement purposes."  Letter on Behalf of Win Faith to Commerce re: Win Faith's Response to the Q&V Supplemental Questionnaire at 2 (July 6, 2021) (Public Version) (P.R. 288).  Commerce never asked Win Faith to explain any apparent conflict between this sales contract and Win Faith's explanation. Commerce cannot lawfully skirt its obligations under 19 U.S.C. § 1677m(d) to inform a respondent of any deficiencies in its responses by merely referencing the Coalition's submission and presume that Win Faith could read Commerce's mind that the record allegedly conflicted with Win Faith's own explanations.  Commerce's conclusion that it sufficiently informed Win Faith of the alleged deficiencies in its responses was unsupported by the record.

Commerce applied AFA against Hai Hien partially on the basis that Hai Hien did not report that it was allegedly affiliated with a Chinese producer or exporter of plywood or plywood inputs based on [ ███████████████████████████████████████████████████ ]. See AFA Mem. at 12-13 (Business Proprietary Document) (C.R. 412).  To support its conclusion, Commerce cited to [ █████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ ].  See id.  Commerce's supplemental questionnaires did not specifically address its concerns that Hai Hien did not identify all of its Chinese affiliations.  See First Supplemental Q&V Questionnaire (P.R. 154); Second Supplemental Q&V Questionnaire (P.R. 257).  Nor did the company-specific questionnaire issued to Hai Hien ask it to address Commerce's conclusion that Hai Hien was associated with a Chinese manufacturer based on a [ ████████████████████████████████ ].  See Letter from

Commerce to Hai Hien re: Hai Hien Bamboo Wood Joint Stock Company Quantity and Value Supplemental Questionnaire (June 16, 2021) (Business Proprietary Document) (C.R. 237). In response to Commerce's company-specific questionnaire, Hai Hien stated that [ ██████████ ████████████████████████████████████████████ ] but has not held that position since Hai Hien had been established. See Letter on Behalf of Hai Hien to Commerce re: Hai Hien's Response to the General 2nd SQ and Company-Specific Q&V SQ at 5 (July 2, 2021) (Business Proprietary Document) (C.R. 242-244). Hai Hien had no reason to know that Commerce did not accept its explanations until after the Preliminary Determination. Commerce's determination that it informed Hai Hien of the alleged deficiencies in its responses was unsupported by substantial evidence.

Further, Commerce did not provide Her Hui and Lechenwood with notice that Commerce found that their responses conflicted with data submitted by the Government of Vietnam ("GOV"). See AFA Mem. at 12, 18 (Public Version) (P.R. 410). The Government asserts that Commerce's second supplemental questionnaire addressed "whether import data from the Vietnamese government would corroborate import information provided by the respondents." Government's Br. at 58. The Government's assertion is factually inaccurate as the GOV did not submit its data until after Commerce released its second supplemental questionnaire. Compare Second Supplemental Q&V Questionnaire at 1 (P.R. 257) (dated June 15, 2021), with Letter on Behalf of the Government of Vietnam to Commerce re: Response to Supplemental Questionnaire (July 21, 2021) (P.R. 351). Further, Commerce released its company-specific questionnaire to Lechenwood prior to the GOV submitting its own data. See Letter from Commerce to Lechenwood re: Lechenwood Viet Nam Company Limited Quantity and Value Supplemental Questionnaire (Feb. 26, 2021) (Public Document) (P.R. 161). Commerce's questionnaires could not, and did not

contain, any mention of the GOV's data such that Her Hui and Lechenwood should have been on notice that Commerce found that their responses conflicted with the GOV's data.

Commerce also failed to provide Hai Hien and TEKCOM with notice that Commerce concluded that both respondents did not submit sufficient documentation showing that their Chinese imports were face/back veneers as opposed to core veneers.  See AFA Mem. at 12-13, 22 (Public Version) (P.R. 410).  Commerce determined that Hai Hien's and TEKCOM's questionnaire responses were unreliable based on data from the International Trade Commission ("ITC") allegedly demonstrating that the veneers imported by Hai Hien and TEKCOM from China were too thick to be face/back veneers.  See M&G Pls.' Br. at 9; see also AFA Mem. at 22 (Public Version) (P.R. 410).  Hai Hien and TEKCOM, however, did not have notice that Commerce questioned their responses that they did not import Chinese core veneers given that Commerce did not identify the alleged discrepancy in their reported veneer thickness until after the Preliminary Determination.

