# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| SHELTER FOREST INTERNATIONAL ACQUISITION, INC., <br><br> *Plaintiff,* <br><br> and <br><br> GREATRIVER WOOD CO., LTD., ET AL, <br><br> *Consolidated Plaintiffs,* <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant,* <br><br> and <br><br> COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD, <br><br> *Defendant-Intervenor.* | Consol. Court No. 23-00144 |

## ST&R CONSOLIDATED PLAINTIFFS REPLY BRIEF

Kristen Smith
Sarah E. Yuskaitis
**Sandler Travis & Rosenberg, P.A.**
1300 Pennsylvania Avenue, N.W.
Suite 400
Washington, DC 20004
Tel: (202) 730-4965

Dated: October 15, 2024

**TABLE OF CONTENTS**

I. COMMERCE'S REFUSAL TO ALLOW NEW FACTUAL INFORMATION DEPRIVED INTERESTED PARTIES OF DUE PROCESS ........................................................... 1

    A. Commerce's Rejection of Untimely NFI and Failure to Provide Notice to Interested Parties Regarding Perceived Deficiencies was Unreasonable and Unlawful ............................. 1

    B. Commerce's Actions Are Not Supported by Judicial Precedent ......................................... 4

II. DEFENDANT MISCHARACTERIZES ST&R CONSOLIDATED PLAINTIFFS' ARGUMENTS REGARDING CERTIFICATION ...................................................................... 8

III. A REMAND IS APPROPRIATE FOR COMMERCE TO CONSIDER ITS CUSTOMS INSTRUCTIONS FOR AN AN AND GREATWOOD ................................................................ 11

IV. ST&R CONSOLIDATED PLAINTIFFS ADOPT COMMENTS FILED BY PLAINTIFFS AND CONSOLIDATED PLAINTIFFS ................................................................. 11

V. CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Essar Steel Ltd. v. United States*, 678 F.3d 1268 (Fed. Cir. 2012) .......................................... 4, 5, 6

*Grobest & I-Mei Indus. (Vietnam) Co., Ltd. v. U.S.,* 815 F.Supp.2d 1342 (Ct. Int'l Trade 2012) . 6

*NTN Bearing Corp. v. United States,* 74 F.3d 1204 (Fed.Cir.1995) ............................................... 3

*SKF USA Inc. v United States*, 254 F. 3d 1002 (Fed. Cir. 2001) .................................................. 11

*SNR Roulements v. United States,* 402 F.3d 1358 (Fed.Cir.2005) ................................................. 2

*Yangzhou Bestpak Gifts & Crafts Co. v. United States,* 716 F.3d 1370 (Fed.Cir.2013) ............ 2, 3

*Yantai Timken Co., Ltd. v. United States*, 521 F. Supp. 2d 1356 (Ct. Int'l Trade 2007) ............ 6, 7

**Statutes and Regulations**

19 U.S.C. § 1677(9)(A) .................................................................................................................. 8

19 U.S.C. § 1677e .......................................................................................................................... 5

19 U.S.C. § 1677m(d) ......................................................................................................... 1, 2, 4, 5

Consolidated Plaintiffs Cabinetworks Group, Inc. f/k/a/ ACProducts, Inc., ACPI Wood Products, LLC, Cabinetworks Group Middlefield, LLC, Cabinetworks Group Michigan, LLC, Boise Cascade Building Materials Distribution LLC, and USPLY LLC (collectively, "ST&R Consolidated Plaintiffs"), by and through their attorneys, hereby submit the following reply to Defendant United States' Response to Plaintiffs' Rule 56.2 Motions for Judgment on the Agency Record (Jul. 2, 2024), ECF No. 59 ("Def. Br.") and Defendant-Intervenor Coalition for Fair Trade in Hardwood Plywood's Response to Motion for Judgment on the Agency Record (BPI Final Version, Aug. 19, 2024), ECF No. 62 ("Coalition Br.").

## I. COMMERCE'S REFUSAL TO ALLOW NEW FACTUAL INFORMATION DEPRIVED INTERESTED PARTIES OF DUE PROCESS

Commerce's failure to follow statutory mandates set forth in 19 U.S.C. § 1677m(d) and to allow new factual information ("NFI") to be placed on the record created significant due process concerns that precluded interested parties from participating in the proceedings. The facts of this proceeding demonstrate that Commerce abused its discretion by rejecting information and/or not allowing the submission of NFI as such actions are inconsistent with 19 U.S.C. § 1677m(d).

