# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

SHELTER FOREST INTERNATIONAL
ACQUISITION, INC.,

       *Plaintiff,*

  and

GREATRIVER WOOD CO., LTD., ET AL,

       *Consolidated Plaintiffs,*

  v.

UNITED STATES,

       *Defendant,*

  and

COALITION FOR FAIR TRADE IN
HARDWOOD PLYWOOD,

       *Defendant-Intervenor.*

Consol. Court No. 23-00144

## ST&R CONSOLIDATED PLAINTIFFS TRANCHE II REPLY BRIEF

William Marshall
**Sandler Travis & Rosenberg, P.A.**
675 Third Avenue
Suite 2425
New York, New York  10017
Tel: (212) 549-0138

Dated: January 2, 2025

**TABLE OF CONTENTS**

I.   COMMERCE'S JUSTIFICATION FOR APPLYING AFA IN THIS CASE IS CIRCULAR AND SELF-CONTRADICTORY ................................................................................... 1

II.  COMMERCE'S DETERMINATION TO APPLY AFA TO INNOVGREEN WAS AN ABUSE OF DISCRETION AND CONTRARY TO LAW ..................................................... 4

    A.   Use Of Innovgreen's Correction to The Species of Face and Back Veneers as Justification for The Application of Adverse Facts Available Was an Abuse of Discretion ...... 4

    B.   Commerce Improperly Applied Adverse Facts Available to Innovgreen based on a Mischaracterization of "Core Veneers" as Defined by the Scope of the Orders .................... 8

III. COMMERCE'S DETERMINATION TO APPLY AFA TO HAI HIEN WAS NOT SUPPORTED BY RECORD EVIDENCE AND WAS CONTRARY TO LAW ...................... 10

    A.   There is no Basis in the Record Conclude that Hai Hien failed to Disclose a Chinese Affiliate .............................................................................................................. 10

    B.   Commerce Improperly Applied Adverse Facts Available to Hai Hien based on a Mischaracterization of "Core Veneers" as Defined by the Scope of the Orders ................... 12

IV.  COMMERCE'S DETERMINATION TO APPLY AFA TO CAMLAM WAS NOT SUPPORTED BY RECORD EVIDENCE AND WAS CONTRARY TO LAW ...................... 14

V.   COMMERCE'S DETERMINATION TO APPLY AFA TO GOVINA WAS NOT SUPPORTED BY RECORD EVIDENCE AND WAS CONTRARY TO LAW ...................... 16

VI.  COMMERCE'S DETERMINATION TO APPLY AFA TO GROLL PLY WAS NOT SUPPORTED BY RECORD EVIDENCE AND WAS CONTRARY TO LAW ...................... 18

VII. CONCLUSION ................................................................................................... 19

**TABLE OF AUTHORITIES**

**Cases**

*Agro Dutch Industries Ltd. v. U.S.*, 31 C.I.T. 2047, 2055 (Dec. 26, 2007) .......................... 7, 19

*China Kingdom Imp. & Exp. Co., Ltd. v. United States*, 507 F.Supp.2d 1337, 1363 (Ct. Int'l Trade 2007)........................................................................................................... 11

*Goodluck India Ltd. v. United States*, 11 F. 4th 1335 (Fed. Cir. 2021) .............................. 16, 17

*Guizhou Tyre Co. v. United States*, 348 F. Supp. 3d 1261, 1270 (Ct. Int'l Trade 2018) .............. 4

*Helmerich & Payne v. United States*, 24 F.Supp.2d 304, 313 (Ct. Int'l Trade 1998) ............... 16

*Hitachi Energy USA, Inc. v. United States*, 34 F.3d 1331 (Fed. Cir. 2022) ........................... 13

*Mueller Comercial de Mexico, S. de R.L. De C.V. v. United States*, 753 F.3d 1227, 1235 (Fed. Cir. 2014) ........................................................................................................... 20

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382–83 (Fed. Cir. 2003)............. 5, 19, 22

*Pro-Team Coil Nail Enter. v. United States*, 419 F. Supp. 3d 1319, 1332 (2019)..................... 15

*Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990)........................... 18

*Saha Thai Steel Pipe Public Co., Ltd. v. United States*, 605 F.Supp.3d 1348, 1361 (Ct. Int'l Trade, Dec. 2, 2022) .................................................................................................. 3

*SKF USA Inc. v. United States*, 630 F.3d 1365, 1375 (Fed. Cir. 2011) ................................... 20

*SNR Roulements v. United States*, 402 F.3d 1358, 1363 (Fed.Cir.2005) ............................. 2, 8

*Timken US Cop. V. United States*, 434 F.3d 1345, 1353–54 (Fed. Cir. 2006) ......................... 15

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1380 (Fed.Cir.2013) 1, 2, 8

**Statutes**

19 U.S.C. § 1671(33) ............................................................................................... 13
19 U.S.C. § 1677m(d) ........................................................................................ passim
19 U.S.C. §1677m(e) ......................................................................................... passim

