## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SHELTER FOREST INTERNATIONAL ACQUISITION, INC., <br><br> Plaintiff, <br><br> GREATRIVER WOOD CO., LTD (a.k.a. CONG TY TNHH GREATRIVER WOOD and GREATRIVER WOOD COMPANY LIMITED, ET. AL. <br><br> Consolidated Plaintiffs, <br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD, <br><br> Defendant-Intervenor. | **PUBLIC VERSION** <br><br> Before: Hon. Mark A. Barnett, Chief Judge <br><br> Consol. Court No. 23-00144 |

**GREATRIVER WOOD CO., LTD's
TRANCHE II REPLY BRIEF
IN SUPPORT OF RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

                                                            Stephen Brophy, Esq.

                                                          HUSCH BLACKWELL, LLP
                                                          1801 Pennsylvania Avenue
                                                          NW Suite 1000
                                                          Washington, DC 20006
                                                          Tel. (202) 378-2408

                                                          *Counsel for Greatriver Wood Co., Ltd.*

Dated: January 31, 2025

**PUBLIC VERSION**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1
II. ARGUMENT ...................................................................................................................... 1
   A. Greatriver Joins-In and Incorporates by Reference the Arguments Filed by Plaintiffs and Other Consolidated Plaintiffs ................................................................................................ 1
   B. Commerce Unreasonably Used Total AFA Against Greatriver and Excluded Them from the Certification Process ........................................................................................................ 2
      1. Commerce was Required to Issue a Supplemental Questionnaire ........................... 2
      2. The Three Issues Identified by Commerce Do Not Singly or Combined Justify the Application of Total Adverse Facts Available ...................................................................... 4
III. CONCLUSION ................................................................................................................ 10

**PUBLIC VERSION**

## TABLE OF AUTHORITIES

### Cases

*Bowe–Passat v. United States,* 17 CIT 335, 343 (1993) .................................................................. 4

*NSK Ltd. v. United States*, 910 F. Supp. 663, 671 (1995) ................................................................ 4

*Ta Chen Stainless Steel Pipe, Ltd. v. United States*, 23 CIT 804, 820 (1999) ................................. 4

*Wash. Int'l Ins. Co. v. United States*, 33 C.I.T. 1023, 1033, fn. 16 (2009) ...................................... 4

### Statutes

19 U.S.C. § 1677m(d) ...................................................................................................................... 2

I.  **INTRODUCTION**

On behalf of Greatriver Wood Co., Ltd., a.k.a. Cong Ty TNHH ("Greatriver"), we respectfully submit the following reply brief in further support of Greatriver's Rule 56.2 Motion for Judgment on the Agency Record, which addresses the U.S. Department of Commerce's ("Commerce") application of total adverse facts available to Greatriver in the scope and circumvention inquiries at issue in this case. *See* ECF No. 52 (the "Tranche 1I Brief").  This brief is submitted in reply to the response briefs filed by Defendant United States ("Def. Resp. Br.", ECF No. 68) and Defendant Intervenor the Coalition for Fair Trade in Hardwood Plywood ("Def. Int. Resp. Br.", ECF No. 85).

II.  **ARGUMENT**

A.  **Greatriver Joins-In and Incorporates by Reference the Arguments Filed by Plaintiffs and Other Consolidated Plaintiffs**

Greatriver hereby joins in and incorporates by reference the arguments made by DeKieffer & Horgan Consolidated Plaintiffs[1] and Sandler Travis & Rosenberg Consolidated Plaintiffs[2] in their reply briefs filed on January 2, 2025 (ECF No. 99 and 101) to the extent that their arguments impact Greatriver. Greatriver also joins in, and incorporates by reference, the arguments made by other Plaintiffs and Consolidated Plaintiffs in their reply briefs filed on January 31, 2025 to the extent that their arguments impact Greatriver.  Greatriver offers the arguments below to supplement those submissions.

---

[1] American Woodmark Corporation, Del Valle Kahman & Company, Ike Trading Company Limited, Pittsburgh Forest Products, Panoply Wood Products USA Inc., American Pacific Plywood, Inc., Eagle Industries Company Limited, Golden Bridge Industries Pte. Ltd., Lechenwood Viet Nam Company Limited, Arrow Forest International Co., Ltd., Her Hui Wood (Vietnam) Co., Vietnam Zhongjia Wood Company Limited, Long LUU Plywood Production Co., Ltd., and TEKCOM Corporation.
[2] Cabinetworks Group, Inc. f/k/a/ ACProducts, Inc., ACPI Wood Products, LLC, Cabinetworks Group Middlefield, LLC, Cabinetworks Group Michigan, LLC, Boise Cascade Building Materials Distribution LLC, and USPLY LLC.

