## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| SHELTER FOREST INTERNATIONAL ACQUISITION, INC., | ) ) ) |
| Plaintiff, | ) ) |
| GREATRIVER WOOD CO., LTD., ET AL., | ) ) |
| Consolidated Plaintiffs, | ) ) |
| v. | ) **Consol. Court No. 23-00144** ) **Nonconfidential Version** |
| UNITED STATES, | ) ) |
| Defendant, and | ) ) |
| COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD | ) ) ) |
| Defendant-Intervenor. | ) ) |

**TRANCHE II REPLY BRIEF ON BEHALF OF CONSOLIDATED PLAINTIFFS CONCANNON LUMBER COMPANY, NORTHWEST HARDWOODS, INC., RICHMOND INTERNATIONAL FOREST PRODUCTS LLC, TARACA PACIFIC INC., UFP INTERNATIONAL, LLC, MEDALLION FOREST PRODUCT, HARDWOODS SPECIALTY PRODUCTS USLP, PAXTON HARDWOODS LLC AND RUGBY HOLDINGS LLC DBA RUGBY ARCHITECTURAL BUILDING PRODUCTS**

Jeffrey S. Grimson
Jill A. Cramer
Bryan P. Cenko
MOWRY & GRIMSON, PLLC
5335 Wisconsin Ave., NW, Suite 810
Washington, DC 20015
202.688.3610 (ph)
202.595.8968 (fax)
trade@mowrygrimson.com

January 31, 2025

# TABLE OF CONTENTS

Table of Contents ................................................................................................ i

Table of Authorities ........................................................................................... ii

ARGUMENT .......................................................................................................... 1

   I.   The Government and the Coalition Fail to Demonstrate that Commerce's Application of AFA Against Bao Yen and Thang Long Was Supported by Substantial Evidence and Otherwise in Accordance With Law ........................................................ 1

   II.   The Government and Coalition Fail to Demonstrate that Commerce's Application of AFA Against Plywood Sunshine Was Supported by Substantial Evidence and Otherwise in Accordance With Law ........................................................ 8

   III.   The Government and Coalition Fail to Demonstrate that Commerce's Application of AFA Against Win Faith Was Supported by Substantial Evidence and Otherwise in Accordance With Law ................................................................ 13

CONCLUSION ...................................................................................................... 16

**TABLE OF AUTHORITIES**

**Cases**

Changzhou Trina Solar Energy Co. v. United States,
  975 F.3d 1318 (Fed. Cir. 2020) ................................................................. 15

Consol. Edison Co. v. NLRB,
  305 U.S. 197 (1938) .................................................................................... 7

Deacero S.A.P.I. De C.V. v. United States,
  996 F.3d 1283 (Fed. Cir. 2021) ............................................................... 12

Diamond Sawblades Manufacturers' Coalition v. United States,
  986 F.3d 1351 (Fed. Cir. 2021) ................................................................. 6

Essar Steel Ltd. v. United States,
  678 F.3d 1268 (Fed. Cir. 2012) ................................................................. 6

F.Lii de Cecco di Filippo Fara S. Martino S.p.A. v. United States,
  216 F.3d 1027 (Fed. Cir. 2000) ................................................................. 6

Gallant Ocean (Thailand) Co. v. United States,
  602 F.3d 1319 (Fed. Cir. 2010) ................................................................. 6

Gerber Food (Yunnan) Co. v. United States,
  29 CIT 753, 387 F. Supp. 2d 1270 (2005) ................................................. 3

Hitachi Energy USA Inc. v. United States,
  34 F.4th 1375 (Fed. Cir. 2022) ........................................................ 8, 9, 10

Huayin Foreign Trade Corp. v. United States,
  322 F.3d 1369 (Fed. Cir. 2003) ................................................................. 7

Hyundai Elec. & Energy Sys. v. United States,
  No. 2021-2312, 2022 U.S. App. LEXIS 22235 (Fed. Cir. Aug. 11, 2022) ........................... 3, 4

Linyi Chengen Imp. & Exp. Co. v. United States,
  __ CIT __, 391 F. Supp. 3d 1283 (2019) ................................................. 14

Mid Continent Nail Corp. v. United States,
   37 CIT 1313, 949 F. Supp. 2d 1247 (2013) ............................................................... 13

Nippon Steel Corp. v. United States,
   337 F.3d 1373 (Fed. Cir. 2003) ...................................................................... 2, 10

Oman Fasteners, LLC v. United States,
   No. 2023-1661, 2025 U.S. App. LEXIS 254 (Fed. Cir. Jan. 7, 2025) ................................... 2, 6

Rhone-Poulenc v. United States,
   899 F.2d 1185 (Fed. Cir. 1990) .......................................................................... 7

SKF USA Inc v. United States,
   29 CIT 969, 391 F. Supp. 2d 1327 (2005) ............................................................... 8

