

UNITED STATES COURT OF INTERNATIONAL TRADE
One Federal Plaza
New York, New York 10278-0001

CHAMBERS OF
MARK A. BARNETT
CHIEF JUDGE

June 17, 2025

Via CM/ECF

    Re: *Shelter Forest Int'l Acquisition, Inc. v. United States*
    Consol. Court No. 23-00144

Dear Counsel:

    The court appreciates the efforts the parties have made to identify and address the relevant issues in their briefs. In preparation for the oral argument, scheduled for July 1, 2025, at 10:00 a.m. in Courtroom 1, the court would like the parties to be prepared to address the questions provided below.

    Each topic contains time limits for arguments by Plaintiffs (herein including Consolidated Plaintiffs), Defendant, and Defendant-Intervenor based on the nature of the questions. The parties should self-monitor their allotted time, including any rebuttal time. Each time limit should not be construed as a goal, but a way to ensure the hearing proceeds apace. As should be evident from the time limits, the court does not expect every Plaintiff to speak on every issue. Instead, Plaintiffs should allocate the time among themselves ahead of time. Counsel may divide the questions among their attendees. Parties are encouraged to keep all responses brief and should not repeat arguments made by other parties.

    Following discussion on the issues raised by the court's questions, the court will afford parties the opportunity to make a <u>brief</u> presentation on any additional issues they consider relevant to the court's resolution of the remaining claims. The court anticipates taking a one-hour lunch break at some point during the hearing.

I.  **Initiation of the Circumvention Inquiry**                              **(15/15/5 minutes)**

**Production Scenarios**

The court seeks to understand better the basis for Commerce's initiation of the circumvention inquiry to include the five specified production scenarios. As such, parties should address the following summary and identify any additional relevant information in the record:

   A. The Coalition's initial ruling request specified two production scenarios in which all components were produced in China and involved assembly in Vietnam. *See* Request for Scope Ruling/Anti-Circumvention Ruling (Feb. 25, 2020) ("Ruling Request"), PR 19, CR 5. Commerce's initiation notice included three additional scenarios but qualified their inclusion with the language, "should such production scenarios exist." *Certain Hardwood Plywood Prods. From the People's Republic of China*, 85 Fed. Reg. 36,530 (Dep't Commerce June 17, 2020) (initiation of anti-circumvention inquiries and scope inquiries on the AD and CVD orders; Vietnam assembly).
      1. What specific record evidence supported Commerce's inclusion of the three additional production scenarios beyond what the Coalition provided initially and identified in its further submission? *See* Coalition's Resp. to Req. for Clarification (May 12, 2020), CR 7, PR 20 (pointing to prior submissions).
      2. Is Commerce's statement an acknowledgement that, at the time, record evidence did not demonstrate production of those three scenarios?

**Mandatory Respondents**

Commerce explained that the selection of mandatory respondents in a circumvention inquiry is intended to determine whether inquiry merchandise is circumventing the relevant order and, thus, is furthered by the selection of respondents that produce inquiry merchandise. *See* I&D Mem. at 24. But the circumvention statute requires Commerce to determine first whether merchandise of the same class or kind as subject merchandise is produced in a third country and imported into the United States from that third country. 19 U.S.C. § 1677j(b)(1)(A)–(B).

   A. Is it Commerce's practice to select mandatory respondents in a circumvention inquiry only when respondents report production of inquiry merchandise?
   B. Should the court consider Commerce's decision not to select mandatory respondents as evidence that detracts from Commerce's consideration of the administrative burdens relevant to other matters, such as 1) compliance with 19 U.S.C. § 1677m(d), or 2) acceptance of new factual information?

