**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | | |
|---|---|---|
| **SHELTER FOREST INTERNATIONAL ACQUISITION, INC.,** | ) | |
| **Plaintiff,** | ) | |
| **GREATRIVER WOOD CO., LTD., ET AL.,** | ) | |
| **Consolidated Plaintiffs,** | ) | |
| **v.** | ) | **Consol. Court No. 23-00144** |
| | ) | **Nonconfidential Version** |
| **UNITED STATES,** | ) | |
| **Defendant, and** | ) | |
| **COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD** | ) | |
| **Defendant-Intervenor** | ) | |

# COMMENTS OF CONSOLIDATED PLAINTIFFS CONCANNON LUMBER COMPANY, NORTHWEST HARDWOODS, INC., RICHMOND INTERNATIONAL FOREST PRODUCTS LLC, TARACA PACIFIC INC., HARDWOODS SPECIALTY PRODUCTS USLP, PAXTON HARDWOODS LLC AND RUGBY HOLDINGS LLC DBA RUGBY ARCHITECTURAL BUILDING PRODUCTS IN OPPOSITION TO THE FINAL REMAND REDETERMINATION

Dated: October 13, 2026

Jeffrey S. Grimson
Jill A. Cramer
Bryan P. Cenko
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, Suite 810
Washington, DC 20015
202-688-3610
trade@mowrygrimson.com
*Counsel to Concannon Lumber Company, Northwest Hardwoods, Inc., Richmond International Forest Products LLC, Taraca Pacific Inc., Hardwoods Specialty Products USLP, Paxton Hardwoods LLC and Rugby Holdings LLC dba Rugby Architectural Building Products*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ I

TABLE OF AUTHORITIES ........ II

INTRODUCTION AND SUMMARY OF THE ARGUMENT ........ 1

STANDARD OF REVIEW ........ 2

ARGUMENT ........ 3

I. Commerce's Affirmative Country-Wide Circumvention Finding Fails To Comply With This Court's Remand Order and Is Not Supported by Substantial Evidence and Is Otherwise Not in Accordance With Law ........ 3

II. Commerce's Determination To Apply AFA Against Win Faith Fails To Comply With This Court's Remand Order and Is Not Supported by Substantial Evidence and Is Otherwise Not in Accordance With Law ........ 10

III. Commerce's Remand Redetermination With Respect to Greatwood Does Not Comply With This Court's Remand Order and Is Not Supported by Substantial Evidence and Is Otherwise Not in Accordance With Law ........ 18

IV. M&G Plaintiffs Adopt Comments Filed by Other Respondent Parties ........ 22

CONCLUSION ........ 23

## TABLE OF AUTHORITIES

### Cases

Ad Hoc Shrimp Trade Action Comm. v. United States,
2024 Ct. Intl. Trade LEXIS 97 (Ct. Int'l Trade Aug. 15, 2024)........ 7

AG der Dillinger Huttenwerke v. United States,
28 CIT 94, 106, 310 F. Supp. 2d 1347, 1358 (2004)........ 2

Changzhou Trina Solar Energy Co. v. United States,
__ CIT __, 352 F. Supp. 3d 1316 (2018)........ 9

Changzhou Trina Solar Energy Co. v. United States,
975 F.3d 1318 (Fed. Cir. 2020)........ 2, 17

Consol. Edison Co. v. NLRB,
305 U.S. 197 (1938)........ 2

Giorgio Foods, Inc. v. United States,
2024 Ct. Intl. Trade LEXIS 84 (Ct. Int'l Trade July 17, 2024)........ 7

Huayin Foreign Trade Corp. v. United States,
322 F.3d 1369 (Fed. Cir. 2003)........ 2, 8, 9, 13

Intell. Ventures I LLC v. Motorola Mobility LLC,
870 F.3d 1320 (Fed. Cir. 2017)........ 7

Lifestyle Enter. v. United States,
__ CIT __, 768 F. Supp. 2d 1286 (2011)........ 7, 9, 16

Lucent Techs., Inc. v. Gateway, Inc.,
580 F.3d 1301 (Fed. Cir. 2009)........ 7

NMB Sing. Ltd. v. United States,
28 CIT 1252, 341 F. Supp. 2d 1327 (2004)........ 2

NMB Sing. Ltd. v. United States,
557 F.3d 1316 (Fed. Cir. 2009)........ 2, 11, 22

OSI Pharms., LLC v. Apotex Inc.,
939 F.3d 1375 (Fed. Cir. 2019)........ 7

Shelter Forest Int'l Acquisition, Inc. v. United States,
__ CIT __, 831 F. Supp. 3d 1304 (2026)........ passim

SolarWorld Ams., Inc. v. United States,
910 F.3d 1216 (Fed. Cir. 2018)........................................................................................ 2

### Statutes

19 U.S.C. § 1516a ........................................................................................................... 2

19 U.S.C. § 1677e ......................................................................................................... 12

### Other Authorities

Certain Hardwood Plywood Products From the People's Republic of China: Final Scope Determination and Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders, 88 Fed. Reg. 46,740 (Dep't of Commerce July 20, 2023)... 20, 21

Certain Hardwood Plywood Products From the People's Republic of China: Preliminary Scope Determination and Affirmative Preliminary Determination of Circumvention of the Antidumping and Countervailing Duty Orders, 87 Fed. Reg. 45,753 (July 29, 2022)......... 6, 21

Message No. 4074419 (Mar. 14, 2024) ..................................................................... 21, 22

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Consolidated Plaintiffs Concannon Lumber Company, Northwest Hardwoods, Inc., Richmond International Forest Products LLC, Taraca Pacific Inc., Hardwoods Specialty Products USLP, Paxton Hardwoods LLC and Rugby Holdings LLC dba Rugby Architectural Building Products (collectively, "M&G Plaintiffs"), submit these comments in opposition to the first remand redetermination filed by the U.S. Department of Commerce ("Commerce") in Shelter Forest Int'l Acquisition, Inc. v. United States, __ CIT __, 831 F. Supp. 3d 1304 (2026) ("Remand Order"), Final Results of Redetermination Pursuant to Ct. Remand (August 10, 2026) (Public Version), ECF No. 164 ("Remand Redetermination") (REM P.R. 2) [1].

