**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

SHELTER FOREST INTERNATIONAL ACQUISITION, INC.,

Plaintiff,

and

GREATRIVER WOOD CO., LTD., ET AL.,

Consolidated Plaintiffs,

v.

UNITED STATES,

Defendant,

and

COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD

Defendant-Intervenor.

Consol. Court No. 23-00144

**NON-CONFIDENTIAL VERSION**

**CONSOLIDATED PLAINTIFFS' COMMENTS ON REMAND REDETERMINATION**

Gregory S. Menegaz
Alexandra H. Salzman
Vivien Jinghui Wang
**INTER-GLOBAL TRADE LAW GROUP, PLLC**
Suite 1101
1156 Fifteenth Street, N.W. 20005
Tel: (202) 868-0300
email: gmenegaz@igtlaw.com
*Counsel to IGT Plaintiff*

Dated: October 13, 2026

## TABLE OF CONTENTS

INTRODUCTION .......... 1

SUMMARY OF ARGUMENTS .......... 4

ARGUMENTS .......... 5

I. Commerce Must Fully Implement Its Reversal of AFA for All Affected Entries From Eagle, Golden Bridge, Arrow Forest, Innovgreen, and Her Hui, Regardless of Whether Such Entries Remain Suspended at the Conclusion of This Litigation .......... 5

II. Commerce's Selection of Adverse Facts and Its Finding Concerning Completion or Assembly Within the Meaning of § 1677j(b)(1)(B) Remain Unsupported by Substantial Evidence. .......... 11

A. Commerce Has Not Established That Finewood Produced Inquiry Merchandise Under All Five Production Scenarios .......... 11

1. Finewood's Records Do Not Establish production Under Scenarios 1 and 2 .......... 12

2. The Finewood documents support production under Scenario 3 but do not establish production under Scenarios 4 and 5 .......... 14

3. Commerce Mischaracterized the Period of Finewood's Production .......... 15

4. Commerce's Finding Rests on Possible Production Scenarios, Not Substantial Evidence of Actual Completion or Assembly .......... 17

B. Commerce Failed to Establish That Its Selection of Adverse Facts Supports A Finding of Completion or Assembly Under All Five Production Scenarios .......... 18

III. Commerce's Affirmative Circumvention Determination Remains Contrary to the Statutory Requirements and Unsupported by Substantial Evidence .......... 23

A. Commerce Failed to Establish That Plywood Manufacturing in Vietnam Constitutes "Completion or Assembly" Under 19 U.S.C. § 1677j(b)(1)(B) .......... 24

B. Commerce Failed to Support Its Finding of Minor or Insignificant Processing Under § 1677j(b)(1)(C) and (b)(2) .......... 25

C. Commerce's Patterns-of-Trade Analysis Does Not Support Its Affirmative Determination .......... 27

D. Commerce's Country-Wide Determination Cannot Be Sustained on the

Remaining Record. .......................................................................................27

CONCLUSION AND PRAYER FOR RELIEF .....................................................................28

# TABLE OF AUTHORITIES

**Cases**

*Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556 (Fed. Cir. 1984)........................................17

*Bailey v. United States*, 516 U.S. 137 (1995) ....................................................................24

*Bell Supply Co., LLC v. United States*, 348 F. Supp. 3d 1281 (Ct. Int'l Trade 2018) ..................26

*Canadian Solar Inc. v. United States*, 537 F. Supp. 3d 1380, 1391 (Ct. Int'l Trade 2021)...........17

*Changzhou Trina Solar Energy Co. v. United States*, 359 F. Supp. 3d 1329 (Ct Int'l Trade 2019) ..........................................................................................................................19

*Columbia Forest Prods. v. United States*, 399 F. Supp. 3d 1283 (Ct. Int'l Trade 2019) .............27

*Decca Hospitality Furnishings, LLC v. United States*, 427 F. Supp. 2d 1249 (Ct Int'l Trade 2006) ............................................................................................................................9

*Hormel v. Helvering*, 312 U.S. 552 (1941) ........................................................................26

*Jindal Poly Films Ltd. v. United States*, 439 F. Supp. 3d 1354 (Ct Int'l Trade 2020) ..................19

*Jinko Solar Co. v. United States*, 789 F. Supp. 3d 1275 (Ct Int'l Trade 2025) ............................19

*Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024) ........................................................26

*Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375 (Fed. Cir. 2008) ...........................17

*Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978 (Fed. Cir. 1994) .......17

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) ..........................................................26

*Vietnam Finewood Co. v. United States,* 633 F. Supp. 3d 1243 (Ct. Int'l Trade 2023)................21

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370 (Fed. Cir. 2013) .............18

**Statutes**

19 U.S.C. § 1514.........................................................................................................................8

19 U.S.C. § 1516a(a)(2)(B)(vi)......................................................................................................5

19 U.S.C. § 1516a(b)(1)(B)(i) ....................5

19 U.S.C. § 1673e(a)(1) ....................9

19 U.S.C. § 1677e(b) ....................11, 19

19 U.S.C. § 1677j(b)(1)(B) ....................2, 11, 18, 19, 22, 24, 25

19 U.S.C. § 1677j(b)(1)(C) ....................24, 25

19 U.S.C. §§ 1677j(b)(1)(C)–(E) ....................3

19 U.S.C. § 1677j(b)(2) ....................25

19 U.S.C. §§ 1677j(b)(2)(A)–(D) ....................25

19 U.S.C. §§ 1677j(b)(2)–(3) ....................3

19 U.S.C. § 1677j(b)(2)(E) ....................25

19 U.S.C. § 1677j(b)(3)(A) ....................27

19 U.S.C. § 1677m(d) ....................1

28 U.S.C. § 1581(c) ....................5

**Regulations**

19 C.F.R. § 351.226(l)(3) ....................10

19 C.F.R. § 351.226(m)(1)(iv) ....................10

19 C.F.R. §§ 351.228(a)–(b) ....................10

**Administrative Decisions**

*Certain Hardwood Plywood Products From the People's Republic of China*: Final Results of Administrative Reviews of the Antidumping and Countervailing Duty Orders, Final Determination of No Shipments; 2021–2022, 90 Fed. Reg. 21271, 21272 (Dep't Commerce, May 19, 2025) .................... 20-21

**Other Authorities**

Statement of Administrative Action, Accompanying the Uruguay Round Agreements Act (URAA), H. Doc. 103-316, vol. 1 (1994), U.S.C.C.A.N. 4040.....................................................24

Consolidated Plaintiffs American Woodmark Corp., American Pacific Plywood, Inc., Del Valle Kahmann & Co., Ike Trading Co. Ltd., Pittsburgh Forest Products, Panoply Wood Products USA Inc., Eagle Industries Co. Ltd., Golden Bridge Industries Pte., Ltd., Lechenwood Viet Nam Co. Ltd., Arrow Forest International Co., Ltd., Her Hui Wood (Vietnam) Co., Ltd., Vietnam ZhongJia Co. Ltd., Long LUU Plywood Production Co., Ltd., TEKCOM Corp, and USPLY LLC (collectively, "IGT Plaintiffs"), hereby submit the following comments in opposition to Commerce's Remand Results. *See* Remand Results (August 10, 2026), **ECF 163-1**; *see also Shelter Forest International Acquisitions, Inc. v. United States*, Consol. Ct. No 23-00144, Slip Op. 26-5 (Ct. Int'l Trade January 28, 2026). As discussed below, Commerce's remand results with respect to the AFA application to certain Vietnamese exporters, and the remand results concerning the overall circumvention analysis, are not supported by substantial evidence and inconsistent with the law.