The Government maintains that to the extent that the "respondents were unsure about the information Commerce was seeking in its questionnaire, they should have requested clarification." Government's Br. at 60.  While it is true that a respondent has a duty to establish a clear record, an equal burden falls on Commerce to make its requests "clear and give {that respondent} a chance to correct the error prior to the issuance of a final decision."  Hitachi Energy USA Inc. v. United States, 34 F. 4th 1375, 1384 (Fed. Cir. 2022) (internal citation and quotation omitted).  Here, Commerce failed to meet this burden because it never informed the respondents of the specific reasons that it found their responses to be deficient until the Preliminary Determination and then rejected as untimely any attempt to clarify or correct the alleged errors.

The Federal Circuit recently held that Commerce abused its discretion in rejecting NFI as untimely where Commerce failed to comply with its obligations under 19 U.S.C. § 1677m(d) in

another circumvention case arising from the same AD and countervailing ("CVD") duty orders on hardwood plywood from China. See Shelter Forest Int'l Acquisition, Inc. v. United States, __ CIT__, 497 F. Supp. 3d 1388 (2021) ("Shelter Forest I"); see also Shelter Forest Int'l Acquisition, Inc. v. United States, No. 19-00212, 2021 Ct. Intl. Trade LEXIS 90 (Ct. Int'l Trade July 21, 2021) (sustaining Commerce's negative circumvention finding once Commerce accepted the NFI), aff'd Shelter Forest Int'l Acquisition, Inc. v. United States, 2022 U.S. App. LEXIS 16491, *13 (Fed. Cir. 2022) ("Shelter Forest III"). The Government and Coalition are wrong that Commerce correctly distinguished Shelter Forest on the basis that in the agency proceedings underlying that litigation Commerce did not issue a company-specific questionnaire to a voluntary respondent prior to finding that respondent's responses to be deficient. See, e.g., Coalition's Br. at 49 (citing Commerce's discussion of Shelter Forest in Final I&D Mem. at 123-24 ((P.R. 842)). Even though Commerce issued questionnaires to the respondents here, as explained above, those questionnaires failed to provide the respondents with sufficient notice of the alleged discrepancies that Commerce identified in their responses. See M&G Pls.' Br. at 14-15. A questionnaire that fails to describe an alleged deficiency is the same as no questionnaire at all. In Shelter Forest, the courts made clear that Commerce abuses its discretion when it rejects NFI submitted beyond its deadlines if Commerce failed to meet its obligations under 19 U.S.C. § 1677m(d). See Shelter Forest III, 2022 U.S. App. LEXIS 16491, at *13. Commerce's finding that the Shelter Forest litigation did not mandate that Commerce accept and consider the respondents' NFI was not in accordance with law.

In sum, Commerce abused its discretion in rejecting the respondents' NFI because Commerce failed to comply with its statutory obligation under 19 U.S.C. § 1677m(d) to provide the respondents with sufficient notice of the alleged discrepancies in their responses.

**B. Interests in Accuracy Outweighed the Alleged Burden on Commerce To Review the Respondents' NFI**

Even if this Court holds that Commerce complied with its obligations under 19 U.S.C. § 1677m(d), Commerce nonetheless abused its discretion in rejecting the NFI from Bao Yen, Hai Hien, Her Hui, Long Luu, Lechenwood, TEKCOM, Thang Long and Win Faith on the grounds that interests in fairness and accuracy outweighed the burden on Commerce to consider the NFI. See M&G Pls.' Br. at 16-28.  Commerce's rejection of the respondents' NFI led to an inaccurate result in that the information provided by these respondents either corrected or clarified the alleged discrepancies identified for the first time by Commerce in the Preliminary Determination.  See id. at 20-22.  Both the Government and the Coalition overstate Commerce's interest in finality and the burden on Commerce to review this information.  See Government's Br. at 38-52; Coalition's Br. at 29-33.