### A. Commerce's Rejection of Untimely NFI and Failure to Provide Notice to Interested Parties Regarding Perceived Deficiencies was Unreasonable and Unlawful

The interests of fairness and accuracy outweigh any burden on Commerce to consider NFI. Defendant and the Coalition place weight on Commerce's interest in finality and the burden of NFI. Def. Br. at 38-52; Coalition's Br. at 29-33. Defendant argues that "Commerce sought to build robust and complete records within the bounds of its resources and timing constraints throughout the inquiries." Def. Br. at 41 (citing Final I& D Memorandum at 63). In alleging that the case was "unique" due to "its enormity," Defendant incorrectly states that Commerce attempted to collect as much and as accurate information as possible to make a reasoned decision. *Id*. Defendant's arguments fail.

1

The size of this proceeding and the time Commerce took in conducting these inquiries were entirely of Commerce's own doing. While Commerce issued a quantity and value questionnaire and subsequent requests "to gather additional details from responding parties," Commerce failed to alert these responding Vietnamese mills of any perceived deficiency until issuance of the Preliminary Determination. *See e.g.*, Memorandum to All Interested Parties, *RE: Anti-Circumvention Inquiry of the Antidumping Duty Order on Certain Hardwood Plywood Products from the People's Republic of China: Quantity and Value Supplemental Questionnaire for Vietnamese Producers and Exporters of Certain Hardwood Plywood Products* (Feb. 22, 2021) (a request for "additional" information), P.R. 153. While Defendant is focused on the number of questionnaire responses (146) from the 37 respondents, Defendant fails to acknowledge that Commerce is the one that issued the volume of questionnaires with these additional types of document requests to this number of respondents without adhering to its own statutory notice requirements set forth in 19 U.S.C. § 1677m(d). Def. Br. at 41.

The size of this proceeding does not excuse Commerce from rendering a fair and accurate determination consistent with its statutory obligations. *See e.g.*, *Yangzhou Bestpak Gifts & Crafts Co. v. United States,* 716 F.3d 1370, 1380 (Fed.Cir.2013) (finding that there is no support in the statute or court precedent for the suggestion that administrative time constraints can override the statutory obligations of fairness and accuracy). As the Federal Circuit has stated,

> Although Commerce argues in its Final Remand Results that it was the best it could do because of the limited record, this court finds no support in this court's precedents or the statute's plain text for the proposition that limited resources or statutory time constraints can override fairness or accuracy. *See SNR Roulements v. United States,* 402 F.3d 1358, 1363 (Fed.Cir.2005) ("Antidumping laws intend to calculate antidumping duties on a fair and equitable basis.").

2

*Yangzhou Bestpak*, 716 F.3d at 1380. Here, Commerce's interest in finality and the burden on Commerce to review this information does not outweigh the interests of accuracy. *See also NTN Bearing Corp. v. United States,* 74 F.3d 1204, 1208 (Fed.Cir.1995) (noting the agency's concern over available resources and its interest in finality but noting that at the preliminary results stage, the "tension between finality and correctness simply {does} not exist").

Next, Defendant focuses on the number of supplemental questionnaires issued as evidence that Commerce "attempted to collect as much, and as accurate, information as possible to make a reasoned determination." Def. Br. at 41. Here, the number of supplemental questionnaires does not support reasonableness nor accuracy. When one looks to the substance of these supplemental questionnaires, it is evident that each supplemental request amounts to a request for a different, additional type of information not previously of record. For instance, the first supplemental questionnaire focused, in part, on documentation including commercial invoices and corresponding warehouse/inventory journals, while the second supplemental questionnaire focused, in part, on information related to HTS subheading 4408 or 4412, including information on suppliers. These were different types of information requested. *See* Letter to All Interested Parties, *RE: Anti-Circumvention Inquiry of the Antidumping Duty Order on Certain Hardwood Plywood Products from the People's Republic of China: Quantity and Value Supplemental Questionnaire for Vietnamese Producers and Exporters of Certain Hardwood Plywood Products* (Feb. 22, 2021) , P.R. 153; Letter to All Interested Parties, *RE: Anti-Circumvention Inquiry of the Antidumping and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China: Quantity and Value Second Supplemental Questionnaire for Vietnamese Producers and Exporters of Certain Hardwood Plywood Products* (June 15, 2021), P.R. 257. The number of questionnaires or responding parties does not remove Commerce's

3

obligations under 19 U.S.C. § 1677m(d).  Moreover, these supplemental questionnaires did not state or set forth any alleged or perceived deficiency that existed within questionnaire responses of record.