**Legislative HistoryOther Authorities**

Statement of Administrative Action for the implementation of the Uruguay Round Agreements Act ("SAA"), H.R. Rep. No. 103-316, at 865, *reprinted in* 1994 U.S.C.C.A.N. at 4198-997, 17

**Regulations**

19 CFR § 351.225(k) .................................................................................................. 8

**Administrative Determinations8**

*Certain Hardwood Plywood Products from the people's Republic of China*, 83 Fed. Reg. 504, 512 (Dep't. Commerce, Jan. 4, 2018) ...................................................................... 8, 14

Consolidated Plaintiffs Cabinetworks Group, Inc. f/k/a/ ACProducts, Inc., ACPI Wood Products, LLC, Cabinetworks Group Middlefield, LLC, Cabinetworks Group Michigan, LLC, Boise Cascade Building Materials Distribution LLC, and USPLY LLC (collectively, "ST&R Consolidated Plaintiffs"), by and through their attorneys, hereby submit the following reply to Defendant United States' Response to Plaintiffs' Rule 56.2 Motions for Judgment on the Agency Record (Sept. 20, 2024), ECF No. 68 ("Def. Br.") and Defendant-Intervenor Coalition for Fair Trade in Hardwood Plywood's Response to Motion for Judgment on the Agency Record (BPI Final Version, Nov. 4, 2024), ECF No. 84 ("Coalition Br.").

## I.    COMMERCE'S JUSTIFICATION FOR APPLYING AFA IN THIS CASE IS CIRCULAR AND SELF-CONTRADICTORY

Defendant's arguments in support of Commerce's application of adverse facts available ("AFA") to 20 respondents to the instant inquiry, are circular and self-contradictory.  While Commerce took more than three years to render its final determination in this inquiry, Defendant simultaneously argues that Commerce lacked the resources to comply with the statutory requirements of 19 U.S.C. § 1677m(d). Def. Br. at 13-14.  Defendant explains Commerce's failure to issue specific supplemental questionnaires by stating that "Commerce balanced the interests of obtaining sufficient information to conduct its inquiries with the need for finality." Def. Br. at 16.

First, Defendant appears to concede the point that it lacked sufficient information in this case, yet nonetheless determined to deny Innovgreen, amongst others, the ability to certify that its plywood production is not of the type alleged to have been circumventing the antidumping duty order at issue here.  *See Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1380 (Fed.Cir.2013) (finding that there is no support in the statute or court precedent for

the suggestion that administrative time constraints can override the statutory obligations of
fairness and accuracy).  Indeed, there is no support in this Court's precedents or the statute's
plain text for the proposition that limited resources or statutory time constraints can override
fairness or accuracy.  *See Yangzhou Bestpak*, 716 F.3d at 1380; *see also, SNR Roulements v.
United States*, 402 F.3d 1358, 1363 (Fed.Cir.2005) ("Antidumping laws intend to calculate
antidumping duties on a fair and equitable basis."). The mere statement that it was too difficult
for Commerce to comply with 19 U.S.C. § 1677m(d) does not relieve it of its obligations to do
so.

Defendant goes further to argue that general supplemental questionnaires issued to all
respondents was sufficient to notify respondents of deficiencies in each of their responses.  In
fact, Commerce's supplemental questionnaires in this case provided no such notice.  The
obligation for specificity in identifying deficiencies in responses has been repeatedly and
consistently articulated by the trade courts.

This Court has instructed Commerce on the requirements for applying adverse facts
available, stating:

> The legal test at issue here contains three steps.  First, to rely on facts
> otherwise available, Commerce must identify why it is doing so.  See 19
> U.S.C. § 1677e(a).  Then Commerce must "promptly inform the person
> submitting the response of the nature of the deficiency and shall, to the extent
> practicable, provide that person with an opportunity to remedy or explain the
> deficiency . . . ." 19 U.S.C. § 1677m(d).  Commerce may only apply an
> adverse inference if it finds that a respondent failed to cooperate to the best of
> its ability.  19 U.S.C. § 1677e(b)(1).

*Saha Thai Steel Pipe Public Co., Ltd. v. United States*, 605 F.Supp.3d 1348, 1361 (Ct. Int'l
Trade, Dec. 2, 2022).

2

It is therefore undisputed that compliance with 19 U.S.C. § 1677m(d) is an unconditional requirement for the application of AFA. The statute, expressly conditions the use of AFA on Commerce's notice to responding parties. Specifically, § 1677m(d) provides:

> If the administering authority or the Commission determines that a response to a request for information under this subtitle does not comply with a request, the administering authority or the Commission (as the case may be) shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent possible, provide that person with the opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this subtitle. . . .