### B. Commerce Unreasonably Used Total AFA Against Greatriver and Excluded Them from the Certification Process

In applying total adverse facts available to Greatriver, Commerce relied on three alleged errors or deficiencies in Greatriver's submissions: (1) the alleged failure to report a supplier of Chinese inputs; (2) the alleged failure to consistently identify the species of wood Greatriver used to produce hardwood plywood; and (3) the alleged failure to answer one of Commerce's questions correctly. At no time did Commerce inform Greatriver that Commerce had identified these issues with its responses or issue Greatriver a supplemental questionnaire to resolve these issues. Moreover, these alleged errors or inconsistencies did not create a material gap in the record that justified the use of facts available with adverse inferences.

### 1. Commerce was Required to Issue a Supplemental Questionnaire

These three issues could have been easily resolved through the issuance of a supplemental questionnaire. To the extent Commerce believed that any of Greatriver's responses were deficient, it had a statutory obligation to provide Greatriver an opportunity to remedy or explain under the statute:

> {i}f the administering authority ... determines that a response to a request for information under this subtitle does not comply with the request, the administering authority ... shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of ... reviews under this subtitle.

19 U.S.C. § 1677m(d). Instead of following the statutory directive, Commerce abused its discretion by first notifying Greatriver of its concerns only in its preliminary determination after the factual record had closed, and then repeatedly rejecting any attempt by Greatriver to supplement the record with additional information.

Defendant and Defendant-Intervenor argue that Commerce acted reasonably by not issuing a supplemental questionnaire because it had already issued two supplemental questionnaires and several company-specific questionnaires. Def. Resp. Br. at 17 and Def. Int. Resp. Br. at 9. However, Commerce never issued a supplemental questionnaire to deal with the three specific issues that Commerce identified with respect to Greatriver's responses. Commerce never identified the three alleged deficiencies with Greatriver's responses and never provided Greatriver with an opportunity to remedy those alleged deficiencies as required by the statute. Moreover, Commerce had ample time to seek clarification from Greatriver but chose not to. Greatriver submitted its Second Supplemental Response responding to Commerce's last questionnaire on July 9, 2021. **CR280**; **PR310**. Commerce did not issue its preliminary determination until July 2022, more than a year later. Preliminary Determination, July 29, 2022, **PR 415**, and accompanying Issues and Decision Memorandum, July 25, 2022, **PR 409.**

Defendant also argues that it was not practical to issue more supplemental questionnaires because it needed the time to review the voluminous information already on the record. Def. Resp. Br. at 14. However, the fact that the record contained a voluminous amount of information was caused by the procedures created by Commerce. The number of responses received by Commerce was the result of its own misguided decisions. Instead of simply requiring a response to the quantity and value questionnaires from the 10 largest exporters, for example, Commerce required a response from 57 companies. **PR 62.** Commerce cannot legitimately create an unreasonably unwieldy process and then complain that it was overwhelmed by its own process and thus had too much work to issue a supplemental questionnaire in accordance with the statute.

3

Nor can Defendant and Defendant-Intervenor simply rely on the mantra that it is respondent's responsibility to build an accurate record. Def. Resp. Br. at 112 and Def. Int. Resp. Br. at 11. Commerce, not respondents, has the obligation to ask questions to gather the information it needs. "{I}t is Commerce, not the respondent, which bears the burden of asking questions{,}" and Commerce must ask "clear" questions "to let the respondent know what information it really wants." *Ta Chen Stainless Steel Pipe, Ltd. v. United States,* 23 CIT 804, 820 (1999); *NSK Ltd. v. United States,* 910 F. Supp. 663, 671 (1995) ("{r}espondents should not be required to guess the parameters of Commerce's interpretation of a phrase in the statute"); *see also Wash. Int'l Ins. Co. v. United States*, 33 C.I.T. 1023, 1033, fn. 16 (2009). The Court will not endorse "an investigation where {Commerce} sent out a general questionnaire and a brief deficiency letter, then effectively retreated into its bureaucratic shell, poised to penalize {respondent} for deficiencies not specified in the letter that {Commerce} would only disclose after it was too late, i.e., after the preliminary determination." *Bowe–Passat v. United States,* 17 CIT 335, 343 (1993). That is exactly what Commerce did in this case. Moreover, the three issues do not individually or combined provide.