Weyerhaeuser Co. v. United States Fish & Wildlife Serv.,
   586 U.S. 9 (2018) ....................................................................................... 6

Yangzhou Bestpak Gifts & Crafts Co. v. United States,
   716 F.3d 1370 (Fed. Cir. 2013) ...................................................................... 7, 13

Zhejiang Dunan Hetian Metal Co. v. United States,
   652 F.3d 1333 (Fed. Cir. 2011) ...................................................................... 3, 4

**Statutes**

19 U.S.C. § 1677e ................................................................................. 1, 6, 14

19 U.S.C. § 1677m .................................................................................. 9, 10

**Other Authorities**

Certain Hardwood Plywood Products From the People's Republic of China: Final Scope
   Determination and Affirmative Final Determination of Circumvention of the Antidumping and
   Countervailing Duty Orders, 88 Fed. Reg. 46,740 (Dep't of Commerce July 20, 2023) ........... 4

Certain Hardwood Plywood Products From the People's Republic of China: Preliminary Scope
   Determination and Affirmative Preliminary Determination of Circumvention of the
   Antidumping and Countervailing Duty Orders, 87 Fed. Reg. 45,753 (Dep't of Commerce July
   29, 2022) ............................................................................................ 3

Consolidated Plaintiffs Concannon Lumber Company, Northwest Hardwoods, Inc., Richmond International Forest Products LLC, Taraca Pacific Inc., UFP International, LLC, Medallion Forest Product, Hardwoods Specialty Products USLP, Paxton Hardwoods LLC and Rugby Holdings LLC dba Rugby Architectural Building Products (collectively, "M&G Plaintiffs") reply to the response briefs of Defendant the United States (the "Government") and Defendant-Intervenor the Coalition for Fair Trade in Hardwood Plywood (the "Coalition"). See Def.'s Resp. to Pls.' and Consolidated Pls.' Rule 56.2 Mots. for J. on the Agency R. (Sept. 20, 2024) (Nonconfidential Version), ECF No. 69 ("Gov.'s Tranche II Resp. Br."); Def.-Int. Coalition for Fair Trade in Hardwood Plywood Resp. to Mot. for J. on the Agency R. (Nov. 5, 2024) (Nonconfidential Version), ECF No. 86 ("Coalition's Tranche II Resp. Br.").[1]

## ARGUMENT

### I. THE GOVERNMENT AND THE COALITION FAIL TO DEMONSTRATE THAT COMMERCE'S APPLICATION OF AFA AGAINST BAO YEN AND THANG LONG WAS SUPPORTED BY SUBSTANTIAL EVIDENCE AND OTHERWISE IN ACCORDANCE WITH LAW

Commerce's application of adverse facts available ("AFA") against Bao Yen MDF Joint Stock Company ("Bao Yen") and Thang Long Wood Panel Company Ltd. ("Thang Long") and finding that both companies were ineligible to participate in Commerce's certification regime was not supported by substantial evidence and was otherwise not in accordance with law because both companies complied with Commerce's circumvention inquiry to the best of their abilities. See 19 U.S.C. § 1677e(b). The Government's and the Coalition's arguments that Commerce correctly found that an application of AFA against Bao Yen and Thang Long was warranted because both companies did not respond to Commerce's supplemental questionnaires are unpersuasive. See Gov.'s Tranche II Resp. Br. at 27-30; Coalition's Tranche II Resp. Br. at 22-22. Here, both Bao

---

[1] All citations are to the parties' nonconfidential briefs unless otherwise noted.

Yen and Thang Long provided the information necessary to demonstrate that they can trace the origins of the inputs contained in their exports of hardwood plywood and did not export hardwood plywood assembled with Chinese-origin core veneers to the United States.  See Rule 56.2 Tranche II Mot. for J. on the Agency R. of Consolidated M&G Pls. at 23-24 (May 1, 2024) (Nonconfidential Version), ECF No. 56 ("M&G Pls.' Tranche II 56.2 Br.").  Further, both companies provided reasonable explanations for submitting this information beyond the deadlines for Commerce's supplemental questionnaires.  See id. at 22-23.

Both the Government and the Coalition emphasize that Commerce may apply AFA where a respondent has failed to "put forth its maximum effort" and Commerce does not need to make a finding of motivation or intent.  See Gov.'s Tranche II Resp. Br. at 10 (quoting Nippon Steel Corp. v. United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003)); see also Coalition's Tranche II Resp. Br. at 16.  These arguments ignore that the Federal Circuit has recently held that a necessary condition of Commerce applying AFA is "the establishment of a particularly strong need to deter non-compliance, which would have to rest on a particularly serious failure to cooperate—considering, e.g., such common factors as intent, consequences for Commerce's processes and ability to carry out its statutory mandate, and recidivism."  Oman Fasteners, LLC v. United States, No. 2023-1661, 2025 U.S. App. LEXIS 254, at *32 (Fed. Cir. Jan. 7, 2025) (emphasis added).  The fact that Bao Yen and Thang Long did not respond to Commerce's supplemental quantity and value ("Q&V") questionnaires does not represent a "a particularly serious failure to cooperate" nor did Bao Yen or Thang Long have the "intent" to not cooperate with Commerce's circumvention investigation.  Commerce's application of AFA against both Bao Yen and Thang Long, therefore, was not supported by substantial evidence and was otherwise not in accordance with law.