II. **Compliance With 19 U.S.C. § 1677m(d)**                             **(20/20/5 minutes)**

   A. Does the Government agree that Commerce's decision not to select mandatory respondents does not change the statutory requirement for notice pursuant to this statute?
      1. Commerce stated that, "[w]ith the unprecedented task of evaluating so many responses, it was not practicable to collect additional information." I&D Mem. at 133. If it was practicable *not* to select mandatory respondents, why was it impracticable to collect additional information?
   B. The Government suggests that other interested party filings in conjunction with Commerce's supplemental quantity and value questionnaires fulfilled the statutory notice requirement. Def.'s Tranche II Resp. at 18–19 (arguing Plaintiffs could not have been "unaware" of discrepancies because the data from the Government of Vietnam ("GOV") was available before the second supplemental questionnaire responses were due); *see also* I&D Mem. at 130 (discussing GOV data and the Coalition's submissions in connection with this issue).
      1. To what extent, if any, is this reliance on other parties' submissions consistent with *Commerce's* obligations under the statute?
   C. The Government should identify any specific, explicit language in the generic (i.e., not company-specific) supplemental quantity and value questionnaires identifying deficiencies in prior submissions.
   D. Does the fact that all responding companies received the same supplemental quantity and value questionnaires, regardless of whether they had or were found to have any deficient responses, undermine Commerce's position that those questionnaires constituted notice of deficiencies?
   E. Commerce faulted some respondents for their alleged differences in responses to the second supplemental quantity and value questionnaire as compared to data submitted by the GOV, *see, e.g.*, I&D Mem. at 130, but the agency issued no further questionnaires.
      1. What is the Government's strongest argument regarding Commerce's compliance with 19 U.S.C. § 1677m(d) in this situation?
      2. Does the timing of the finalization of the GOV data impact this analysis? Why or why not?
   F. Is there a legally relevant distinction between deficiency as used in 19 U.S.C. § 1677m(d) and "discrepancy" and, if so, is this reflected in Commerce's determination on this issue? *See* I&D Mem. at 123 (discussing discrepancies).
   G. Compliance with 19 U.S.C. § 1677m(d) is a predicate for use of the facts otherwise available, 19 U.S.C. § 1677e(a), which, in turn, is a predicate for the use of adverse facts available, 19 U.S.C. § 1677e(b).
      1. Does any remand for Commerce to reconsider its determination pursuant to section 1677m(d) for some or all respondents obviate the need for the court to address the use of adverse facts available, at least with respect to those respondents?

### III.     Rejection of Untimely New Factual Information ("NFI")     (10/10/5 minutes)

**Association With 19 U.S.C. §§ 1677m(d) and 1677e**

  A. Given that at least some respondents based their untimely NFI submissions on Commerce's alleged failure to comply with 19 U.S.C. § 1677m(d), do Plaintiffs' arguments on this issue stand or fall on Commerce's compliance with that provision?
  B. By seeking to submit untimely NFI, do Plaintiffs acknowledge that relevant information was missing from the record for purposes of 19 U.S.C. § 1677e(a)?

**Weighing of Relevant Factors**

  A. In rejecting the submissions, Commerce stated: "In making this determination, we considered the amount of time we would need to collect all information that parties requested to submit, to receive comments and rebuttal comments, and the additional time necessary to analyze such a large amount of information." I&D Mem. at 63.  Where does Commerce explain *why* the agency concluded it lacked the time necessary to accept the submissions?
  B. In a proceeding in which Commerce may, and did, extend the deadline for a final determination, do finality considerations carry less weight, especially soon after the preliminary determination?


### IV.     Adverse Facts Available                                        (30/30/10 minutes)

**General Questions**

  A. What is the agency's basis for using a "two or more failings" standard?  *See* I&D Mem. at 140.  If the court finds that one of two bases for a particular company is unsupported by substantial evidence, does the Government agree that a remand is necessary for Commerce to reconsider its use of AFA for that company?
  B. Is evidence of seemingly widespread misunderstanding of Commerce's questionnaires relevant evidence that detracts from Commerce's finding that particular companies failed to cooperate to the best of their ability?
  C. For the respondents for whom Commerce used AFA based on their reporting of veneer type imported from China into Vietnam, i.e. as face/back or core veneer, why is this a basis for AFA?  The ITC report does not definitively support a particular usage based merely upon thickness, yet Commerce appears to have treated it as definitive.
  D. If Commerce intended the supplemental quantity and value questionnaires to inform respondents of prior deficiencies, why is the provision of responsive information a basis for rejecting the submissions as contradictory simply because the respondents did not label the information as corrective?  *See* I&D Mem. at 76–78 ("Modifying Responses").

 E. To the extent Commerce used data reported by the GOV as a basis to find discrepancies and justify the use of AFA, is the potential suitability of the GOV data as partial AFA for some respondents evidence that detracts from Commerce's use of total AFA for those respondents?

**Company-Specific Questions**

 A. Win Faith
   1. Commerce's concern with Win Faith's reporting appeared to lie in the status of Win Faith's affiliate ("company A"). I&D Mem. at 102–03, 144. Commerce's determination to use AFA here is based on 1) Win Faith's failure to show that company A was not a producer, and 2) Win Faith's failure to address information supporting the assertion that company A was affiliated with other producers.
   2. For the first basis, where does Commerce directly address the agency's past findings as to trading company status?
   3. Are these two bases really just one, and if so, where does Win Faith stand with respect to Commerce's "two or more failings" standard?

 B. Zhongjia
   1. Commerce's verification team examined the company's records and did not find any indication that kapok wood was used to produce the plywood reported in the company's records. Verification of Vietnam Zhongjia Wood Company Limited (Dec. 21, 2022) at 6, CR 566, PR 679. Does this mean that the Commerce verifiers were able to confirm the type of wood veneers used in sales to the United States? Is this information contained in any of the verification exhibits? If so, parties should be prepared to provide copies of those exhibits to the court.