Commerce improperly applied this Court's Remand Order. Namely, the following determinations fail to comply with this Court's Remand Order and were unsupported by substantial evidence and not in accordance with law: (1) Commerce's reliance on adverse facts available ("AFA") to reach an affirmative country-wide circumvention finding against all Vietnamese respondents, including Groll Ply & Cabinetry Ltd. ("Groll Ply"), Plywood Sunshine Company Limited ("Plywood Sunshine"), Thang Long Wood Panel Company Ltd. ("Thang Long") and Win Faith Trading Limited ("Win Faith"), (2) Commerce's application of AFA against Win Faith and (3) Commerce's failure to confirm that all entries from Greatwood Hung Yen Joint Stock Company ("Greatwood") should liquidate without regard to antidumping ("AD") and countervailing ("CVD") duties regardless of whether interested parties directly submitted certifications for these entries in subsequent administrative reviews. The Court should, therefore, remand these issues once again to Commerce to make a proper, lawful determination.

---

[1] Documents contained in the Administrative Record Index for the remand proceeding are referenced as REM C.R. XX or REM P.R. XX. Documents cited from the Administrative Record Index from the underlying review will continue to be cited as C.R. XX or P.R. XX.

**STANDARD OF REVIEW**

The Court reviews remand determinations for compliance with its remand order. See NMB Sing. Ltd. v. United States, 28 CIT 1252, 1260, 341 F. Supp. 2d 1327, 1334 (2004) (affirming on remand where agency determinations were in accordance with law, supported by substantial evidence and otherwise satisfied the remand order). Any factual findings on remand must be supported by substantial evidence and the agency's legal determinations must be in accordance with law. See 19 U.S.C. § 1516a(b)(1)(B)(i); see also, e.g., AG der Dillinger Huttenwerke v. United States, 28 CIT 94, 106, 310 F. Supp. 2d 1347, 1358 (2004).

Substantial evidence supporting an agency determination must be based on the whole record, and the Court shall take into account not only the information that supports the agency's decision but also whatever in the record that "fairly detracts from the substantiality of the evidence." Changzhou Trina Solar Energy Co. v. United States, 975 F.3d 1318, 1326 (Fed. Cir. 2020) (quoting SolarWorld Ams., Inc. v. United States, 910 F.3d 1216, 1222 (Fed. Cir. 2018)). Although Commerce does not have to provide perfect explanations, "the path of Commerce's decision must be reasonably discernable." NMB Sing. Ltd. v. United States, 557 F.3d 1316, 1319 (Fed. Cir. 2009). Substantial evidence requires "more than a mere scintilla," see, e.g., Changzhou Trina, 975 F.3d at 1326 (internal citation omitted), and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Huayin Foreign Trade Corp. v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

## ARGUMENT

### I. Commerce's Affirmative Country-Wide Circumvention Finding Fails To Comply With This Court's Remand Order and Is Not Supported by Substantial Evidence and Is Otherwise Not in Accordance With Law

Commerce's affirmative country-wide circumvention finding fails to comply with this Court's Remand Order because no reasonable mind could conclude that the record contained substantial evidence that the Vietnamese respondents, including Groll Ply, Plywood Sunshine, Thang Long and Win Faith, completed or assembled hardwood plywood under the five production scenarios subject to Commerce's affirmative circumvention finding.

The Court ordered Commerce to "reconsider its use of AFA . . . and . . . reconsider its finding with respect to completion or assembly." Shelter Forest, __ CIT at __, 831 F. Supp. 3d at 1351. Specifically, the Court instructed Commerce to reconsider its finding "that inquiry merchandise relevant to the five production scenarios *is* being completed or assembled in Vietnam . . . based on an adverse inference." Id. at 1324. The Court faulted Commerce for applying its AFA analysis "backwards" noting that "{i}nstead of using an adverse inference when selecting from among the facts available and explaining the connection 'between the source . . . and the result,' . . . Commerce drew an adverse conclusion (completion of inquiry merchandise) in order to fulfill that statutory requirement and identified evidence the agency claims 'bolstered' the finding Commerce already made." Id. at 1349. The Court then concluded that the evidence relied on by Commerce to find that the Vietnamese respondents completed or assembled hardwood plywood under all five production scenarios "was limited to two production scenarios." Id. Further, the Court explained that "{w}hile an agency finding of circumvention with respect to two scenarios may have the same impact as one based on five scenarios{,}" Commerce must nevertheless "examine the evidence and articulate a sound rationale for the breadth of its

determination, both in terms of production scenarios and the agency's country-wide determination." Id.[2]

In its remand redetermination, Commerce found "that the factual record of the inquiries contains evidence that the Vietnamese respondents produced plywood under each of the five production scenarios at issue" and "reaffirm{ed} its country-wide circumvention finding, based on facts available and adverse inferences drawn from this factual record." Remand Redetermination at 32 (Public Version) (REM P.R. 2). Although Commerce acknowledged that "the initial allegation of circumvention submitted by the petitioner only involved two production scenarios{,}" Commerce noted that "CBP had notified Commerce that similar production activity was taking place in Vietnam, and {Commerce} subsequently obtained production data from an exporter in Vietnam . . . ." Id. at 33. Specifically, Commerce relied on "documents from the Finewood Scope Inquiry" that supposedly demonstrated that "the respondent in that inquiry, Finewood Company Limited (Finewood), exported plywood to the United States during the inquiry period that was produced under each of the five production scenarios." Id. at 33.