## INTRODUCTION

The Court remanded Commerce's application of adverse facts available ("AFA") to 19 of the 20 companies identified in Appendix I of the Final Issues and Decision Memorandum. Slip Op. 26-5 at 28-57. The Court found that Commerce had failed to provide the notice and opportunity to remedy or explain deficiencies required by 19 U.S.C. § 1677m(d), whether through its generic supplemental questionnaires or, for certain respondents, company-specific questionnaires. *Id.* Win Faith Trading was the exception. *Id.* at 31 n.27, 57.

On remand, Commerce issued additional questionnaires to only two of those 19 companies, i.e., Groll Ply & Cabinetry and Plywood Sunshine—but not the other 17. Remand Results at 7-10.

In the Remand Results, Commerce reconsidered its application of AFA to the 19

Appendix I companies (excluding Win Faith Trading), *see* Remand Results at 7-16, including these 5 companies: Eagle Industries Company Limited ("Eagle"), Golden Bridge Industries Pte. Ltd. ("Golden Bridge"), Arrow Forest International Co., Ltd. ("Arrow Forest"), Innovgreen Thanh Hoa Co. Ltd. ("Innovgreen"), and Her Hui Wood (Vietnam) Co. ("Her Hui"), *id.* at 10-15. Relying on its findings in the fifth administrative review of the AD CVD orders ("*China Plywood AR5*"), Commerce determined that these Eagle, Golden Bridge, Arrow Forest, Innovgreen, and Her Hui did not produce inquiry merchandise during that review period and maintained accounting systems capable of linking the country of origin of their core inputs to the production of finished plywood. *Id.* at 10-11, 14-15. Commerce therefore determined that the application of AFA to these 5 companies was no longer warranted. *Id.* at 12, 15.

To implement its revised AFA determinations, Commerce stated that it would permit these 5 companies to certify, where applicable, that plywood in any entries remaining suspended at the conclusion of this litigation (after the Court has affirmed the Remand Results and all appeals have been exhausted) is not in-scope merchandise. *Id.* at 12, 15. Commerce further stated that such certifications would be unnecessary for entries already reviewed and found to be outside the scope of the orders in *China Plywood AR5*. *Id.* at 12, 15.

Second, the Court remanded Commerce's selection of adverse facts because the agency had not established a reasoned connection between the evidence and its finding that respondents subject to AFA produced inquiry merchandise under all five scenarios. Slip Op. 26-5 at 74-82. That defect was distinct from the respondents' failures to cooperate and implicated Commerce's finding of completion or assembly under 19 U.S.C. § 1677j(b)(1)(B). *Id.*

On remand, Commerce reaffirmed its determination that the remaining respondents subject to AFA produced inquiry merchandise under all five production scenarios. *See* Remand

Results at 31-36. In support of that determination, Commerce discussed evidence from the Finewood scope inquiry, the petitioner's submissions, and import data provided by the Government of Vietnam, which Commerce claimed to have demonstrated that the five production scenarios occurred in Vietnam during the inquiry period. *Id.* at 32–35. Commerce explained that the remaining respondents' failures to provide requested information warranted the use of facts available and adverse inferences, and, on that basis, continued to find that those respondents produced inquiry merchandise under all five scenarios. *Id.* at 35-36, 44-49.

Third, the Court directed Commerce to reconsider whether the record evidence continued to support its affirmative country-wide circumvention determination. Slip Op. 26-5 at 82. The Court recognized that Commerce's reliance on AFA supplied a critical factual predicate for that determination and required Commerce to "examine the evidence and articulate a sound rationale for the breadth of its determination, both in terms of production scenarios and the agency's country-wide determination." *Id.* at 78. The Court also deferred consideration of the parties' remaining challenges to Commerce's analysis under 19 U.S.C. §§ 1677j(b)(1)(C)–(E) and (b)(2)–(3), including the treatment of production processes, patterns of trade, and other statutory factors, because the remand could alter the evidentiary record and Commerce's assessment of that evidence. *Id.* at 92-93.

On remand, Commerce reaffirmed its affirmative country-wide circumvention determination covering all five production scenarios. Remand Results at 31-37, 63-64. Commerce relied on its continued application of AFA to 22 Vietnamese companies, its inference that those companies produced inquiry merchandise under all five scenarios, and its concern that limiting the determination to identified companies would permit circumvention by other Vietnamese producers. *Id.* at 35-37. IGT Plaintiffs renewed their objections, but Commerce

expressly declined to revisit them. *Id.* at 63.

## SUMMARY OF ARGUMENTS

Although Commerce correctly reversed its application of adverse facts available ("AFA") to Eagle, Golden Bridge, Arrow Forest, Innovgreen, and Her Hui, it improperly limited implementation of that reversal to entries remaining suspended at the conclusion of this litigation. Commerce should issue corrected Customs instructions recognizing the five companies' eligibility for the certification program with respect to entries affected by the original AFA determinations, including pre-AR5 and post-AR5 entries already liquidated. IGT Plaintiffs do not seek an order directing liquidation, reliquidation, or resolution of those protests, but Commerce's remand redetermination must be given full effect by the corrected implementing instructions.

Second, Commerce failed to remedy the evidentiary deficiency underlying its finding that respondents subject to AFA produced inquiry merchandise under all five production scenarios. Record evidence supports *only* that Finewood engaged in production of the inquiry Scenario 3 but does not establish that Finewood had actual production under the other four scenarios. Neither those records nor the remaining evidence supplies a reasoned basis for Commerce's all-five-scenarios inference or the resulting country-wide determination.

Third, IGT Plaintiffs renew the statutory and substantial-evidence challenges the Court deferred, including Commerce's interpretation of "completion or assembly," its minor-or-insignificant-processing analysis, its treatment of forestry and surrogate values, and its patterns-of-trade analysis. Commerce declined to reconsider those issues on remand, and IGT Plaintiffs respectfully request that the Court now resolve them.