Commerce's conclusion that it properly balanced "interests of accuracy and finality{,}" Final I&D Mem. at 58 (P.R. 842), conflicts with significant court precedent establishing that interests in accuracy and fairness can outweigh these concerns in certain circumstances.  See M&G Pls.' Br. at 17-23 (citing precedent where the court found that Commerce abused its discretion in rejecting NFI).  The Government and Coalition overstep in arguing that the resources needed to review the respondents' NFI was significantly greater than other cases relied on in the M&G Plaintiffs' opening brief where the court found that Commerce abused its discretion in rejecting NFI submitted outside of Commerce's deadlines. See Government's Br. at 41-48; Coalition's Br. at 39-31.  Commerce had around nine months to review the approximately 121 pages of NFI submitted by Bao Yen, Hai Hien, Her Hui, Long Luu, Lechenwood, TEKCOM, Thang Long and

Win Faith.  See M&G Pls.' Br. at 25.[2]  The amount of information, and time that Commerce had to review that information, aligns with past precedent where the court has held that Commerce abused its discretion in failing to consider NFI submitted beyond its deadlines.  See e.g., Grobest, 36 CIT at 125, 815 F. Supp. at 1367 (holding that interests of accuracy and fairness outweighed the burden placed on Commerce to review NFI).

Nor is the Government correct that Commerce properly relied on the Federal Circuit's holding Essar Steel Ltd. v. United States, 678 F.3d 1268 (Fed. Cir. 2012) to support its decision to reject the respondents' NFI.  See Government's Br. at 43-45 (citing Final I&D Mem. at 59 (P.R. 842)).  The facts in Essar are distinguishable.  In Essar, the Federal Circuit found that the respondent "withheld" information regarding the existence of one of its facilities.  678 F.3d at 1276.  Here, the respondents did not withhold information but instead sought to correct the alleged discrepancies in their responses once they first became aware of them following Commerce's Preliminary Determination.  The respondents sought to correct or clarify these alleged discrepancies in a timely fashion, and consistent with past precedent, Commerce abused its discretion in rejecting this information.  See M&G Pls.' Br. at 24 (citing Grobest, 36 CIT at 125, 815 F. Supp. 2d at 1367, Shelter Forest I, __ CIT at __, 497 F. Supp. 3d at 1401, where the court found it persuasive that the respondents diligently sought to correct their responses in holding that interests in accuracy trumped finality and the burden on Commerce).  Commerce misinterpreted relevant case law to reach its preferred conclusion to reject the respondents' NFI and nothing in the Government's or the Coalition's brief rehabilitates this error.

---

[2] The Government notes that "Commerce received at least 30 submissions containing untimely filed NFI."  Government's Br. at 51.  See M&G Pls.' Br. at 27.  Commerce cannot reasonably use its burden to review the NFI submitted by numerous parties as reason to reject these submissions when Commerce itself choose not limit its investigation by refusing to select mandatory respondents.

In short, Commerce abused its discretion in rejecting the respondents' NFI because Commerce had sufficient time and resources to review the NFI.

## II.    THE GOVERNMENT AND THE COALITION FAIL TO SUPPORT COMMERCE'S RELIANCE ON OUTDATED DATA

Commerce's affirmative circumvention finding was not supported by substantial evidence and otherwise not in accordance with law because Commerce relied on outdated data to determine that the processing that occurs in Vietnam is minor or insignificant. See M&G Pls.' Br. at 28-33. The statute mandates that Commerce consider enumerated factors when determining in a circumvention inquiry whether "the process of assembly or completion in the foreign country . . . is minor or insignificant{,}" such that the Commerce "may include such imported merchandise within the scope of the order." 19 U.S.C. §§ 1677j(b)(1)-(2).  In making this determination, Commerce relied on information submitted by Vietnam Finewood Co. in a separate scope proceeding that was later overturned by the court. See M&G Pls.' Br. at 29 (citing Vietnam Finewood Co. v. United States, __ CIT __, 633 F. Supp. 3d 1243 (2023)).

Both the Government and the Coalition assert that the court's reversal of Commerce's determination in the Finewood proceeding does not undermine Commerce's determination in this case. See Government's Br. at 24; Coalition's Br. at 14-15.  While Commerce may be permitted to "rely{} on data used in another proceeding eventually overturned by the Court," Government's Br. at 25, Commerce's must still support its determination with substantial evidence which requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Huayin Foreign Trade Corp. v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quotation and citation omitted).  No reasonable mind might accept that Commerce adequately supported its decision to rely on the Finewood data as a proxy for the entire Vietnamese industry especially

given that Commerce's scope determination to treat Finewood's merchandise as subject to the AD and CVD orders on hardwood plywood from China was later overturned.