Finally, Defendant admits that Commerce considered deficiencies of questionnaire responses prior to the *Preliminary Determination*; yet, such consideration of deficiencies was not provided until the *Preliminary Determination.*  Specifically, Defendant submits: "{p}ut another way, for each participating company, Commerce had to analyze a minimum of three questionnaire responses, then resolve any discrepancies among the responses, the Coalition's and the information submitted by the Vietnamese government." Dr. Br. at 42.  As detailed extensively in plaintiffs' Tranche I briefs, notice of any perceived discrepancies was provided at first instance in the *Preliminary Determination*, at which time Commerce refused to allow for clarifications.  *See e.g.*, ST&R Consolidated Plaintiff's Tranche I Br. at Section IV.B.2.  Allowing interested parties the right to address these perceived deficiencies as provided pursuant to 19 U.S.C. § 1677m(d) would not "continue indefinitely the cycle of affording companies more opportunities" as the Defendant submits.  *Id*.  Rather, such actions are statutory requirements.

### B. Commerce's Actions Are Not Supported by Judicial Precedent

Defendant argues that Commerce properly relied on cases from this Court and the Federal Circuit to support the actions in the underlying proceeding and subsequent determination. Defendant incorrectly interprets judicial precedent while ignoring critical facts before Commerce in the anticircumvention proceeding.  First, Defendant's arguments that Commerce properly relied on *Essar Steel* as justification for rejecting new factual information falls short. Def. Br. at 43-45; *see also* Final I&D Memorandum at 58, P.R. 842 (*citing Essar Steel Ltd. v. United States*, 678 F.3d 1268 (Fed. Cir. 2012)).  The facts underlying *Essar Steel* are critical to understanding the reasonableness in Commerce's determinations in that instance.  Importantly, Essar, a mandatory

4

respondent in the administrative review, was asked whether it had a plant in a specific location to which the company answered no, repeatedly. *Essar Steel*, 678 F.3d at 1275. Publicly available information contradicted this information and Commerce then presented the question a second time regarding the plant's location. *Id.* Again, Essar withheld the truth about its facility. *Id*. The underlying administrative record demonstrated that the mandatory respondent provided false information and failed to produce key documents when asked. *Id*. at 1276. In affirming Commerce's refusal to accept Essar's new information, the Court noted that the "record on review included Essar's reported dishonest denials of a facility in Chhattisgarh" and concluded that reopening of the record would lead to inefficiency and delay in finality. *Id*. at 1277.

*Essar Steel* is distinct from the facts before the Court. Unlike in *Essar Steel*, Commerce's *Final Determination* is procedurally deficient as Commerce's actions in the underlying inquiries failed to follow statutory obligations set forth in 19 U.S.C. § 1677e and 19 U.S.C. § 1677m(d). While mandatory respondent Essar was asked and repeatedly denied the existence of a facility in Chhattisgath, *Essar Steel*, 678 F.3d at 1271, here Commerce failed to notify responding parties of the nature of any perceived deficiencies or ask clarifications. The NFI at issue here was to correct alleged discrepancies, which become of record at the time of issuance of the *Preliminary Determination*. This information was not withheld as it had been in *Essar Steel*. Further, Commerce's reliance on *Essar Steel* does not address ST&R Consolidated Plaintiffs' arguments that Commerce's actions in the underlying proceeding meant that the opportunity to participate in this proceeding was barred.

While true that Commerce may set reasonable deadlines, it cannot deprive interested parties of the opportunity to submit factual information on a particular issue at first instance. *See e.g., Grobest & I-Mei Indus. (Vietnam) Co., Ltd. v. U.S.,* 815 F.Supp.2d 1342, 1365 (Ct. Int'l Trade

5

2012) (finding Commerce abuses its discretion by rejecting even *untimely* factual information if the administrative burdens and interest in finality are outweighed by the statutory obligations of fairness and accuracy). In *Essar Steel*, Commerce was found to have acted reasonably in rejecting factual information in part because the party previously "had an opportunity to present its evidence . . . to Commerce during the review." *Essar Steel*, 678 F.3d at 1278. These facts for interested parties, such as ST&R Consolidated Plaintiffs, do not exist in this proceeding.