19 U.S.C. § 1677m(d) (emphasis added).

The statutory language and judicial precedent are abundantly clear. Commerce has an obligation to notify responding parties of the nature of any perceived deficiencies and provide an opportunity to remedy the perceived deficiency. Commerce has not done so in this case. Notwithstanding Defendant's bald statements that, indeed Commerce's general supplementals issued to all respondents was sufficient notice, did not inform the respondents of the nature of any discrepancies in their respective responses. Commerce's Final Determination is therefore unsupported by the administrative record and otherwise not in accordance with law.

If the above illogical arguments weren't enough, Defendant consistently argues throughout its response that corrections to deficiencies were indicative of pervasive deficiencies and were alone sufficient justification for the application of AFA. *See* , *e.g.*, Def. Br. at 60, 64, 67. Such a position, it almost need not be said, contradicts the statutory obligation Commerce has to provide a respondent with an opportunity to remedy or explain any deficiencies. Notably, Commerce made no specific finding that the respondents failed to cooperate to the best of their ability. Moreover, there was no detailed discussion for each of the 20 respondents to which

3

Commerce applied AFA. Compliance with the 'best of its ability' standard is determined by assessing whether the respondent puts forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation. *Guizhou Tyre Co. v. United States*, 348 F. Supp. 3d 1261, 1270 (Ct. Int'l Trade 2018). No such specific finding was made here. Instead, Defendant merely points to corrections made in supplemental questionnaire responses as *de facto* evidence of respondents' failure to meet their burden of cooperating to the best of their ability.

Defendant's arguments in support of Commerce application of AFA to 20 different Vietnamese producers and exporters of plywood products must be rejected.

II.    **COMMERCE'S DETERMINATION TO APPLY AFA TO INNOVGREEN WAS AN ABUSE OF DISCRETION AND CONTRARY TO LAW**

A.    **Use Of Innovgreen's Correction to The Species of Face and Back Veneers as Justification for The Application of Adverse Facts Available Was an Abuse of Discretion**

Defendant's and the Coalition's arguments that Commerce correctly applied AFA to Innovgreen has no support in the record or court precedent and is contrary to law. There is no dispute that Innovgreen timely responded to all of Commerce' s questionnaires, including its two general supplemental questionnaires. *See* Innovgreen's Q&V Resp., P.R. 121, C.R. 135; Innovgreen's Supplemental Q&V Resp.. P.R. 236, C.R. 216-219; Innovgreen's Second Supplemental Q&V Resp., P.R. 334, C.R. 339-341. There is also no dispute that Innovgreen updated the species of face and back veneers used in the plywood it sold to the US. *See* Innovgreen's Second Supplemental Q&V Resp., P.R. 334, C.R. 339-341. Without any explanation, Commerce concluded that Innovgreen's updated species information in its Second

Supplemental Response was contradictory information and indicative of "pervasive" deficiencies. IDM at 75, P.R. 842.

Defendant claims that Commerce "appropriately determined not to construe Innovgreen's later submission correcting the species of veneers as a correction or clarification . . . " Def. Br. at 65-66.  Defendant merely cites to Commerce's own bald conclusion as the sum total of its claim that Commerce's determination was supported by record evidence in this case. Def. Br. at 67.   In fact, Commerce nowhere explains in detail—with reference to its statutory mandate—how the record in this case is "deficient" such that the use of facts available and adverse inferences was proper. *See* 19 U.S.C. §§ 1677m(d), (e); *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382–83 (Fed. Cir. 2003) (discussing use of facts available and adverse inferences).

Defendant states that Commerce's "repeated requests for information, particularly in conjunction with inconsistent data from the Vietnamese government and allegations of deficiency by petitioner, constitute sufficient notice pursuant to 19 U.S.C. §1677m(d)." Def. Br. at 67.   In fact, §1677m(d) requires Commerce to inform Innovgreen "of the nature of the deficiency," provide an opportunity "to remedy or explain" the deficiency and determine whether the response to the deficiency notice, as embodied by Innovgreen's second supplemental questionnaire response, was timely and satisfactory, or untimely or not satisfactory. *See* 19 U.S.C. § 1677m(d).  It is undisputed that Commerce raised no questions to Innovgreen concerning its second supplemental questionnaire response.  The record is also clear, and no party disputes, that Commerce issued only two supplemental questionnaires to Innovgreen, which were general supplemental questionnaires issued to all respondents and were not specific to Innovgreen. *See* Dep't Commerce Ltrs, Quantity and Value Supplemental Questionnaire for Vietnamese Producers and Exporters of Certain Hardwood Plywood Products (Feb. 22, 2021),

P.R. 154 and Quantity and Value Second Supplemental Questionnaire for Vietnamese Producers and Exporters of Certain Hardwood Plywood Products (June 15, 2021), P.R. 257.

While Defendant takes refuge in § 1677m(d) in claiming that it's two general supplemental questionnaires issued to all respondents put Innovgreen on notice of perceived discrepancies in its earlier responses.  Notwithstanding the lack of a specific supplemental questionnaire, Innovgreen provided corrected information in response to "Commerce's repeated requests for information". *See* Innovgreen's Second Supplemental Q&V Resp., P.R. 334, C.R. 339-341.  Commerce clearly did not comply with its statutory obligations regarding perceived deficiencies with Innovgreen's second supplemental questionnaire response.