### 2. The Three Issues Identified by Commerce Do Not Singly or Combined Justify the Application of Total Adverse Facts Available

#### a. Supplier Issue

In applying total adverse facts available to Greatriver, Commerce partly relied on the claim that Greatriver failed to report a supplier of Chinese inputs, specifically **[**

**]**, based on information that Commerce received from the Government of Vietnam. AFA Memorandum at 9, **PR 410**, **CR412** and Final IDM at 89, **PR842**. Commerce made this determination despite the fact that Greatriver reported that its Vietnamese supplier,

4

**[         ]**, imported face veneers from **[                              ]**, which means that there was no information missing from the record. Second Supplemental Response at Exhibits S-1, **PR 310**; **CR 280-282**.

Defendant claims that Greatriver's own submissions indicate a contradiction, essentially reporting both that it did and did not import inputs from **[          ]** and states that it was Greatriver's responsibility to build an accurate record because the information necessary to conduct these inquiries was in its possession. Def. Resp. Br at 112. Defendant Intervenor likewise argues that Greatriver did not report the supplier at issue in response to the question asking Greatriver to report its own suppliers. Def. Int. Resp. Br. at 33. As argued above, this issue could have been easily resolved by the issuance of a supplemental questionnaire as required by the statute.

In its final determination, Commerce also disregarded the fact that the allegedly missing information was not material to Commerce's determination as the information related to inputs from China that were used to produce *face and back* veneers, not *core* veneers, and Commerce only found circumvention in cases where *core* materials were imported from China. Such information would not be relevant to determining whether Greatriver produced plywood using any of the investigated production scenarios, Nor would the alleged omission contradict the information provided by Greatriver demonstrating that it only produces plywood using Vietnamese-origin cores. Letter to Commerce, *Certain Hardwood Plywood Products from the People's from Republic of China: Quantity and Value Response* (Oct. 1, 2020) ("Initial Response"), **PR 94**; **CR 45-46**.

Defendant claims that it was Commerce's role to determine what information is relevant to the determination. Def. Resp. Br. at 112. However, Defendant does not adequately explain

how the source of face or back veneers is relevant to the circumvention inquiry. While Defendant claims that multiple production scenarios covered by the scope inquiry refer to face and back veneers (Def. Resp. Br. at ,113), the scope of the inquiry clearly demonstrates that circumvention only occurs if the core materials are imported from China, regardless of the source of the face and back veneers.

i. Face veneer, back veneer, and **assembled core components manufactured in China** (e.g., veneer core platforms) manufactured in China and assembled in Vietnam;

ii. Fully assembled veneer **core platforms manufactured in China** that are combined in Vietnam with face and/or back veneers produced in Vietnam or third countries;

iii. **Multi-ply panels of glued core veneers manufactured in China that are combined in Vietnam to produce veneer core platforms** and combined with either a face and/or back veneer produced in China, Vietnam, or a third country;

iv. Face veneer, back veneer, and **individual core veneers produced in China** and assembled into hardwood plywood in Vietnam;

v. **Individual core veneers manufactured in China** and processed into a veneer core platform in Vietnam and combined with a face and/or back veneer produced in Vietnam or other third country.

*Certain Hardwood Plywood Products from the People's Republic of China: Initiation of Anti-Circumvention Inquiries and Scope Inquiries on the Antidumping Duty and Countervailing Duty Orders; Vietnam Assembly*, 85 Fed. Reg. 36,530, 35,531. n.12 (June 17, 2020), **PR 4**. Therefore, even if Greatriver failed to report a supplier of face and back veneers, the missing information was not relevant to Commerce's circumvention determination.

      b.   <u>Wood Species Issue</u>

Commerce also applied total adverse facts available to Greatriver based on a finding that Greatriver's initial submission failed to identify certain species of wood used to produce its hardwood plywood, and that those species were first reported in a subsequent submissions. As argued in Greatriver's prior submission, Commerce never identified a single species of wood that Greatriver failed to identify. Defendant and Defendant-Intervenor claim that Commerce could not determine which response was accurate and reliable due to differences between Greatriver's first and second responses. Def. Resp. Br. at 113 and Def. Int. Resp. Br. at 34. However, that is why Commerce's issues supplemental questionnaires. It is also why Commerce conducts verification. Commerce unreasonably did neither in this case.