Bao Yen and Thang Long did not commit a "particularly serious failure" to cooperate with Commerce's circumvention inquiry as they both submitted information that can fill any alleged gap on the record due caused by their misunderstanding that they were required to respond to Commerce's supplemental Q&V questionnaires. As "Commerce is empowered to use adverse inferences only in 'selecting from among the facts otherwise available,' it may not do so in disregard of information of record that is not missing or otherwise deficient." Zhejiang Dunan Hetian Metal Co. v. United States, 652 F.3d 1333, 1348 (Fed. Cir. 2011) (quoting Gerber Food (Yunnan) Co. v. United States, 29 CIT 753, 772, 387 F. Supp. 2d 1270, 1288 (2005)); see also Hyundai Elec. & Energy Sys. v. United States, No. 2021-2312, 2022 U.S. App. LEXIS 22235, at *10-11 (Fed. Cir. Aug. 11, 2022) (affirming the lower court's finding that a respondent "complied with Commerce's requests to the best of its ability, and that any mistakes were inadvertent and were corrected without undue difficulty").

The Coalition incorrectly maintains that the Federal Circuit's holdings in Zhejiang Dunan and Hyundai are distinguishable from this action because the gaps in the record here, unlike the information that Commerce found was missing on the record in Zhejiang Dunan and Hyundai, are not inconsequential and instead "were central to Commerce's determination." Coalition's Tranche II Resp. Br. at 56. The central question relevant to Commerce's circumvention inquiry was whether Vietnamese producers assembled hardwood plywood using Chinese core veneers. See Certain Hardwood Plywood Products From the People's Republic of China: Preliminary Scope Determination and Affirmative Preliminary Determination of Circumvention of the Antidumping and Countervailing Duty Orders, 87 Fed. Reg. 45,753 (Dep't of Commerce July 29, 2022) (P.R. 415), and accompanying Prelim. Dec. Mem. at 20 (P.R. 409) (indicating that Commerce relied on AFA to determine that the 22 blacklist companies produced inquiry merchandise using "Chinese-

origin face/back and/or core veneers" and that these companies' "process of assembly and completion was minor or insignificant"). Following Commerce's preliminary determination, when both Bao Yen and Thang Long first became aware that Commerce required responses to its supplemental Q&V questionnaires, both companies submitted information demonstrating that they could trace the country of origin of the plywood inputs that they used to produce hardwood plywood. See M&G Pls.' Tranche II 56.2 Br. at 23-24 (citing Letter from Bao Yen to Dep't of Commerce re: Comments Regarding Ministerial Errors and Procedures at 1-2, Appendix (Aug. 19, 2022) (Public Document) ("Bao Yen Cmts") (P.R. 472); Letter from Thang Long to Dep't of Commerce re: Case briefs/Comments on Preliminary Scope Determination and Affirmative Preliminary Determination of Circumvention of the Antidumping and Countervailing Duty Orders at 1, Exs. 1-5 (Aug. 19, 2022) (Public Document) ("Thang Long Cmts") (P.R. 482)). In other words, Bao Yen and Thang can confirm that they did not export plywood to United States that was assembled using Chinese core veneers. As established by the court in Zhejiang Dunan and Hyundai, Commerce cannot lawfully hide behind AFA and dismiss information submitted by the respondents that can otherwise fill the alleged gap on the record.

Further, Bao Yen and Thang Long lacked the "intent" to not cooperate with Commerce's investigation. Both the Government and the Coalition maintain that the "onus {was} on {Bao Yen and Thang Long} to monitor the docket and provide timely responses" given that both companies responded to Commerce's initial Q&V questionnaire and Commerce's supplemental Q&V questionnaires listed them as companies required to respond. Gov.'s Tranche II Resp. Br. at 28 (referring to Certain Hardwood Plywood Products From the People's Republic of China: Final Scope Determination and Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders, 88 Fed. Reg. 46,740 (Dep't of Commerce July 20, 2023) (P.R.