 C. Lechenwood
   1. Plaintiffs argue that Lechenwood (mis)understood Commerce's request as limited to information regarding "affiliates that exported core veneers/veneered panels/veneer core platforms subject to the circumvention inquiry." DH Pls.' Tranche II Mem. at 44. Plaintiffs should reconcile their argument with record evidence suggesting that even under Lechenwood's interpretation of the question, the company failed to respond completely. *See* [Lechenwood's] Submission of Second Suppl. Quantity and Value Resp. (July 9, 2021), Ex. 1, CR 348.

 D. Greatriver
   1. Commerce found a failure to report the source of one species of veneer. Prelim. AFA Mem. at 9–10. Is this information somewhere in the record or do Plaintiffs concede this gap exists?

 E. Eagle Industries
   1. The Government argues that no distinction exists between core and face/back veneers until the veneers are affixed. Def.'s Tranche II Resp. at 50–51. If those inputs are not distinct, why did Commerce request

      respondents to report imported inputs as either face/back or core veneers?  Moreover, can this position be reconciled with Commerce's reliance on the ITC report as relevant to the thickness of a veneer and whether it would be a core or face/back veneer?

  F. Bao Yen and Thang Long
     1. The court seeks to clarify its understanding of the factual record.  Commerce faulted these companies for failing to respond to the "supplemental questionnaires," using the plural form throughout the discussion to indicate a failure to respond to the 1st and 2nd supplemental quantity and value questionnaires.  I&D Mem. at 105–07.  But these companies were not required to respond to the 2nd supplemental quantity and value questionnaire, presumably because they failed to respond to the 1st supplemental quantity and value questionnaire.  *See* Second Suppl. Q&V Questionnaire (June 15, 2021), PR 257, Attach. I.  Indeed, Commerce does not cite the 2nd supplemental quantity and value questionnaire in the footnotes accompanying this discussion.  Is it accurate to state that Commerce used AFA for these companies based on their respective failures to respond to the 1st supplemental quantity and value questionnaire?  Is this consistent with Commerce's two or more failings standard?

**Production of Inquiry Merchandise**

  A. The Government should be prepared to address Commerce's factual basis for concluding, "[a]s AFA, . . . that these respondents produced and/or exported hardwood plywood under all of the five production scenarios that are subject to these inquiries."  I&D Mem. at 49 & n.236; *see also* I&D Mem. at 144 ("As an adverse inference, we continue to find that these companies exported inquiry merchandise . . . .").
     1. The Government must: 1) address statutory language permitting Commerce to draw adverse inferences from the *factual* record; and 2) identify the sources of information Commerce relied on and where Commerce identified such reliance.  *See Jinko Solar Imp. and Exp. Co. v. United States*, Slip Op. 25-67, 2025 WL 1604598, at *7 (CIT May 30, 2025) ("Commerce cannot select facts not on the record.").
     2. To the extent Commerce seeks to rely on information submitted by the Coalition in support of its Ruling Request, the Government must be prepared to identify, with citations to the record, evidence relevant to each of the five production scenarios.
     3. To the extent the record evidence relates to some, but not all, production scenarios, what is the relevance of the possible absence of evidence of some production scenarios in light of the binary nature of Commerce's circumvention determination?

   B. Many Plaintiffs argue that there is no gap in the record, asserting, for example, that when all wood species are reported, even if in responses to different questionnaires, Commerce has all such information available to it.  In this regard, the "gap" in the record appears to result from Commerce disregarding information as unreliable *after* finding a failure to cooperate pursuant to 19 U.S.C. § 1677e(b).  Is that approach consistent with the statute, which presupposes a gap as the basis for facts available pursuant to 19 U.S.C. § 1677e(a), before Commerce reaches the adverse inference inquiry?

   C. The statute permits Commerce to "use the facts otherwise available in reaching the applicable *determination under this subtitle*," 19 U.S.C. § 1677e(a) (emphasis added), i.e., a determination pursuant to 19 U.S.C. § 1677j.  What is the legal basis for Plaintiffs' argument that the "applicable determination" is limited to whether respondents used Chinese core material?  *See, e.g.*, MG Pls.' Tranche II Reply at 14.

**Other Circumvention Criteria**

   A. For both the preliminary and final determinations, Commerce relied on AFA at least in part with respect to whether completion or assembly in Vietnam is minor or insignificant.  I&D Mem. at 33; *see also* Prelim. Mem. at 21–25.
      1. The Government should explain why such adverse *conclusions* constitute permissible adverse inferences drawn from the record facts, consistent with the foregoing question regarding production of inquiry merchandise.