Commerce's continued reliance on the data from the Finewood Scope Inquiry, as before, continues to taint its entire Vietnam country-wide circumvention finding and once again renders its determination unsupported by substantial evidence and otherwise not in accordance with law. The data considered in the Finewood Scope Inquiry were outdated compared to the period of investigation of Commerce's circumvention inquiry. The table below presents some of the

[2] Although this Court stated that it "decline{d} to consider Plaintiffs' various arguments grounded in the meaning of certain statutory phrases, including completion or assembly, and minor or insignificant, and whether Commerce's methodologies underlying those determinations are consistent with the statutory terms," it nevertheless instructed that "parties may renew such arguments during the remand proceeding, as appropriate, and, while accounting for any changes as a result of the remand." Id. at 1357.

information from the Finewood decision that Commerce relied on in concluding that the assembly of plywood in Vietnam from Chinese core inputs was minor or insignificant under 19 U.S.C. § 1677j(b). Commerce improperly relied on the data to the extent that they were outside the period of inquiry or were only for a portion of the relevant period.

**Table 1**

| Data Point | Source Document | Source | Proceeding | Time Period of Data |
|---|---|---|---|---|
| Yield Ratio from poplar veneer to plywood | Mem. from Nicolas Mayora to the File re: Placing Documents Relevant to this Proceeding on the Record at Document 14, at Exhibit AI-5 Chengen Supplemental Section D Questionnaire Response (December 2, 2019) (February 18, 2022) (Business Proprietary Document) (ACCESS Barcode 4213923) (C.R. 398-399) ("EAPA Documents"); Mem. from Kabir Archuletta to the File re: Productions Costs Analysis and Data for the Preliminary Determination (July 22, 2022) (Public Version) (ACCESS Barcode 4267791) ("Production Cost Mem.") (P.R. 411) | Linyi Chengen | China Administrative Review | [ ] |

| | | | | |
|---|---|---|---|---|
| Per-Unit Consumption Quantities (i.e., "FOPs") to Produce Panels Containing 2-ply veneer from China | EAPA Documents at Document 1, Plywood China EAPA 7252 Final Scope Ruling Memorandum at 37-41 (Business Proprietary Document) (ACCESS Barcode 4213923) (C.R. 397); Production Cost Mem. at Attach., [ ] (Business Proprietary Document) and Production Cost Mem. at 2 (Business Proprietary Document) (ACCESS Barcode 4267789) (C.R. 413-414) | Vietnam Finewood | Finewood Scope Inquiry | [ ] |
| Cost Information, i.e., Surrogate Values, to Value FOPs | Production Cost Mem. at Attach., [ ] (Business Proprietary Document) and Production Cost Mem. at 2 (Business Proprietary Document) (ACCESS Barcode 4267789) (C.R. 413-414) | [ ] | Finewood Scope Inquiry | [ ] |
| U.S. selling price data | Production Cost Mem. at Attach., [ ] (Business Proprietary Document) (C.R. 413-414) and Production Cost Mem. at 3 (Public Version) (ACCESS Barcode 4267791) (P.R. 411) | Vietnam Finewood | Finewood Scope Inquiry | [ ] |

See also Letter on Behalf of Importers Alliance to Commerce re: Case Brief at 33-34 (Jan. 9, 2023) (Business Proprietary Document) (ACCESS Barcode 4328984-01) (C.R. 586); id. (Public Version) (P.R. 746).

The period of Commerce's circumvention inquiry covered December 2016 through March 2020. See Certain Hardwood Plywood Products From the People's Republic of China: Preliminary Scope Determination and Affirmative Preliminary Determination of Circumvention of the Antidumping and Countervailing Duty Orders, 87 Fed. Reg. 45,753 (Dep't of Commerce July 29, 2022), and accompanying Prelim. Dec. Mem. (ACCESS Barcode 4267623-02) ("Circ. Prelim.")

(P.R. 409). The information gathered in the Finewood Scope Inquiry, by contrast, generally [

]. Supra Table 1. In addressing comments on its draft redetermination, Commerce acknowledged that the data it relied on do not cover the full inquiry period but instead cover "a majority of the inquiry period." Remand Redetermination at 46 (Public Version) (REM P.R. 2); id. (stating that the Finewood data "represents data from a period of approximately one and a half years in the middle of the inquiry period (6/1/2017 – 12/31/2018)" and implicitly acknowledging the record lacks data from 12/1/2016-5/31/2017 and 1/1/2019-3/31/2020). Mere speculation is insufficient to constitute substantial evidence. See Lifestyle Enter. v. United States, __ CIT __, __, 768 F. Supp. 2d 1286, 1309 (Ct. Int'l Trade 2011) ("Commerce cannot base its analysis on mere speculation."); see also OSI Pharms., LLC v. Apotex Inc., 939 F.3d 1375, 1382 (Fed. Cir. 2019) ("'Mere speculation' is not substantial evidence." (quoting Intell. Ventures I LLC v. Motorola Mobility LLC, 870 F.3d 1320, 1331 (Fed. Cir. 2017))); Giorgio Foods, Inc. v. United States, 2024 Ct. Intl. Trade LEXIS 84, at *15 (Ct. Int'l Trade July 17, 2024) ("Congress has not authorized {Commerce} to exercise its {Tariff Act} powers based on speculation, conjecture, divination, or anything short of factual findings based on substantial evidence." (quotation and citation omitted)); Ad Hoc Shrimp Trade Action Comm. v. United States, 2024 Ct. Intl. Trade LEXIS 97 at *34 n.24 (Ct. Int'l Trade Aug. 15, 2024) ("It is well-settled that mere speculation does not amount to substantial evidence." (citing Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1327 (Fed. Cir. 2009)). Commerce unlawfully relied on mere speculation as support for its continued conclusion that the Vietnamese respondents assembled hardwood plywood under all five production scenarios during half of the inquiry period. Further, no reasonable mind could find