## ARGUMENTS

### I. Commerce Must Fully Implement Its Reversal of AFA for All Affected Entries From Eagle, Golden Bridge, Arrow Forest, Innovgreen, and Her Hui, Regardless of Whether Such Entries Remain Suspended at the Conclusion of This Litigation.

IGT Plaintiffs agree with Commerce's determination in the Remand Results that the application of AFA to Eagle, Golden Bridge, Arrow Forest, Innovgreen, and Her Hui is no longer warranted. *See* Remand Results at 12, 15, 41. However, Commerce's proposed implementation of that reversal is improperly limited to entries that "remain suspended at the conclusion of this litigation." *Id.* Commerce must expressly reverse its AFA determinations made in the July 2023 Final Determination and clarify that the five companies were improperly excluded from participation in the certification program at the conclusion of the circumvention inquiry. Appropriate implementation of the remand results is necessary to ensure that the Remand Results fully implement the Court's remand instructions and address all entries affected by the original AFA determinations, including entries already liquidated with AD/CVD duties for which Customs protests remain pending.

As an initial matter, IGT Plaintiffs, including Eagle, Golden Bridge, Arrow Forest, Innovgreen, and Her Hui, challenged Commerce's July 2023 Final Determination of Circumvention itself, pursuant to 19 U.S.C. § 1516a(a)(2)(B)(vi) and 28 U.S.C. § 1581(c). The Court reviews that determination for substantial evidence and compliance with law. 19 U.S.C. § 1516a(b)(1)(B)(i). As such, Commerce's obligation on remand was to reconsider its original and challenged AFA determinations in the circumvention inquiry and give full effect to that reconsideration.

Indeed, the Court expressly rejected the Government's argument that Commerce's application of AFA was moot because the consequences of AFA had been superseded by the

results of *China Plywood AR5*. Slip Op. 26-5 at 27-28 (citing Oral Arguments). In doing so, the Court specifically recognized that "AR5 did not address the assessment rates for all entries that were suspended in the course of the circumvention inquiry." *Id.* at 28. The Court held that challenges to Commerce's AFA determinations remain live and remanded those determinations for reconsideration. *Id.* Thus, the purpose of this remand is to determine whether Commerce's AFA determinations in this circumvention inquiry should stand—not whether later administrative reviews reached different conclusions. Commerce must therefore give full effect to its reversal of AFA in the circumvention final determination.

In the Remand Results, Commerce relied principally on the record developed in the fifth administrative review, in which each of the five companies was examined, verified, found not to have produced inquiry merchandise during the AR5 period, and determined to be eligible to participate in the certification program. *See* Remand Results at 10-12, 14-15. Based on these findings, Commerce expressly determined that the application of AFA to the five companies was "no longer warranted." *Id.* at 12, 15. IGT Plaintiffs do not challenge Commerce's reliance on the AR5 findings as a basis for reconsidering its original AFA determinations to the extent that Commerce uses the companies' participation and verified findings from AR5 as evidence supporting reconsideration of the original AFA determination because AR5 does cover the majority of the entries affected by the circumvention final determination. Nor do IGT Plaintiffs dispute Commerce's statement that entries already reviewed and found to be outside the scope of the Orders in AR5 need not be certified again.

The problem lies in Commerce's proposed implementation. Commerce stated that it would permit the companies to certify, where applicable, that plywood in "any entries which remain suspended at the conclusion of this litigation" is not in-scope merchandise. *Id.* at 12; *see*

*also id.* at 15. This qualification fails to account for the full consequences of Commerce's original AFA determinations.

Commerce's July 2023 Final Determination affected entries covering periods **before**, **during**, and **after** AR5. With respect to entries predating AR5, some remain suspended pursuant to injunctions in this litigation. Commerce's proposed certification mechanism would address those entries. However, IGT Plaintiffs also had pre-AR5 and post-AR5 entries that were already liquidated with AD/CVD duties. The affected importers timely protested those liquidations, and U.S. Customs and Border Protection ("Customs") has suspended action on the protests pending the outcome of this litigation. Those entries are no longer suspended, but the consequences of Commerce's original AFA determinations remain directly relevant to the pending protests.

Commerce's qualification in the proposed Customs instructions therefore creates an unjustified distinction between entries that remain suspended and entries that have been liquidated but are subject to pending protests. Both categories were affected by the same original circumvention final determination and the resulting exclusion of Eagle, Golden Bridge, Arrow Forest, Innovgreen, and Her Hui from the certification regime. Yet, under Commerce's proposed implementation, only the former category is expressly covered by the revised certification mechanism.

Commerce's decision to limit certification eligibility to entries remaining suspended at the conclusion of litigation does not follow from its substantive reconsideration of AFA. Commerce determined that AFA was no longer warranted for Eagle, Golden Bridge, Arrow Forest, Innovgreen, and Her Hui. *See* Remand Results at 12, 15. That company-specific determination removes the basis for excluding these companies from the certification program under the July 2023 circumvention final determination, regardless of the subsequent liquidation

status of individual entries. Moreover, pursuant to 19 U.S.C. § 1514, the protest of said entries means that their liquidation is not "final" and is subject to the final decision in this court. Commerce should therefore instruct CBP that the original AFA determinations concerning these five companies have been reversed and that the companies were improperly excluded from the opportunity to certify entries affected by those determinations. The instructions should not restrict that correction to entries that remain suspended at the conclusion of litigation.

To be sure, we do not ask this Court to direct the liquidation or reliquidation of any entry, to determine whether any particular entry satisfies the applicable certification requirements, or to resolve any pending protest. Those protests involve both pre-AR5 and post-AR5 entries and, in some instances, raise separate questions concerning whether the merchandise falls within the physical scope of the underlying orders (i.e., whether the merchandise should even be governed by the certification requirement implemented in July 2023 in the first place). The disposition of those issues remains governed by the applicable procedures and legal requirements of CBP's consideration of protests. The relief requested here is narrower: Commerce should issue instructions that fully reflect Commerce's reversal of AFA, without perpetuating the original certification exclusion solely because an affected entry has already been liquidated (but not finally, due to timely protests).

Commerce has already completed the substantive reconsideration required by the Court's remand order. In the five months under the original remand schedule, followed by an extension of another month and half, Commerce elected to issue no supplemental questionnaire to Eagle, Golden Bridge, Arrow Forest, Innovgreen, and Her Hui, and instead relied on the verified findings from AR5 to determined that AFA was no longer warranted for these companies. Therefore, IGT Plaintiffs request that the Court sustain Commerce's reversal of AFA application

and direct Commerce, without a further substantive remand, to issue corrected CBP instructions confirming that the five companies should *never have been* excluded from the certification program based on the reversed AFA determinations, without limiting that correction to entries that remain suspended at the conclusion of this litigation.