The Government's arguments that Commerce reasonably relied on the Finewood data as "probative when examining . . . the production process of a Vietnamese producer" are unpersuasive given that Finewood's production process was distinct from other Vietnamese producers. Government's Br. at 25.   In <u>Finewood</u>, Commerce was examining whether "<u>{two}-ply cores of Chinese origin</u>, which are further processed in Vietnam to include the face and back veneers of non-coniferous wood, are within the scope of {the *Plywood Orders*}" by a Vietnamese producer that was admittedly using Chinese inputs. __ CIT at __, 633 F. Supp. 3d at 1249 (emphasis added). By contrast in the administrative proceeding at issue here, not a single Vietnamese respondent reported using <u>any</u> Chinese core materials.  <u>See</u> Final I&D Mem. at 21 (P.R. 842).  Despite the clear distinction between the inputs used by Finewood and the rest of the Vietnamese industry and the fact that Commerce's finding underlying the <u>Finewood</u> case was overturned, Commerce nonetheless relied on the Finewood data to support its conclusion here that the processing occurring in Vietnam was minor or insignificant.  <u>See</u> M&G Pls.' Br. at 29.   No "reasonable mind" could find that Commerce adequately supported its affirmative circumvention determination when it relied on data from Finewood that was not representative of the production processes used by other Vietnamese producers.  <u>Huayin</u>, 322 F.3d at 1374.

Further, Commerce's affirmative circumvention determination was unsupported by substantial evidence and otherwise not in accordance with law because the Finewood data were outdated.  <u>See</u> M&G Pls.' Br. 30-32.  The M&G Plaintiffs demonstrated how the Finewood data were outdated in their case brief at the agency, but Commerce failed to address this argument.  <u>See</u> M&G Pls.' Br. at 32-33.   As Commerce failed to address that the Finewood data were outdated,

the Court must reject the Government's arguments as impermissible post-hoc rationalizations. Putting this aside, the Government maintains that the Finewood data were not outdated because these data "encompass a timeframe entirely subsumed by the period for the underlying inquiries—December 2016 through March 2020." Government's Br. at 25; see also Coalition's Br. at 15 (Confidential Version), ECF No. 62 (stating that "[ ███████████████████████████ ████████████████████████ ] for the circumvention proceeding"). The arguments by the Government and the Coalition are unpersuasive because the Finewood data "[ ███ ████████████████████████████ ]" and Commerce's entire circumvention investigations covered December 2016 through March 2020. M&G Pls.' Br. at 31-32. By failing to cover the [ ███ ] period of Commerce's investigation, the record lacked sufficient data to support Commerce's affirmative circumvention finding.

Further, the Government maintains that Commerce was under no obligation to address the M&G Plaintiffs' argument that the Finewood data was outdated because it was obvious that the Finewood data "f{ell} squarely within the inquiry period." Government's Br. at 26; see also Coalition's Br. at 16 (arguing that "{i}t is unclear why contemporaneous data should be considered outdated.") Although Commerce does not have to provide perfect explanations, "the path of Commerce's decision must be reasonably discernable." NMB Sing. Ltd. v. United States, 557 F.3d 1316, 1319 (Fed. Cir. 2009). Here, Commerce "never requested from respondents detailed information on their production process and facilities, level of investment, level of research and development, and value of processing," i.e., factors that Commerce must examine in determining whether the processing that occurs in Vietnam is minor or insignificant. Consolidated Pls.' American Woodmark Corp., et al. ("DH Consolidated Plaintiffs") Reply Br. at 21-22 (Sept. 30, 2024), ECF No. 71 (citing 19 U.S.C. §§ 1677j(b)(1) & (2)). The Finewood data, thus, were the

only data on the record submitted by a Vietnamese manufacturer, albeit in a separate proceeding, relevant to Commerce's determination. The explanation provided by Commerce for its affirmative circumvention finding was not "reasonably discernable" because Commerce failed to address how a record that failed to cover the [█] inquiry period could have reasonably supported Commerce's finding that the processing that occurring in Vietnam is minor or insignificant.

In short, by relying on outdated data, Commerce failed to support its affirmative circumvention finding with substantial evidence.