Second, Commerce misapplied the Court's decision in *Yantai Timken*. *Yantai Timken Co., Ltd. v. United States*, 521 F. Supp. 2d 1356 (Ct. Int'l Trade 2007); ST&R Consolidated Plaintiffs' Tranche I Br. at 31-32. Defendant mischaracterizes ST&R Consolidated Plaintiffs arguments by concluding that "neither Yantai Timken, nor any other case, permits Commerce to only reject untimely filed NFI if it is submitted after verification." Def. Br. at 46 (emphasis omitted). Defendant misunderstands the distinctions between the facts before the Court here and those presented in *Yantai Timken*. Def. Br. at 45-48. Critically, in *Yantai Timken*, the mandatory respondent had the opportunity to participate in the proceeding throughout the administrative review. Here, Commerce deprived ST&R Consolidated Plaintiffs, and other interested parties, the ability to adequately participate. *See e.g.*, ST&R Consolidated Plaintiffs' Tranche I Br. at 10-12.

In *Yantai Timken*, Yantai requested that Commerce conduct a review of its TRBs entries that it exported to the United States. *Yantai Timken,* 521 F.Supp.2d at 1360. During the course of the administrative review, Yantai responded to Commerce's original questionnaire and six supplemental questionnaires. *Id*. Commerce subsequently conducted a factors-of-production ("FOP") verification at Yantai's Chinese manufacturing plant and a constructed export price ("CEP") verification at the facilities of Yantai's parent company, Timken, in Ohio. *Id*. at 1361. Following verification, Commerce issued verification reports, which identified several factors of

6

production and expenses that were not verified. *Id*. In the preliminary results, Commerce applied total adverse facts available in its calculation of the dumping margins, finding that information was not available on the record to "calculate an accurate and otherwise reliable margin" and that Yantai "withheld information, failed to provide information requested by {Commerce} in a timely manner and in the form required, significantly impeded the proceeding, and provided unverifiable information." *Id*. It was after the completion of the initial questionnaire, six supplemental questionnaires, two in-person verifications in China and Ohio, and issuance of the preliminary results that Yantai requested permission from Commerce to submit additional information. *Id*. Commerce refused to accept Yantai's new factual information submitted in a case brief after Commerce conducted the verification and issued the preliminary results. *Id*.

As a mandatory respondent, Yantai was provided ample opportunity to participate and submit factual information of record in the administrative review. In fact, Commerce specifically instructed Yantai that it "must demonstrate how the data submitted in the {questionnaire} response reconciles to Timken's general ledger, cost accounting system, and financial statement." *Id*. at 1369. Yantai failed to do so despite this instruction.

The facts in Yantai detailed above demonstrate the drastically different issues before the Court in *Yantai Timkin* as compared to this proceeding. Commerce's actions in the anticircumvention inquiry before the Court barred interested parties from participating. Commerce issued a memorandum on the record defining inquiry merchandise in direct response to inquiries from interested parties concerning the definition of inquiry merchandise. *See* Letter from Mowry & Grimson PLLC to Dep't of Commerce, *Re: Investigation of the Antidumping and Countervailing Duty Orders on Hardwood Plywood Products From the People's Republic of China, Scope and Circumvention Inquiries – Vietnam Assembly: Request for Clarification of*

7

*Inquiry Merchandise* (June 17, 2020), P.R. 8. In response to inquiries from parties concerning the definition of inquiry merchandise, Commerce's clarification memorandum confirmed that "{t}he merchandise subject to these anticircumvention and scope inquiries does not include core veneers fully produced in Vietnam or a third-country that are assembled into a veneer core platform in Vietnam and combined with a face and back veneer produced in China." Clarification Memorandum at 2, P.R. 21. As such, Commerce's *Preliminary Determination* was the first instance in which (1) certain interested parties, including ST&R Consolidated Respondents as U.S. importers, were provided notice that Commerce deemed their entries inquiry merchandise and/or (2) such parties were considered interested parties pursuant to 19 U.S.C. § 1677(9)(A).