Commerce should have used actual information on the record without resort to AFA.  The use of facts available to fill gaps in the record must later give way to actual information obtained during the course of the proceeding, whether obtained pursuant to 19 U.S.C. § 1677m(d) or received fulfilling the requirements of § 1677m(e). *Agro Dutch Industries Ltd. v. U.S.*, 31 C.I.T. 2047, 2055 (Dec. 26, 2007).  Thus, even if Commerce found Innovgreen's second supplemental response to be deficient or unsatisfactory, the information must still be considered if it satisfies the requirements of 19 U.S.C. § 1677m(e), which provides that Commerce shall not decline to consider information submitted by an interested party that is necessary to the determination but does not meet all applicable requirements established by Commerce if (1) the information is submitted by the deadline established for its submission, (2) can be (i.e., is capable of being) verified, (3) is not so incomplete as to be unreliable, (4) the interested party acts to the best of its ability to provide the information and meet Commerce's requirements with respect to the information, and (5) can be used without undue difficulties. 19 U.S.C. § 1677m(e). The deficiency of the response is not, by itself, a reason for rejecting other pertinent information

therein. *See* the Statement of Administrative Action for the implementation of the Uruguay Round Agreements Act ("SAA"), H.R. Rep. No. 103-316, at 865, *reprinted in* 1994 U.S.C.C.A.N. at 4198-99.  There was thus no basis on the record in this case to apply AFA to Innovgreen on the basis of an inconsistency between Innovgreen's second supplemental questionnaire response and its earlier responses.

Defendant explains its failure to issue a specific supplemental to Innovgreen in order to clarify its second supplemental questionnaire response by stating that "Commerce balanced the interests of obtaining sufficient information to conduct its inquiries with the need for finality." Def. Br. at 16.  First, Defendant appears to concede the point that it lacked sufficient information in this case, yet nonetheless determined to deny Innovgreen, amongst others, the ability to certify that its plywood production is not of the type alleged to have been circumventing the antidumping duty order at issue here.  *See Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1380 (Fed.Cir.2013) (finding that there is no support in the statute or court precedent for the suggestion that administrative time constraints can override the statutory obligations of fairness and accuracy).  Indeed, there is no support in this Court's precedents or the statute's plain text for the proposition that limited resources or statutory time constraints can override fairness or accuracy.  *See Yangzhou Bestpak*, 716 F.3d at 1380; *see also*, *SNR Roulements v. United States*, 402 F.3d 1358, 1363 (Fed.Cir.2005) ("Antidumping laws intend to calculate antidumping duties on a fair and equitable basis."). The mere statement that it was too difficult for Commerce to comply with 19 U.S.C. § 1677m(d) does not relieve it of its obligations to do so.

**B. Commerce Improperly Applied Adverse Facts Available to Innovgreen based on a Mischaracterization of "Core Veneers" as Defined by the Scope of the Orders**

Defendant asserts that Commerce's determination that Innovgreen failed to report the importation of core veneers from China is supported by evidence on the record based on a comparison Commerce proports to have done between Innovgreen's imported face and back veneers and the core veneers reported by other respondents. Def. Br. at 69; IDM at 79, P.R. 842. In fact, there is nothing on the record, other than Commerce's pure guesswork—without more— that Innovgreen's imported face and back veneers were not, in fact, face and back veneers but were core veneers.

At the outset, we note that the scope of these orders describes the different types of veneers used in the production of subject plywood panel. *See Certain Hardwood Plywood Products from the people's Republic of China*, 83 Fed. Reg. 504, 512 (Dep't. Commerce, Jan. 4, 2018) ("Scope Definition"). The Scope Definition provides, in relevant part, that "[t]he core of hardwood and decorative plywood consists of the layer or layers of one or more material(s) that are situated between the face and back veneers." *Id*. Thus, by its own definition, the distinction between a "core veneer" and a "face" or "back veneer" is determined based solely upon the use of the particular veneer in the production of the plywood panel and is not determined based upon a defined set of physical characteristics.

Rather than ask any questions on the production process, which would have been consistent with its analysis under 19 CFR § 351.225(k), Commerce purported to have conducted some analysis of veneer thickness in order to make its conclusion as to whether the veneer is a core or face and back. IDM at 79, P.R. 842. This analysis on veneer thickness was always

8

irrelevant to this distinction as confirmed by the United States International Trade Commission the "Commission") in its investigation, a chart of veneer thickness compiled by which was relied upon in part in Commerce's determination. *Id.* In that chart, Commerce disregarded data showing imported face and back veneers similar in thickness to that imported into Vietnam by Innovgreen. *Id.* This, of course, is consistent with how a "core veneer" is distinguished from "face" and "back veneers," which is based on the use of the veneers and not the thickness characteristic in determining a veneer's application.