Commerce claims that it could not have moved forward with Greatriver's verification because its responses were so "riddled with fundamental flaws and inconsistencies" that it would not know which answers to verify. This is an exaggeration of the issues. There were exactly three alleged flaws in Greatriver's responses, none of which implicated the issue at hand, i.e. whether Greatriver used any Chinese origin merchandise for its plywood cores. Moreover, all of these three flaws could have been resolved through a short supplemental questionnaire. In this case, Commerce neither issued a supplemental questionnaire nor conducted verification. It simply relied on the inconsistency to jump straight to total adverse facts available. This was not reasonable or in accordance with the statute.

Moreover, the allegedly inconsistent reporting all related to species that Greatriver used to produce *face and back* veneers, rather than cores. *See* Initial Response at Attachment II-C, **CR45**, **PR94**; Letter to Commerce, *Hardwood Plywood Products from the People's Republic of China: Supplemental Quantity and Value Questionnaire Response* (March 22, 2021) ("First Supplemental Response"), **PR 207**; **CR 184**, and Second Supplemental Response at Exhibit S-1,

7

**CR280; PR310**. As a result, any inconsistency was not material as it did not relate to where the cores were produced. Defendant claims that the inconsistent reporting was material because certain species are native to or more prominent in China, and thus guide Commerce's determination as to whether veneers were from China. IDM at 139. Again, however, the species at issue were face and back veneers which Greatriver conceded were from China. The only issue is whether Greatriver imported any core materials, as argued above. Commerce identified no inconsistent reporting of the wood species used in Greatriver's *cores*, and indeed, Greatriver consistently reported these three species as acacia, eucalyptus, and MDF. Initial Response at Attachment II-C, **CR45**; **PR94**; Second Supplemental Response at Exhibit S-3, **CR280**; **PR310.** Therefore, there was no basis to apply adverse facts available based on this alleged deficiency.

    c. <u>Response to one question</u>

Commerce also relied partly on Greatriver's alleged failure to completely answer one question. As explained in Greatriver's initial submission, Greatriver reasonably thought, based on the language of the question ("from China" and "Chinese affiliates"), that this question sought information regarding Chinese affiliates. As a result, Greatriver reported that it does not have any affiliates in China and that the question was not applicable. Even when Commerce clarified its question, the requested information was still focused on exports from China. Specifically, Commerce stated that it "seeks an exhaustive list of all products exported **from China and entered into Vietnam** under subheadings 4408 and 4412 by any affiliate of your company, regardless of where that affiliated company is located." Letter to Interested Parties, *Second quantity and Value Supplemental Clarification*, (June 25, 2021) (emphasis added), **PR272**. Greatriver was unclear how an affiliate could export "from China" and "into Vietnam" if it is not located in China.

Defendant claims that Greatriver was supposed to report whether it had any affiliates that exported from China regardless of whether they were a Chinese company and Greatriver's failure to comply with Commerce's actual intent is not excusable. Def. Resp. Br. at 114. Defendant claims that it is possible for non-Chinese affiliates to export from China into Vietnam and that Commerce explained, a shipper on the bill of lading does not necessarily mean the shipper is domiciled at the origination of the shipment. Id. However, a misunderstanding of Commerce's intent is reasonable in light of the question's confusing language. Even if it were not reasonable, Commerce was still required to issue a supplemental questionnaire to Greatriver under the statute. Commerce was not justified in jumping straight to adverse facts available.

**PUBLIC VERSION**

**III.    CONCLUSION**

For the reasons set forth above, Commerce's affirmative circumvention determination with respect to Greatriver was not supported by substantial evidence and not in accordance with law.  As a result, we respectfully request that the Court hold unlawful Commerce's affirmative finding of circumvention with respect to Greatriver and remand this case for Commerce to revise the final determination in accordance with the Court's decision.

Respectfully submitted,

/s/ Stephen W. Brophy
Stephen Brophy
HUSCH BLACKWELL, LLP
1801 Pennsylvania Avenue
NW Suite 1000
Washington, DC  20006
(202) 378-2334
stephen.brophy@huschblackwell.com

*Counsel for Greatriver Wood Co., Ltd.*

Dated: January 31, 2025

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the Court's word limitation requirement. The word count for the foregoing brief, as computed by Husch Blackwell's word processing system (Microsoft Word), is 2,539 words.

Dated: January 31, 2025                                         /s/ Stephen W. Brophy
                                                                                        Stephen W. Brophy