844), and accompanying Issues and Dec. Mem. at 105-106 (July 14, 2023) ("Final I&D Mem.") (P.R. 842)); see also Coalition's Tranche II Resp. Br. at 22.  The Government's and the Coalition's arguments ignore that while both respondents retained counsel to file their initial Q&V questionnaire responses, they then proceeded on a pro-se basis thereafter.  Compare Letter on Behalf of Bao Yen to Dep't of Commerce re: Submission of Q&V Resp. (Sept. 30, 2020) (Public Version) (P.R. 80); Letter on Behalf of Thang Long to Dep't of Commerce re: Submission of Quantity and Value Response (Oct. 1, 2020) (Public Version) (P.R. 101), with Bao Yen Cmts (P.R. 472); Thang Long Cmts (P.R. 482).  Both Bao Yen and Thang Long, as pro-se respondents, reasonably explained that they did not respond to Commerce's supplemental Q&V questionnaires due to a miscommunication with a third-party trading company.  Further, neither company thought that they were required to respond given that they did not export hardwood plywood subject to Commerce's affirmative circumvention determination.  Specifically, Bao Yen explained that:

> all information about the inquiries and its importance as well as questionnaires provided by {Commerce} have been transferred to us by {a third-party trading company}.  Our company, therefore, received information intermittently, leading to incorrect understanding of the rights and obligations to participate in the inquiry process . . . . Bao Yen further asserts that we do not manufacture and export products attributed to the 5 scenarios announced by {Commerce} in its preliminary determination.

Bao Yen Cmts at 1-2 (P.R. 472).  Similarly, Thang Long indicated that it:

> did not participate in answering the 2nd round of the questionnaires. This is because, by the time of the investigation, we did not export our plywood to the United States . . . . All the responses on {Commerce} questionnaires as well as the assessment of the importance of the investigation were made via the {third-party trading company} office intermittently. This also led to the misunderstanding of our rights and obligations during the inquiry period.

Thang Long Cmts at 1-2 (P.R. 482).  Contrary to the arguments of the Government, see Gov.'s Tranche II Resp. Br. at 29, Bao Yen's and Thang Long's explanations did not conflict with each other as both parties maintained that they received incomplete information from a third-party

trading company and as result did not believe that they were required to respond to Commerce's supplemental Q&V questionnaires.  In sum, neither Bao Yen nor Thang had the "intent" to not cooperate with Commerce's circumvention inquiry.

Finally, Commerce's application of AFA against Bao Yen and Thang Long was not supported by substantial evidence and was otherwise not in accordance with law because it led to an inaccurate result whereby antidumping and countervailing duties will be assessed against Bao Yen's and Thang Long's exports of non-subject merchandise.  In articulating the high standard that Commerce must meet before applying AFA against a company, the Federal Circuit has reasoned that 19 U.S.C. §1677e provides that Commerce "<u>may</u> use an inference that is adverse to the interests of {a} party in selecting from among facts otherwise available" when it finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information. <u>Oman Fasteners</u>, No. 2023-1661, 2025 U.S. App. LEXIS 254, at *29 (quoting 19 U.S.C. § 1677e(b)(1)(A)).  "That 'may use' grant of discretion, like any grant of discretion, must be exercised within the constraints of the statute and the record." <u>Oman Fasteners</u>, No. 2023-1661, 2025 U.S. App. LEXIS 254, at *29 (citing <u>Weyerhaeuser Co. v. United States Fish & Wildlife Serv.</u>, 586 U.S. 9, 25 (2018)).  In <u>Oman Fasteners</u>, the Federal Circuit explained that even when applying its discretion to select from facts otherwise available, Commerce's inference "must 'be a reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to noncompliance.'" <u>Id.</u> at *29-30 (quoting <u>Diamond Sawblades Manufacturers' Coalition v. United States</u>, 986 F.3d 1351, 1367 (Fed. Cir. 2021) (quoting <u>F.Lii di Cecco di Filippo Fara S. Martino S.p.A. v. United States</u>, 216 F.3d 1027, 1032 (Fed. Cir. 2000) (first citing <u>Essar Steel Ltd. v. United States</u>, 678 F.3d 1268, 1276 (Fed. Cir. 2012); and then citing <u>Gallant Ocean (Thailand) Co. v. United States</u>, 602 F.3d 1319, 1324 (Fed. Cir. 2010))); <u>see also</u>

Yangzhou Bestpak Gifts & Crafts Co. v. United States, 716 F.3d 1370, 1380 (Fed. Cir. 2013) ("Even with determinations of an AFA-rate, Commerce may not select unreasonably high rates having no relationship to the respondent's actual dumping margin."); Rhone-Poulenc v. United States, 899 F.2d 1185, 1191 (Fed. Cir. 1990) (holding that the basic purpose of antidumping and countervailing duty law is to "determine{} margins as accurately as possible").