   **V.   Tranche I**                                                                                          **(20/20/5 minutes)**

   A. Procedural matters
      1. Plaintiffs suggest a failure on the part of Commerce to corroborate secondary information.  *See, e.g.*, DH Pls.' Tranche I Mem. at 20–27.  Do Plaintiffs mean to invoke 19 U.S.C. § 1677e(c), or is this an argument about the reliability or weight of the evidence relied upon by Commerce?
      2. Plaintiffs argue that Commerce afforded undue weight in making its circumvention determination to a declaration submitted by the Coalition.  *See, e.g.*, DH Pls.' Tranche I Mem. at 25–26.  While Defendant cites to this declaration as factual support for Commerce's determination, Def.'s Tranche I Resp. at 32, Defendant does not address the broader reliability concerns Plaintiffs raise about this declaration.  What is Defendant's response to this argument?
   B. Evidentiary matters
      1. Some Plaintiffs argue that non-inquiry merchandise is recognizable by the naked eye.  *See, e.g.*, MG Pls.' Tranche I Reply at 15.  Where in the factual record is there support for this assertion?
      2. Arguments about assembly or completion appear to collapse into arguments about minor or insignificant.  Why should the court consider

   them separately? To what extent is "more than mere assembly" just another way of saying it is not insignificant?

3. In their reply briefs, Plaintiffs rely on *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), to challenge various Commerce determinations, such as the interpretation of "completion or assembly" and the interpretation of "minor or insignificant." *See* DH Pls.' Tranche I Reply at 4, 10.
   a. Discuss whether these arguments go to Commerce's weighing of the evidence in support of these determinations rather than matters of statutory interpretation.
   b. Some statutes may "empower an agency to prescribe rules to 'fill up the details' of a statutory scheme." *Loper Bright*, 603 U.S. at 395 (citation omitted). Does the directive to Commerce to "determin[e] whether the process of assembly or completion is minor or insignificant," 19 U.S.C. § 1677j(b)(2), suggest such an empowerment? How does the explicit listing of factors in 19 U.S.C. § 1677j(b)(2) for the determination of "minor or insignificant" affect that possible empowerment?
   c. Is the approach toward judicial deference taken in *Seven County Infrastructure Coalition v. Eagle County, Colorado*, No. 23-975, 2025 WL 1520964, 605 U.S. ___ (2025), relevant to this analysis?
   d. Given that Plaintiffs' *Loper Bright* arguments were raised in reply, the court will afford the Government an opportunity to respond more generally to the arguments.
4. Plaintiffs point to "screwdriver operations" as the authoritative interpretation of what "completion or assembly" means. DH Pls.' Tranche I Reply at 7. Is this argument better directed to what "minor or insignificant" means? *Compare* 19 U.S.C. § 1677j(b) (1988) (omitting mention of "minor or insignificant" nature of the completion or assembly), *with* 19 U.S.C. § 1677j(b) (1994) (incorporating "minor or insignificant" as an element and setting out factors to make that determination). Furthermore, why should the court use that example to limit the plain language of the statute?
5. The statute lists factors for determining whether completion or assembly is minor or insignificant. What further statutory interpretation is necessary for the court to do?

VI. **2022 Administrative Review**                                                               **(5/5/3 minutes)**

 A. Parties should address the relevance of Commerce's recent issuance of *Certain Hardwood Plywood Products From the People's Republic of China*, 90 Fed. Reg. 21,271 (Dep't Commerce May 19, 2025) (final results of admin. revs. of the

antidumping and countervailing duty orders, final determination of no shipments; 2021–2022).
1. In particular, to what extent, if any, does the issuance of these final results alleviate concerns grounded in due process with respect to participation in Commerce's certification regime and opportunities to establish an assessment rate?

As a reminder, parties should be prepared to identify documents in the record that support their position and present the court with any documents used to support their assertions that have not been submitted as part of the joint appendices filed in this case.  Parties should also be prepared to present the documents supporting their factual assertions on the courtroom's document projector.  Any inquiries about utilizing the courtroom's projector should be directed to the case manager, Giselle Almonte, on (212) 264-0157, before the scheduled oral argument date.

The court notes that the Federal Bar Council has encouraged judges to consider revising or adding provisions to their practice rules to allow junior lawyers to take a more active role in oral arguments.  While their efforts are primarily focused on the federal district courts, the sentiment is no less relevant to the U.S. Court of International Trade.  It is in that light that I invite you to consider positively the role that junior lawyers might play in this oral argument, particularly considering the opportunities noted above to split time between attorneys.  I hope that you will consider providing those lawyers who are familiar with the issues and record under consideration, but who are not as experienced in arguing before a court, with the opportunity to participate in this argument.

Very truly yours,

/s/ Mark A. Barnett
Mark A. Barnett
Chief Judge