that such limited evidence could support a country-wide circumvention finding against all five production scenarios for the full inquiry period. See Huayin, 322 F.3d at 1374 (Fed. Cir. 2003).

While Commerce found that "the Finewood documentation is sufficient on its own to find completion of inquiry merchandise under all five scenarios," Commerce nevertheless noted that it "relied upon other record evidence submitted by the petitioner {in its request for Commerce to initiate a scope or circumvention inquiry}," including trade data showing a rise in Vietnamese exports of hardwood plywood into the United States and an increase in the volume of Chinese exports of wood veneers to Vietnam. Remand Redetermination at 34-35 (Public Version) (REM P.R. 2). These trade data, however, are not specific to any of the five plywood production scenarios found to be circumventing the AD/CVD orders. See Mem. from K. Archuletta to the File re: Moving Public Versions and Public Documents to Vietnam Assembly Anti-Circumvention Segment (July 6, 2020) (Public Version) (ACCESS Barcode: 3996770-10) (P.R. 19) (attaching Letter on Behalf of Pet'r to Commerce re: Request for Scope Ruling/Anti-Circumvention Ruling at 11-13, 35 (Public Version) (Feb. 25, 2020) and including trade data for specific HTS data for hardwood plywood as opposed to specific production scenarios); id. (ACCESS Barcode: 3996770-11) (P.R. 20) (attaching Letter on Behalf of Pet'r to Commerce re: Coalition's Response to Request for Clarification at Ex. 2 (Public Version) (May 12, 2020) (including HTS data for wood veneers without connecting these imports to plywood assembled in Vietnam under the specific production scenarios). Further, Commerce noted that an "affidavit provided by the petitioner indicates that poplar core plywood from China may have been exported to the United States from Vietnam." Remand Redetermination at 35 (Public Version) (REM P.R. 2) (emphasis added). Petitioner's affidavit merely states that "poplar core plywood from China may have been exported to the United States from Vietnam." Id. (emphasis added). Commerce itself recognized that "the information

initially provided by the petitioner related to only certain production scenarios."[3] As before, no reasonable mind could find that documentation submitted by the Petitioner, which is either not specific to all five production scenarios or relies on mere speculation, adequately supports Commerce's finding that the Vietnamese respondents completed or assembled inquiry merchandise under all five scenarios during the relevant time period. See Huayin, 322 F.3d at 1374.

Nor does Commerce's continued reliance on AFA for its finding that "22 companies produced inquiry merchandise during the inquiry period" as support for its country-wide determination of circumvention comply with this Court's Remand Order. Remand Redetermination at 55 (REM P.R. 2). Commerce faults certain companies, such as Thang Long, Groll Ply, Plywood Sunshine and Win Faith, with failing to provide certain information regarding their alleged production of inquiry merchandise that Commerce deemed necessary to conduct its circumvention analysis. See id. at 48. Contrary to the Court's instructions, Commerce continued to "approach its {AFA} analysis backwards." Shelter Forest, __ CIT at __, 831 F. Supp. 3d at 1349. Indeed, as the Court has held in another case, "AFA is not a magic phrase that permits Commerce to skip an analysis of the record." Changzhou Trina Solar Energy Co. v. United States, __ CIT __, __, 352 F. Supp. 3d 1316, 1342 (2018). In its remand redetermination, Commerce did not "use{} an adverse inference when selecting from among the facts available," but instead relied on AFA to reach its conclusion.

[3] In addressing comments on its draft remand redetermination, Commerce refers to data submitted by the Government of Vietnam showing imports of veneer and plywood/veneer panels into Vietnam from China during the inquiry period. See id. at n. 46; see also id. at 48-49. Commerce, however, fails to connect these imports to the actual production of hardwood plywood destined to the United States as opposed to merchandise destined for either domestic sales or export to other markets. In other words, Commerce once again unlawfully relies on pure speculation in support of its preferred conclusion. See Lifestyle, __ CIT at __, 768 F. Supp. 2d at 1309.

Shelter Forest, __ CIT at __, 831 F. Supp. 3d at 1314. As explained above, there is no evidence that the Vietnamese respondents completed or assembled hardwood plywood under three of the five production scenarios subject to Commerce's affirmative circumvention finding. Commerce, therefore, had no facts that would supply an adverse inference against which to support its affirmative country-wide finding against all five production scenarios. Commerce's remand redetermination, therefore, fails to comply with this Court's Remand Order and continues to be unsupported by substantial evidence and otherwise not in accordance with law because Commerce did not provide "a sound rationale for the breadth of its determination, both in terms of production scenarios and the agency's country-wide determination." Id. at 1349.