In *Decca Hospitality Furnishings, LLC v. United States*, 427 F. Supp. 2d 1249, 1256 (Ct Int'l Trade 2006), the Court dealt with a similar request and explained that mandamus relief requires the petitioner to establish that (1) it has no other adequate means to obtain the requested relief; (2) its right to relief is clear and indisputable; and (3) issuance of the writ is appropriate under the circumstances. There, the Court granted Decca's request and ordered Commerce to issue Customs instructions to amend Decca's AFA cash deposit rate to the separate rate in Commerce's remand results as sustained by the Court. *Id.* at 1257-1264. As in *Decca*, all three requirements would be satisfied here if the Court sustains Commerce's reversal of AFA for the five companies. First, Eagle, Golden Bridge, Arrow Forest, Innovgreen, and Her Hui would have no other adequate alternative means to obtain corrected Customs instructions effectuating Commerce's favorable remand results, nor do any pending Customs protests provide an adequate alternative means because CBP cannot itself reverse Commerce's original Customs instructions excluding the five companies from participating in the certification regime on all past entries that were unliquidated as of July 2023, along with future entries. Second, their right to such instructions would be clear and indisputable; just as the Court in *Decca* recognized Commerce's *ministerial obligation* to issue Customs instructions under 19 U.S.C. § 1673e(a)(1), *id.* at 1255 ("[u]nder the Statute, Commerce's authority and obligation to issue instructions to Customs is a purely ministerial act"), the regulations governing circumvention inquiries expressly provide for Commerce's instructions to CBP following a circumvention determination and authorize the

implementation of certification requirements. *See* 19 C.F.R. §§ 351.226(l)(3), (m)(1)(iv), 351.228(a)–(b) (Commerce's promulgated regulations concerning its authority over certification eligibility and implementing the appropriate Customs instructions following a circumvention inquiry). Once Commerce's reversal of AFA is sustained, the resulting correction of these five companies' certification eligibility would require no further factual or legal reconsideration by Commerce. Third, the requested relief is appropriate under the circumstances because Commerce has already completed its reconsideration, does not defend the original AFA finding, does not issue the instant favorable Remand Results under protest, and has provided no basis for continuing to exclude the five companies from certification for entries affected by the original AFA determinations.

Accordingly, IGT Plaintiffs respectfully request that the Court sustain the aspect of the Remand Results in which Commerce reversed the AFA application to Eagle, Golden Bridge, Arrow Forest, Innovgreen, and Her Hui, and direct Commerce to effectuate the Remand Results by issuing corrected Customs instructions confirming that these companies should not have been excluded from the certification regime on any entries affected by the original circumvention determination. Those instructions should not limit the correction to entries remaining suspended at the conclusion of this litigation, but should recognize the companies' certification eligibility regardless of whether the affected entries remain suspended or have already been initially liquidated.

## II. Commerce's Selection of Adverse Facts and Its Finding Concerning Completion or Assembly Within the Meaning of § 1677j(b)(1)(B) Remain Unsupported by Substantial Evidence.

### A. Commerce Has Not Established That Finewood Produced Inquiry Merchandise Under All Five Production Scenarios.

The Court remanded Commerce's AFA determination because Commerce failed to establish a logical connection between the record evidence and its finding that noncooperating respondents produced inquiry merchandise under all five production scenarios. Slip Op. 26-5 at 74-82. The Court found that "Commerce approached its analysis backwards" and directed the agency to "examine the evidence and articulate a sound rationale for the breadth of its determination." *Id.* at 78-79. That requirement applies to Commerce's selection of adverse facts under 19 U.S.C. § 1677e(b) and its finding concerning completion or assembly under 19 U.S.C. § 1677j(b)(1)(B).

On remand, Commerce relies principally on the Finewood scope-inquiry record to reaffirm that all five production scenarios occurred in Vietnam. Commerce asserts that the Finewood documents "clearly demonstrate" that Finewood exported plywood produced under "each of the five production scenarios" and concludes that those documents are "sufficient on [their] own" to establish completion under all five scenarios. Remand Results at 33-34. Commerce then uses that finding, together with the remaining respondents' noncooperation, to reaffirm its selection of adverse facts that those respondents produced inquiry merchandise under every scenario. *Id.* at 35-36.

Commerce's reasoning fails at its factual premise. Finewood's questionnaire response expressly disclaims the use of Chinese-origin completed core platforms, contradicting Commerce's findings under Scenarios 1 and 2. Its purchase records do not establish that

Finewood actually combined Chinese and Vietnamese inputs in the configurations specified by Scenarios 4 and 5. Although Finewood's description supports production under Scenario 3, that evidence cannot establish production under all five scenarios. Commerce therefore has not supplied the reasoned evidentiary foundation the Court required for the breadth of its renewed AFA determination.

#### 1. Finewood's Records Do Not Establish production Under Scenarios 1 and 2.

Scenario 1 concerns "[f]ace veneer, back veneer, and assembled core components (e.g., veneer core platforms) manufactured in China and assembled in Vietnam." Final IDM at 9, **PR842**. Scenario 2 concerns "[f]ully assembled veneer core platforms manufactured in China" that are combined in Vietnam with face and/or back veneers produced in Vietnam or third countries. *Id.* Both scenarios require Chinese-origin assembled core components that constitute the core of the finished plywood, rather than unfinished raw materials that must first be manufactured into a core platform in Vietnam.

Commerce reasons that Finewood's imports of Chinese-origin two-ply panels establish production under both scenarios. Remand Results at 34. In doing so, Commerce must have treated a two-ply raw-material substrate as though it were an assembled or fully assembled core platform. Finewood's own questionnaire response expressly rejects that characterization.

In response to Commerce's request to identify its Chinese suppliers, Finewood stated that it did not purchase completed core platforms from China. Instead, it imported face/back veneers, individual core veneers, and two-ply core-veneer substrates as raw materials for plywood production. Finewood Initial Questionnaire Response (Apr. 9, 2020) ("Finewood IQR") at 4, **CR397, PR394**. By contrast, Finewood purchased completed core platforms, as well as

face/back veneers and individual core veneers, from domestic suppliers in Vietnam. *Id.* at 6-7, 12, 14-15, Exhibit 10 (Listing of Domestically Purchased Materials). Finewood explained that it obtained completed core platforms from Vietnamese producers and attached face/back veneers to those platforms in Vietnam to manufacture finished plywood. *Id.* at 6–7, 12. Finewood reiterated the point in response to Question 15: "In no instance did Finewood use core platforms from China in its production of plywood." *Id.* at 12. These are affirmative statements concerning Finewood's actual sourcing and production operations.