## III. THE GOVERNMENT AND THE COALITION FAIL TO SUPPORT COMMERCE'S UNLAWFUL EXPANSION OF ITS CIRCUMVENTION FINDING TO COVER SAFE HARBOR MERCHANDISE

Commerce final affirmative circumvention determination was not in accordance with law because Commerce acted arbitrarily and capriciously in implementing a certification regime and customs instructions that conflicted with Commerce's prior unequivocal conclusion that the scope of its circumvention inquiries did not cover "core veneers fully produced in Vietnam or a third-country that are assembled into a veneer core platform in Vietnam and combined with a face and back veneer produced in China" (i.e., "safe harbor merchandise"). M&G Pls.' Br. at 34 (quoting Mem. from Kabir Archuletta to The File re: Clarification of Merchandise Subject to Anti-Circumvention and Scope Inquiries at 2 (July 9, 2020) (Public Document) (P.R. 21)). "To be in accordance with law, a decision must not be arbitrary and capricious . . . and must be supported by substantial evidence and reasoned explanations." U.S. Steel Corp. v. United States, 37 CIT 1799, 1801-02, 953 F. Supp. 2d 1332, 1336 (2013) (citation omitted); see also Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States, 701 F.3d 1367, 1377-78 (Fed. Cir. 2012). "To survive review under the arbitrary and capricious standard, the agency must have examined the relevant data and articulated a satisfactory explanation' for {its} decision, including a rational connection between the facts found and the choice made." Invenergy Renewables LLC v. United States, __

13

CIT __, __,552 F. Supp. 3d 1382, 1394 (2021) (citation and quotation omitted). Here, Commerce failed to "cogently explain" why it departed from its prior unequivocal finding and instead expanded its affirmative circumvention finding to cover safe harbor merchandise. Specifically, Commerce implemented a certification regime and issued customs instructions pursuant to its affirmative circumvention finding that prevented certain companies, i.e., those companies that Commerce found did not fully cooperate with its investigations, from certifying that their safe harbor merchandise was not subject to AD/CVD duties. See M&G Pls.' Br. at 34. Commerce's certification regime, and customs instructions implementing this regime, conflicted with its prior plain conclusion announcing that safe harbor merchandise was not covered by the circumvention inquiry.

The Government's arguments that the M&G Plaintiffs misunderstand the way that Commerce's certification programs are administered are without merit. See Government's Br. at 64. Commerce can only apply duties against in-scope merchandise. See generally Mid Continent Nail Corp. v. United States, 725 F.3d 1295, 1300-01 (Fed. Cir. 2013). The Government maintains that Commerce "was guided by {its statutory} authority to impose duties on merchandise subject to an order" when implementing its certification regime. Government's Br. at 64. Commerce's certification regime, however, conflicts with Commerce's statutory obligations because the certification regime results in duties being applied against merchandise that does not fall within the scope of the AD and CVD orders on hardwood plywood from China nor was ever intended to be pulled into the scope by these circumvention inquiries. See M&G Pls.' Br. at 34. Commerce's certification regime and customs instructions, thus, unlawfully result in the application of duties to demonstrably non-scope merchandise.

Further, the Court should not be persuaded by the Government's and the Coalition's claims that Commerce's certification regime is consistent with its standard practice. <u>See</u> Government's Br. at 63; Coalition's Br. at 35. The Government refers to Commerce's citation to hydroflurocarbon blends from China ("HFCs R-421A"). <u>See</u> Government's Br. at 63. Commerce claimed that HFCs R-421A supported its certification regime because including safe harbor merchandise was necessary given that "the merchandise in these inquiries is physically indistinguishable from other hardwood plywood completed in Vietnam." <u>Id.</u> at 64 (citing Final I&D Mem. at 174 (P.R. 842) (discussing <u>Hydrofluorocarbon Blends from the People's Republic of China: Final Scope Ruling on Unpatented R- 421A; Affirmative Final Determination of Circumvention of the Antidumping Duty Order for Unpatented R-421A</u>, 85 Fed. Reg 34,416 (Commerce June 4, 2020)). The facts of the instant administrative proceeding are distinguishable from HFCs R-421A where Commerce concluded that a certification regime was necessary because its scope and circumvention inquiries covered a blend of HFCs that was otherwise facially indistinguishable from other blends of HFCs. <u>See</u> <u>HFCs R-421A</u>, 85 Fed. Reg at 34,416 and accompanying Final Dec. Mem. at 2-3. Hardwood plywood subject to Commerce's affirmative circumvention findings by contrast are physically distinguishable from safe harbor merchandise by the naked eye. <u>See</u> Letter on Behalf of Importers' Alliance to Commerce re: Case Brief at 39 (Jan. 9, 2023) (Public Version) (P.R. 746). Unlike in HFCs R-421A, therefore, a certification regime was not necessary to distinguish safe harbor merchandise from other hardwood plywood.