Here, companies were not provided the opportunity to ever submit information. Unlike the facts in *Yantai*, there was no "ample" opportunity to submit factual information based on the explicit actions of Commerce. Companies, including Cabinetworks, were not deemed interested parties until after the Preliminary Determination was issued. This was a direct result of Commerce's statement concerning the definition of inquiry merchandise at the time of initiation, which changed at the time of the *Preliminary Determination*.

In sum, Commerce's failure to provide interested parties with notice of perceived deficiencies and/or allow for the submission of NFI was unsupported by the administrative record, unreasonable, and contrary to law.

## II. DEFENDANT MISCHARACTERIZES ST&R CONSOLIDATED PLAINTIFFS' ARGUMENTS REGARDING CERTIFICATION

Defendant misrepresents and conflates arguments made by ST&R Consolidated Plaintiffs addressing the definition of inquiry merchandise and certification which are separate and distinct issues. Def. Br. at 34. Defendant incorrectly claims that ST&R Consolidated Plaintiffs' arguments addressing certification are based on the premise that "Commerce did not accept Respondents'

8

request that certain merchandise be exempt from the certification process." *Id*. at 34. While ST&R Consolidated Plaintiffs unequivocally aver that Commerce unlawfully expanded the definition of inquiry merchandise in the underlying proceeding, as set forth in ST&R Consolidated Plaintiffs Tranche I Brief at Section B.1., ST&R Consolidated Plaintiffs' arguments addressing certification focus on the procedural and due process issues that arose. ST&R Consolidated Plaintiffs' Tranche I Br. at 28-29.

As discussed in ST&R Consolidated Plaintiff's Brief, Commerce's *Final Determination* created procedural and due process issues related to certification. *Id*. Commerce's November 30th Memorandum acknowledged that "the unique circumstances present in these inquiries may present procedural and equity concerns" as there was not "a mechanism . . . by which exporters that are ineligible to participate in the certification program (and/or their importers) could potentially attempt to demonstrate that their 2020 and 2021 POR entries were of non-inquiry merchandise." *See* Memorandum from Kabir Archuletta, Program Manager AD/CVD Operations, Office V, to The File, *Re: Scope and Circumvention Inquiries of the Antidumping and Countervailing Duty Orders Certain Hardwood Plywood from the People's Republic of China, Subject: Extension of Deadline to Certify Entries of Hardwood Plywood and Response to Ministerial Error Allegations* (Nov. 30, 2022) at 3 ("November 30th Memorandum"), P.R. 664. Yet, despite acknowledging due process and procedural issues, Commerce's *Final Determination* failed to provide definitive procedures addressing the certification of 2020 and 2021 entries where imports were found ineligible to certify. While Commerce expanded the 2022 administrative review to include suspended entries through December 31, 2021, no clear procedures were created for the administrative review to permit the retroactive certification for imports prior to January 2022. *Certain Hardwood Plywood Products from the People's Republic of China: Final Scope*

*Determination and Affirmative Final Determination of the Antidumping and Countervailing Duty Orders,* 88 Fed Reg. 46740, 46742 (Dep't of Commerce July 20, 2023), P.R. 844. Similar issues are present in the 2023 administrative review where Commerce has not announced definitive procedures that ensure that Commerce will allow retroactive certification for imports made during the 2023 period by companies ineligible to certify that demonstrate to Commerce's satisfaction during the administrative review eligibility to certify.

Failure to provide a mechanism to address impacted imports creates serious due process issues, especially considering the extraordinary delays in issuing a final determination in the anticircumvention proceeding. Commerce's failure to establish a definitive mechanism for retroactive certification, while recognizing potential equity and procedural concerns is not only arbitrary and capricious, but flies in the face of fair play and equity and could potentially result in a company that demonstrates that its entries are eligible for certification be able to certify on a go forward but not retroactive basis.

Commerce is obligated to address antidumping and countervailing duty issues fairly and accurately. As entries of merchandise that are eligible certify are non-subject merchandise it is important that Commerce put in place procedures to ensure that antidumping and countervailing duties are not improperly assessed on non-subject merchandise. In light of the foregoing, we urge the Court to remand this matter to Commerce with instructions to put in place procedures that allow the retroactive application of certifications in the 2022 and 2023 administrative review for imports during the administrative review period, where an exporter demonstrates eligibility to certify.