Given the significance of use of the veneers in determining whether they are "core veneers" and the data from the Commission that establishes that veneers of varying thickness, including a thickness consistent with that imported by Innovgreen, are regularly used as face or back veneers, Commerce should have made inquiries of Innovgreen as to its production process and how the imported veneers are used in the production of plywood panels. As discussed throughout, if Commerce found Innovgreen's response that it did not import core veneers from China, to be deficient, should have notified Innovgreen of that fact and offer it an opportunity to correct those deficiencies pursuant to 19 U.S.C. §1677m(d). Therefore, "the record in this case might not be in the current unsatisfactory state had Commerce complied with § 1677m(d) . . . " *China Kingdom Imp. & Exp. Co., Ltd. v. United States*, 507 F.Supp.2d 1337, 1363 (Ct. Int'l Trade 2007).

III.    **COMMERCE'S DETERMINATION TO APPLY AFA TO HAI HIEN WAS NOT SUPPORTED BY RECORD EVIDENCE AND WAS CONTRARY TO LAW**

    **A. There is no Basis in the Record Conclude that Hai Hien failed to Disclose a Chinese Affiliate**

Defendant makes much of the fact one of Hai Hien's shareholders was formerly an employee of a Chinese plywood producer that was verified during the initial Less-Than Fair-Value Investigation of Hardwood Plywood from China. Def. Br. at 52.  According to Defendant, this fact established an affiliation between the Chinese producer and Hai Hien, which was undisclosed by Hai Hien in the Circumvention Inquiry at issue in this case. *Id.*  In fact, the record is clear that Hai Hien's majority shareholder was **formerly** an employee of a Chinese plywood manufacturer and respondent to the initial investigation of the Orders with no overlap between the shareholder's investment in Hai Hien and his employment with the Chinese manufacturer. *See* Hai Hien Second Supplemental Questionnaire Resp. at 3, 5 (P.R. 284, C.R. 242).  The record is equally clear that Hai Hien provided full and accurate responses to questions concerning this shareholder's relationships. *Id.*

There is no evidence, and no attempt to collect additional evidence, that would point to any on-going employer-employee relationship between the Chinese manufacturer and the Hai Hien's shareholder. To the contrary, Hai Hien's second supplemental questionnaire response identifies the Chinese suppliers from which it purchases and imports certain inputs. Significantly, Hai Hien's shareholder's former employer is not amongst them. *See* Hai Hien Second Supplemental Questionnaire Resp. at Exhibit SQ2-1 (P.R. 284, C.R. 242).

Significantly, Defendant cites no statutory support or court precedent for the proposition that a former employee of a company creates an affiliation between the former employer and any

future business in which the former employee engages. An affiliation, under 19 U.S.C.

§1671(33) is defined as:

> (33) Affiliated persons
>
> The following persons shall be considered to be "affiliated" or "affiliated persons":
>
> > (A)Members of a family, including brothers and sisters (whether by the whole or half-blood), spouse, ancestors, and lineal descendants.
> >
> > (B)Any officer or director of an organization and such organization.
> >
> > (C)Partners.
> >
> > (D)Employer and employee.
> >
> > (E)Any person directly or indirectly owning, controlling, or holding with power to vote, 5 percent or more of the outstanding voting stock or shares of any organization and such organization.
> >
> > (F)Two or more persons directly or indirectly controlling, controlled by, or under common control with, any person.
> >
> > (G)Any person who controls any other person and such other person.
> >
> > For purposes of this paragraph, a person shall be considered to control another person if the person is legally or operationally in a position to exercise restraint or direction over the other person.

19 U.S.C. § 1671(33).

While current employees are properly affiliated with their employers, there are no facts on the record of this case that shows, or even indicates, that Hai Hien's shareholder remains an employee of any Chinese plywood producer or exporter. As Hai Hien presented in its first and second supplemental questionnaire responses, its shareholder has only worked for Hai Hien since joining the restructured company as its majority shareholder. *See* Hai Hien Supplemental Questionnaire Resp. at 2-3 (P.R. 189, C.R. 167); Hai Hien Second Supplemental Questionnaire Resp. at 3, 5 and Exht SQ3-1 (P.R. 284, C.R. 242). Commerce never asked about any alleged affiliation over the course of more than year between Hai Hien's last supplemental questionnaire response and Commerce's *Preliminary Determination*.

It is axiomatic that Commerce must give respondents notice when any deficiencies are identified in submissions and must provide parties with an opportunity to respond. *See Hitachi Energy USA, Inc. v. United States*, 34 F.3d 1331 (Fed. Cir. 2022). Notably, the *Hitachi Energy* court stated that "Commerce has no authority to apply adverse facts and inferences unless respondent has failed to provide requested information when notified of the deficiency, and has not acted to the best of its ability in responding to such requests. *Hitachi Energy* 34 F.3d at 1385. The record in this case clearly establishes that Hai Hien fully cooperated with Commerce's scope and circumvention inquiries. Hai Hien provided full, complete and timely responses to all questionnaires issued by Commerce. There was therefore no reason not to further inquire with Hai Hien concerning any perceived deficiencies in its responses, as is Commerce's obligation under 19 U.S.C. § 1677m(d). Failure by Commerce to do so renders the application of AFA to Hai Hien on this basis, unsupported by record evidence and contrary to law.