Here, Commerce's application of AFA against Bao Yen and Thang Long led to an inaccurate result because, as explained above, both companies submitted information demonstrating that they can trace the country of origin of their plywood inputs and did not export hardwood plywood to the United States containing Chinese core veneers.  In effect, Commerce's application of AFA against Bao Yen and Thang Long results in antidumping and countervailing duties being assessed against non-subject merchandise given that both companies are ineligible to participate in Commerce's certification regime.  There is no reasonable reading of the record that can support such an inaccurate result when other information submitted by Bao Yen and Thang Long can fill any alleged gap in the record.  See Huayin Foreign Trade Corp. v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (holding that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

In sum, Commerce's application of AFA against Bao Yen and Thang Long was not supported by substantial evidence and was otherwise not in accordance with the law as no reasonable reading of the record supports Commerce's finding that both companies did not cooperate to the best of their abilities.

**II.  THE GOVERNMENT AND COALITION FAIL TO DEMONSTRATE THAT COMMERCE'S APPLICATION OF AFA AGAINST PLYWOOD SUNSHINE WAS SUPPORTED BY SUBSTANTIAL EVIDENCE AND OTHERWISE IN ACCORDANCE WITH LAW**

Commerce's application of AFA against Plywood Sunshine Company Limited ("Plywood Sunshine") was not supported by substantial evidence and was otherwise not in accordance with law because Commerce failed to meet its obligations under 19 U.S.C. § 1677m(d) to provide Plywood Sunshine with notice and an opportunity to explain or remedy the deficiencies that Commerce identified in Plywood Sunshine's responses.  See M&G Pls.' Tranche II 56.2 Br. at 17-22.  The Government and Coalition misstate the burden placed on Commerce by 19 U.S.C. § 1677m(d).  Further, the claims by the Government and the Coalition that Commerce met this burden with respect to Plywood Sunshine are unavailing.  See Gov.'s Tranche II Resp. Br. at 107-110; Coalition's Tranche II Resp. Br. at 13-14, 50-52.

If Commerce "wishe{s} to place the burden of error on {a respondent}, it ha{s} to make clear and give {the respondent} a chance to correct to error prior to the issuance of a final decision." Hitachi Energy USA Inc. v. United States, 34 F.4th 1375, 1384 (Fed. Cir. 2022) (citing SKF USA Inc v. United States, 29 CIT 969, 980, 391 F. Supp. 2d 1327, 1336-37 (2005)).  The Coalition asserts that the holding in Hitachi was limited by the Federal Circuit to the facts of that case.  See Coalition's Tranche II Resp. Br. at 13 (citing Hitachi Energy USA v. United States, 34 F.4th 1375 (Fed. Cir. 2022), modified and petition for panel reh'g denied per curium, Order, Hitachi Energy USA v. United States, Ct. No. 2020-2114 (Nov. 23, 2022), ECF No. 77 ("Hitachi Order")).  The Coalition is incorrect.  In its order in Hitachi, the Federal Circuit merely clarified that the statutory entitlement to notice and opportunity to remedy is "unqualified in the circumstances of this case." Hitachi Order at 2.  The Federal Circuit's subsequent order in no way changed its underlying holding that Commerce "has no authority to apply adverse facts and inferences unless the

respondent has failed to provide requested information when notified of the deficiency and has not acted to the best of its ability in responding to such requests." Hitachi, 34 F.4th at 1385. In short, Commerce cannot lawfully apply AFA without first meeting its obligations under 19 U.S.C. § 1677m(d) to provide a respondent with an opportunity to correct or clarify any alleged discrepancies that Commerce identified in its responses.

The Government and Coalition are incorrect that the facts leading to the Federal Circuit's holding in Hitachi are distinguishable from the present appeal. See Gov.'s Tranche II Resp. Brief at 110; Coalition's Tranche II Resp. Br. at 13. Here, like in Hitachi, Commerce failed to provide Plywood Sunshine with an opportunity to clarify the alleged discrepancies that it identified in Plywood Sunshine's responses. Specifically, Commerce applied AFA against Plywood Sunshine based on its unreasonable factual determination that Plywood Sunshine submitted conflicting information when Plywood Sunshine instead clarified its prior responses when responding to Commerce's second Q&V supplemental questionnaire. See Mem. from Kabir Archuletta to the File re: Application of Adverse Facts Available for the Preliminary Determination at 20 (July 22, 2022) (Public Version) ("AFA Mem.") (P.R. 410).