For these reasons, this Court should remand this issue to Commerce with instructions to reverse its country-wide circumvention finding and revoke the application of AD/CVD against exports of hardwood plywood from Vietnam for all Vietnamese exporters, including Groll Ply, Plywood Sunshine, Thang Long and Win Faith.

## II. Commerce's Determination To Apply AFA Against Win Faith Fails To Comply With This Court's Remand Order and Is Not Supported by Substantial Evidence and Is Otherwise Not in Accordance With Law

Commerce's decision on remand to continue to apply AFA against Win Faith fails to comply with this Court's Remand Order for two reasons. First, Commerce exceeded the scope of this Court's Remand Order by deviating from the "two or more failings" standard applied in its final circumvention determination. Second, Commerce's finding that Win Faith withheld information or that information is missing on the record regarding Win Faith's affiliations is not supported by substantial evidence and is otherwise not in accordance with law because Commerce relied on mere speculation to make its finding.

In its Remand Order, this Court held that Commerce's application of AFA against Win

Faith was not supported by substantial evidence and was otherwise not in accordance with law because Commerce claimed in its final determination of circumvention that it applied AFA against companies with two or more failings but Commerce identified only a single deficiency in Win Faith's responses relating to the reporting of its affiliations. See Shelter Forest, __ CIT at __, 831 F. Supp. 3d at 1340-41. The Court instructed Commerce on remand to "reconsider its overall finding that Win Faith failed to cooperate for purposes of 19 U.S.C. § 1677e(b)(1)." Id. at 1341. In its remand redetermination, Commerce improperly affirmed its application of AFA against Win Faith on the basis that Win Faith withheld information concerning its alleged affiliation with Chinese producers of hardwood plywood. See Remand Redetermination at 26-27 (Public Version) (REM P.R. 2). Further, Commerce incorrectly found that information was missing from the record on Win Faith's affiliations and that Win Faith failed to cooperate to the best of its ability by not disclosing a "complete accounting of {its} affiliations and their activities." Id. at 27. Based on AFA, Commerce concluded that "Win Faith produced inquiry merchandise under all five production scenarios during the inquiry period." Id.

The first reason that Commerce's remand redetermination fell short of this Court's directive is that Commerce did not provide a "reasonably discernable," NMB, 557 F.3d at 1319, explanation of how Win Faith committed "two or more failings" in responding to Commerce's questions in the underlying circumvention inquiry. See Shelter Forest, __ CIT at __, 831 F. Supp. 3d at 1341. This Court's Remand Order expressly directed Commerce to "explain how it applied its own 'two or more failings' standard for the use of AFA." Id. In its remand redetermination, Commerce noted that its "reference to 'two or more' failings as a predicate for AFA was not intended to constitute a new standard" but nevertheless recognized that "the distinction between multiple errors which collectively undermine our confidence in the accuracy of a submission, and

errors and inconsistencies and omissions related to items of crucial and central relevance in and of themselves." Remand Redetermination at 24 (Public Version) (REM P.R. 2); see also id. at 51-52. Commerce also concluded that Win Faith's "failure to report affiliates and affiliated Chinese suppliers of plywood inputs is a fatal flaw that requires no further inquiry to reach a determination that AFA is appropriate." Id. at 24; see also id. at 52. Commerce's assertion that it did not apply a new standard is nonsensical given that Commerce itself acknowledged that Win Faith's alleged failures fell under "a single topic of 'affiliations'. . . ." Id. at 52. Commerce unlawfully exceeded the scope of the remand by applying a different standard and applying AFA against Win Faith for committing one alleged failure in that the Court limited its Remand Order to a direction that Commerce "explain how it applied its own 'two or more failings' standard for the use of AFA." Shelter Forest, __ CIT at __, 831 F. Supp. 3d at 1341.

Second, even if Win Faith's reporting of its affiliations could represent "two or more" failings, Commerce's finding that "Win Faith is affiliated with one or more producers of plywood in China" continues to be unsupported by the record. Remand Redetermination at 22 (Public Version) (REM P.R. 2). Before Commerce can lawfully apply AFA against a respondent, Commerce must make two separate determinations: (1) that a gap exists in the record such that Commerce must apply facts otherwise available, and (2) that a party failed to cooperate to the best of its ability such that Commerce should apply an adverse inference when interpreting the facts otherwise available that it uses to fill that gap. See 19 U.S.C. § 1677e(a)-(b). Again, Commerce's basis for applying AFA against Win Faith to find that it "produced inquiry merchandise under all five production scenarios during the inquiry period" was that Win Faith allegedly failed to disclose information concerning its affiliates and their activities. See Remand Redetermination at 22-23 (Public Version) (REM P.R. 2). No reasonable mind, however, could find that the record

adequately supported Commerce's determination that Win Faith failed to disclose its affiliates and their activities such that Commerce could lawfully rely on AFA. See Huayin, 322 F.3d at 1374 (holding that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