Finewood also explained why its Chinese-origin two-ply substrates were not completed core platforms. It described two-ply substrates as two layers of core veneers already glued together, which Finewood then combined with additional two-ply or individual veneers to manufacture the core platform required for finished plywood. *Id.* at 9-10. As Finewood expressly stated, "Finewood never used only one 2-ply as the core to produce plywood." *Id.* For its thinner plywood products, Finewood instead used individual core veneers. *Id.* Finewood thus distinguished the imported two-ply substrate from the completed core platform manufactured in Vietnam through further layup, gluing, pressing, repair, and finishing operations. *Id.* at 9-10, 12.

Commerce defines "veneer core platforms" as "two or more wood veneers *that form the core of an otherwise completed hardwood plywood product (i.e., a hardwood plywood product to which the outer (face and back) veneers have not yet been affixed)*." Final IDM at 10 n.24 (emphasis supplied); *see also* Remand Results at 34 n.155. The definition of Scenarios 1 and 2 requires such veneer core platforms forming the core of an otherwise completed plywood product, and thus cannot cover the two-ply as how they were used by Finewood in its production. That, in addition to Finewood's statement that it never used Chinese-origin core platforms,

*directly contradicts* Commerce's finding that Finewood produced inquiry merchandise under Scenarios 1 and 2.

### 2. The Finewood documents support production under Scenario 3 but do not establish production under Scenarios 4 and 5.

Although Finewood's response supports production of inquiry merchandise under Scenario 3, it does not establish production under Scenarios 4 and 5. Scenario 3 covers "[m]ulti-ply panels of glued core veneers manufactured in China" that are combined in Vietnam to produce veneer core platforms and then combined with face and/or back veneers of any origin. Final IDM at 9. Finewood reported importing Chinese-origin two-ply substrates and combining multiple substrates (i.e., two-ply) in Vietnam to manufacture core platforms for finished plywood. Finewood IQR at 9-10, 12, **CR397, PR394.** IGT Plaintiffs do not dispute that this production process falls within Scenario 3.

Scenarios 4 and 5, however, require different combinations of Chinese-origin individual core veneers and face/back veneers of any origin. In particular, Scenario 4 concerns "[f]ace veneer, back veneer, and individual core veneers produced in China" that are assembled into hardwood plywood in Vietnam, while Scenario 5 concerns "[i]ndividual core veneers manufactured in China and processed into a veneer core platform in Vietnam and combined with a face and/or back veneer produced in Vietnam or other third country." Final IDM at 9. Finewood purchased individual core veneers and face/back veneers from both China and Vietnam. Finewood IQR, Exhibit 10 (Listing of Domestically Purchased Materials), **CR397, PR394;** Finewood Initial Questionnaire Response – Submitting Certain Exhibits (April 23, 2020), Exhibit 4 (List of Imported Materials), **CR397, PR394**. Those purchases do not establish that Finewood used exclusively Chinese-origin individual core veneers to manufacture the cores

incorporated into particular finished plywood products, as defined for Scenarios 4 and 5. Nor do they establish that Chinese-origin individual core veneers were combined with Chinese-origin face and back veneers under Scenario 4, or with Vietnamese or third-country face/back veneers under Scenario 5.

Commerce's reasoning at page 34 overlooks these distinctions. It treats Finewood's purchase and use of Chinese-origin individual core veneers as sufficient to establish production under both scenarios, without demonstrating that the particular core platforms and face/back veneers incorporated into finished plywood had the origins required by each scenario. Evidence that Finewood purchased the necessary categories of inputs does not establish that it actually combined those inputs in the specified production scenarios. Commerce therefore has not established, based on record evidence, that Finewood actually produced inquiry merchandise under Scenarios 4 and 5.

### 3. Commerce Mischaracterized the Period of Finewood's Production.

Commerce also misread the time period coverage of the Finewood evidence. Responding to objections concerning its reliance on the Finewood scope-inquiry record, Commerce stated that "most of the data from the Finewood Scope Inquiry" covered approximately one and a half years, from June 1, 2017 through December 31, 2018. Remand Results at 45. It then asserted that Finewood assembled plywood in Vietnam "over a substantial portion of the inquiry period." *Id.* at 46. Neither assertion is supported by the record.

The June 2017–December 2018 dates do not refer to Finewood's production period. Rather, they correspond to the 2017–2018 administrative review of hardwood plywood from China, in which Linyi Chengen Import and Export Co., Ltd. ("Chengen") was the sole mandatory respondent. Finewood expressly explained that, because it had ceased operations and

its owners could not retrieve all company records, nor did Finewood succeed in persuading the Chinese suppliers to cooperate in providing FOP of the Chinese-origin raw materials, it reported most of its factors of production ("FOPs") based on its purchases and Chengen's FOP database from the 2017–2018 administrative review (i.e., AR1) of the *China Plywood Orders*. Finewood Supplemental Questionnaire Response – Part II&III (April 13, 2021) ("Finewood SQR-Pt.II") at 3-4, 7-8, 10, **CR397, PR394**. Thus, the June 2017–December 2018 period identifies the source of substitute production-cost data, not the duration of Finewood's manufacturing operations.

Finewood's own response establishes a materially different chronology. Finewood was established in December 2017, began using Vietnamese tollers in May 2018, and wound down operations following CBP's November 2018 interim measures. Finewood IQR at 2–3, 7, 11–12, **CR397, PR394**. More importantly, Commerce's own Preliminary Scope Analysis Memorandum states that Finewood "only reported sales" from [ ] through [ ], citing Finewood's IQR at Exhibit 5. Finewood Preliminary Scope Analysis Memorandum (August 26, 2021) at 2 & n.19, **CR397, PR394**. Neither Commerce's preliminary (or final) scope ruling nor its supporting analysis establishes the precise month in which Finewood began manufacturing plywood or the month in which production ceased. The period of time of reported U.S. sales therefore is only reasonable estimate to measure Finewood's actual production period. Certainly, Commerce identifies no evidence establishing a longer period of manufacturing activity. Nor can it establish that period by substituting the dates of Chengen's administrative review for Finewood's own operations.

Those [ ] months that Finewood exported to the U.S. and reported productions for, account for only [ ]–less than 20%–of the forty-month circumvention inquiry period, from December 2016 through March 2020. That limited period cannot reasonably be characterized as

a "substantial portion" of the inquiry period. *But see* Remand Results at 46 ("It bears repeating that Finewood was a Vietnamese company that assembled plywood in Vietnam over a substantial portion of the inquiry period ……"). Commerce therefore has not substantiated its finding that Finewood assembled plywood in Vietnam over a substantial portion of the inquiry period, much less explained how Finewood's limited and temporally uncertain production experience supports the breadth of Commerce's renewed determination.

#### 4. Commerce's Finding Rests on Possible Production Scenarios, Not Substantial Evidence of Actual Completion or Assembly.