Likewise, the Coalition's assertion that Commerce has repeatedly "excluded non-cooperating companies from certification processes," misunderstands the M&G Plaintiffs' arguments. <u>See</u> Coalition's Br. at 36. Commerce did not act arbitrarily and capriciously simply because it prohibited certain Vietnam companies from participating in its certification regime but

instead because Commerce did not include an exemption for safe harbor merchandise that it expressly stated was not subject to the circumvention inquiries under appeal.

Finally, the Government's assertion that removing safe-harbor merchandise from Commerce's certification requirements would "create a loophole that companies could exploit" and "weaken the enforcement mechanism" ignores that any enforcement concerns could be addressed by CBP's own authority.  Government's Br. at 65 (citing Final I&D Mem. at 174 (P.R. 842)); see also Coalition's Br. at 35.  CBP maintains its own independent authority to audit importers' merchandise, by issuing Requests for Information ("CF-28"), physical exams, or other techniques within CBP's routine expertise.  See M&G Pls.' Br. at 36 (citing 19 U.S.C. § 1509(a)). Contrary to creating a loophole, as explained above, Commerce's certification regime and customs instructions force U.S. importers to declare safe harbor merchandise from certain Vietnamese companies, which Commerce expressly affirmed from the very outset of the case is excluded from the investigation, as subject to AD/CVD under the Orders against China.   Commerce, thus, acted arbitrarily and capriciously in not "articulat{ing} a satisfactory explanation" for weighing Commerce's need to enforce its own AD/CVD orders as greater than providing CBP and U.S. importers with proper guidance given that Commerce's enforcement concerns are readily protected by CBP's own independent authority to determine the nature and character of imported goods.  See Invenergy, __ CIT at __, 552 F. Supp. 3d at 1394.

For these reasons, Commerce affirmative circumvention determination was as not in accordance with law because Commerce acted arbitrarily and capriciously by implementing a certification regime and customs instructions that unlawfully expanded the scope of Commerce's circumvention inquiries to cover safe harbor merchandise.

**CONCLUSION**

The M&G Plaintiffs respectfully request that this Court grant its motion for judgment on the agency record and remand Commerce's affirmative circumvention determination for redetermination consistent with the M&G Plaintiffs' initial brief, this reply brief, DH Consolidated Plaintiffs' reply brief and the reply briefs filed by other respondent parties to the extent they are consistent with arguments presented in this reply brief.

 

                                                             Respectfully submitted,

Dated: October 15, 2024                              /s/ Jeffrey S. Grimson
                                                              Jeffrey S. Grimson
                                                              Jill A. Cramer
                                                              Bryan P. Cenko
                                      *Counsel to Concannon Lumber Company,*
*Northwest Hardwoods, Inc., Richmond*
*International Forest Products LLC, Taraca*
*Pacific Inc., UFP International, LLC,*
*Medallion Forest Product, Hardwoods*
*Specialty Products USLP, Paxton*
*Hardwoods LLC and Rugby Holdings LLC*
*dba Rugby Architectural Building Products*

## CERTIFICATE OF COMPLIANCE

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Jeffrey S. Grimson, hereby certify that this brief complies with the word limitations set forth in Paragraph 2(B) of the Standard Chamber Procedures and the Scheduling Order to this case. Excluding the table of contents, table of authorities, signature block and any certificates of counsel, the word count for this brief is 4,984 words.

Dated: October 15, 2024

/s/ Jeffrey S. Grimson
Jeffrey S. Grimson
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, D.C. 20015
202-688-3610
trade@mowrygrimson.com
*Concannon Lumber Company, Northwest Hardwoods, Inc., Richmond International Forest Products LLC, Taraca Pacific Inc., UFP International, LLC, Medallion Forest Product, Hardwoods Specialty Products USLP, Paxton Hardwoods LLC and Rugby Holdings LLC dba Rugby Architectural Building Products*