### III. A REMAND IS APPROPRIATE FOR COMMERCE TO CONSIDER ITS CUSTOMS INSTRUCTIONS FOR AN AN AND GREATWOOD

As addressed in ST&R Consolidated Plaintiff's Tranche I Brief, Commerce's *Final Determination* concluded that adverse facts available did not apply to An An Plywood Joint Stock Company ("An An") and Greatwood Hung Yen ("Greatwood") and indicated that Commerce would issue instructions to CBP permitting the companies to certify. *See* ST&R Consolidated Plaintiffs' Tranche I Br. at 29-31; s*ee also* I&D Memorandum at 75-76, P.R. 842. When Commerce issued CBP instructions, however, Commerce failed to address the suspension of liquidation and/or collection of cash deposits which were put in place as a result of Commerce's *Preliminary Determination*. CBP Message No. 3215402 (Aug. 4, 2023) at para 5a.(ii), P.R. 845 (stating that these companies were "now eligible" for certification). Defendant requested a voluntary remand to "reconsider its position." Def. Br. at 67. As Defendant correctly noted, a voluntary remand is appropriate if the agency's concern is substantial and legitimate. *Id.*; *see also SKF USA Inc. v United States*, 254 F. 3d 1002, 1028 (Fed. Cir. 2001).

ST&R Consolidated Plaintiffs agree with Defendant that a voluntary remand is warranted as the issues at hand are substantial and legitimate. While Greatwood and An An were found eligible to certify, Commerce's liquidation instructions failed to address entries for the period from the date of initiation on June 17, 2020 and to the *Final Determination*. In light of the foregoing, ST&R Consolidated Plaintiffs respectfully request that the Court remand this matter to Commerce to reconsider its liquidation instructions.

### IV. ST&R CONSOLIDATED PLAINTIFFS ADOPT COMMENTS FILED BY PLAINTIFFS AND CONSOLIDATED PLAINTIFFS

ST&R Consolidated Plaintiffs hereby adopt and incorporate by reference the briefs filed by Plaintiffs DH Consolidated Plaintiffs on September 30, 2024, ECF Doc. No. 71, and Consolidated Plaintiffs on October 15, 2024 to the extent that the briefs dispute Commerce's *Final*

11

*Determination* concerning the *China Orders* as Commerce's affirmative circumvention finding was not supported by substantial evidence and was not otherwise in accordance with law.

V. **CONCLUSION**

For the reasons set forth in ST&R Consolidated Plaintiffs' opening Tranche I brief and set forth above, ST&R Consolidated Plaintiffs respectfully request that this Court hold Commerce's *Final Determination* was not supported by substantial evidence, was unreasonable, and contrary to law. ST&R Consolidated Plaintiffs respectfully request this Court to remand this matter to Commerce with instructions to issue a new determination that is consistent with this Court's decision.

                                           Respectfully Submitted,

                                           By:    /s/ Kristen Smith
                                                     Kristen Smith
                                                     Sarah E. Yuskaitis

                                                   **SANDLER TRAVIS & ROSENBERG, P.A.**
                                                   1300 Pennsylvania Avenue, N.W.
                                                   Suite 400
                                                   Washington, DC 20004
                                                   Tel: (202) 730-4965
                                                   Fax: (202) 842-2247

                                                 *Counsel to Cabinetworks Group, Inc. f/k/a/ ACProducts, Inc., ACPI Wood Products, LLC, Cabinetworks Group Middlefield, LLC, Cabinetworks Group Michigan, LLC, Boise Cascade Building Materials Distribution LLC, USPLY LLC*

Dated: October 15, 2024

**Certificate of Compliance with Chamber Procedure 2(B)(1)**

The undersigned hereby certifies that the foregoing brief contains 3,371 words, inclusive of footnotes, exclusive of the table of contents, table of authorities, and certificates of counsel, and counsel's signature block, and therefore complies with the maximum 5,000-word count limitation set forth in the Scheduling Order, ECF Doc. No. 30.

                By:      /s/ Sarah E. Yuskaitis
                        *Counsel to Cabinetworks Group, Inc. f/k/a/ ACProducts, Inc., ACPI Wood Products, LLC, Cabinetworks Group Middlefield, LLC, Cabinetworks Group Michigan, LLC, Boise Cascade Building Materials Distribution LLC, USPLY LLC*

Dated: October 15, 2024