**B. Commerce Improperly Applied Adverse Facts Available to Hai Hien based on a Mischaracterization of "Core Veneers" as Defined by the Scope of the Orders**

Defendant asserts that Commerce's determination that Hai Hien mischaracterized core veneers from China as face and back veneers. *See* Def. Br. at 56; IDM at 92-93. Consistent with reply provided under **Section II.B.** above, there is nothing on the record, other than Commerce's pure guesswork—without more—that Hai Hien imported face and back veneers were not, in fact, face and back veneers but were core veneers.

Determining whether Hai Hien's imported veneers were "core veneers" should have involved Commerce making inquiries of Hai Hien as to its production process and how the imported veneers are used in the production of plywood panels. As discussed throughout, if

Commerce found Hai Hien's response on this issue to be deficient, it should have notified Hai Hien of that fact and offer it an opportunity to correct those deficiencies pursuant to 19 U.S.C. §1677m(d).

Although Commerce's *Preliminary Determination* was the first instances where Hai Hien became aware that the Department found its responses on its importation of veneers was deficient, Hai Hien nevertheless attempted to provide factual information to Commerce to address Hai Hien's use of the imported veneers as face veneers, which information was rejected by Commerce. *See* Letter from Dep't of commerce, *Rejection of Hai Hien's Submission* (Oct. 25, 2022) (rejecting Exhibit 1 in Hai Hien's Sept. 16, 2022 Rejected Comments), P.R. 630.  This Court and the U.S. Court of Appeals for the Federal Circuit have repeatedly held that Commerce must accept corrections when there is sufficient time for Commerce to consider the submission prior to the final determination. *See, e.g.*, *Timken US Cop. V. United States*, 434 F.3d 1345, 1353–54 (Fed. Cir. 2006) (holding that the court did not err by remanding a case to Commerce for analysis of corrective evidence that was submitted after the preliminary results but before the final results); *Pro-Team Coil Nail Enter. v. United States*, 419 F. Supp. 3d 1319, 1332 (2019) (finding that finality concerns were not implicated when the information was submitted eight months prior to publication of the final results); *see also*, *Marmen Inc. v. United States*, 545 F.Supp.3d 1305 (Ct. Int'l Trade 2021).

Defendant claims that information from the Commission establishing that veneers of a thickness similar to Hai Hien's imported veneers was irrelevant because that information did not specifically relate to plywood produced in Vietnam. Def. Br. at 57.  This argument must fail.  As discussed under **Section II.B.**, Commerce's own scope language distinguishes "core veneers' from "face" and "back veneers' based on their use in production. *See Certain Hardwood*

13

*Plywood Products from the people's Republic of China*, 83 Fed. Reg. 504, 512 (Dep't. Commerce, Jan. 4, 2018) ("Scope Definition"). As such, it is of no relevance whatsoever whether plywood panels produced using face and back veneers of greater thickness are produced in Vietnam or elsewhere. What **is** important, is whether veneer of a thickness similar to that imported by Hai Hien is ordinarily used as face or back veneer—undoubtedly it is—and whether Hai Hien in fact used its imported veneer as face or back veneer—a question Commerce never asked.

The record in this case relating to the characterization of imported veneer as either core or face and back veneer is deficient. This deficiency is entirely the creation of Commerce. It was a clear error for Commerce to refuse to consider clarifying information on the use of the imported veneers more than nine months before the *Final Determination* was issued in the inquiries subject to this case. Therefore, the application of AFA is inappropriate. thicker veneers are used for There is therefore no basis in the record to conclude that Commerce complied with § 1677m(d) and in concluding that Hai Hien's imported veneers were core veneers.

## IV.  COMMERCE'S DETERMINATION TO APPLY AFA TO CAMLAM WAS NOT SUPPORTED BY RECORD EVIDENCE AND WAS CONTRARY TO LAW

Defendant claims that Commerce's rejection of Camlam's corrective information at verification, claiming that the information was beyond minor corrections and amounted to new factual information. Def. Br. at 32. In support of this proposition, Defendant relies on *Goodluck India Ltd. v. United States*, 11 F. 4th 1335 (Fed. Cir. 2021). However, Commerce's failure to consider information presented at verification and failure to correct factually incorrect

information is contrary to Commerce's obligation to conduct fair and accurate proceedings. *See e.g., Helmerich & Payne v. United States*, 24 F.Supp.2d 304, 313 (Ct. Int'l Trade 1998).