For example, Plywood Sunshine clarified its initial response that the "company does not source inputs from resellers in Vietnam" when it responded to Commerce's second supplemental Q&V questionnaire. Id. In that later response, Plywood Sunshine explained that it did purchase plywood inputs of Chinese origin from Vietnamese respondents and provided information on those suppliers. Compare Letter on Behalf of Plywood Sunshine to Dep't of Commerce re: Submission of Quantity and Value Response at 4 (Oct. 1, 2020) (Public Version) (P.R. 96), with Letter on Behalf of Plywood Sunshine to Dep't of Commerce re: Submission of Second Supplemental Quantity and Value Response (July 8, 2021) (Public Version) ("Plywood Sunshine Second

NONCONFIDENTIAL DOCUMENT
CONFIDENTIAL INFORMATION REMOVED

Supplemental Q&V Resp.") (P.R. 306); <u>see also</u> AFA Mem. at 20 (Public Version) (P.R. 410). Similarly, Commerce faulted Plywood Sunshine for initially not reporting the wood species of the [                              ] that it used and only later providing that information in response to Commerce's second supplemental Q&V questionnaire.  <u>See</u> AFA Mem. at 20 (Business Proprietary Document) (C.R. 412).  Importantly, Commerce's standard for AFA "does not require perfection and recognizes that mistakes sometimes occur" such that it is standard practice for a respondent to clarify its responses throughout an investigation.  <u>Nippon Steel</u>, 337 F.3d at 1382 (Fed. Cir. 2003). Commerce did not identify these specific deficiencies pertaining to Plywood Sunshine's responses until its preliminary determination.  <u>See</u> AFA Mem. at 20 (Public Version) (P.R. 410).   To the extent that Commerce doubted the clarifications submitted by Plywood Sunshine, consistent with its obligations under 19 U.S.C. § 1677m(d) as confirmed in <u>Hitachi</u>, Commerce was obligated to seek further information from Plywood Sunshine and allow it to explain or remedy these alleged deficiencies.  Commerce's failure to do so rendered its application of AFA against Plywood Sunshine as not supported by substantial evidence and otherwise not in accordance with law.

Contrary to the arguments by Government and the Coalition, the fact that Commerce issued multiple questionnaires to Plywood Sunshine did not absolve Commerce of its obligations under 19 U.S.C. § 1677m(d) to provide Plywood Sunshine with an opportunity to explain or remedy the alleged deficiencies in its responses.  <u>Cf.</u> Gov.'s Tranche II Resp. Br. at 19-20; Coalition's Tranche II Resp. Br. at 51-52.   Commerce issued the same three questionnaires to all Vietnamese respondents including Plywood Sunshine.  <u>See</u> Letter from Dep't of Commerce to Interested Parties re: Quantity and Value Questionnaire for Vietnamese Producers and Exporters of Certain Hardwood Plywood Products (Sept. 10, 2020) (Public Document) (P.R. 62); Letter from Dep't of Commerce to Interested Parties re:  Quantity and Value Supplemental Questionnaire for

Vietnamese Producers and Exporters of Certain Hardwood Plywood Products (Feb. 22, 2021) (Public Document) (P.R. 154); Letter from Dep't of Commerce to Interested Parties re: Quantity and Value Second Supplemental Questionnaire for Vietnamese Producers and Exporters of Certain Hardwood Plywood Products (June 15, 2021) (Public Document) (P.R. 257) ("Second Supp. Q&V QR").  As these were questionnaires issued to all respondents, they could not and did not address any alleged discrepancies that were specific to Plywood Sunshine's responses.

Further, the Coalition contends that Commerce complied with its obligations under 19 U.S.C. § 1677m(d) by issuing a company-specific questionnaire to Plywood Sunshine.  See Coalition's Tranche II Resp. Br. at 51; see also Letter from Dep't of Commerce to Interested Parties re: Plywood Sunshine Company Limited Quantity and Value Supplemental Questionnaire (Feb. 22, 2021) (Public Version) (P.R. 163) ("Plywood Sunshine QR").  Commerce, however, issued its company-specific questionnaire to Plywood Sunshine prior to releasing its second supplemental Q&V questionnaire to all respondents.  Compare Plywood Sunshine QR (Public Version) (P.R. 163) (dated Feb. 22, 2021), with Second Supp. Q&V QR (P.R. 257) (dated June 15, 2021).  As explained above, Commerce faulted the information contained in Plywood Sunshine's response to Commerce's second supplemental Q&V questionnaire.  Plywood Sunshine, thus, could not have been aware of the specific alleged discrepancies identified by Commerce given that it responded to Commerce's company-specific questionnaire prior to submitting a response to the general questions that Commerce asked of all Vietnamese respondents in the second supplemental Q&V questionnaire.  The statute does not require Plywood Sunshine to be a mind-reader and foresee that Commerce would not accept its reasonable clarifications of its prior submissions that Plywood Sunshine provided in its response to Commerce's second supplemental Q&V questionnaire.