In its remand redetermination, Commerce continued to focus its analysis on Win Faith's alleged affiliation with [ ] and Commerce noted that it supplemented the record with a "[ ] brochure." Id. at 22 (Business Proprietary Document) (ACCESS Barcode 4930061-01) (REM C.R. 2) (citing Mem. from B. Shore to the File Re: Request for Comments on New Factual Information at Ex. 1 (Apr. 21, 2026) (ACCESS Barcode 4195025-01) (Business Proprietary Document) ("Win Faith NFI Mem.") (REM C.R. 8)). Commerce found that this brochure "states that '[ ] has three mills producing different kinds of plywood.'" Id. (citing Win Faith NFI Mem. at Ex. 3 (Business Proprietary Document) (REM C.R. 8)). Further, Commerce placed an excerpt from "[ ]'s website {on the record} stat{ing} that '[ ] has invested {in} our own wood manufacturing bases." Id. at 23 (Business Proprietary Document) (citing Win Faith NFI Mem. at Ex. 6 (Business Proprietary Document) (REM C.R. 8)). Finally, Commerce relied on "[ ]'s company profile on [ ] which references that '[ ] invested {in} a plywood mill.'" Id. (citing Win Faith NFI Mem. at Ex. 5 (Business Proprietary Document) (REM C.R. 8)). Based on this information, Commerce concluded that "Win Faith is . . . affiliated with at least one producer of plywood in China." Id. (Public Version) (REM P.R. 2). Commerce then applied an adverse inference against the alleged fact that Win Faith was allegedly affiliated with Chinese producers of hardwood plywood to conclude that "Win Faith produce{d} inquiry merchandise under all five production scenarios during the inquiry period." Id. at 55.

No reasonable mind could find that this additional information adequately supported Commerce's finding in its remand redetermination that Win Faith was affiliated with Chinese producers of hardwood plywood. Of the additional information, [ ] pertains to the period of Commerce's investigation (i.e., December 2016 through March 2020) and even that does not contain information that is central to Commerce's continued basis for applying AFA against Win Faith. See Remand Redetermination at 53 (Public Version) (REM P.R. 2) ("Importers' Alliance argues that multiple sources that Commerce cites in its finding regarding Win Faith's affiliation with producers of plywood in China are based on information from outside the inquiry period."). The period of Commerce's scope and circumvention inquiries "cover{ed} December 2016 through March 2020." Circ. Prelim. and accompanying Prelim. Dec. Mem. at 7 (ACCESS Barcode 4267623-02) (P.R. 409). The table below summarizes the information relied on by Commerce in its remand redetermination:

**Table 2**

[

]

See Win Faith NFI Mem. at Exs. 1, 2-3, 6 (Business Proprietary Document) (REM C.R. 8). In sum, the information relied on by Commerce in its remand redetermination to find that Win Faith was affiliated with Chinese producers of hardwood plywood, with the [

], falls outside Commerce's period of investigation for the circumvention

inquiry, which covered the period of December 2016 through March 2020.

Commerce unlawfully relied on mere speculation in finding that the information from [ ] falls within the inquiry period. Again, mere speculation is insufficient to constitute substantial evidence. See, e.g., Lifestyle, __ CIT at __, 768 F. Supp. 2d at 1309. Commerce itself recognized that "some of the exhibits that Commerce cites might appear to have been published or viewed outside of the inquiry period . . . ." Remand Redetermination at 53 (REM P.R. 2) (emphasis added). Commerce, however, found that "the information contained in these exhibits either originates from or could originate from the inquiry period." Id. (emphasis added). Regarding the information in Exhibit 1, Commerce acknowledges that this information was "published or updated in 2024." Id. Commerce, however, noted that the exhibit references information dating back to 1999. See id. This information merely refers to the [ ] and is irrelevant to whether [ ]. See Win Faith NFI Mem. at Ex. 1 (REM C.R. 8). Indeed, Commerce explained that it is "unclear when or over what time period [ ] established its more than [ ] wholly-owned and holding subsidiaries. Between 1999 and 2024, it is possible that several, if not all, of these more than [ ] subsidiaries existed during the inquiry period." Remand Redetermination at 53-54 (Business Proprietary Document) (REM C.R. 2) (emphasis added). Similarly, with respect to Exhibit 6, Commerce recognized that the information "was accessed by the petitioner on April 28, 2024" (i.e., outside of the period of Commerce's circumvention inquiry) but offered no support for its conclusion that this fact "has no bearing on the timeframe of the information contained therein." Id. at 54 (Public Version) (REM P.R. 2). In short, Commerce unlawfully relied on mere speculation (e.g., "might," "could" or "unclear") to conclude that the information it relied on to support its finding that Win Faith was

affiliated with Chinese producers of hardwood plywood fell within the period of Commerce's circumvention inquiry.

Commerce faulted Win Faith for not rebutting the information Commerce put on the record when given the chance to do so. See id. Whether Win Faith rebutted the information, however, does not change the fact that the [ ] relied on by Commerce to support its determination that Win Faith was affiliated with Chinese producers of hardwood plywood during the period of Commerce's inquiry is what is contained in [ ]. See Remand Redetermination at 22-23 (Business Proprietary Document) (REM C.R. 2). No reasonable mind could find that information demonstrated that Win Faith was affiliated with Chinese producers of hardwood plywood. See Huayin, 322 F.3d at 1374. [ ]. See Win Faith NFI Mem. at Ex. 1 (REM C.R. 8). The record lacks even a "mere scintilla" of evidence to support Commerce's conclusion that Win Faith was affiliated with Chinese producers of hardwood plywood. Changzhou Trina, 975 F.3d at 1326. Commerce's continued reliance on AFA against Win Faith, therefore, is unsupported by substantial evidence and not in accordance with law because the record lacks evidence demonstrating that Win Faith was affiliated with Chinese producers of hardwood plywood.

For these reasons, the Court should remand this issue to Commerce with instructions to reverse its application of AFA against Win Faith, liquidate entries from Win Faith without regard to AD/CVD and permit Win Faith to participate in the certification regime.