The deficiencies discussed above concern the evidentiary foundation of Commerce's finding. Substantial evidence must be assessed on the record as a whole, including evidence detracting from the agency's conclusion. *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984); *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978, 985 (Fed. Cir. 1994); *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1380–81 (Fed. Cir. 2008). Although the Court does not reweigh evidence in place of the agency, it must determine whether Commerce's findings are supported by substantial evidence on the record. *Canadian Solar Inc. v. United States*, 537 F. Supp. 3d 1380, 1391 (Ct. Int'l Trade 2021).

Commerce's analysis is simply unsupported by record evidence that Finewood actually produced inquiry merchandise under all five scenarios. Its conclusion rests on treating the availability of particular inputs as evidence that Finewood combined them in every production configuration covered by the inquiry. However, the existence of those inputs does not establish their use in the specified combinations, particularly where Finewood's own responses and supporting exhibits contradict that.

The Court previously held that "Commerce's circumvention determination rests in part on conjecture, which is not enough to meet the substantial evidence standard of review." *Shelter Forest*, Slip Op. 26-5 at 80 (citing *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013)). Commerce's renewed finding suffers from the same defect. Section 1677j(b)(1)(B) requires a finding that the relevant merchandise was completed or assembled in Vietnam from the specified Chinese-origin merchandise. Commerce cannot establish that factual predicate by identifying inputs that could have been used in a particular production process without showing that the process actually occurred.

The Court directed Commerce to "examine the evidence and articulate a sound rationale for the breadth of its determination." Slip Op. 26-5 at 78–79. Commerce has not done so. Although Finewood's records supports production under Scenario 3, they do not establish production under all five scenarios. Nor does evidence of Finewood's production under one scenario, without further explanation, support Commerce's selection of adverse facts that the remaining respondents produced inquiry merchandise under every scenario. That separate defect is addressed in Section II.B.

### B. Commerce Failed to Establish That Its Selection of Adverse Facts Supports A Finding of Completion or Assembly Under All Five Production Scenarios.

Commerce's selection of adverse facts presents a distinct question from whether particular respondents failed to cooperate. IGT Plaintiffs do not challenge Commerce's authority to apply AFA to companies that failed to respond to its questionnaires. The defect lies in Commerce's further determination that the remaining noncooperating respondents produced inquiry merchandise under all five production scenarios, which Commerce then relied upon to establish completion or assembly under 19 U.S.C. § 1677j(b)(1)(B). Remand Results at 35–36.

Commerce must identify a reasoned basis in the record for that further inference, not merely for the decision to apply AFA.

The Court recognized this distinction when it sustained certain failure-to-cooperate determinations but separately remanded Commerce's selection of adverse facts under 19 U.S.C. § 1677e(b) and its finding concerning completion or assembly under 19 U.S.C. § 1677j(b)(1)(B). Slip Op. 26-5 at 73-82. As the Court explained, "Commerce approached its analysis backwards" by drawing an adverse conclusion concerning completion of inquiry merchandise and then identifying evidence purportedly supporting that conclusion. *Id.* at 78-79. The Court also observed that "Commerce does not cite any direct evidence of the respondents' production of inquiry merchandise to fulfill the statutory requirement." *Id.* at 79. The remand thus required Commerce to reconsider not merely whether adverse inferences were permissible, but whether the record and the agency's reasoning justified the particular findings drawn from them.

That directive is consistent with the requirement that "[d]eriving information requires a logical connection between the source, i.e., the record evidence, and the result." *Id.,* at 74, 78 (citing *Jinko Solar Co. v. United States*, 789 F. Supp. 3d 1275, 1288 (Ct Int'l Trade 2025)). Nor does the use of AFA dispense with the statutory elements of an affirmative circumvention determination. *Id.,* at 74-75 (citing *Changzhou Trina Solar Energy Co. v. United States*, 359 F. Supp. 3d 1329, 1340 (Ct Int'l Trade 2019); *Jindal Poly Films Ltd. v. United States*, 439 F. Supp. 3d 1354, 1361 (Ct Int'l Trade 2020)).

Commerce's actions on remand did not resolve the deficiency identified by the Court. Commerce reopened the record and issued supplemental quantity-and-value questionnaires to Groll Ply & Cabinetry Ltd. and Plywood Sunshine Company Limited in April 2026. Neither company responded. Remand Results at 7-10. Commerce also placed on the record petitioner

comments concerning Win Faith from AR5. *Id.* at 21-22. These developments provided grounds for reassessing cooperation, but no additional evidence of the production scenarios actually employed by those companies. The Court's express invitation to consider evidence developed in subsequent proceedings makes that omission significant. The Court stated that "Commerce may consider whether its resolution of the issues on remand would be facilitated by the incorporation of evidence from subsequent administrative reviews into the record of this inquiry." Slip Op. 26-5 at 93-94. Commerce relied on findings from the fifth administrative review in reconsidering AFA for certain companies and incorporated petitioner comments concerning others. *See* Remand Results at 10-16. It identified no underlying production records from those reviews supporting its all-five-scenarios inference against the remaining respondents.

As Commerce is aware, in the underlying circumvention inquiry, 45 Vietnamese plywood producers who responded to all of Commerce's questionnaires were willing and able participants in the circumvention inquiry. This is an unprecedented number of mandatory respondents. Commerce also conducted on-site verifications of the production facilities in Vietnam of many of these respondents. Yet Commerce continues to be unable to point to one of them that affirmatively produced inquiry merchandise, including those producers for whom Commerce applied AFA, despite an inordinate, if not historically record-breaking investigation of them, far exceeding statutory completion guidelines setting a maximum of 300 days from start to finish. Further, 16 Vietnamese plywood exporters participated fully in Commerce's fifth AD administrative review, and 15 participated in the CVD review as mandatory respondents, which is again an unprecedented high number in recent decades of practice. Commerce also conducted on-site verifications in Vietnam for most of the respondents. *See* Dep't Commerce, *Certain Hardwood Plywood Products From the People's Republic of China*: *Final Results of*

*Administrative Reviews of the Antidumping and Countervailing Duty Orders, Final Determination of No Shipments; 2021–2022*, 90 Fed. Reg. 21271, 21272 (May 19, 2025). Despite that extensive record, Commerce identifies no affirmative production evidence from those participating producers establishing all five scenarios. Nor did it explain how the evidence it did obtain from the circumvention inquiry and the fifth administrative review supports the breadth of its finding that all five production scenarios occurred.