Defendant's reliance on *Goodluck* is misplaced. In *Goodluck*, the respondent presented revised product characteristics, amongst other new factual information, at the verification. *See id.* At 1343.  In that case, the court held that Commerce's rejection of the revised physical characteristics was reasonable because "any attempts to correct these errors would involve both extensive SAS programming and complex calculations to Goodluck's cost database." *Id.* (citations omitted).  This is not the circumstance with which Commerce was presented at Camlam's verification.

In this case, the minor correction to Camlam's Q&V response were not material to the determination of circumvention.  Camlam's Redacted Case Brief at 5, P.R. 795.  The administrative record demonstrates that had Commerce conducted the verification, the information would have reconciled to Camlam's sales records and financial statements. *Id.*  The record demonstrates that Camlam cooperated fully with the circumvention inquiries and was prepared for onsite verification.  Commerce's refusal to hear the company's explanations regarding the preparation of the Q&V minor corrections was unreasonable.  Moreover, the errors in Commerce's Verification Report demonstrates that Commerce relied on incorrect and/or unsupported record evidence in its application of AFA to Camlam.  As a result, Commerce' application of AFA to Camlam is unsupported by the administrative record and contrary to law.

Commerce routinely considers minor corrections as part of the verification process.  In this proceeding, Commerce refused to listen to explanations regarding the minor corrections prior to ending verification. *See Letter from Fox Rothschild LLP to Dep't of Commerce, Re: Certain Hardwood Plywood Products from the People's Republic of China: Anti-Circumvention*

*Inquiry – Vietnam Assembly, Submission of Redacted Letter in Lieu of Case Brief* (Jan. 31, 2023) ("Camlam's Redacted Case Brief") at 2-3, P.R. 795.  Commerce's rejection of explanations of factual information, disregard for incorrect factual information on the record, and refusal to accept Camlam's explanation of questionnaire responses presents is contrary to Commerce's duty to conduct fair and accurate proceedings.  *See e.g., Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990) (standing for the position that "the basic purpose of the statute – determining current margins as accurately as possible.").

## V.    COMMERCE'S DETERMINATION TO APPLY AFA TO GOVINA WAS NOT SUPPORTED BY RECORD EVIDENCE AND WAS CONTRARY TO LAW

Defendant claims that substantial evidence supports Commerce's determination that Govina's submissions were unreliable. " Def. Br. at 63.  Once again, Defendant relied entirely on the fact that a respondent—Govina—corrected information submitted in its initial questionnaire response within its response to Commerce's supplemental questionnaire. Def. Br. at 62-63. As is Commerce's pattern in this case, the agency offers no detailed explain or justification for the rejection of a subsequent correction within Govina's second supplemental questionnaire response.  As a result, it cannot be said that Commerce's application of facts available and adverse inferences was proper. *See* 19 U.S.C. §§ 1677m(d), (e); *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382–83 (Fed. Cir. 2003) (discussing use of facts available and adverse inferences).

As stated elsewhere in this reply, the statute requires Commerce to inform Innovgreen "of the nature of the deficiency," provide an opportunity "to remedy or explain" the deficiency and determine whether the response to the deficiency notice, as embodied by Innovgreen's second supplemental questionnaire response, was timely and satisfactory, or untimely or not satisfactory.

16

*See* 19 U.S.C. § 1677m(d).  It is undisputed that Commerce raised no questions to Govina concerning its second supplemental questionnaire response.

Commerce should have used actual information on the record without resort to AFA.  The use of facts available to fill gaps in the record must later give way to actual information obtained during the course of the proceeding, whether obtained pursuant to 19 U.S.C. § 1677m(d) or received fulfilling the requirements of § 1677m(e). *Agro Dutch* at  2055.  Thus, even if Commerce found Govina's second supplemental response to be deficient or unsatisfactory, the information must still be considered if it satisfies the requirements of 19 U.S.C. § 1677m(e), which provides that Commerce shall not decline to consider information submitted by an interested party that is necessary to the determination but does not meet all applicable requirements established by Commerce if (1) the information is submitted by the deadline established for its submission, (2) can be (i.e., is capable of being) verified, (3) is not so incomplete as to be unreliable, (4) the interested party acts to the best of its ability to provide the information and meet Commerce's requirements with respect to the information, and (5) can be used without undue difficulties. 19 U.S.C. § 1677m(e). The deficiency of the response is not, by itself, a reason for rejecting other pertinent information therein. *See* SAA.  There was thus no basis on the record in this case to apply AFA to Govina on the basis of an inconsistency between Govina's second supplemental questionnaire response and its earlier responses.