Finally, this Court should not be convinced by the Government's and the Coalition's arguments that it would not have been practicable for Commerce to issue an additional questionnaire to Plywood Sunshine.  See Gov.'s Tranche II Resp. Br. at 15; Coalition's Tranche II Resp. Br. at 14-15.  Under 19 U.S.C. § 1677m(d), Commerce's obligations to provide a respondent with notice and an opportunity to explain or remedy an alleged discrepancies only apply "to the extent practicable."  Id.  Here, it would have been practicable for Commerce to issue an additional supplemental questionnaire to Plywood Sunshine.  The Government and the Coalition argue that Commerce needed the time between issuing its second supplemental Q&V questionnaire and releasing its preliminary determination to review multiple questionnaire responses.  See Gov.'s Tranche II Resp Br. at 14; Coalition's Tranche II Resp. at 15-16.  This argument, however, ignores that Commerce regularly issues post-preliminary questionnaires to respondents.  See, e.g., Deacero S.A.P.I. De C.V. v. United States, 996 F.3d 1283, 1291 (Fed. Cir. 2021) (discussing that respondent issued a post-preliminary questionnaire to the respondent).  In fact, Commerce had over two years to seek clarification between the time that Plywood Sunshine submitted its response to Commerce's second Q&V questionnaire and the time that Commerce issued its final determination.  Compare Plywood Sunshine Second Supplemental Q&V QR at 1 (Public Version) (P.R. 306) (submitted on July 8, 2021), with Final I&D Mem. at 1 (P.R. 842) (dated July 14, 2023).

Nor should the Court accept the Government's repetition of Commerce's finding that it would not have been practicable for Commerce to issue additional supplemental questionnaires given that Commerce "had a total of 146 questionnaires to analyze."  Gov.'s Tranche II Resp. Br. at 15 (citing Final I&D Mem. at 133 (P.R. 842)).  While an agency may "enjoy broad discretion in allocating investigative and enforcement resources," that discretion is not limitless. Gov.'s Tranche II Resp. Br. at 15 (quoting Mid Continent Nail Corp. v. United States, 37 CIT 1313, 1349, 949 F.

Supp. 2d 1247, 1278 (2013)). Commerce cannot "explain the absence of evidence by invoking procedural difficulties that were at least in part a creature of its own making." <u>Yangzhou Bestpak</u>, 716 F.3d at 1378.  Commerce chose to not select mandatory respondents in its circumvention inquiry, <u>see</u> Final I&D Mem. at 20-23 (P.R. 842), and its determination to hide behind the significant amount of information that it received pursuant to its own requests as an excuse to avoid its obligations under 19 U.S.C § 1677m(d) rendered its application of AFA against Plywood Sunshine unsupported by substantial evidence and otherwise not in accordance with law.

### III. THE GOVERNMENT AND COALITION FAIL TO DEMONSTRATE THAT COMMERCE'S APPLICATION OF AFA AGAINST WIN FAITH WAS SUPPORTED BY SUBSTANTIAL EVIDENCE AND OTHERWISE IN ACCORDANCE WITH LAW

Commerce's application of AFA against Win Faith Trading Limited was not supported by substantial evidence and otherwise not in accordance with law because there was no gap on the record that warranted Commerce's reliance on facts otherwise available, let alone AFA, and Commerce failed to consider record evidence that detracted from the weight of its conclusion that Win Faith failed to cooperate to the best of its ability.  <u>See</u> M&G Pls.' Tranche II 56.2 Br. at 11-16.

Commerce determined that Win Faith's submissions were "unreliable" because it found that "Win Faith is affiliated with a Chinese plywood manufacturer that it did not report."  Final I&D Mem. at 103 (P.R. 842).  Based on its determination that Win Faith's information was unreliable, Commerce found that necessary information was missing from the record.  <u>See</u> AFA Mem. at 23 (Public Version) (P.R. 410).  No reasonable reading of the record supports Commerce's determination that "the relationships between the respondents and Chinese producers and/or exporters of hardwood plywood and/or hardwood plywood inputs" was "paramount" to its determination and warranted AFA.  <u>Cf.</u> Gov.'s Tranche II 56.2 Br. at 105 (quoting Final I&D Mem.

at 140 (P.R. 842)); <u>see also</u> Coalition's Tranche II 56.2 Br. at 55.  Commerce's statutory authority

to apply facts otherwise available, let alone AFA, mandates that it can only "use the facts otherwise

available in reaching {its} <u>applicable</u> determination."  19 U.S.C. § 1677e(a) (emphasis added).

Here, Commerce's applicable determination was whether Win Faith could trace the country of

origin of its hardwood plywood inputs such that it could demonstrate that it did not export

hardwood plywood to the United States that was assembled using Chinese core veneers.  <u>See</u> M&G

Pls.' Tranche II 56.2 Br. at 13.  A company's affiliations are not directly relevant to whether it can

trace the country of origin of its inputs.  In other words, even assuming that a company did have a

Chinese affiliate, there is no reasonable correlation between this fact and a company's ability to

trace the country of origin of its plywood inputs.