### III. Commerce's Remand Redetermination With Respect to Greatwood Does Not Comply With This Court's Remand Order and Is Not Supported by Substantial Evidence and Is Otherwise Not in Accordance With Law

Commerce's remand redetermination with respect to Greatwood does not comply with this Court's Remand Order and is not supported by substantial evidence and is otherwise not in accordance with law because Commerce has altered its certification regime in a manner that results in AD/CVD being unlawfully imposed on Greatwood's entries.

In its Remand Order, this Court granted Commerce's request for a voluntary remand to correct its instructions with respect to Greatwood. See Shelter Forest, __ CIT at __, 831 F. Supp. 3d at 1355-56. In particular, the Court granted a voluntary remand for Commerce to address the fact that its "instructions {to U.S. Customs and Border Protection ("CBP")} did not address . . . Greatwood's entries for the period from initiation to the final determination." Id. at 1356 (citation omitted). Such a correction was necessary as Commerce preliminarily found that Greatwood was ineligible to participate in the certification regime but later reversed this finding in its final determination of circumvention. See Remand Redetermination at 37-39 (Public Version) (REM P.R. 2). Following its final circumvention determination, Commerce found that Greatwood was eligible to participate in the certification regime to certify that its entries were not produced under any of the five scenarios found to be circumventing the AD/CVD orders and issued instructions to this effect to CBP. See id. at 38. As Commerce acknowledged, however, its instructions "did not address the disposition of . . . Greatwood's entries that were suspended as a result of {Commerce's} affirmative Preliminary Determination" of circumvention. Id.

In its remand redetermination, Commerce "revised {its} instructions to {CBP} to address those entries {i.e., those entered from July 17, 2020, through July 19, 2023} by permitting . . . Greatwood to certify that they are not of plywood produced under any of the scenarios subject to

this inquiry." Id. at 39; see also Mem. from Miranda Bourdeau to the File re: Revised Customs Instructions Pursuant to Voluntary Remand at Attach. (June 26, 2026) (Public Document) (ACCESS Barcode 4931455-01) (REM P.R. 8). Commerce noted that "in the China Plywood AR5 Final, {it} also permitted . . . Greatwood to submit such certifications {to Commerce} and . . . Greatwood did so." Remand Redetermination at 39 (Public Version) (REM P.R. 2). Commerce explained that "once the injunction covering those entries is lifted, {Commerce} intend{s} to liquidate . . . Greatwood's suspended entries without regard to AD/CVD duties." Id.

In addressing comments on its draft remand redetermination, Commerce found that not all "Greatwood's suspended entries should be liquidated without regard to AD/CVD where Greatwood has not provided the applicable certifications." Id. at 62. Commerce asserted that "it would be inappropriate to exempt Greatwood from following the certification process in the same manner required of all other parties that are eligible to participate in the certification program and from the requirements established in the cash deposit instructions." Id. Commerce reasoned that it made a "no-shipment finding" for Greatwood as opposed to a negative circumvention determination and, therefore, Greatwood was required "to certify that their entries are not of in-scope products prior to liquidating those entries without regard to AD/CVD duties." Id. As a result of Commerce's remand redetermination, Commerce is improperly directing CBP to liquidate Greatwood's non-circumventing entries with AD/CVD applied to the extent that Greatwood did not submit the relevant certification to Commerce during the fifth or subsequent administrative review contrary to its own determination that Greatwood made no shipments of inquiry merchandise.

Commerce must provide a "reasonably discernable" explanation in order for its remand redetermination to be supported by substantial evidence and in accordance with law. See NMB

Sing., 557 F.3d at 1319. Commerce fails to provide such an explanation with respect to its determination that Greatwood was required to submit certifications to Commerce for Greatwood's entries to liquidate without regard to AD/CVD. During the hardwood plywood circumvention proceedings, Commerce established a certification regime that allows Vietnamese exporters and U.S. importers to certify that their "hardwood plywood was not produced using any of the Chinese hardwood plywood input scenarios subject to {Commerce's affirmative circumvention finding}." Certain Hardwood Plywood Products From the People's Republic of China: Final Scope Determination and Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders, 88 Fed. Reg. 46,740, 46,741 (Dep't of Commerce July 20, 2023) (ACCESS Barcode 4403527-03) (P.R. 844) ("Final Circumvention Determination"). As part of this certification regime, Commerce imposed specific requirements on exporters and U.S. importers. Namely, exporters "must prepare and maintain an exporter certification and documentation supporting the exporter certification." Id., 88 Fed. Reg. at 46,741. U.S. importers "must prepare and maintain an importer certification as well as documentation to support the importer certification" and "maintain a copy of the exporter certification . . . and relevant supporting documentation from the exporter of the hardwood plywood assembled in Vietnam that was not produced using any of the Chinese hardwood plywood input scenarios subject to {Commerce's affirmative circumvention finding}." Id. In other words, Commerce's certification itself places a burden on U.S. importers and exporters to maintain the necessary documentation to demonstrate that their merchandise is not subject to the AD/CVD orders on hardwood plywood from China but does not require that this documentation be submitted to Commerce.

Certainly, all of Greatwood's entries after July 20, 2023 were eligible for the certification program and should be liquidated without regard to AD/CVD. July 20, 2023 is the date on which

Commerce issued its Final Circumvention Determination and reversed its AFA finding regarding Greatwood. See id.[4] Commerce's determination that Greatwood was eligible for the certification program was unequivocal in the final circumvention determination. See id. and accompanying Issues and Dec. Mem. at 76 (ACCESS Barcode: 4403527-02) (P.R. 842) ("Because Commerce erred in its preliminary findings with respect to Greatwood Hung Yen, for this final determination, we have revised our AFA finding with respect to Greatwood Hung Yen and find that it no longer exported inquiry merchandise.") (emphases added). Indeed, Commerce even conducted verification on Greatwood prior to the issuance of its Final Circumvention Determination. See generally id. at 44, n. 209 (referencing Greatwood's submission of verification exhibits).