Commerce instead continues to rely principally on the Finewood scope-inquiry record. Remand Results at 32–35. Finewood was not a respondent in Commerce's circumvention inquiry underlying this litigation.[1] It was the subject of a separate scope proceeding concerning plywood manufactured in Vietnam using Chinese-origin two-ply panels. Moreover, Finewood had ceased operations and dissolved well before Commerce published the Federal Register notice initiating the underlying circumvention inquiry on June 17, 2020. *See Certain Hardwood Plywood Products From the People's Republic of China*, 85 Fed. Reg. 36,530 (June 17, 2020) ("Initiation Notice"). That date also marks the beginning of the period for which Commerce directed suspension of liquidation of entries covered by its circumvention determination, and thus could not be applied to any of the entries exported by Finewood. Further, as Section II.A demonstrates, Finewood's records establish production under Scenario 3, not all five scenarios.

Nor did the other materials cite by Commerce cure that deficiency. Commerce invokes the petitioner's affidavit, and import data provided by the Government of Vietnam to support its conclusion that the production practices covered by the inquiry occurred in Vietnam. Remand

[1] Finewood ceased operations in November 2018 and dissolved in September 2019 and was not a respondent in the underlying circumvention inquiry. *See Vietnam Finewood Co. v. United States,* 633 F. Supp. 3d 1243, 1265-66 (Ct. Int'l Trade 2023) (the court dismissed Finewood from the action for lack of standing).

Results at 32-35, 46-49. The trade data may bear on the existence of trade patterns or the availability of particular Chinese-origin inputs. However, aggregate import figures do not identify the configurations in which those inputs were assembled into finished plywood. That limitation is particularly significant given the absence of corresponding domestic production, consumption, and third-country export data. With respect to the affidavit provided by the petitioner indicating that poplar core plywood may have been exported to the United States from Vietnam, Commerce ignored the Court's warning that "insofar as Commerce relied on evidence submitted by the Coalition, as it relates to circumvention, the Coalition's request was limited to two production scenarios." Slip Op. 26-5 at 78.

The adverse consequence imposed on a noncooperating company and the factual predicate for an affirmative determination under § 1677j(b)(1)(B) serve different purposes. Commerce may draw an adverse inference to prevent a noncooperating company from benefiting from its refusal to provide information, but that does not bridge the gap to the finding that the company manufactured plywood under all five scenarios. As the Court explained, "[w]hile an agency finding of circumvention with respect to two scenarios may have the same impact as one based on five scenarios," Commerce must nevertheless "examine the evidence and articulate a sound rationale for the breadth of its determination, both in terms of production scenarios and the agency's country-wide determination." Slip Op. 26-5 at 78.

Nor does this argument impose a categorical requirement of affirmative, company-specific production evidence before AFA may be applied. Commerce may consider the absence of information caused by a respondent's noncooperation and select adverse facts accordingly. Yet, where Commerce relies on those adverse facts to establish completion or assembly under five distinct scenarios, it must articulate why the facts available, together with the identified

failures to cooperate, support that breadth of determination. Otherwise, the scope of the adverse finding depends on the total of alleged and hypothetical number of scenarios Commerce chose to investigate rather than on a reasoned assessment of the record.

Commerce's individual-respondent discussions do not supply the missing explanation. The Remand Results separately address Groll Ply, Plywood Sunshine, Zhongjia, Win Faith, and other respondents, identifying deficiencies that Commerce considers sufficient to warrant AFA. *See* Remand Results at 15–27, 50–55. Those discussions may support Commerce's determinations that particular companies failed to cooperate or provided unreliable information. They do not, however, confront the fact that deficiencies identified for those companies were not necessarily identical, and Commerce does not explain how they justify the same all-five-scenarios inference.

The breadth of Commerce's inference is especially consequential because the five scenarios describe distinct Chinese-origin inputs and processing undertaken in Vietnam. As the Court observed, the petitioner's original request concerned two scenarios, while three additional scenarios were subsequently included. Slip Op. 26-5 at 78-79. Expanding the inquiry from two scenarios to five, Commerce is required to explain why the record supports finding under each of them. Commerce's renewed reliance on Finewood, aggregate trade data, and respondent noncooperation does not satisfy that requirement.

## III. Commerce's Affirmative Circumvention Determination Remains Contrary to the Statutory Requirements and Unsupported by Substantial Evidence.

The Court deferred consideration of IGT Plaintiffs' remaining challenges to Commerce's affirmative circumvention determination, leaving those issues for resolution following remand. Slip Op. 26-5 at 92-93. In the remand proceeding, IGT Plaintiffs presented these unresolved

challenges to Commerce in their Comments on Draft Remand Results at 24-55, **Rem. PR4**. Commerce expressly declined to revisit those issues on remand. Remand Results at 62-63. As identified below, IGT Plaintiffs respectfully request that the Court now consider and resolve the previously briefed challenges. In doing so, IGT Plaintiffs have deliberately avoided repeating arguments already fully presented to the Court, consistent with the Court's instruction that further briefing should be subject to "appropriate word limits that take account of the extensive briefing already submitted." Slip Op. 26-5 at 94.

### A. Commerce Failed to Establish That Plywood Manufacturing in Vietnam Constitutes "Completion or Assembly" Under 19 U.S.C. § 1677j(b)(1)(B)

IGT Plaintiffs renew their argument that § 1677j(b)(1)(B) requires Commerce to determine whether the operations performed in Vietnam constitute "completion or assembly," independently of whether those operations are "minor or insignificant" under § 1677j(b)(1)(C). DH Pls.' Tranche I Rule 56.2 Br. ("T1 56.2"), **ECF No. 31**, at 28-36; DH Pls.' Tranche I Reply Br. ("T1 Reply"), **ECF No. 71**, at 4-10. The statute identifies these as separate requirements. Reading "completion or assembly" to encompass manufacturing or production generally would deprive Congress's choice of terminology of independent significance. *See Bailey v. United States*, 516 U.S. 137, 144-45 (1995); T1 Reply at 5-7; Statement of Administrative Action ("SAA") at 893.

The Court observed that § 1677j(b)(1)(B) does not qualify "completion or assembly" with the adjective "mere." Slip Op. 26-5 at 82 n.69. IGT Plaintiffs do not contend otherwise. IGT Plaintiffs' use of "mere" distinguishes the operations Congress addressed from the substantial manufacturing processes documented in the record; it does not purport to add a word to the statute. The statutory question remains whether Commerce has given independent effect to

"completion or assembly," rather than treating that requirement as satisfied whenever imported inputs undergo further production. *See* T1 56.2 at 28-36; T1 Reply at 4-10. As previously demonstrated, the record describes multiple manufacturing stages that transform individual veneers into finished hardwood plywood, including processes documented in the respondents' verification exhibits. T1 56.2 at 31-36; T1 Reply at 7-9. Commerce did not adequately address that evidence under the distinct requirement of § 1677j(b)(1)(B).