The application of AFA to Govina, a cooperating respondent, for the refusal of its unaffiliated supplier to provide Commerce with the requested customs declaration is contrary to law.  Defendant claims that Govina withheld critical sourcing information, thereby justifying application of AFA. Def. Br. at 65.  Govina's inability to provide the customs declaration for the first entry of plywood under each tariff subheading under which its inputs were imported did not

justify applying an adverse inference.  The record is clear that Govina fully and completely cooperated in the underlying scope and circumvention inquiries at issue here.  The courts have held that when a cooperating entity—such as Govina—has no control over its non-cooperating suppliers, an adverse inference is potentially unfair to the cooperating party. *Mueller Comercial de Mexico, S. de R.L. De C.V. v. United States*, 753 F.3d 1227, 1235 (Fed. Cir. 2014). (*citing SKF USA Inc. v. United States*, 630 F.3d 1365, 1375 (Fed. Cir. 2011)).

More than simply refusing to cooperate, Govina provided supporting entry documents including the invoice, packing list and bill of lading, which documents included the tariff subheadings used for the importation of the inputs into Vietnam. Govina's Second Supplement Questionnaire Response at Exhibit 2, P.R. 343, C.R. 355. There is no justification for applying AFA to Govina in this instance.  No policy of inducement of cooperation or avoidance of evasion is served by the application of AFA to Govina in this instance.

## VI.    COMMERCE'S DETERMINATION TO APPLY AFA TO GROLL PLY WAS NOT SUPPORTED BY RECORD EVIDENCE AND WAS CONTRARY TO LAW

Defendant argues that Commerce's properly applied AFA to Groll Ply because it filed to report information about affiliated Chinese plywood input suppliers. Def. Br. at 60.   Defendant seems to have misunderstood the record in this case.   Contrary to Defendant's contention, Groll Ply maintained all along its affiliation with this Chinese company.  Groll Ply Administrative Case Brief at 15, P.R. 761, C.R. 600. at 15-16 (citing to Groll Ply's First Supplemental Response dated March 29, 2021, P.R., C.R. ).  Groll Ply initially reported, in error, that the Chinese company is not a producer or exporter of plywood or plywood products from China.  However, Groll Ply corrected its earlier response regarding this affiliation and submitted documentation in the second supplemental response.  Groll Ply's Supplemental Q&V, P.R. 238, C.R. 221-222.

18

Once again, consistent with its pattern in this case, Commerce improperly characterized this correction as a contradiction. Clarifying and, where necessary, correcting information is a normal part of Commerce's questionnaire process. As Commerce itself recognizes, the "best of its ability" standard set forth in the statute, "does not require perfection and recognizes that mistakes sometimes occur." *Nippon Steel Corp. V. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003). Correction of information in a supplemental questionnaire response is not evidence of noncooperation or withholding of information in an anticircumvention proceeding. Rather, it is evidence of a company cooperating to the best of its ability to provide full and accurate information. Moreover, if Commerce found this information deficient or contradictory, Commerce is obligated to issue a supplemental questionnaire or permit Groll Ply the opportunity to explain or clarify its submission. *See* 19 U.S.C. § 1677m(d). Once again, Commerce failed to do so.

Finally, Commerce 's determination that trade data from the Government of Vietnam undermined the responses of Groll Ply is contrary to law. Commerce failed to identify any deficiencies in accordance with 19 U.S.C. 1677m(d). As a result, Commerce's failure to provide Groll Ply with the statutorily required notice of a perceived deficiency render its Final Determination and application of AFA to Groll Ply unsupported by substantial evidence and otherwise contrary to law.

## VII.    CONCLUSION

For the reasons set forth in ST&R Consolidated Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record and supporting Tranche II brief and set forth above, ST&R Consolidated Plaintiffs respectfully request that this Court hold Commerce's *Final Determination* is not

supported by substantial evidence and is contrary to law. ST&R Consolidated Plaintiffs respectfully request this Court to remand this matter to Commerce with instructions to issue a new determination that is consistent with this Court's decision.

Respectfully Submitted,

By:    /s/ William Marshall
       William Marshall

**SANDLER TRAVIS & ROSENBERG, P.A.**
675 Third Avenue
Suite 2425
New York, New York, 10017
Tel: (212) 549-0138

*Counsel to Cabinetworks Group, Inc. f/k/a/
ACProducts, Inc., ACPI Wood Products,
LLC, Cabinetworks Group Middlefield,
LLC, Cabinetworks Group Michigan, LLC,
Boise Cascade Building Materials
Distribution LLC, USPLY LLC*

January 2, 2025

**CERTIFICATE OF COMPLIANCE**

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement set forth in the Court's order of  August 20, 2024  . The word count for ST&R Consolidated Plaintiffs' Tranche II Reply Brief, as computed by Sandler, Travis & Rosenberg P.A.'s word processing system (Microsoft Word), is **5,637** words.


 /s/ William Marshall
William Marshall

Counsel to ST&R Consolidated Plaintiffs,
Cabinetworks Group, Inc. f/k/a/ ACProducts, Inc.,
ACPI Wood Products, LLC, Cabinetworks Group
Middlefield, LLC, Cabinetworks Group Michigan,
LLC, Boise Cascade Building Materials
Distribution LLC, USPLY LLC

January 2, 2025