The Government maintains that "{t}his Court has sustained Commerce's application of

AFA when a respondent fails to accurately report affiliate information."  Gov.'s Tranche II Resp.

Br. at 105 (citing <u>Linyi Chengen Imp. & Exp. Co. v. United States</u>, __ CIT __, __, 391 F. Supp. 3d

1283, 1299 (2019)).  The Government's reliance on <u>Linyi Chengen</u> for the proposition that

Commerce may rely on AFA when a respondent does not accurately report its affiliations is

misplaced here.  The applicable determination at issue in <u>Linyi Chengen</u> was entirely distinct from

the present appeal.  <u>Linyi Chengen</u> concerned an appeal from Commerce's final determination in

the antidumping duty investigation of certain hardwood plywood products from China where

Commerce's applicable determination was determining whether hardwood plywood was being, or

is likely to be, sold at less than fair value.  <u>See</u> <u>Linyi Chengen</u>, __ CIT at __, 391 F. Supp. 3d at

1287.  An understanding of a company's affiliations is directly relevant to Commerce's applicable

determination in the investigation phase where Commerce must determine whether to compare

normal value to an export price or constructed export price.  <u>See</u> 19 U.S.C. § 1677a(b) (defining a

constructed export price relevant to the affiliation between a seller and the producer and exporter). By contrast, in the circumvention case at issue in this appeal, a company's affiliation was not relevant to Commerce's applicable determination where the issue was the use of Chinese-origin core veneers.

Even if this Court holds that the issue of affiliation is directly relevant to Commerce's application determination in its circumvention inquiry, Commerce's application of AFA against Win Faith was still not supported by substantial evidence because Commerce failed to consider evidence that detracted from the weight of its conclusion that Win Faith's Chinese affiliate was a producer of hardwood plywood and plywood inputs. See Final I&D Mem. at 103 (P.R. 842); see also Changzhou Trina Solar Energy Co. v. United States, 975 F.3d 1318, 1326 (Fed. Cir. 2020) (holding that Commerce's determination is not supported by substantial evidence and not otherwise in accordance with law when Commerce fails to consider record information that "fairly detracts from the substantiality of the evidence").  Win Faith submitted evidence on the record demonstrating that Commerce previously determined that its Chinese affiliate was only a trading company.  See M&G Pls.' Tranche II 56.2 Br. at 15.  The Government maintains that Commerce makes its determinations based on the record for each specific segment.  See Gov.'s Tranche II Resp. Br. at 107.  The Government's assertion, echoing Commerce, is an unreasonable reading of the record.  Instead of recognizing its prior determination that Win Faith's Chinese affiliate was a trading company, Commerce merely dismissed this evidence as an "unsupported assertion."  Final I&D Mem. at 102 (P.R. 842).  At a minimum, Commerce was required to address why its past determination was outweighed by evidence on the record in this inquiry.  Commerce's failure to do so thereby rendered it application of AFA against Win Faith as not supported by substantial evidence and otherwise not in accordance with law.

**CONCLUSION**

The M&G Plaintiffs respectfully request that this Court grant its motion for judgment on the agency record and remand Commerce's affirmative circumvention determination for redetermination consistent with the M&G Plaintiffs' initial Tranche II brief, this Tranche II reply brief, and the Tranche II reply briefs filed by other respondent parties to the extent they are consistent with the arguments presented in this reply brief.

                                        Respectfully submitted,

<u>Dated</u>: January 31, 2025                  /s/ Jeffrey S. Grimson
                                        Jeffrey S. Grimson
                                        Jill A. Cramer
                                        Bryan P. Cenko
                                        *Counsel to Concannon Lumber Company,*
                                        *Northwest Hardwoods, Inc., Richmond*
                                        *International Forest Products LLC, Taraca*
                                        *Pacific Inc., UFP International, LLC,*
                                        *Medallion Forest Product, Hardwoods*
                                        *Specialty Products USLP, Paxton*
                                        *Hardwoods LLC and Rugby Holdings LLC*
                                        *dba Rugby Architectural Building Products*

## CERTIFICATE OF COMPLIANCE

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Jeffrey S. Grimson, hereby certify that this brief complies with the word limitations set forth in Paragraph 2(B) of the Standard Chamber Procedures and the Scheduling Order to this case.  Excluding the table of contents, table of authorities, signature block and any certificates of counsel, the word count for this brief is 4,844 words.

Dated: January 31, 2025

/s/ Jeffrey S. Grimson
Jeffrey S. Grimson
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, D.C. 20015
202-688-3610
trade@mowrygrimson.com
*Concannon Lumber Company, Northwest Hardwoods, Inc., Richmond International Forest Products LLC, Taraca Pacific Inc., UFP International, LLC, Medallion Forest Product, Hardwoods Specialty Products USLP, Paxton Hardwoods LLC and Rugby Holdings LLC dba Rugby Architectural Building Products*