Commerce recognized in its final circumvention determination that it "erred" with respect to its preliminary AFA finding for Greatwood. Id. at 76. It further noted that "For … Greatwood Hung Yen (formally {sic} Greatwood Company Limited), we are revising our preliminary findings and find that their arguments resolved concerns with respect to those companies that were outlined in the Preliminary AFA Memorandum." Id. at 103 (emphasis added). In its final circumvention determination, Commerce stated: "Hardwood plywood assembled in Vietnam under scenarios other than the five production scenarios identified above are not subject to these inquiries. Therefore, cash deposits are not required for such merchandise, subject to the following certification requirements." Final Circumvention Determination, 88 Fed. Reg. at 46,741 (emphasis added). It stated that only "non-cooperative exporters listed in Appendix V are not

[4] In its cash deposit instructions following the final circumvention determination, Commerce listed Greatwood among the companies "now eligible to participate in the certification program." See Message No. 4074419 (Mar. 14, 2024) (correction to Message No. 3215402 (Aug. 3, 2023) (P.R. 845); see also Mem. from M. Bourdeau to the File re: Revised Customs Instructions Pursuant to Voluntary Remand (June 26, 2026) (Public Document) (ACCESS Barcode 4931455-01) (REM P.R. 8).

eligible to participate in this certification program." Id. Greatwood was not listed among the non-cooperative exporters in Appendix V. See id.[5] Given Commerce's final circumvention determination that Greatwood was eligible for certification and that hardwood plywood assembled in Vietnam "under scenarios other than the five production scenarios identified" are not subject to these inquiries, there is no reasonable basis for assessing AD/CVD on any of Greatwood's entries during the POR so long as the exporter and importer maintain the required certifications. By restricting the instructions to CBP to liquidate Greatwood's entries without regard to AD/CVD only if certifications were later submitted to Commerce, Commerce fails to provide a "reasonably discernable" explanation for its determination. NMB, 557 F.3d at 1319,

For these reasons, this Court should remand this issue to Commerce with instructions to find that Greatwood's entries should liquidate without regard to AD/CVD regardless of whether Greatwood submitted its certification to Commerce during either the fifth or subsequent administrative review.

## IV. M&G Plaintiffs Adopt Comments Filed by Other Respondent Parties

The M&G Plaintiffs hereby adopt and incorporate by reference the comments in opposition to Commerce's remand redetermination filed by other respondent parties to the extent they are not inconsistent with the arguments presented in these comments.

---

[5] Furthermore, Commerce stated the following in its instructions to CBP following the Final Circumvention Determination: "For merchandise shipped by 07/20/2023 that was previously ineligible for certification and that is now eligible for certification as a result of the Final Determination, the certification requirements should be met as soon as practicable, but no later than 8/13/2023, 30 days after the signature date of the Final Determination." Message No. 4074419 (Mar. 14, 2024) (emphasis added). These instructions confirm that all POR entries of hardwood plywood exported by Greatwood, including those shipped prior to July 20, 2023, were eligible for the certification program, not just those that entered after publication of the Final Circumvention Determination.

## CONCLUSION

For the reasons set forth herein, and in the comments filed by the other respondents as incorporated by the M&G Plaintiffs, this Court should find that Commerce's remand redetermination remains unsupported by substantial evidence and not in accordance with law. This Court should remand Commerce's determinations with instructions for Commerce to: (1) reverse its country-wide circumvention finding and revoke the application of AD/CVD against exports of hardwood plywood from Vietnam for all Vietnamese exporters, including Groll Ply, Plywood Sunshine, Thang Long, and Win Faith; (2) reverse its application of AFA against Win Faith, liquidate entries from Win Faith without regard to AD/CVD and permit Win Faith to participate in the certification regime and (3) find that Greatwood's entries should liquidate without regard to AD/CVD regardless of whether the importer/exporter submitted its certification to Commerce during the fifth administrative review.

Respectfully submitted,

Dated: October 13, 2026

/s/ Jeffrey S. Grimson
Jeffrey S. Grimson
Jill A. Cramer
Bryan P. Cenko
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, Suite 810
Washington, DC 20015
202-688-3610
trade@mowrygrimson.com
*Counsel to Concannon Lumber Company, Northwest Hardwoods, Inc., Richmond International Forest Products LLC, Taraca Pacific Inc., Hardwoods Specialty Products USLP, Paxton Hardwoods LLC and Rugby Holdings LLC dba Rugby Architectural Building Products*

## CERTIFICATE OF COMPLIANCE

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Jeffrey S. Grimson, hereby certify that this brief complies with the word limitation set forth in this Court's Scheduling Order, ECF No. 169. Excluding the table of contents, table of authorities, signature block and any certificates of counsel, the word count for this brief is 6,631 words.

Respectfully submitted,

Dated: October 13, 2026

/s/ Jeffrey S. Grimson

Jeffrey S. Grimson
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, Suite 810
Washington, DC 20015
202-688-3610
trade@mowrygrimson.com
*Counsel to Concannon Lumber Company, Northwest Hardwoods, Inc., Richmond International Forest Products LLC, Taraca Pacific Inc., Hardwoods Specialty Products USLP, Paxton Hardwoods LLC and Rugby Holdings LLC dba Rugby Architectural Building Products*