**B. Commerce Failed to Support Its Finding of Minor or Insignificant Processing Under § 1677j(b)(1)(C) and (b)(2).**

IGT Plaintiffs also renew their challenges to the evidentiary basis for Commerce's findings under § 1677j(b)(2), including the level of investment, research and development, nature of production processes, extent of production facilities, and value of processing performed in Vietnam. T1 56.2 at 19-28, 31-36; T1 Reply at 10-14. Commerce's circumvention determination focused principally on value added under § 1677j(b)(2)(E), without identifying substantial evidence supporting its conclusions regarding the separate factors in §§ 1677j(b)(2)(A)–(D). Although the Court rejected IGT Plaintiffs' procedural objections to Commerce's information gathering and use of materials from the separate Finewood proceeding, it did not resolve whether the evidence Commerce relied upon, considered together with the participating respondents' contrary evidence, substantially supports Commerce's findings concerning the statutory factors. Slip Op. 26-5 at 22–24, 92–93. IGT Plaintiffs maintain that it does not. Commerce failed to adequately account for the evidence of the participating respondents' manufacturing operations in assessing whether the processing performed in Vietnam was minor or insignificant.

IGT Plaintiffs further renew their objection to Commerce's comparison methodology. Commerce effectively expanded the benchmark for plywood production to encompass upstream

forestry, logging, and veneer production, while discounting the equipment, facilities, and processing required to manufacture finished plywood in Vietnam. T1 56.2 at 36-39; T1 Reply at 13-17. The statutory factors concern the significance of the operations under examination; Commerce cannot establish their insignificance through a comparison that attributes activities of distinct upstream industries to the production of plywood. Indeed, in *Bell Supply Co., LLC v. United States*, 348 F. Supp. 3d 1281, 1295 (Ct. Int'l Trade 2018), the Court noted Commerce's recognition that the ideal investment comparison examined downstream processing against complete production in the same country—not against a hypothetical integrated operation encompassing distinct upstream industries. IGT Plaintiffs likewise renew their challenge to Commerce's use of surrogate values to assess value added, including their argument concerning the effect of *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) on judicial review of that methodology. T1 Reply at 17–20. The intervening change in governing law also warrants consideration of that challenge notwithstanding any preservation objection. *See Hormel v. Helvering*, 312 U.S. 552, 558–59 (1941) (recognizing circumstances in which an intervening judicial interpretation warrants consideration of a legal issue not raised below). As explained in that briefing, Commerce's surrogate-value calculation assigned the Chinese core veneer a value equal to 109 percent of the finished plywood's value, illustrating the distortion caused by substituting surrogate values for the respondents' actual production costs.

IGT Plaintiffs' challenges require the Court to assess whether Commerce's conclusions are supported by substantial evidence on the record as a whole, including the evidence that detracts from those conclusions. *See* T1 56.2 at 13-15; *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). That review necessarily entails evaluating whether Commerce reasonably credited its selected evidence while discounting the respondents' evidence of substantial

manufacturing operations in Vietnam. It does not permit Commerce to avoid scrutiny of its statutory-factor analysis or comparison methodology simply by invoking its discretion to weigh evidence. *See* T1 Reply at 10–20.

**C. Commerce's Patterns-of-Trade Analysis Does Not Support Its Affirmative Determination.**

IGT Plaintiffs renew their challenge to Commerce's analysis of patterns of trade under § 1677j(b)(3)(A). T1 56.2 at 40-45. Commerce relied on changes in plywood import and export volumes without adequately considering contrary record evidence concerning Vietnam's broader economic development, expansion of domestic manufacturing capacity, and the historical context of trade flows. *Id.* The fact that trade shifted following imposition of the Orders does not, standing alone, establish that Vietnamese producers circumvented them. *See Columbia Forest Prods. v. United States*, 399 F. Supp. 3d 1283, 1295 (Ct. Int'l Trade 2019) (explaining, in the context of a minor-alterations inquiry, that a substitution effect indicative of circumvention was insufficient by itself to justify initiation).

**D. Commerce's Country-Wide Determination Cannot Be Sustained on the Remaining Record.**

The Court directed Commerce to reconsider whether the record supports the breadth of its country-wide circumvention determination. Slip Op. 26-5 at 78-82. IGT Plaintiffs previously challenged the lack of company-specific evidence supporting Commerce's findings across Vietnamese producers and Commerce's failure to undertake an adequate investigation of the participating respondents. T1 56.2. at 10-12, 19-28. Although Commerce reversed its application of AFA to more than a dozen respondents, it maintained country-wide coverage based substantially on its continued application of AFA to 22 noncooperating companies, its findings

concerning all five production scenarios, and its concern that limiting the determination to particular companies would permit future circumvention. Remand Results at 31–37.

Commerce expressly invoked the anti-circumvention purpose of the statute, reasoning that Congress intended the circumvention provisions to close loopholes that could undermine the effectiveness of an order. *Id.* at 36. Commerce further asserted that limiting the determination and certification requirements to particular companies would create a loophole and the possibility of future circumvention by others. *Id.* at 37. But the objective of preventing evasion does not relieve Commerce of its obligation to support the breadth of its determination with substantial evidence and a reasoned explanation. Nor does the possibility that other producers might engage in circumvention establish that they have engaged in the production scenarios encompassed by Commerce's determination.

As explained in Argument II, Commerce's inference that the 22 noncooperating companies necessarily employed all five production scenarios lacks the requisite evidentiary foundation. The Court previously cautioned that Commerce must "examine the evidence and articulate a sound rationale for the breadth of its determination, both in terms of production scenarios and the agency's country-wide determination." Slip Op. 26-5 at 78-79. Commerce's reliance on the risk of a future enforcement loophole does not supply the missing evidence or explanation. Accordingly, the country-wide determination remains unsupported by substantial evidence and should not be sustained.

## **CONCLUSION AND PRAYER FOR RELIEF**

In light of the foregoing, the Court should sustain Commerce's remand results to reverse the AFA application to certain respondents, and order Commerce to issue corrected CBP

instructions giving full effect of such redetermination. The Court should remand Commerce's selection of adverse inference in applying AFA and its overall circumvention determination.

Respectfully submitted,

/s/ Gregory S. Menegaz

Gregory S. Menegaz
Alexandra H. Salzman
Vivien Jinghui Wang
**THE INTER-GLOBAL TRADE LAW GROUP, PLLC**
Suite 1101
1156 Fifteenth Street, N.W. 20005
Tel: (202) 868-0300
email: gmenegaz@igtlaw.com
*Counsel to IGT Plaintiffs*

Date: October 13, 2026

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2007 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains **7,892** words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

Gregory S. Menegaz
**THE INTER-GLOBAL TRADE LAW GROUP, PLLC**
Suite 1101
1156 Fifteenth Street, N.W. 20005
Tel: (202) 868-0300
email: gmenegaz@igtlaw.com
*Counsel to IGT Plaintiffs*